family in Minnesota, at great hardship and additional expense to Plaintiff and her family, between January 4, 1999 and May, 2000;

4.    That Plaintiff complied with all contract terms and conditions precedent [1]; and that the terms of Cogan's contract with Plaintiff, including, but not limited to, payment of scholarship monies due to Plaintiff from Quinnipiac University; processing of Title IV federal financial aid by Quinnipiac University; and transcription of seventeen (17) transfer credits, earned by Plaintiff at the University of Minnesota; the University of Connecticut; and Georgetown University, were subsequently breached by Defendant King, without good cause, and upon an improper motive and for an improper purpose;

5.    That, by letter notification dated May 8, 2000, and pursuant to negotiations and agreement as to terms with Cogan, occurring between January 4, 2000 and May 8, 2000, Plaintiff terminated the association with Quinnipiac, based upon Cogan's express agreement that Defendant Quinnipiac University would assist Plaintiff in transferring earned academic credit to another institution, specified by Plaintiff.

6.    That, at all relevant times, and upon Plaintiff's express demand for assurances of performance, Cogan represented to Plaintiff that he retained his office and authority as Dean until July 1, 2000.

7.    That said contract between Cogan and Plaintiff was duly made; bargained for; and supported by consideration; and relied upon by Plaintiff to her detriment, to wit:

1.    In accordance with the contract terms set forth in writing by Cogan, Plaintiff applied for admission to another institution for Summer, 2000 coursework; and

---

[1] It is undisputed by all parties that Plaintiff completed 17 first-year Quinnipiac credits with above-average grades; and that Plaintiff also completed a total of 17 transfer credits at the University of Minnesota Law School; the University of Connecticut School of Law; and Georgetown University School of Law, all top-tier law schools.

Case 3:02-cv-00897-RNC   Document 1-2   Filed 05/24/2002   Page 2 of 2

subsequently, to other institutions for transfer, which applications were supported by two (2) letters of recommendation by Quinnipiac professors, recommending Plaintiff for transfer; and authorized by a Letter of Good Standing, reissued for this purpose by Dean Neil Cogan on May 25, 2000, at which time Cogan retained the office and position of Dean, Quinnipiac University.

2.      That on or about May 24, 2000, without reasonable grounds and in breach of the express contract between Plaintiff and Cogan; and notwithstanding the contractual obligation assumed by Cogan on behalf of Quinnipiac University, Defendant King, in the presence of Quinnipiac University employee Mary Ellen Durso and other persons unknown to Plaintiff, spoke and wrote false and defamatory words which were published to other institutions, the substance of which were that Plaintiff left Quinnipiac University under conditions other than good standing, and that Plaintiff was not in good standing as of May 25, 2000, thereby defaming Plaintiff, and undermining the credibility of Plaintiff's transfer application, authorized by Cogan.

3.      That Defendant King's statements were unsolicited by the recipients, and published to persons without a legitimate need to know any facts of Plaintiff's association with Quinnipiac University for no reason other than to harm Plaintiff.

4.      That Defendant King's statements were not protected by a qualified privilege; or, in the alternative, that if they were so privileged, Defendant King abused that privilege and lost the protection of qualified privilege by making statements with malice toward Plaintiff and in reckless disregard of her interests.

5.      That, prior to the publication of Defendant's defamatory statements, Plaintiff was engaged in negotiations with several institutions with respect to transfer of