UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED
2004 JAN -5  A 8: 2
U.S. DISTRICT COURT
HARTFORD, CT.

Barbara R. Burns,

        Plaintiff               CASE NO. 3-02-CV-000897(RNC)

v.

David S. King,

        Defendants

### PLAINTIFF'S OBJECTION AND MEMORANDUM IN OPPOSITION TO DEFENDANT'S DECEMBER 24, 2003 MOTION FOR SANCTIONS AND PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT

Plaintiff Barbara R. Burns hereby objects to Defendant's December 24, 2003 motion for discovery sanctions against Plaintiff on the basis that (1) Defendant's motion is procedurally deficient and untimely; (2) the Martinez discovery order cited by Defendant was timely appealed by Plaintiff on September 29, 2003 and the appeal, which operates to divest the district court of jurisdiction with regard to issues raised on appeal, is still pending, (3) Defendant's Motion is frivolous on ground that Plaintiff is not, and cannot be, required under the Federal Rules of Civil Procedure to produce to Defendant documentary evidence that (1) is not in Plaintiff's possession; and/or (2) is available to the Defendant through other, less burdensome means, including Defendant's own records; and (4) the discovery referenced by Defendant's motion has no probative value in determining the controversy in Defendant's favor, as set forth, *infra*.

On the basis that Defendant's motion is completely frivolous and, together with discovery abuses committed by the Defendant, including destruction of evidence, serves no purpose other than to harass Plaintiff and to obstruct and delay adjudication of the controversy on the merits, Plaintiff hereby moves for sanctions against the Defendant, as provided and authorized by Rule 11 and Rule 37 of the Federal Rules of Civil Procedure.

### OPERATIVE FACTS AND PROCEDURAL HISTORY

This action was filed on behalf of Plaintiff by Connecticut Attorney Earle Giovaniello on May 25, 2002 in the United States District Court, New Haven Division. Although Defendant was personally served by State Marshal Norris Horton on June 19, 2002,

1

Defendant, himself an attorney and a law professor, failed to interpose a timely answer to Plaintiff's Summons and Complaint on or before July 9, 2002. On August 7, 2002, Plaintiff moved for, and obtained, entry of default against the Defendant. On August 27, 2002, Defendant moved the court to set aside default judgment on the basis that Defendant could and would defend Plaintiff's defamation action on the merits.

On or about November 22, 2002, defense counsel—who, together with Chubb Insurance Companies, represented to Plaintiff that defense counsel represented Quinnipiac University, Defendant's employer—produced several hundred pages of documents consisting of Quinnipiac University records. These documents, which Defendant represented were part and parcel of Defendant's required disclosures, included, but were not limited to, financial aid records and transcript records pertaining to the plaintiff.

At approximately this same time, after agreeing to exchange motion papers and other documents via email, Defendant defaulted Plaintiff's Request for Admissions to Defendant, which were served upon Defendant via email, confirmed fax, and U.S. Mail. It is a matter of court record that Defendant at no relevant time obtained any order by this court excusing Defendant from participation in discovery. Upon Defendant's default, Plaintiff duly noted that, under the Federal Rules, any admissions duly served and not expressly denied, are deemed admitted. Among Plaintiff's requested admissions were Defendant's admission that (1) he worked for Dean Neil H. Cogan; (2) Cogan had the authority to overrule, and did overrule, Defendant's "financial indebtedness" rationale as justification for denying "good standing" to Plaintiff; and (3) that Defendant wrongfully disregarded Cogan's Good Standing determination in favor of Plaintiff and published a false and derogatory statement regarding Plaintiff's status to officials of the Universityof Minnesota Law School via fax on May 25, 2000. [1]

At this same time, Plaintiff served upon Defendant via United States first-class mail Plaintiff's First Request for Interrogatories to Defendant. The Interrogatory Instructions and Definitions expressly stated that Plaintiff's demand for production of documents and things encompassed documents which existed, but which ceased to exist due to destruction by Defendant and/or his employer.

---

[1] Defendant reiterated these admissions on the record at deposition on February 7, 2003; a copy of the King Deposition Transcript, in its entirety, was filed by Plaintiff with this court in approximately June, 2003.

2

Following two unsuccessful motions for a protective order by Defendant, which were undertaken in bad faith for no other purpose than to indefinitely postpone Defendant's deposition, Plaintiff took Defendant's deposition on February 7, 2003. As evidenced by the Official Transcript, on file with this court, Plaintiff, *pro se*, completed Defendant's deposition, including authentication of some 20 exhibits, in approximately six hours. It is noted that Defendant took approximately the same length of time to depose Plaintiff, and, subsequently, attempted unsuccessfully to move the court for sanctions against Plaintiff for allegedly engaging the Defendant in deposition for an unnecessarily lengthy period of time.

