FILED UNITED STATES DISTRICT COURT

2004 JUN 25     DISTRICT OF CONNECTICUT

U.S. DISTRICT COURT
HARTFORD, CT.

FILED

2004 JUN 25  A 11: 32

U.S. DISTRICT COURT
HARTFORD, CT.

Barbara R. Burns,

      Plaintiff                      CIVIL ACTION

v.

David S. King,

      Defendant                Case No. 3-02-CV897 (RNC)

## PLAINTIFF'S MOTION FOR STAY OF MAY 24, 2004 ORDER OF UNITED STATES DISTRICT COURT JUDGE ROBERT N. CHATIGNY AND FOR LEAVE TO TAKE THE DEPOSITION OF NEIL H. COGAN; AND PLAINTIFF'S PRELIMINARY MEMORANDUM IN OPPOSITION TO GRANT OF SUMMARY JUDGMENT TO DEFENDANT

In accordance with the March 31, 2004 order of United States District Court Judge Robert N. Chatigny, Plaintiff Barbara R. Burns hereby moves the court for stay of this court's May 24, 2004 order and for leave to take the deposition of former Quinnipiac University Law School Dean Neil H. Cogan. Pending this court's ruling on Plaintiff's Motion for Leave to Take the Deposition of Neil H. Cogan and in accordance with the May 24, 2003 Order of United States District Court Judge Robert N. Chatigny, Plaintiff submits Plaintiff's Preliminary Memorandum in Opposition to Defendant's Motion for Summary Judgment, Plaintiff's Counter-Affidavit; and Plaintiff's Preliminary Local Rule 56(c) 2 Statement. This motion is based upon the file, court record, and proceedings, including the filed deposition transcripts of Barbara R. Burns and David S. King.

Plaintiff is further constrained to request an extension of time of one week to obtain a copy of Document #57 from the court and to file a final Rule 56 (c) 2 Statement on the basis that Plaintiff was not served with Document #57 by Defendant. Affidavit of Renee

1

A. DeFina, Exhibit A. [1] It is duly noted that, during the week of June 7, 2004, Plaintiff did request that defense counsel remedy this deficiency of service by faxing or emailing a copy of Document #57 to Plaintiff. It is further duly noted that defense counsel's office responded that this would not be a problem, provided that defense counsel authorized the transmission. To date, defense counsel has not done so, although counsel is aware that Plaintiff requires Document #57 to comply with this court's May 24, 2004 order. Affidavit of Barbara R. Burns, Exhibit B. [2]

### CHOICE OF LAW

In an action for defamation by multi-state publication, the substantive law of Plaintiff's domicile governs. The United States District Court for the District of Connecticut, sitting in diversity, is thus bound by the substantive law of the District of Minnesota and the Eighth Federal Circuit. Procedural issues are governed by the law and Rules of the forum state, Connecticut.

### OPERATIVE FACTS AND PROCEDURAL HISTORY

Plaintiff filed this suit, through counsel, in the United States District Court for the District of Connecticut on May 25, 2002. By the liberal standard afforded construction of pro se pleadings in both the Eighth and Second Circuits, Plaintiff asserted claims of defamation and related common-law tort and contract claims against the Defendant, and alleged diversity jurisdiction and amount-in-controversy in excess of $75,000. By order

---

[1] Plaintiff submits herewith as Exhibits C and D Plaintiff's Response to what Defendant has styled "Defendant's Rule 9 Statement of David S. King." Defense counsel, with whom Plaintiff conferred during the week of June 7, 2004, has represented that this is the same document referenced by the court as Local Rule 56 (c)(1) and is responsive to Plaintiff's inquiry. In the event that this is not the document that the court meant, Plaintiff requests a one-week extension to obtain the correct form and submit a conforming Rule 56 (c) 1 Statement.
[2] See Footnote 1.

filed March 31, 2004, this court upheld federal diversity jurisdiction and denied Defendant's Motion to Dismiss.

Pursuant to this court's discovery order, filed December 22, 2002, Plaintiff took the deposition of the Defendant, David S. King, on February 7, 2003. At deposition, Defendant admitted, *inter alia*, that (1) Defendant was not and never had been at any relevant time the Dean of Quinnipiac University; (2) the Dean, Neil H. Cogan, was the sole policy-making official within Quinnipiac University School of Law at all relevant times; Defendant, an associate dean, further testified that "I work for the Dean." [3]; (3) the Dean, Neil H. Cogan, had sole and final authority to devise, formulate, and disseminate Law School policy and to review, and overrule any policy-making decision made by the Defendant, an associate dean, or any other associate dean [4]; (4) in January 2001 and subsequently, the Dean, Neil H. Cogan, formally reviewed and rejected Defendant's November, 1999 determination that "good standing" encompassed "financial good standing"; and held that, in fact, "good standing" for Quinnipiac law students was premised only upon academic, enrollment, and attendance-based good standing requirements, as set forth by the Quinnipiac Student Handbook distributed to, and acknowledged by, Plaintiff and others in Plaintiff's class in January 2000 as a condition precedent to matriculation at Quinnipiac University School of Law [5]; (5) the Quinnipiac Student Handbook did not cite, condition, or even mention financial factors as a determinant of Good Standing status [6]; (6) Defendant himself issued two letters of Good Standing to Plaintiff in April 1999 and August 1999 at times when Plaintiff had a balance

---

[3] King Deposition, February 7, 2003, filed in D.C. Case No. 03-02-CV 897, *Burns v. King*.
[4] Id.
[5] Id
[6] Id

with the University; and (7) Defendant was not involved with the billing and accounting departments within the University and had no expertise in this area.

