UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Barbara R. Burns | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | NO: 302CV 00897(RNC) |
| V. | : | |
| | : | |
| David S. King | : | July 6, 2004 |
| Defendant | : | |

## DEFENDANT'S OBJECTION TO THE PLAINTIFF'S FILINGS OF JUNE 15, 2004

Defendant David King herein objects to plaintiff's "Motion for Stay of May 24, 2004 Order of United States District Court Judge Robert N. Chatigny and for Leave to Take the Deposition of Neil H. Cogan; and Plaintiff's Preliminary Motion in Opposition to the Granting of Summary Judgment to Defendant" filed with the Court on or about June 15, 2004 ("Plaintiff's Memorandum in Opposition"). In order to best organize a response to the plaintiff's disorganized and largely incoherent thirty-page long filing, the defendant will break down the plaintiff's motion into the following Sections and Subsections.

Part One below represents the defendant's response to the following items contained within the plaintiff's filing of June 15, 2004, which can be characterized as being collateral to the plaintiff's present Memorandum in Opposition to the defendant's Motion for Summary Judgment: (1) Motion to Stay the Court's May 24, 2004 Order; (2) Motion for Leave to take the Deposition of former Quinnipiac University Law School Dean Neil H. Cogan; (3) Renewed Motion to Compel the Deposition of Neil Cogan; (4) Request for Extension of Time to File a Final Rule 56 (c) (2) Statement, and; (5) Renewed Motion to Compel Discovery.

Part Two below represents the defendant's response to the remainder of the plaintiff's filing, which she has entitled Plaintiff's Preliminary Memorandum in Opposition to the Defendant's Summary Judgment Motion.  In Section I of Part Two, the defendant responds to the plaintiff's attempt to establish the existence of various "factual disputes" in this case which preclude the granting of summary judgment.  In Section II of Part Two, the defendant explains why summary judgment is proper in this case basis on the doctrine of "Substantial Truth."

## PART ONE – DEFENDANT'S OBJECTIONS TO PLAINTIFF'S COLLATERAL FILINGS OF JUNE 15, 2004

### I.  Defendant's Objections to Plaintiff's Motion for Stay of the Court Order of May 24, 2004 and Plaintiff's Request for an Extension of Time to File a Final Rule 56 (c) (2) Statement

The defendant hereby objects to the plaintiff's Motion for Stay of the May 24, 2004 Order of the Court (Chatigny, J.).  The defendant objects on the grounds that the plaintiff has failed to provide a direct basis within the Federal Rules of Procedure or Local Rules for her present stay request.  Nor has she provided good cause for the requested stay.  In footnote 10 (Plaintiff's Memorandum in Opposition at 5), the plaintiff suggests that the Court was "presumptively without jurisdiction" in issuing its May 24, 2004, Order due to the plaintiff's interlocutory appeal.  The defendant notes that the plaintiff's latest appeal was actually dismissed[1] by the United States Court of Appeals for the Second Circuit on February 17, 2004.  Her requested stay is therefore without merit.

Additionally, the plaintiff has requested an Extension of Time to File a Final Rule 56(c)(2) Statement.  The plaintiff asserts that she is "constrained to request an extension of time…on the

---

[1] The appeal was dismissed because the plaintiff failed to pay the docketing fee or move for leave to proceed *in forma pauperis*.  In fact, the plaintiff has brought two separate appeals in the course of this matter.  In each instance, the plaintiff effectively aborted her appeal after precipitating a delay in the proceedings.

2

basis that Plaintiff was not served with Document #57[2] by Defendant."  The plaintiff further

alleges that "during the week of June 7, 2004, Plaintiff did request that defense counsel remedy

this deficiency of service by faxing or emailing a copy of Document #57 to Plaintiff...defense

counsel's office responded that this would not be a problem...To date, defense counsel has not done

so, although defense counsel is aware that Plaintiff requires Document #57 to comply with this

Court's May 24, 2004 order."  (Plaintiff's Memorandum in Opposition at 1-2).  The plaintiff's

assertion in this regard contains numerous misrepresentations and misstatements.