At the conclusion of his deposition, Defendant stated on the record that Defendant planned to bolster the credibility of Defendant's own statements with Quinnipiac University computer-archived correspondence that, by Defendant's testimony, was accessible to Defendant and within his custody and control. King Deposition, P. As Plaintiff noted, and again notes, Defendant did not share this key disclosure with Plaintiff prior to February 7, 2003, although, under the Federal Rules governing Required Initial Disclosures, Defendant was clearly required to do so.[2]

**On February 8, 2003 and, subsequently, Plaintiff demanded production of the Quinnipiac computer archives, including the Quinnipiac hard drive, from defense counsel, Conway and Stoughton, confirmed by Chubb to be the attorney with respect to both Defendant King and his employer, Quinnipiac University. Defense counsel made no response to Plaintiff's demand. On or about April 1, 2003, defense counsel represented to Plaintiff that the computer archives to which Defendant testified as being in existence on February 7, 2003, were no longer in existence. When Plaintiff demanded to know the date and circumstances of their destruction, Defendant could not or would not respond to Plaintiff's good-faith queries, which go directly to Defendant's credibility, and which operate to prove Plaintiff's case, i.e., that, as a matter of Quinnipiac record accessible to Defendant King and his office,**

---

[2] Under Rule 26(a)(1)(B) of the Federal Rules of Civil Procedure, Defendant was required to produce to Plaintiff "all documents, data compilations, and tangible things in (his) possession, custody and control" that are relevant to the disputed facts. The Quinnipiac computer archive is definitely a data compilation and a tangible thing and, by Defendant's own deposition testimony, it is accessible to him and in his possession, custody and control. Indeed, Defendant testified at deposition that Defendant planned to use it to bolster and authentic hearsay writings that Defendant claimed were exchanged between himself and other Quinnipiac employees, including the University Registrar, the University Bursar and others.

3

**Dean Cogan upheld Plaintiff's Good Standing status to Dean Thomas Sullivan, University of Minnesota Law School, on May 25, 2000, overruling Defendant's May 24, 2000 correspondence to Sullivan, which underlies this lawsuit.**

On April 8, 2003, Plaintiff appeared in defense counsel's Hartford offices for deposition. For the next seven hours, Plaintiff responded to a myriad of questions by defense counsel, certain of which improperly sought to pierce the attorney-client privilege between Plaintiff and Attorney Giovaniello and/or were otherwise clearly irrelevant and improper. In illustration, defense counsel attempted to inquire as to Plaintiff's law school attendance *after* Plaintiff left Quinnipiac University, which is wholly irrelevant to Plaintiff's claims of per se defamation, premised upon events occurring prior to May 25, 2000. Plaintiff answered all questions to the best of Plaintiff's ability, sometimes two and three times.

In the course of Plaintiff's deposition, Plaintiff testified truthfully that Plaintiff had appeared in Cogan's offices on May 25, 2000 and that, on that date, Cogan directed his secretary, Mrs. Judith Larson, to provide Plaintiff with several copies of a Good Standing Letter and a stamped, pre-addressed envelope to Dean Sullivan, with the understanding that Plaintiff would hand-deliver it. Plaintiff made multiple offers of proof, including (1) cellular telephone records documenting that Plaintiff spoke to Cogan just before the meeting to report that Plaintiff was delayed in traffic and would be late; (2) the computer archive to which Defendant testified to on February 7, 2003; (3) a date-stamped copy of the letter and envelope, which, Plaintiff testified, was part of Plaintiff's file at the University of Minnesota; and (4) copies of the letter and envelope retained by Plaintiff.

Plaintiff further testified truthfully that she did not currently possess the copies of the May 25, 2000 Cogan letter and envelope because they were stored at Plaintiff's house in Minnesota. Plaintiff stated that she would produce them to Defendant at a future time [3], but that, in view of Defendant's admissions, deposition testimony, and the Quinnipiac

---

[3] As noted in Plaintiff's deposition, Plaintiff's Minnesota house was undergoing extensive structural renovation, including plumbing and roof replacement, rendering the house uninhabitable. In approximately late 2002, new flooring and carpeting was installed, necessitating temporary storage of Plaintiff's furniture and personal effects and papers, which were boxed by the general contractor hired by Plaintiff and the co-owner of the property. Plaintiff, then in residence in the tri-state, diligently attempted to locate the Cogan documents and instructed both the co-owner of the property and the contractor to search for them. Both men did so, unsuccessfully, to date, and, as an offer of proof of Plaintiff's statements herein, Plaintiff can and will produce affidavits by Kevin Burns, the co-owner of the property, and Paul Wynes, the general contractor, attesting to Plaintiff's prompt and good-faith attempts to locate these and other pertinent paper records.