For texture [7], Plaintiff calls the court's attention to Defendant's statements at deposition, wherein Defendant admitted under oath that Defendant had thwarted the stated remedial purpose of the Family Educational Rights and Privacy Act (FERPA) by unlawfully withholding disputed educational records for more than two **years**, following a written request by Plaintiff in mid-2000 at a time when Plaintiff was domiciled more than 1500 miles from the Quinnipiac campus in Hamden, CT. Defendant also acknowledged that Defendant was very familiar with the 45-day requirement imposed by FERPA. [8]

Defendant also admitted in deposition that relevant evidentiary matter discoverable by Plaintiff, including, but not limited to relevant correspondence and memoranda created by Defendant and Dean Cogan, upon which Defendant stated he relied [9] was archived on the Quinnipiac University computer. Defendant did not produce these or any other computer records to Plaintiff, notwithstanding that Plaintiff's Interrogatories expressly called for production of computer records. Defendant also did not disclose these records in his Initial Disclosures or subsequently.

The next day, February 8, 2003, Plaintiff duly and appropriately demanded production of the hard drive and relevant computer archives specified by Defendant. Defendant failed to timely object, or, alternatively, to produce the computer records that Defendant testified on February 7, 2003 were in existence and relevant to the legal dispute at hand.

---

[7] In *Doe v. Gonzaga University*, the United States Supreme Court held that a private plaintiff lacked standing to assert a FERPA claim; at the same time, the Court upheld the student-plaintiff's claims of defamation, invasion of privacy, and breach of the educational contract.
[8] Id
[9] Id

4

On or about April 1, 2003, defense counsel communicated to Plaintiff that Defendant's direct-report, Phyllis Andreas, a secretary with no Information Technology credentials or expertise, had unilaterally determined that—notwithstanding Defendant's sworn testimony and Andreas' lack of access to Cogan's archived records, maintained by Mrs. Judith Larson—the records demanded by Plaintiff did not exist. Plaintiff promptly challenged Andreas' uncorroborated and convenient testimony, and moved to compel production of the computer archive, or, alternatively, a statement by a qualified IT profession detailing the time and method of destruction of the archived data. On September 2, 2003, U.S. Magistrate Martinez denied Plaintiff's motion to compel, and Plaintiff appealed. [10]

At approximately this same time, Plaintiff entered into communications with former Quinnipiac Dean Neil H. Cogan, presently serving as Dean, Whittier School of Law, Costa Mesa, CA. Dean Cogan promptly acknowledged the relevance of his testimony in this matter. Dean Cogan also evidenced that, if not formally represented by defense counsel, there was, at least, regular and ongoing communication between defense counsel and Dean Cogan.

In approximately May, 2003, Dean Cogan wrote to Plaintiff that Dean Cogan would cooperate with any discovery order of this court, and that, if deposition was authorized by this court, he would testify truthfully as to relevant events at his offices in Costa Mesa, CA. Exhibit 1 to Affidavit of Barbara R. Burns, Exhibit B. To date, Plaintiff's account of

---

[10] Plaintiff's interlocutory appeal of the September 2, 2003 order of Magistrate Donna Martinez was filed on September 30, 2003 and transferred jurisdiction to the U.S. Court of Appeals for the Second Circuit. To Plaintiff's knowledge, the circuit court has, to date, not dismissed or remanded. Although presumptively without jurisdiction, the March 31, 2004 order of U.S. District Court Judge Robert N. Chatigny nevertheless appears to overrule the Martinez order to the extent that it authorizes Plaintiff to move the court for leave to conduct additional discovery, including, presumably, a motion renewing Plaintiff's motion to compel production of the hard drive and other archived computer records. Plaintiff so renews Plaintiff's Motion to Compel without waiver of Plaintiff's interlocutory appeal.

the January 4, 2000 and May 25, 2000 meetings with Plaintiff and Cogan remain uncontroverted and uncontrovertible by any person other than Cogan, the only other person present and the only University official with policy-making power and authority.

As noted *supra*, Dean Cogan has stated that he will testify truthfully as to relevant events. It is therefore Plaintiff's expectation that, *inter alia*, Dean Cogan will testify, in deposition and/or at trial, that (1) during Dean Cogan's tenure at Quinnipiac University, "good standing" certification for transfer credit purposes was not contingent upon financial indebtedness; (2) that Dean Cogan overruled such an unauthorized determination by Defendant at least twice between the dates of November 1999 and May 2000; (3) that Dean Cogan pledged that Quinnipiac University would assist Plaintiff in her transfer application process, if transfer was what Plaintiff wanted; (4) that Dean Cogan confirmed to Plaintiff in January 2000 that Plaintiff had advanced to second-year (2L) status; and (5) that Dean Cogan's assistant, Mrs. Judith Larson, gave a Good Standing certification, with pre-addressed envelope, to Plaintiff on May 25, 2000, with the understanding that Plaintiff would deliver it to Dean Thomas Sullivan, Dean, University of Minnesota Law School. Affidavit of Barbara Burns, Exhibit B.

In light of the pendancy of a Motion to Dismiss for want of original jurisdiction that this court did not decide until the spring of 2004, in addition to an interlocutory appeal premised upon discovery issues, and Plaintiff's reasonably expectation that the necessity of a Cogan deposition would be obviated by Defendant's production of the Quinnipiac computer archive, Plaintiff understandably was reluctant to incur the additional, substantial expense of a Cogan deposition in California pending an orderly disposition of underlying discovery and jurisdictional issues. Plaintiff is further constrained to note that,

throughout this period, Plaintiff's elderly father was seriously ill and, in fact, dying in a central New Jersey hospital. Affidavit of Barbara R. Burns, Exhibit B.

On March 31, 2004, this court upheld diversity jurisdiction and denied Defendant's Motion to Dismiss. On May 24, 2004, this court issued an order, formally declaring an "Issue to Be Addressed" the Good Standing issue, determination of which is contingent solely upon Dean Cogan's testimony with respect to the differing factual accounts offered by Plaintiff and Defendant [11]

This renewed Motion to Compel and For Leave to Take the Deposition of Neil H. Cogan and Memorandum in Opposition to Summary Judgment follows.

## REQUEST FOR ORAL ARGUMENT

Plaintiff requests 15 minutes for oral argument and 10 minutes for rebuttal.