    First, per the attached certification, the defendant did in fact serve the plaintiff with a copy

of Document #57 on or about **May 19, 2003**, along with Motion for Summary Judgment that was

also properly served on the plaintiff.  (Affidavit of Sean Nourie, ¶ 3).  Second, the plaintiff's

reference to an interaction with defense counsel "during the week of June 7, 2004" is deceptive in

that it operates to conceal her apparent lack of diligence in responding to the Court Order.[3]  Third,

defense counsel did in fact fax a copy of Document #57 to the plaintiff, as promised, on June 11,

2004, the very same day that she requested it.[4]  (Affidavit of Sean Nourie, ¶ 6).  Thus, the

---

[2] The Court's Order of May 24, 2004, refers to Document #57 as a "Local Rule 56(c)1 Statement."  However, in May of 2003, when the defendant filed his Motion for Summary Judgment, the amendments to the Local Rules which created Local Rule 56 had yet to take effect.  Prior to the amendments, a party seeking summary judgment was required to file a Local Rule 9(c) Statement.  Thus, for the purpose of the Court's Order of May 24, 2004, the defendant's Local Rule 9(c)1 Statement appears to be the equivalent of the aforementioned Local Rule 56(c)1 statement.

[3] In fact, on Friday June 11, 2004, the plaintiff contacted the office of defense counsel in an attempt to obtain copies of certain documents which she stated were needed for her response to the Court order, which was due on the following Monday, June 14, 2004.  The plaintiff, who had apparently waited until the proverbial last minute to prepare her response, then expected counsel for the opposing party in this matter to set aside its other work in order to help remedy an emergency brought on by her own lack of diligence.  (Affidavit of Sean Nourie, ¶ 4)

[4] The Court need only look to the plaintiff's filing of June 15, 2004, to reveal the falsity of the plaintiff's assertion that defense counsel did not send Document #57 to plaintiff as promised.  Specifically, the fax transmission information contained at the top of the copy of the "Local Rule 9(c)(1) Statement" of David King **which the plaintiff herself provided to the Court** as appended to her Local Rule 56(c)(2) Statement of Barbara Burns, demonstrates unequivocally that the document was forwarded to the plaintiff by Conway & Stoughton, via fax number (860) 525-1191, at 16:10 on 06/11/2004.

plaintiff's requested extension of time is based upon a series of falsifications and misleading

statements.  As such, her request for and extension of time should be denied.

## II. Objections to Plaintiff's Motion for Leave to Take the Deposition of Former Quinnipiac University Law School Dean Neil H. Cogan, Plaintiff's Renewed Motion to Compel the Deposition of Dean Cogan, and Plaintiff's Motion to Compel Production of a Quinnipiac University Hard Drive and Other Archived Computer Records

In her present Memorandum in Opposition, the plaintiff attempts to revive a number of

discovery motions or issues which have been previously resolved by the Court in favor of the

defendant.  For instance, the plaintiff moves the Court for "Leave to Take the Deposition of

Former Quinnipiac University Law School Dean Neil H. Cogan."  On March 31, 2004, the Court

(Chatigny, J.) issued an Order (Doc. #63) granting the defendant's June 12, 2003 Motion for

Protective Order, wherein the defendant moved to prevent to deposition of Neil Cogan on the

grounds that the plaintiff had noticed the deposition of Neil Cogan beyond the discovery deadline

set forth by the Court (Martinez, J.) in its Court Order Regarding Case Management Plan dated

December 20, 2002.  The defendant notes that the plaintiff's present motion for leave to conduct

additional discovery has failed to comply with the Court Order of March 31, 2004, in that the

plaintiff has failed to state the position of opposing counsel, as is expressly required by that order.

The defendant objects to the granting of leave to the plaintiff to take the deposition of Neil

Cogan.  The plaintiff has yet to provide a good cause justification[5] for her failure to complete

discovery by the Court ordered deadline of March 31, 2003, nor has she provided an adequate[6]

---

[5] As is required by the Court Order Regarding Case Management Plan dated December 20, 2002 (Martinez, J.).

[6] The only such justification offered by the plaintiff is that the conducting of such a deposition would be "expensive and time consuming." (Plaintiff's Memorandum in Opposition at 9-10).  Presumably, given that Neil Cogan has resided in California since the inception of this lawsuit, his deposition would have been "expensive and time consuming" for the plaintiff regardless of when she decided to notice it.  As such, the rationale offered by the plaintiff simply does not operate to justify her failure to complete discovery by the Court ordered deadline.

4

good cause justification for the Court to grant her such permission nearly thirteen months beyond the discovery deadline.