4

archive, they were not relevant or probative because other, better, evidence, including Cogan's own live testimony, which either party could compel at trial, existed.

In early September 2003, Magistrate Donna Martinez issued and filed an order which, by Defendant's account, authorizes Defendant to renew his unfounded motion for discovery sanctions against Plaintiff. On September 29, 2003, Plaintiff perfected appeal of the Martinez order, citing bias, abuse of discretion and undue prejudice to Plaintiff, by delivering to the United States Court of Appeals for the 2nd Circuit a Notice of Appeal, which the appellate court transmitted to the district court for further processing and designation of the record.

Defendant has attempted to claim, in motion papers filed under penalty of Rule 11, that appellate jurisdiction incepted upon receipt of Plaintiff's appeal of the Martinez order by the district court on October 1, 2003. However, both the district court and the appellate court have acknowledged that, pursuant to the Federal Rules of Civil Appellate Procedure, the appeal operates to divest the district court of jurisdiction with regard to matters raised on appeal, including the issue of Defendant's claimed entitlement to discovery sanctions against Plaintiff; and that, pursuant to the Federal Rules of Appellate Procedure, jurisdiction was transferred from the district court and was vested in the appeals court on September 29, 2003, the day the Notice of Appeal was delivered to the appellate court in New York City, **not** the date it was received from the appellate court by the district court.

The appeal is active and pending as Case No. 03-9146, by the certification of the United States Court of Appeals for the Second Circuit on December 19, 2003. There is no dismissal or remand that is of record as of the date of Defendant's instant Motion for Sanctions, filed December 24, 2003.

## ARGUMENT
### I. DEFENDANT'S MOTION IS UNAUTHORIZED UNDER THE FEDERAL RULES OF APPELLATE PROCEDURE, WHICH DIVEST THE DISTRICT COURT OF JURISDICTION WITH RESPECT TO MATTERS RAISED ON

## APPEAL, AS WELL AS FRIVOLOUS, PROCEDURALLY DEFICIENT, AND UNTIMELY

As a preliminary matter, Defendant's instant motion is clearly unauthorized under the terms of this court's December 22, 2002 scheduling order, which requires any and all motions for discovery sanctions by either party to be brought within 30 days of the alleged violation. Defendant's contention that he is authorized to renew his motion pursuant to the September 2, 2003 order of Magistrate Donna Martinez is inaccurate and his reliance upon the Martinez order is misplaced because the order has been appealed; and, to date, no order by the Second Circuit has issued, upholding the Martinez order. Under the Federal Rules, a United States District Court is divested of jurisdiction with regard to issues which have been raised and which are pending on appeal.

On substantive grounds, Defendant's motion is clearly and wholly without merit and, arguably, rises to the level of a fraud upon the court. Specifically, Defendant seeks to punish Plaintiff for failing to produce documentary evidence that was and is not in Plaintiff's possession [4]; **but which is available to Defendant through other, less burdensome, means, including Defendant's own computer records, which Defendant appears to have destroyed to thwart discovery;** and which is clearly not even "best evidence" [5]; which documentary evidence Defendant himself has possessed and apparently destroyed. Defendant's instant claim for discovery sanctions against Plaintiff, even if authorized and meritorious, which it is not, should, consequentially, be barred under the equitable doctrines of *laches* and "unclean hands."

Furthermore, Defendant can establish no prejudice from the temporary non-availability of correspondence authored by Cogan, which establishes what Defendant has already

---

[4] Rule 26(a)(1)(B) requires Plaintiff to disclose "all documents, data compilations, and tangible things in (her) possession, custody and/or control." Since the discovery referenced by Defendant's instant motion has been established as not being in Plaintiff's possession, custody, and/or control, Plaintiff cannot be sanctioned for failing to produce it. Conversely, the Quinnipiac computer archive cited and withheld by Defendant without question qualifies as a "tangible thing" and as "data compilation" and is definitely relevant to the issues in dispute. Plaintiff further notes that Rule 26(a)(3) requires that Plaintiff produce 30 days before trial only those documents and exhibits upon which Plaintiff plans to rely at trial. Since a trial date has not been set, Plaintiff cannot have violated Rule 26(a)(3). Furthermore, since Plaintiff maintains that she does not require a copy of the May 25 Cogan correspondence at trial, Plaintiff cannot be obligated to produce it under Rule 26 (a)(3). Conversely, Defendant has stated that he intends to rely upon the Quinnipiac computer archive, and is therefore obligated to produce it, or equivalent corroborating evidence, to Plaintiff.