---

[11] Plaintiff has consistently claimed that, by the determination of Dean Cogan, a higher-ranking official and the sole policy-making official throughout Plaintiff's enrollment at Quinnipiac, Plaintiff was in "good standing" and, further, that Cogan overruled Defendant's unilateral and unauthorized determination to the contrary, not once, but twice, on January 4, 2000 and May 25, 2000. Plaintiff has proffered a Good Standing Letter issued by Dean Cogan, formally overruling Defendant; in addition to uncontroverted testimony, accompanied by an offer of proof consisting of records created in the ordinary course of business and preserved, by Defendant's own admission, on the Quinnipiac computer server. Defendant has attempted to argue, without offer of proof, that Dean Cogan changed the "good standing" policy that he communicated to Defendant by issuance of the Good Standing Letters to Plaintiff. At deposition, Defendant initially proffered archived Quinnipiac correspondence as proof of Cogan's doctrinal shift, later withdrawing it by stating, through Andreas, that the records did not exist. **Defendant has never, before or since, brought forth credible evidence, or any evidence, that Cogan changed the policy he articulated in January 2000 at the time he overruled Defendant's financial good-standing rationale, leaving a genuine issue of fact upon which a reasonable minds could differ, based upon the perceived credibility and demeanor of Defendant, Plaintiff, and Cogan at trial.** Plaintiff further notes that, in a defamation, action, truth is an affirmative defense. Thus, the falsity of Defendant's statements arguably is presumed, and the burden is on *Defendant* to prove truth, which is an affirmative defense, and not upon Plaintiff to prove falsity. To date, Defendant has failed to bring forth credible evidence that overcomes that presumption, mandating denial of Defendant's summary judgment motion.

## ARGUMENT

**I.    JUSTICE AND CONSIDERATIONS OF JUDICIAL EFFICIENCY AND ECONOMY REQUIRE THAT THE COURT DEFER HEARING OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PENDING THE AUTHORIZED DEPOSITION OF DEAN NEIL H. COGAN WITHIN 30 DAYS OF THIS COURT'S AUTHORIZING ORDER**

*Prompt Resolution of Key Disputed Factual Issues by Cogan Deposition*

Dean Cogan has stated that, in the interest of resolving certain key factual issues, he will testify in a deposition and that he will comply with any and all discovery requests authorized by this court, including, but not limited to production of records pertinent to this litigation. Affidavit of Barbara Burns, Exhibit B. Defendant, whose counsel also appears to represent, or, at least, have access to, Dean Cogan, cannot establish prejudice from a 30-day postponement of Defendant's summary judgment motion to accommodate the potentially dispositive testimony of Dean Cogan. Indeed, if Defendant is to be believed, Dean Cogan personally authorized Defendant's defamatory communication to Dean Sullivan and Dean Cogan's testimony will decide the good standing issue in controversy in Defendant's favor.

*Standard for Grant of Motion for Leave to Conduct Delayed Discovery*

Under similar circumstances, where parties have established good cause and no prejudice to the opposing party as a consequence of delayed discovery the Eighth Circuit has reversed a grant of summary judgment, pending

completion of discovery, on the basis that "summary judgment is premature."
See, e.g., Palmer v. Tracor, 856 F 2d 1131 (8th Circuit, 1988)(stating that
party's wish to avoid unnecessary discovery expense, pending a motion to
dismiss, was reasonable, and that, in these circumstances, grant of summary
judgment, pending discovery, was "premature"). See, also, *Kasson*, *infra*,
stating a "trial court has a duty to afford reasonable accommodation to a pro
se party when there is no prejudice to the opposing party" and citing *Rice v.
Perl*, 320 N.W. 407, 412 (Minn, 1982), holding that "discovery continuance
should be liberally granted to diligent parties proceeding in good faith."

In this case, Plaintiff had no reasonable expectation that this court would
entertain a motion for summary judgment filed more than one year ago by
Defendant, given that the record conclusively establishes numerous disputed
facts, several of which are cited by this court's May 24, 2004 order. Plaintiff
further reasonably believed that, given this court's March 31, 2004 order,
denying Defendant's motion to dismiss, both parties would be afforded the
opportunity to compel Dean Cogan's testimony at trial with no attendant
deposition costs and that the Quinnipiac computer archive, to which
Defendant testified at deposition on February 7, 2003 and which is
discoverable by Plaintiff, would obviate the necessity of an interim Cogan
deposition.

In establishing good cause for the delay of the Cogan deposition, Plaintiff
has established that the Cogan deposition will be expensive and time-

consuming for Plaintiff [12]. Conversely, a Cogan deposition will not prejudice the Defendant, who is represented by the same attorney as is Cogan and who, presumably, has had unlimited access to Cogan throughout this litigation. Plaintiff has pledged that she will complete and file the Cogan deposition transcript within 30 days of this court's authorizing order.

*Significant and Undisputed Probative Value of Cogan Deposition*

As noted, *supra*, Dean Cogan has agreed to give testimony in his offices at Whittier Law School in Costa Mesa, CA, and to testify truthfully as to key disputed issues of fact, including policy determinations and interpretations. [13]Plaintiff asserts and Defendant himself has admitted in deposition that only Dean Cogan can authoritatively comment upon key disputed issues of institutional policy and the substance of meetings and discussions with Plaintiff between the dates of November 30, 1999 and May 25, 2000.

Based upon the filed deposition transcripts of both Plaintiff and Defendant, the court should conclude that, at the very least, the good standing issue, a major and, to date, unresolved factual dispute between the parties, could be summarily resolved by the filing of the Cogan deposition transcript and, likely, will result in a Motion for Summary Judgment by Plaintiff. Plaintiff's request for a 30-day postponement of hearing of any motion for summary judgment, pending the taking of the deposition of Neil H. Cogan, is thus favored by the interests of justice and fairness espoused and upheld by this

---

[12] Plaintiff anticipates that it will take a full day to depose the witness, requiring a round-trip airplane ticket from Minnesota to California, and at least two nights at a hotel, with attendant expenses for car rental, meals, and the court-reporting fee and that Plaintiff's total costs will be upwards of $1000.
[13] Plaintiff expects that the court will declare Cogan a party witness.

court throughout this litigation, as well as considerations of judicial economy and efficiency.