The plaintiff's attempt to bootstrap her motion for leave to conduct the deposition of Neil Cogan on the issue of Quinnipiac University's archiving of records is equally misplaced, since the Court (Martinez, J.) has already denied the plaintiff's Motion to Compel such archived records in its September 2, 2003, Recommended Ruling on Plaintiff's Discovery Motions.[7] Despite the plaintiff's assertion to the contrary in Footnote 10 (page 5) of her brief, nothing in the aforementioned Court order of March 31, 2003, authorizes the plaintiff to renew her previously denied Motion to Compel archived computer records of Quinnipiac University.

The plaintiff's Motion for Leave to Conduct the Deposition of Neil Cogan should be denied because she has failed to offer good cause justification for her failure to complete discovery before the court ordered deadline. Further, she has failed to comply with the requirements set forth in the aforementioned Court order of March 31, 2004. Finally, her attempt to reassert the issue of archived computer records, whether in the context of the Neil Cogan deposition or via a renewed Motion to Compel, is barred under the doctrine of *stare decisis*.

---

[7] Approved and adopted in its entirety by the Court (Chatigny, J.) by Order dated September 29, 2003. As was shown above, the plaintiff's appeal of this order has been dismissed.

**PART TWO – DEFENDANT'S OBJECTION TO PLAINTIFF'S MEMORANDUM IN OPPOSITION**

The defendant herein replies to the plaintiff's "Preliminary Memorandum in Opposition." As a preliminary matter, the defendant notes that the plaintiff's latest motion, along with the Counter Affidavit and Local 56(c)2 Statement of Barbara Burns, are wrought with factual misrepresentations,[8] speculation and/or inadmissible hearsay,[9] distortions of the record before the court,[10] and misstatements of applicable law[11] which are simply too numerous for the defendant to deal with individually.

In addition, the plaintiff has attempted to interject within the present discourse numerous collateral issues which are simply not material to the present summary judgment motion. Included within this category are her discussions of qualified immunity, malice, compelled disclosure, damages applicable in cases involving per se defamation, allegations of wrongdoing on the part of the defendant during the discovery process, equity considerations, and alleged violations of FERPA on the part of the defendant. For the sake of clarity, the defendant notes that he has moved for summary judgment based upon the 'truth' defense, and will therefore only respond to the plaintiff on issues that have some bearing on the present summary judgment motion. As will be shown below, the plaintiff has failed to establish the existence of a genuine issue of material fact pertaining to the defendant's defense of truth.

---

[8] For example, on page 10 of the plaintiff's present memorandum, the plaintiff asserts that defense counsel represents Neil Cogan. This is a fabrication. See, "Defendant King's Objection to Plaintiff's Motion to Strike Defendant's Motion to Compel and for Rule 37 Sanctions" and accompanying Affidavit of Matthew Conway dated July 31, 2003.

[9] For example, on page 6 of the plaintiff's present memorandum, the plaintiff instructs us at to what Dean Cogan will say during his deposition.

[10] For example, in Footnote 14, on page 14 of the plaintiff's present memorandum, the plaintiff alleges that Ann Traverso "has testified, under oath Plaintiff did not want the funds." In fact, Ann Traverso has never testified in this matter, nor has she ever made the statement that the plaintiff alleges. See Affidavit of Ann Traverso dated June 2, 2003, submitted along with the defendant's June 15, 2003 Reply Brief.

[11] See "Plaintiff's Private-Person Thesis" below.

6

**Procedural History**

On May 19, 2003, Defendant King filed a Motion for Summary Judgment and Motion to Dismiss. On June 5, 2003, plaintiff filed "Plaintiff's Motion for Dismissal of Defendant's Summary Judgment and For Sanctions." Although the title suggests otherwise, the plaintiff's filing of June 5, 2003, was principally[12] comprised of a Memorandum in Opposition to the defendant's Motions for Summary Judgment and Dismissal. As such, the defendant, on June 19, 2004, filed "Defendant David King's Reply in Support of Motion for Summary Judgment." In turn, on or about June 27, 2003, the plaintiff filed her *Supplemental Memorandum* in Opposition to Defendant's Summary Judgment Styled as 'Reply Brief'." [emphasis added]. In response, the defendant filed "Defendant David King's Objection to Plaintiff's Supplemental Memorandum" on July 15, 2003. Now, nearly thirteen months after the defendant initially filed his motion for summary judgment, the plaintiff has filed a document which she inaccurately characterizes[13] as a "*Preliminary* Memorandum in Opposition to Grant[sic] of Summary Judgment to Defendant" [emphasis added]. The defendant now responds to this latest filing by the plaintiff, and urges the Court to review the defendant's previous summary judgment filings for a more complete discussion of the various matters addressed briefly below.