[5] Dean Neil Cogan, now Dean of Whittier School of Law, Costa Mesa, CA, has confirmed to Plaintiff in writing that Cogan will testify to relevant events, including the May 25, 2000 Good Standing Letter that he provided to Plaintiff in any proceeding authorized by this court, including trial.

6

admitted in deposition and in his defaulted requested Admissions: that Cogan was Defendant's superior, with actual and apparent authority to overrule Defendant, an associate dean, in policy matters, including issuance of Good Standing Letters over Defendant's objections. Indeed, Defendant *himself* admitted in deposition that (1) alleged financial indebtedness was not a bar to issuance of a Good Standing Letter and (2) that Defendant himself issued such a letter on August 3, 1999, at a time when Plaintiff owed some $3,000 in tuition that was late-billed due to a Quinnipiac University error.[6]

Defendant further admitted in deposition that Defendant knew that Dean Cogan overruled Defendant's contrived "financial indebtedness as a bar to Good Standing" analysis in January, 2000, and that Defendant could not produce any credible non-hearsay evidence that Dean Cogan ever modified that position. Clearly, it is **Defendant's** burden to establish that Dean Cogan changed a policy ruling in Plaintiff's favor that Dean Cogan published to Defendant and his staff through official channels in January 2000; Plaintiff need not prove that Dean Cogan did not change it. Equally clearly, and as Defendant himself admitted in deposition, Defendant's unilateral determination that Dean was "wrong" in interpreting and applying Quinnipiac institutional policy to Plaintiff's circumstances is insufficient to terminate Dean Cogan's actual and apparent authority as Dean of Quinnipiac School of Law. Consequently, what Dean Cogan said or wrote six months after publishing a statement of policy to Defendant and his staff, and other third parties, is not relevant to Defendant's ability to defend Plaintiff's suit.

Since Defendant cannot establish prejudice, his motion for sanctions—assuming, *arguendo*, that this court was not divested of jurisdiction by Plaintiff's appeal, which it was—must be denied as moot.

## II. PLAINTIFF IS ENTITLED TO SANCTIONS UNDER RULE 11 AND RULE 37 OF THE FEDERAL RULES OF CIVIL PROCEDURE ON THE BASIS THAT DEFENDANT HAS PERSISTENTLY AND EXTENSIVELY ENGAGED IN ABUSIVE MOTION PRACTICE THROUGHOUT THE COURSE OF THIS LITIGATION, WHICH OPERATES TO ACUTELY PREJUDICE PLAINTIFF

The stated purpose of Rule 11 and Rule 37 sanctions is to deter unfair, oppressive, and prejudicial pleading and litigation practice, including pleading and discovery abuses. In

---

[6] Plaintiff has asserted and is prepared to prove at trial that Defendant knew or should have known that Quinnipiac financial aid and bursar office records were error-prone and unreliable.

7

cases where pleading and discovery abuses are pervasive, a court may deem the injury to the opposing party to be so extensive and cumulative as to warrant judgment for the injured party.

In this case, Defendant has brought, by Plaintiff's count, not fewer than four motions, requesting sanctions and asserting that Defendant is entitled to protection from Plaintiff's discovery requests in a lawsuit that Defendant expressly stated to this court that Defendant could and would defend on the merits. None of Defendant's motions for sanctions have been granted. Defendant at this same time has obstructed Plaintiff's ability to prosecute her case in good faith by withholding required Rule 26 disclosures and, apparently, going so far as to destroy evidence that Defendant has admitted in deposition is relevant to the parties' dispute and which, by Defendant's account, was in existence as recently as February 7, 2003.

Defendant now attempts to bring a motion for sanctions premised upon Plaintiff's inability to produce to Defendant documentary evidence that Defendant has testified originated from his own computer server and which, by Defendant's account, he can readily access at any time and upon which he plans to rely for the purpose of bolstering his own case and credibility. Plaintiff communicated to Defendant on April 7, 2003 and on several occasions thereafter, prior to the filing of Defendant's instant motion, that the requested materials were not in Plaintiff's possession; and that Plaintiff would produce them to Defendant once they were in Plaintiff's possession. Plaintiff has also stated that she does not believe that she will require the materials referenced by Defendant's December 24 motion to prevail at trial. In any case, the court has not yet set a trial date; thus, no obligation to produce trial exhibits and evidence has been triggered by Rule 26(a)(3).