In consideration of the foregoing, Plaintiff's Motion for Postponement of Defendant's Summary Judgment Motion should be granted.

II.  **THE COURT SHOULD DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BECAUSE DEFENDANT HAS NOT MET HIS BURDEN OF PROOF THAT THERE IS NO GENUINE ISSUE OF MATERIAL FACT FOR A JURY TO DECIDE AND THAT HE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW**

Summary judgment may be likened to a blunt instrument that should be used only in cases where it is **perfectly clear** that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Under the existing law of this Circuit, summary judgment must be denied in any and all circumstances where there is even one genuine issue of material fact that precludes a grant of summary judgment. See, e.g., American Casualty Co. v. Nordic Leasing, Inc., 42 F.3d, 725, 734 (2nd Circuit, 1994), stating that "genuine issue of material fact precludes summary judgment."

In considering and deciding a motion for summary judgment, a court may not undertake to determine credibility, but only whether there is an issue of fact to be tried. The court must view all pleadings, affidavits, deposition

transcripts, and other materials contained in the record in the light most favorable to the *non*-moving party, in this case, the Plaintiff.

By this exacting standard, summary judgment is clearly inappropriate, given the myriad of facts in dispute; the fact that Defendant's confirmed statements are defamatory per se; and the fact that, as a matter of law, affirmative defenses of truth and privilege are not available to Defendant, as set forth, *infra*.

A. THE COURT MUST DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BECAUSE THE RECORD ESTABLISHES THAT THERE ARE NUMEROUS GENUINE ISSUES OF MATERIAL FACT UPON WHICH REASONABLE MINDS COULD DIFFER AND WHICH ARE THE EXCLUSIVE PROVINCE OF A JURY, NOT A COURT, TO DECIDE, PRECLUDING GRANT OF SUMMARY JUDGMENT

*I. Factual Dispute as to Defendant's Actual and Apparent Authority*

Plaintiff has established, through Defendant's deposition, a genuine issue of material fact as to whether Defendant had the authority to devise, disseminate, and/or enforce institutional policies governing Good Standing status for transfer or other purposes, mandating denial of Defendant's Motion for Summary Judgment. See, e.g., American Casualty Co. v. Nordic Leasing, Inc. 42 F.3d,725, 734 (2nd Circuit, 1994).

In particular, Plaintiff has submitted evidence from which a reasonable juror could conclude that (1) Defendant, an associate dean, had no

authority to devise and/or interpret institutional policy; (2) Defendant's unauthorized policy determinations *vis a vis* Plaintiff were consistently and repeatedly overruled by Quinnipiac Dean, Neil H. Cogan, designated as the deciding official by Quinnipiac Provost John E. Bennett; (3) Dean Cogan never changed his stated position that good standing status for transfer purpose is not conditional upon financial factors; and never authorized revocation of Plaintiff's Good Standing status, conferred by Cogan on January 4, 2000 and May 25, 2000; (4) ABA law schools, generally, and, in particular, the Quinnipiac Handbook and other published official institutional policy do not recognize "financial good standing" as a concept; and (5) Defendant himself had no good-faith belief that "financial good standing" could or did divest Plaintiff of good standing status at any relevant time, based upon Defendant's sworn admissions that Defendant himself routinely issued Good Standing Certifications to Plaintiff and other students, without regard for financial indebtedness, alleged or otherwise.

*II. Factual Dispute as to Plaintiff's Good Standing Status*

Plaintiff has submitted credible, non-hearsay evidence, consisting of Defendant's deposition, and institutional records created in the ordinary course of business by Quinnipiac University personnel, including, but not limited to, Dean Neil H. Cogan, that Dean Cogan overruled Defendant's determination that Plaintiff had forfeited good standing due to financial indebtedness, alleged or otherwise. Affidavit of Barbara R. Burns, Exhibit B. Plaintiff has further submitted evidence, including,

but not limited, sworn declarations against interest by the Defendant himself, from which a reasonable juror could conclude that the Cogan determination of Good Standing "trumped" and superceded the King determination that Plaintiff was "not in good standing", mandating judgment for Plaintiff. Finally, Plaintiff has produced credible evidence consisting of transcripts and letters of recommendation by Quinnipiac faculty and other law professors, which conclusively establish that Plaintiff met all requirements set forth in the Quinnipiac Handbook for continuing eligibility for ABA Good Standing status, and, in fact, exceeded them by attaining academic honors, including letters of recommendation, supporting Plaintiff's transfer to a higher-ranked ABA law school. Affidavit of Barbara R. Burns, Exhibit B.

III.    *Factual Dispute as to Plaintiff's Alleged Financial Obligation*

As set forth in Plaintiff's Rule 56 (c )(2) Statement, Plaintiff has proffered credible, non-hearsay evidence, consisting of records created in the ordinary course of business, that would cause a reasonable juror to conclude, *inter alia*, that (1) Quinnipiac Financial Aid Office and Bursar Office records are not reliable; (2) Quinnipiac University errors created the false and misleading appearance of a delinquency, timely and validly disputed by Plaintiff, in writing, through "late billing" and misapplication or failure to process and apply financial aid monies for which Plaintiff timely applied and was eligible; (3) on or about November 16, 1999, Anne Traverso unilaterally forced a paper "delinquency" of $3000 by rejecting and returning, without Plaintiff's authorization [14], tender of some $6700 that, if applied,

---

[14] Traverso has testified, under oath, that Plaintiff did not "want the funds." Records maintained by the issuing bank, Firstar, conclusively contradict and discredit Traverso's testimony and establish that Plaintiff accepted the funds, endorsed the check, and presented it to U.S. Bank for payment on or about November 18, 1999. Other Firstar records establish that King falsely represented, or otherwise communicated, to

would have resulted in a $3700 **credit** balance as of January 4, 2000, the day Cogan overruled King's unilateral and unauthorized determination that Plaintiff was not in good standing; and (4) Plaintiff promptly paid, either in cash or in awarded Title IV funds, all legitimate Quinnipiac charges. In consideration of the foregoing, a reasonable juror could conclude that, even if financial factors were relevant to good standing, Plaintiff met any applicable financial obligations in good faith and with responsibility, barring Defendant's affirmative defense of truth on this ground as well as the independent ground set forth in Part I of this section.