**Legal Standard for Summary Judgment**

A more complete synopsis of the legal standard applicable to summary judgment can be located within the defendant's Memorandum of Law in Support of Summary Judgment filed with

---

[12] The plaintiff dedicates nearly the entire motion challenging the substantive merits of the defendant's Motion for Summary Judgment, e.g. she challenges the defendant's assertions as to the doctrine of substantial truth, good standing, and attempts to assert the existence of numerous issues of material fact. Moreover, in her closing paragraph, the plaintiff advocates that "Defendant's Summary Judgment Motion must be denied."
[13] As was shown above, the plaintiff's current filing is actually her <u>third</u> memorandum in opposition to the defendant's Motion for Summary Judgment.

the Court on May 19, 2003.  For the purpose of this reply, the defendant notes that, pursuant to

Rule 56(c) of the Federal Rules of Civil Procedure, a court shall grant a motion for summary

judgment if it determines that "there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To survive the motion

for summary judgment, the nonmovant must do more than present evidence that is merely

colorable, conclusory, or speculative, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50

(1986), and furthermore must show more than "some metaphysical doubt as to the material facts."

**I.  Defendant's Objection to Plaintiff's Assertion as to the Existence of Four Separate Factual Disputes which Preclude Summary Judgment.**

The plaintiff lists four "factual disputes" which she asserts preclude the granting of

summary judgment in this matter.  The defendant will address each of these individually below.

**A.  There Exists No Genuine Issue of Material Fact as to the Defendant's Authority**

The plaintiff seeks to establish the existence of a relevant factual dispute in this matter

involving the defendant's authority under Dean Cogan.  However, the defendant has not alleged

that his authority was greater than that of Dean Cogan; rather, the defendant contends that his May,

24, 2000 statement that the plaintiff was "no longer in good standing" with the University was

reasonable to the extent that it was based upon the defendant's understanding that the plaintiff, at

the time that the statement was made, had an outstanding unpaid tuition balance with the

University.  Further, the defendant has offered evidence[14] in the form of correspondence from

Dean Cogan which establishes that Dean Cogan shared the defendant's perception that "good

---

[14] See discussion below.

standing" meant "good financial standing."  Thus, there exists no genuine issue of material fact

involving the issue of Dean King's authority at Quinnipiac University.

**B.  There Exists No Genuine Issue of Material Fact as to the Plaintiff's Academic Standing with Quinnipiac University**

The plaintiff asserts that she has provided evidence, such as letters of recommendation, that

her academic achievements placed her in good academic standing with the University.  However,

the defendant has never contended that his statement that the plaintiff was "no longer in good

standing" was based upon poor academic performance by the plaintiff.  Rather, this case involves

the issue of the defendant's statements relating to the defendant's financial good standing with

Quinnipiac University.  Thus, there exists no genuine issue of material fact involving the plaintiff's

academic performance at Quinnipiac University.

**C.  There Exists No Genuine Issue of Material Fact as to the Plaintiff's Alleged Financial Obligations**

The plaintiff further contends that there exists a factual dispute as to the plaintiff's financial

obligations at Quinnipiac University.  The plaintiff's assertions regarding her unpaid balance with

Quinnipiac University involve what she alleges was the mishandling of certain of her financial aid

by either the Quinnipiac University Financial Aid Office or Bursar's Office.  This issue has been

addressed at length by the defendant.[15]  Insofar as the present motion for summary judgment is

concerned, this dispute between the plaintiff and Quinnipiac University regarding her unpaid

balance is a red herring, in that it presumes that the Court is obliged to adjudicate the issue of the

plaintiff's unpaid balance with the school in order to resolve the present defamation action.  The

---

[15] The plaintiff alleges that Quinnipiac University cancelled her financial aid without her permission.  In fact, the plaintiff submitted multiple written requests that the aid be cancelled.  See Defendant's Motion for Summary Judgment and Dismissal, at 14-16.

defendant has not moved for summary judgment on the grounds that the plaintiff had an unpaid

balance with Quinnipiac University at the time his statement was made.  Rather, the defendant has

alleged that his statement that the plaintiff was "no longer in good standing" was either true or

substantially true when made based upon information provided to him by the Bursar's Office,

which the defendant could reasonably rely upon in making his statements (See Local Rule 9(c)1

Statement of David S. King dated 05/19/03, submitted along with the Defendant's Motion for

Summary Judgment).  Thus, the issue of the plaintiff's outstanding balance with Quinnipiac

University can not be properly characterized as amounting to a genuine issue of material fact

which precludes summary judgment in this matter.