Defendant, for his part, has offered no justification for his failure to produce to Plaintiff documentary matter that is clearly discoverable and which Plaintiff has requested on numerous occasions; and which independently constitute required disclosures under Rule 26(a)(1)(B). Defendant has, additionally, brought two motions within the last 45 days, at a time when the district court was and is divested of authority to act by Plaintiff's September 29, 2003 appeal of the September 2, 2003 order Magistrate Donna Martinez, which is presently pending before the 2nd Circuit Court of Appeals.

Plaintiff has established prejudice as a direct consequence of the manner in which Defendant has chosen to conduct this litigation. Specifically, Plaintiff has incurred unnecessary costs, and has been subjected to unreasonable delays in presenting and prosecuting Plaintiff's case. The prejudice demonstrated by Plaintiff as a direct and proximate result of Defendant's pleading and discovery abuses warrant consideration of sanctions by this court. Accordingly, Plaintiff hereby renews Plaintiffs' motion for judgment against the Defendant, or, in the alternative, for a protective order.

## CONCLUSION

In consideration of the foregoing, the court should consider imposition of sanctions against the Defendant, including, but not limited to, the discovery sanctions specified by Rule 37(b) of the Federal Rules of Civil Procedure; and, on the basis that the court has been divested of jurisdiction by Plaintiff's appeal, the court should dismiss Defendant's instant motion for discovery sanctions against Plaintiff as unauthorized and moot.

DATE: 12-30-03          BY: _____
                            Barbara R. Burns

## CERTIFICATION OF MAILING

I hereby certify that on December 30, 2003, I placed in an envelope postage prepaid and addressed to the parties named below Plaintiff's Objection and Memorandum in Opposition and Motion for Sanctions, and that the same were by me deposited in a U.S. Postal Box at River Edge, Bergen County, New Jersey.

PARTIES SERVED:

Kevin Rowe                         Matthew Conway
Clerk – U.S. District Court        Conway and Stoughton
450 Main Street                    201 Ann Street
Hartford, CT 06103                 Hartford, CT 06103

DATED: 12-30-03          BY: _____
                            Renee A. DeFina

9

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

Barbara R. Burns,

       Plaintiff                         CIVIL ACTION

v.

David S. King,

       Defendant                     CASE NO. 302CV00897 (RNC)

---

**PLAINTIFF'S SECOND SET OF INTERROGATORIES TO DEFENDANT**

1. State with specificity the names, addresses, telephone numbers and job titles of all persons who have knowledge of institutional information technology accessed or utilized by the Defendant and/or his employer, Quinnipiac University, including, but not limited to the Director of Information Systems.

2. State with specificity the job duties, responsibilities, authorities, and reporting structure with regard to the Quinnipiac University Department of Information Technology, and/or the department responsible for information technology and computer services, in existence at the University.

3. State with specificity the name and location of the computer server(s) used to store email and word-processed correspondence created and received within the ordinary course of business at the University.

4. State with specificity and identify the names and contact information for the persons responsible for managing and maintaining the computer server(s) referenced in Interrogatory #3, above, as well as creating data backups and recovering data from backup archives. (For purposes of these interrogatories, "backup" is defined as a copy or copies of computer data files on magnetic tape, optical disk, or other computer-readable media for archival purposes, including recovery and replacement of those files in the event of their deletion or the mechanical failure or the destruction of the computer equipment or storage media housing the original computer data files).

5. State with specificity what type of archives are maintained with regard to institutional records and correspondence created by University employees within the ordinary course of business, including but not limited to data backup media used, backup time schedules, including variations for weeks/months, and data backup storage policies, as well as specific locations used to store current and archival data backups; and an inventory of the dates of data backups stored in these locations.

6. State with specificity the institutional policies in effect with regard to records retention and destruction, including, but not limited to, those related to computer data backup media.

7. State with specificity what records and/or correspondence by and between the Defendant and third parties, inside or outside the University, have been destroyed subsequent to the commencement of this lawsuit.

8. State with specificity and identify any archived records and/or correspondence to which Defendant objects to production on the basis of attorney client privilege and/or as a revelation of attorney work product.

DATED:                                                          BY:

                                                                Barbara R. Burns