IV.    *Factual Dispute as to May 25, 2000 Meeting Between Plaintiff and Cogan*

Plaintiff has produced and can produce credible evidence, consisting of cellular telephone and other business records, that Plaintiff and Cogan conferred several times on May 25, 2000 and that Plaintiff and Cogan met late that afternoon in Cogan's offices in The Dean's Suite at Quinnipiac University.

To date, pending Cogan's deposition, Plaintiff's testimony is both uncontroverted and uncontrovertible that Plaintiff and Cogan discussed Plaintiff's pending transfer application to the University of Minnesota Law School; that Plaintiff requested a Letter of Good Standing, to be delivered to Dean Thomas Sullivan, University of Minnesota Law School, from Cogan; that Cogan directed his assistant, Mrs. Judith Larson, to provide it; that Mrs. Larson handed in to Plaintiff in Cogan's presence, together with a stamped, typed envelope addressed to Dean Sullivan; and that Defendant was not present and has no first-hand knowledge of this meeting.

---

Firstar personnel in early 2000 that Plaintiff had not satisfied Title IV requirements for "satisfactory academic progress."

By Defendant's sworn deposition testimony, Mrs. Larson's issuance of the May 25, 2000 Good Standing Letter is independently verifiable by archived magnetic-tape computer records created in the ordinary course of business and under the exclusive control of Quinnipiac University. By Defendant's sworn deposition testimony, these archived computer records were in existence and available to Defendant to bolster his truth defense to Plaintiff's defamation claim as of February 7, 2003, some nine months after Plaintiff's suit was filed in May 2002 and three months after Defendant filed his Initial Disclosures.

Based upon the preponderance of the evidence, including the testimony of Mrs. Larson and Neil Cogan, a reasonable juror could and likely would infer that (1) Cogan's issuance of a Good Standing Letter addressed to Sullivan to Plaintiff operated to terminate Defendant's apparent authority to revoke Plaintiff's status the previous day, thus defeating Defendant's truth defense and warranting a judgment for Plaintiff; and (2) that Plaintiff was given the Good Standing Letter by Dean Cogan, as Plaintiff has consistently stated, and that Plaintiff did not obtain and disseminate it fraudulently, or under false pretenses, as Defendant implied in his May 24, 2000 fax communication to Sullivan. Additionally, whether Plaintiff did or did not acquire the May 25, 2000 Good Standing Letter from Cogan under the circumstances set forth by Plaintiff is an issue of fact, not an issue of law, and, in common with the good standing issue, is not properly resolved by a court on a motion for summary judgment.

## II. THE COURT SHOULD DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BECAUSE DEFENDANT HAS NO DEFENSE TO PLAINTIFF'S DEFAMATION CLAIM

Defendant has attempted to claim that Defendant's defamatory statements were limited to Defendant's May 24, 2000 fax communication to Dean Sullivan, which, in fact, is not true; that Defendant's gratuitous statement to Sullivan that Plaintiff "is no longer in good standing" as of May 24, 2000 was both true and, on its face, susceptible to multiple interpretations and that the doctrine of "substantial truth" set forth in *Hunter v. Hartman* [15] operates to defeat Plaintiff's defamation claim.

Plaintiff will address each issue in turn:

I.     *Defendant Could Not Have Possibly Held Any Reasonable or Good Faith Belief That Defendant's Published May 24, 2000 Statement that Plaintiff Was "No Longer In Good Standing" Was True*

At the time that Defendant published the May 24, 2000 statement that Plaintiff was "no longer in good standing", Defendant knew or should have known, that (1) Plaintiff had satisfied all attendance requirements and, in fact, had passed and earned transfer credit for all of her Spring, 2000 coursework at Quinnipiac; (2) had committed no misconduct; (3) had, or should have had, a credit balance with respect to her student account, assuming, *arguendo*, that financial factors impacted Good Standing status; and (4) that the Dean of the Law School had formally overruled at least two prior attempts by Defendant to withhold Good Standing status based upon financial indebtedness, actual or contrived.

---

[15] 545 N.W. 2d 252, 455 (Minn. App. 1996)

Defendant himself has testified under oath, in deposition, that Cogan's policy-making authority was plenary and binding upon Defendant and Defendant's employees, including Mary Ellen Durso, the Registrar. Defendant also acknowledged in deposition that Defendant was aware that Cogan had formally reviewed and rejected Defendant's "financial good standing" rationale in January 2000. Defendant has produced no credible evidence, or any evidence, that Cogan ever changed or retracted his position with regard to Plaintiff's Good Standing status.

Based upon these facts, a reasonable juror could not conclude that Defendant's truth defense is reasonable and/or that Defendant believed in good faith that his statement was true, or could be true, at the time he made it. Intentional deception regarding an important fact is always wrongful, and concealment, non-disclosure, and negligence may give rise to liability as well. A juror might also reasonably conclude that Defendant's failure to retract the statement for more than two years, compelling Plaintiff to sue him to obtain a clear and accurate record, is tantamount to re-publication to the extent that Plaintiff filed subsequent transfer or other applications requiring good standing certification.

*II. Defendant's Reliance Upon The Doctrine of Substantial Truth Is Misplaced Because Defendant's Statement was Defamatory Per Se; Was Not Susceptible to Multiple Interpretations or Any Favorable Interpretation; and Was Not Made In Good Faith*

When a private person plaintiff, as opposed to a public figure, sues in defamation, and the subject matter is private and not of pubic concern, the common law of defamation applies without constitutional modification. Dun and Bradstreet v. Greenmoss Builders. Under Minnesota law, in cases "where a defendant's statements,

if viewed as true, damage a plaintiff's professional or business reputation, they are defamatory per se." *Anderson v. Kammier*, 262 N.W. 2d, 366, 372 (Minn. 1977).