**D.  There Exists no Genuine Issue of Material Fact as to a Meeting Between the Plaintiff and Dean Cogan on May 25, 2000**

The plaintiff's assertion that there exists a factual dispute as to a meeting between the

plaintiff and Dean Cogan on May 25, 2000, is similarly flawed.  The defendant has not moved for

summary judgment based on an assertion that the May 25, 2000, meeting between the plaintiff and

Dean Cogan did not take place.[16]  Even if such a meeting did take place, the plaintiff has failed to

offer evidence demonstrating that anything which took place at that meeting operated to make his

statements of May 24, 2000, not true or not substantially true.  As such, the plaintiff has failed to

show that there exists a genuine issue of material fact relating to the alleged May 25, 2000,

meeting between herself and Dean Cogan.

---

[16] In fact, the plaintiff has, in direct violation of a Court order compelling her to do so, failed to produce copies of a letter which she contends proves that such a meeting did take place.  See Defendant's Motion For Sanctions dated 12/24/04.

## II.  The Substantial Truth Defense

### A.  The Substantial Truth Doctrine

The sole material issue here is whether the defendant's statements of May 24, 2000 were either true or substantially true based upon the doctrine of Substantial Truth, which is followed by courts in both Connecticut and Minnesota. See <u>Goodrich v. Waterbury-Republican-American, Inc.</u>, 188 Conn. 107, 112-114 (1982), see also <u>Hunter v. Hartmann</u>, 545 N.W.2d 699, 707 (1996). Under the substantial truth test, "if any 'reasonable person' could find the statements to be 'supportable interpretations' of their subjects, the statements are incapable of carrying a defamatory meaning." See <u>Hunter</u>, 454 N.W.2d at 707.  This determination is a matter of law.  Id. The test does not involve an interpretation of whether the actual speaker of a statement based his comments on a reasonable interpretation, but rather entails a determination of whether any reasonable person could find the statements to be supportable interpretations of their subject.  This means that the plaintiff, in order to defeat the defense of truth, must show that no reasonable person could take good standing to mean good financial standing.

### B.  Analysis

The plaintiff has expended a substantial effort in her attempt to show that Dean Cogan was the ultimate authority at Quinnipiac University in regard to the interpretation and application of University policy, including, presumably, interpretation of University policy regarding good standing. One need only consider together the two letters issued by Dean Cogan on January 4, 2000 regarding Barbara Burns, in order to come to an unambiguous conclusion that Dean Cogan

himself took good standing to mean good financial standing.  The first of these letters was written

by Dean Cogan to Dean Sullivan on January 4, 2000.  It states, in relevant part:

> By this letter, I am certifying that Barbara Burns is a student in good standing and eligible
> to take up to 11 course credits at another law school for credit towards a degree a
> Quinnipiac College School of Law…Credit for courses attended at Quinnipiac College
> School of Law or any other school of law are **subject to a condition contained in a
> separate letter of this date**. (See Plaintiff's Opposition Memo at 3; see also Exhibit 9 from
> King Deposition)(emphasis added)

The "separate letter of this date," referred to above, also from Dean Cogan to Barbara

Burns copied to Dean King via courtesy copy (see Affidavit of David King ¶2), reads as follows:

> My Letter to you of the same date **regarding your status as a student in good standing is
> subject to the following condition**:  Quinnipiac College School of Law will not issue
> credit for any courses taken here or elsewhere **until there is a resolution of the issues
> relating to payment of tuition for past courses** . . .  (emphasis added)(See Affidavit of
> David King ¶2).

As this letter written to plaintiff Burns conclusively demonstrates, Dean Cogan himself

considered plaintiff's good standing with Quinnipiac to be conditional upon the resolution of her

unpaid tuition balance.  He therefore shared Defendant King's interpretation associating good

standing with good financial standing.  Thus, the defendant's statements that the plaintiff was "no

longer in good standing" due to her unpaid balance with Quinnipiac University was not only

reasonable, it was perfectly compatible with Dean Cogan's interpretation of good standing.  Here,

in order to pass the test for substantial truth, the defendant need only show that any reasonable

person could find the subject (i.e., the meaning of the term, good standing) subject to multiple

interpretations.  In demonstrating the his own superior at Quinnipiac University associated good

standing with the resolution of plaintiff's unpaid balance with the University, the defendant has far

exceeded his burden under the Substantial Truth test.  Thus, his statements were, as a matter of law, incapable of defamatory meaning.  Summary judgment is therefore proper.