In this case, no reasonable juror, or, for that matter, no law school dean, would or could interpret a faxed communication asserting that a law student had misappropriated and misrepresented a Good Standing Letter and, by the account of the author, is "no longer in good standing" as having anything other than a negative meaning.

Even assuming, *arguendo*, that the doctrine of substantial truth was relevant, which is not the case, Plaintiff has proffered credible, non-hearsay evidence that there is no such concept as "financial good standing" with respect to law students at Quinnipiac University. Specifically, Plaintiff has established, by affidavit authenticating Good Standing Letters issued to Plaintiff by Dean Cogan and Defendant himself and by Defendant's own deposition testimony that (1) the Quinnipiac Handbook does not define, cite, or even mention the concept of "financial good standing" and refers only to academic good standing [16]; (2) Defendant routinely granted good standing letters to Plaintiff and other Quinnipiac students regardless of whether their student accounts contained a balance [17](3) Defendant's attempts in October and November 1999 to invoke the "financial good standing" policy that is the basis for his affirmative defense were repeatedly and consistently overruled by Dean Neil Cogan, the sole

---

[16] See, e.g., King Deposition, February 8, 2003, stating that Defendant could not cite and did not know of any official institutional policy, published or otherwise, that conditioned good standing for ABA transfer purpose upon financial indebtedness or lack thereof.
[17] King Deposition, admitting that Defendant granted a good standing letter to Plaintiff in April, 1999 and two good standing letters in August, 1999 at a time when Plaintiff's student account had a balance of more than $5000; and that, similarly, letters were given to other students under similar conditions, based upon highly subjective and nebulous factors.

policy-making official by Defendant's own sworn testimony [18]; (4) in January, 2000 and May 2000, Dean Cogan issued a Good Standing Letter to Plaintiff for the stated purpose of facilitating Plaintiff's Spring 2000 Transfer and Visiting Student applications [19]; (5) that Plaintiff met with Dean Cogan in his offices in the Dean's Suite at Quinnipiac University on May 25, 2000, at which time Dean Cogan provided Plaintiff with a Good Standing Letter, together with a pre-addressed envelope addressed to Dean Thomas Sullivan, University of Minnesota Law School.

Even if the concept of "financial good standing" did exist, the court must still consider context. In this case, persons familiar with the ABA concept of "good standing" in a transfer application context, such as the Admissions personnel to whom Defendant directed his communication, would—and in this case, did—interpret it to mean that Plaintiff had made unsatisfactory academic progress (which Defendant actually represented, directly or indirectly, to Firstar Bank) and/or committed misconduct having bearing upon the law student's honest and personal integrity. Defendant, an associate academic dean, must, or should, have known this.

In sum, Defendant's attempts to invoke "substantial truth" as a defense are inappropriate, in addition to disingenuous, because the statement in question is not subject to multiple meanings, and does not involve public figure-defamation or any other privilege that would mitigate Defendant's culpability.

---

[18] King Deposition, stating that the Dean was the sole policy-making official and that "I work for the Dean."
[19] See, e.g., Steumpages v. Parke, Davis, and Co., holding that privilege did not apply and defamation was actionable in a case where Plaintiff was promised a favorable reference.

Furthermore, there are no mitigating circumstances. In more than two years, Defendant has never even once attempted to correct the misunderstanding and misapprehension that he claims, in this litigation, to have occurred.

Finally, there are compelling equitable considerations arising from the relationship of Plaintiff's contractual relationship with Defendant and Cogan and from the obligations thereto that Cogan voluntarily undertook and upon which Plaintiff relied.[20]

## CONCLUSION

The court should grant Plaintiff's Motion for Leave to Take the Deposition of Neil Cogan. The court should also deny Defendant's Motion for Summary Judgment on ground that there are genuine issues of material fact and that the record contains evidence that could and likely would cause a reasonable juror to find for Plaintiff. The court should, additionally, consider the appropriateness of sanctions on the basis that Defendant's "substantial truth" defense is not applicable to a private person plaintiff suing in defamation, generally, and, since the statement is not susceptible to multiple meanings, to these facts, in particular; and is completely frivolous.

## PLAINTIFF'S MEMORANDUM OF LAW

Plaintiff herein opposes Defendant's Motion for Summary Judgment on the basis that Defendant cannot establish that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law, as set forth, *infra*:

## I. STANDARD FOR GRANT OF SUMMARY JUDGMENT

When a federal court reviews the sufficiency of a complaint under the standard set forth by *Conley v. Gibson*, 355 U.S.41, 45-46 (1957), a complaint

---

[20] See, e.g. Stuempages v. Parke, Davis and Co., 297 N.W. 2d, 252 (Minn. 1980)

"may not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." These principles of equity and fairness are applied even more strictly when the plaintiff proceeds pro se. See, e.g., *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *McPherson* v. *Coombe*, 174 N.W. 3d, 276, 280 (2nd Circuit, 1999).

*Treatment of Summary Judgment by 2nd and 8th Circuit Courts*

Historically, Eighth Circuit federal circuits, as well as Minnesota state appellate courts, have disfavored summary judgment. Summary judgment is *particularly* disfavored by Minnesota courts when good-faith, meritorious claims of a diligent pro se plaintiff are in play. See, e.g. Kasson State Bank v. Haugen, 410 N.W. 2d 392 (Minn App,1987), holding that pro se plaintiff "adequately pled fraudulent inducement and district court abused its discretion in refusing to grant requested continuance" by allowing reasonable accommodation to diligent pro se plaintiff. *Kasson*, 410 N.W. 2d, at 392.

Courts of this Circuit similarly have held that when a federal court reviews the sufficiency of a complaint, its task is necessarily a limited one. The issue is not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to "prove up" his claim. Indeed, it may well appear on the face of the pleadings that a recovery is very remote and unlikely, but this is not the test. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), citing *Conley v. Gibson,* supra.