## C.  Plaintiff's Private-Person Thesis

The plaintiff has offered an alternative these to buttress her assertion that summary judgment should not be granted in this case via the substantial truth doctrine.  Specifically, she asserts that "[p]laintiff is a private-person plaintiff and the subject matter of Plaintiff's defamation action is private.  Defendant's statement is not susceptible of multiple meanings within the meaning of the "substantial truth" doctrine.  Constitutional modifications with respect to tort liability for defamation, including the substantial truth doctrine, are not available to defendant based on these facts."  (Plaintiff's Memorandum in Opposition at 26).  As will be shown, the plaintiff's assertion that the substantial truth doctrine is not available in cases involving "private-persons" is based entirely upon faulty premises which the plaintiff draws from her misinterpretations (or misrepresentations) of controlling case law.

The plaintiff bases this legal conclusion on a grossly inaccurate interpretation of the holding of the United States Supreme Court in <u>Dun v. Bradstreet</u>, 472 U.S. 749 (1985).  Specifically, the plaintiff alleges that the <u>Dun</u> Court concluded that "when a private person plaintiff, as opposed to a public figure, sues in defamation, and the subject matter is private and not of public concern, the common law of defamation applies without constitutional modification."  (Memorandum in Opposition at 15, 28).  The actual holding of the Supreme Court was as follows:  "[w]e conclude that permitting recovery of presumed and punitive damages in defamation cases absent a showing of actual malice does not violate the First Amendment when the defamatory

statements do not involve matters of public concern." Simply put, nothing within the <u>Dun</u> holding can be said to even remotely support the plaintiff's interpretation of the case.

The state court cases which the plaintiff has relied upon are equally unsupportive of her assertion that common law defenses such as the truth defense are not available in cases involving private person defamation. To be sure, the <u>Hunter</u> holding instructs no such limitation, and the courts in at least two different Eighth Circuit cases used much broader and generic terminology in interpreting the holding of the appellate court in <u>Hunter</u>. See <u>McClure v. Ins. Co.</u>, No. 99-3482 (8th Cir. 1999) (in which the court summarizes the holding of <u>Hunter</u> as follows "A commentator who advocates one of several feasible interpretations of some event is not liable in defamation simply because other interpretations exist.") See also <u>Sports Net North v. Minnesota Twins Partnership</u>, No 99-3482 (8th Cir. 2003) (in which the court interprets the holding of <u>Hunter</u> to mean that no defamation cause of action exists where a defendant "advocates one of several feasible interpretations of some event"). Moreover, <u>Lewis v. Equitable Life Assurance Society of the United States</u>, 389 N.W.2d 876 (Minn. 1986), which the plaintiff herself cites to, involved an allegation of private person defamation. In that case, the Minnesota Supreme Court held that "[t]rue statements, however disparaging, are not actionable." Id at 888.

As has been shown, the plaintiff's assertion that common law defenses like the truth defense are unavailable to defendants in cases involving allegations of private person defamation is baseless. Thus, the plaintiff's conclusion that the defendant can not rely upon the doctrine of Substantial Truth is without merit.

**Conclusion**

The plaintiff has failed to establish that the various "factual disputes" set forth in her memorandum in opposition are genuine and material to the present summary judgment motion. Moreover, the plaintiff has failed to offer any actual evidence which contradicts the defendant's assertion that Dean Cogan's letters of January 4, 2000 established that Dean Cogan himself equated good standing with good financial standing. As such, the defendant has offered uncontroverted evidence that his statements of May 24, 2000 that Barbara Burns was "no longer in good standing" were either true or substantially true. As such, these true statements were incapable of carrying defamatory meaning. Finally, the plaintiff's assertion that the truth defense is inapplicable to the case at bar is without legal authority.

For the foregoing reasons, the defendant respectfully requests that summary judgment be granted in this case.