*Concise Rule of Law – Summary Judgment*

Summary judgment is appropriate only in cases where there is no genuine issue of material fact upon which reasonable minds could differ, and where the moving party can establish that he is entitled to judgment as a matter of law.

*Analysis*

In this case, the record, including, but not limited to, the filed transcripts of the parties' depositions, contains credible and persuasive evidence that there are genuine factual issues that entitle Plaintiff to a jury trial.

Certain of these disputed factual issues have been acknowledged and cited by this court's May 24, 2004 order, and, to a significant degree, are directly concerned with the actions, policy statements, and records of former Quinnipiac Dean Neil H. Cogan, as set forth, *infra*.

Plaintiff has established in Section II of Plaintiff's Motion and Memorandum in Opposition that these factual issues include, but are not limited to the genuine issue of material fact as to whether there the Defendant had the authority to reject Dean Cogan's Good Standing certification with respect to Plaintiff and, subsequently, to impugn Plaintiff's good standing status and honesty to Dean Thomas Sullivan and others; and, if he did, whether Dean Cogan's formal rejection of Defendant's unofficial and unpublished "financial good standing" policy was sufficient to terminate Defendant's actual and apparent authority.

Plaintiff further notes that, even assuming *arguendo*, that Defendant was the Dean and the policy-making official and "good standing" certification was

conditional upon financial factors, which Defendant has admitted in deposition is not the case, there is no credible evidence that any financial or contractual default occurred and that Plaintiff's student account was in fact delinquent. [21]

 In sum, the above-described issues are classic, purely factual issues that are the exclusive province of a jury at trial, not a judge, deciding a motion for summary judgment. Plaintiff has a Seventh Amendment right to a civil jury in these circumstances. Defendant has not established sufficient evidence, i.e., that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law, to overcome that presumption.


## II.    DEFAMATION

 By the standard imposed by Minnesota law, to maintain an action for defamation, Plaintiff must aver and prove that Defendant published a statement to a party other than Plaintiff; that the statement was false; and that, as a result, Plaintiff's reputation was harmed. Stuempages v. Parke, Davis, and Co., 297 N.W. 2d 252 (Minn. 1980).

---

[21] Certifications by certain Quinnipiac personnel, including Defendant's direct report, Phyllis Andreas, have been demonstrated as biased and/or unreliable, i.e., the Quinnipiac Bursar admitted to "making a mistake" and "forgetting to bill" some $3000 in summer tuition in 1999. Anne Traverso, similarly, has mischaracterized Plaintiff's acceptance and negotiation of some $6700 in Stafford funds in late 1999, i.e., Traverso testified under oath that Plaintiff rejected the funds, whereas Plaintiff has made an offer of proof that Plaintiff in fact accepted the funds and cashed the Firstar Bank check in November 1999. Defendant's statements as to Plaintiff's financial status, even if relevant, which Dean Cogan determined was not the case, are not authoritative, given Defendant's admissions in deposition that he "knows nothing" about the Bursar's office, the Accounts Receivable Department, and/or Financial Aid. King Deposition, filed in Case No. 03-CV-897, *Burns v. King*.

When it is readily apparent from the face of the statement that it is injurious to Plaintiff's business or professional reputation, defamation is per se, and actual damages need not be proved. Hunter v. Hartman, 545 N.W. 2d 699, 707 (Minn App. 1996).

Where a private person plaintiff sues in defamation and the subject matter is also private, common law of defamation applies without constitutional modification. Dun and Bradstreet v. Greenmoss Builders, Inc., citation omitted.

At common law, the truth or falsity of the defamatory message uttered by the defendant is a matter of affirmative defense, i.e., if the statement is not false, the defendant has the burden to prove that it is true.

Minnesota recognizes the doctrine of compelled self-defamation. Lewis v. Equitable Life Assurance Society of the U.S., 389 N.W. 2d 876 (Minn. 1980). Handbook provisions, when accepted, create a binding unilateral contract. Id, at 881.

A defendant loses a qualified privilege if he acts out of malice; if he exceeds the scope of the privilege; and if he does not have a reasonable, honest belief that the statement is true. Id.

The issue of whether privileges exists is one of law, to be determined by a court. The issue of whether defendant acted with malice and thereby lost the privilege is a question of fact, to be determined by a jury. Id.

*Analysis*

Defendant's communications to Dean Thomas Sullivan and other persons that Plaintiff had forfeited "good standing" were reviewed and determined by the Dean of Quinnipiac School of Law, Neil Cogan, to be false. The statement on its face was

patently injurious to Plaintiff's business and professional reputation and was defamatory per se. Hunter v. Hartman, 545 N.W. 2d, 252 (Minn. App. 1996).

The basis for Defendant's affirmative "substantial truth" defense, i.e., that, by Defendant's unsupported account, Quinnipiac University applied a dual academic/financial good standing standard as a condition of continuing Good Standing status for law school transfer purposes was formally reviewed and overruled by the policy-making official, Neil Cogan on or about January 4, 2000; and is further not enumerated as a condition of good standing by the Quinnipiac Handbook, which creates a binding unilateral contract upon Plaintiff's signed acknowledgement and matriculation at Quinnipiac, which occurred on January 5, 1999.

Plaintiff is a private-person plaintiff and the subject matter of Plaintiff's defamation action is private. Defendant's statement is not susceptible to inference of multiple meanings within the meaning of the "substantial truth" doctrine. Constitutional modifications with respect to tort liability for defamation, including the substantial truth doctrine, are not available to Defendant based upon these facts.

Defendant's defamation of plaintiff was actuated by malice, exceeded the scope of any applicable qualified privilege, and was not supported by any reasonable, honest belief that Defendant's statements regarding alleged revocation of Plaintiff's good standing status were, or could possibly be, true. Furthermore, considering the totality of circumstances, including Defendant's educational and professional background, the totality of Defendant's actions, including, but not limited to, deliberate and intentional obstruction of a federal statute, namely FERPA, the congressionally-mandated remedial purpose of which was to ensure access and accuracy of student

records; and apparent destruction of evidence having significant probative value favoring Plaintiff, were particularly egregious and knowing. By the standard articulated by the Minnesota Supreme Court in *Lewis*, supra, the affirmative defense is not available to Defendant.