DEFENDANT,
DAVID S. KING,

By: Matthew G. Conway
Fed. No. ct09612
Conway & Stoughton, LLP
201 Ann Street
Hartford, CT 06103
(860) 525-5529
fax (860) 525-1191

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| Barbara R. Burns | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | NO:302CV00897(RNC) |
| V. | : | |
| | : | |
| David S. King | : | July 6, 2004 |
| Defendant | : | |

## <u>AFFIDAVIT OF SEAN M. NOURIE</u>

I, Sean M. Nourie, being over the age of eighteen (18) years and believing in the obligation of an oath, hereby state as follows:

1.      I am an attorney admitted to the Connecticut Bar; my application to the Federal Bar is pending.

2.      Since April, 2003, I have assisted Attorney Matthew Conway with this matter.

3.      On May 19, 2003 a copy of "Local Rule 9 (c) (1) Statement of David King" was mailed to Barbara Burns at 980 Main Street, Hackensack, NJ 07601.

4.      On June 11, 2004, I spoke with Barbara Burns via telephone.  During the conversation, she requested that my office forward to her a copy of the "Local Rule 56 (c) (1) Statement" referred to in the order of the Court (Chatigny, J.) dated May 24, 2004.

5.      During my conversation with Barbara Burns, I offered to facsimile to her a copy of the aforementioned "Local Rule 9 (c) (1) Statement of David King."

6.    On June 11, 2004, subsequent to my telephone conversation with Barbara Burns, my office

facsimiled a copy of the "Local Rule 9 (c) (1) Statement of David King" to Barbara Burns.

_____
Sean M. Nourie

Subscribed and sworn to before me this _6th_ day of _July_, 2004.

_____
~~Notary Public~~
Commissioner of Superior Court
~~My Commission expires:~~

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Barbara R. Burns        :        CIVIL ACTION
       Plaintiff        :
       :        NO: 302CV
00897(RNC)
V.        :
       :
David S. King        :        May 19, 2003
       Defendant        :

## LOCAL RULE 9(c)(1) STATEMENT OF DAVID KING

The defendant, David King, by and through its attorneys, Conway & Stougton, LLP, herein submits the following Statement of Undisputed Material Facts in accordance with Local Rule 9(c)(1) of the United States District Court for the District of Connecticut:

1. Plaintiff Barbara Burns has brought this action for defamation against Defendant King, as an individual. (Plaintiff's complaint ¶2).

2. Plaintiff alleges that Defendant King, by letter dated May 24, 2000, wrote false and defamatory words which were published to other institutions the substance of which was that she was not in good standing as of May 25, 2000. (Plaintiff's complaint ¶4).

3. Plaintiff alleges that Defendant King, in the presence of Quinnipiac University employee Mary Ellen Durso and other persons unknown to plaintiff, spoke false and defamatory words, the substance of which was that she was not in good standing as of May 25, 2000. (Plaintiff's complaint ¶4).

4. In making his representations as to Plaintiff's standing with Quinnipiac University, King relied upon the fact that had an outstanding balance with the school in the amount of $11,810. (King deposition ¶233).

5. The statements made by Defendant King as to Plaintiff's standing with the University were therefore truthful.

6. Plaintiff seeks damages in the excess of $ 75,000. (Plaintiff's complaint ¶7).

7. The total amount of actual damages claimed by Plaintiff totals approximately $37,000 to $39,000. (Burns deposition ¶142-160).

8. Of this amount, Plaintiff attributes at least $ 10,000 to damages suffered by her prior May 24, 2000. (Burns deposition ¶143-5). ¶

9. Also of this total amount, Plaintiff attributes $12,000-16,000 to loss opportunity earnings from a position that Plaintiff never submitted an application for. (Burns deposition ¶152-5).

DEFENDANT,
DAVID S. KING,

By:  _Matthew G. Conway_
Matthew G. Conway
Fed. No. ct09612
Conway & Stoughton, LLP
201 Ann Street
Hartford, CT 06103
(860) 525-5529
fax (860) 525-1191

## CERTIFICATION

This is to hereby certify that a copy of the foregoing has been mailed, postage prepaid, on this 19th day of May to all counsel of record, namely:

Barbara R. Burns
980 Main Street
Hackensack, NJ 07601

Matthew G. Conway

## **CERTIFICATION**

This is to hereby certify that a copy of the foregoing has been mailed, postage prepaid on this 6th day of July, 2004 to the following pro se party:

Barbara R. Burns
980 Main Street
Hackensack, NJ 07601

Matthew G. Conway