III.    **EQUITABLE CONSIDERATIONS**

Rule 37 of the Federal Rules of Civil Procedure authorizes sanctions, including dismissal of an action or entry of judgment in favor of the innocent party, when certain improper and prejudicial acts are committed by parties and counsel, the effect of which is to harass or oppress the opposing party and/or delay resolution of the action.

In this case, Defendant has appeared to improperly suppress, withhold, and, possibly, destroy institutional records and other evidence that Defendant himself has acknowledged was in existence at legally relevant times and has undisputed probative value.

Specifically, Defendant testified to the Quinnipiac computer archives upon which he said he relied at deposition on February 8, 2003. Defendant did not even mention the archive in his Initial Disclosures, which were required to be served, and were served, upon Plaintiff in November 2002. When Plaintiff, reasonably, demanded the archived record the next day, on February 8, 2003, Defendant—who had testified to their existence the day before—did not immediately respond. Approximately two months later, Defendant, through counsel, implausibly stated, through his personal secretary, Phyllis Andreas, that the archived records did not exist.

As a preliminary matter, the court should note that the timing of Defendant's revelations was quite curious. Additionally, Defendant, before or since, could not or would not state the circumstances of the destruction of this evidence, which could, in and of itself, conclusively prove that Plaintiff obtained the May 25, 2000 Good Standing Letter, intended for Dean Sullivan, from Dean Cogan; and that Defendant never obtained any formal reversal of Cogan's grant of good standing status to Plaintiff, as he has attempted to claim.

Throughout this litigation, Plaintiff has proceeded in good faith, upon reasonable inquiry, with respect to claims that this court has, to date, upheld and which have survived numerous attempts to Defendant to avoid the merits. Plaintiff has, further, consistently complied with Defendant's discovery requests to the best of her ability under difficult circumstances and at a considerable distance, even to the point of obtaining records and materials held by third parties.

Conversely, as noted *supra* and as Plaintiff has established by credible evidence, Defendant—after moving to set aside default on ground that Defendant could and would defend Plaintiff's suit on the merits—has repeatedly attempted for force a determination off the merits by filing numerous motions for dismissal and monetary sanctions against Plaintiff, none of which have been granted. Almost without exception, Defendant's attempts to thwart Plaintiff's and this court's quest for the truth have been premised upon technical, non-substantive arguments.

28

As just one illustration, after citing institutional records and confirming that he had access to, and dominion of, certain institutional records and would rely upon them, Defendant argued that he could not be required to produce them to Plaintiff because they were "Quinnipiac records" and, even though available to Defendant for his own purposes, Defendant was technically not required to produce them to Plaintiff. King Deposition, February 7, 2003; Defendant's Response to Plaintiff's Motion to Compel. Affidavit of Barbara R. Burns, Exhibit B.

Similarly, and as noted, Defendant has claimed that his actions were supported by a host of University personnel, including the President of the University and Dean Cogan, who, as noted, is in regular contact with defense counsel. At the same time, Defendant has failed to produce even a single sworn statement by Dean Cogan, the Quinnipiac University President, and/or the University Director of Information Technology. Rather, he has produced testimony of questionable value by persons with no policy-making authority and/or first-hand knowledge of relevant policy determinations by Dean Cogan, the only authoritative source, by Defendant's own transcripted account. Based upon the record, including deposition transcripts filed and available to the court, the court should properly conclude that there are a myriad of genuine issues of material fact, much of which centers upon Cogan, which precludes summary judgment.

Further, any balancing of interests or other equitable test clearly favors Plaintiff. It is Plaintiff who has diligently gathered and proffered relevant,

credible, non-hearsay evidence, consisting of records created in the ordinary course of business by Quinnipiac University personnel, including defendant, and others, including, but not limited to, Firstar Bank. In some cases, Defendant himself has authenticated certain documentary evidence in deposition and by his Initial Disclosures.

Defendant, by contrast, is relying almost exclusively upon his own uncorroborated testimony and that of persons dependant upon him and Quinnipiac University for their continued employment. In some cases, the evidence proffered by Defendant has been established as unreliable, e.g., the Quinnipiac Bursar's office late-billed some $3,000 of "overlooked" summer tuition that Plaintiff established was paid within days of the late billing. In other cases, Plaintiff has impeached with bias certain witness testimony offered by Defendant, e.g., Anne Traverso testified that Plaintiff "refused" $6700 in Stafford funds. In fact, as Firstar Bank records conclusively establish, Plaintiff applied for the funds, wanted them, obtained them, and negotiated them on or about November 18, 1999.

In consideration of the foregoing, the court should reject Defendant's affirmative defense of "substantial truth" and deny Defendant's motion for summary judgment.

DATED: June 12, 2004                    BY: *Barbara R. Burns*

                                        Barbara R. Burns

                                        *Barbara R. Burns*

## CERTIFICATION OF MAILING

FILED

Barbara Burns, upon oath, deposes and says that on June 12, 2004, I placed in an envelope, postage prepaid and addressed to the parties named below Plaintiff's Motion for Stay of May 24, 2004 Order and for Leave to Take the Deposition of Neil Cogan; and Plaintiff's Preliminary Memorandum in Opposition to Grant of Summary Judgment with Memorandum of Law; Plaintiff's Rule 56(c)(2) Statement; and Plaintiff's Counter-Affidavit and Exhibits; and that the same was by mailed via United States Express Mail with Guaranteed Delivery on or before June 14, 2004 at St. Paul, Ramsey County, Minnesota.

PARTIES SERVED:

Kevin F. Rowe
Clerk, U.S. District Court
Abraham Ribicoff Federal Building
450 Main Street
Hartford, CT 06103

Conway and Stoughton
201 Ann Street
Hartford, CT 06103

DATED: 6-12-04                    BY: _Barbara R Burns_

                                      Barbara R. Burns

TIANA WILSON
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2007