UNITED STATES DISTRICT COURT FILED

DISTRICT OF CONNECTICUT 2004 AUG -2 A 10: 59

U.S. DISTRICT COURT
HARTFORD, CT.

Barbara R. Burns,

    Plaintiff                      CIVIL ACTION

v.

David S. King,

    Defendant                 302CV00897 (RNC)

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO

## DEFENDANT'S "OBJECTION TO PLAINTIFF'S FILINGS OF JUNE 15, 2004"

Plaintiff Barbara R. Burns herein objects to Defendant's "Objection to Plaintiff's Filings of June 15, 2004" on the basis that reply-briefing is not permitted under the Federal Rules of Civil Procedure without leave of court, which Defendant did not obtain, and on the basis that Defendant has misstated key facts and mischaracterized others, including, but not limited to, pertinent orders of the United States District Court for the District of Connecticut and the United States Court of Appeals for the Second Circuit, as set forth with particularity infra.

### OPERATIVE FACTS AND PROCEDURAL HISTORY

Plaintiff took and perfected a timely appeal of the September 2, 2003 discovery order of U.S. Magistrate Donna Martinez. Plaintiff's appeal was premised upon apparent destruction of evidence, certified by the Defendant, at deposition, as both accessible and relevant as of February 7, 2003. Defendant's unilateral decision to withhold evidentiary matter was further the basis for a Motion to Compel by Plaintiff, which was not

1

adjudicated until September 2, 2003. To date, Plaintiff's appeal has not been dismissed by the United States Court of Appeals for the Second Circuit, which retains jurisdiction.[1]

On or about May 26, 2004, the district court ordered Plaintiff to file a pleading responsive to Defendant's Motion for Summary Judgment. The district court ordered Plaintiff to specifically address certain issues, including, but not limited to, the factual issues cited by the court's May 26, 2004 order, and also ordered Plaintiff to respond to Defendant's Rule 56 Statement prior to June 14, 2004.

Plaintiff prepared the responsive memorandum in substantial, if not perfect, conformity with the requirements set forth by the court's May 26 order, excepting the Rule 56 Memorandum, which neither Plaintiff nor Renee DeFina, who received the mailing in question from defense counsel, could locate among the pleadings served by defense counsel upon Plaintiff. Affidavit of Renee A. DeFina, filed under separate cover on June 12, 2004.

On June 10, 2004, Plaintiff requested via archived email that defense counsel Conway remedy this deficiency of service and to email or fax the Rule 56 Statement to Plaintiff. Attorney Conway failed to respond to Plaintiff's email, necessitating not fewer than three follow-up telephone calls by Plaintiff to the offices of Conway and Stoughton, P.A., which Attorney Conway's receptionist, who took the calls, can verify. When Plaintiff explained that the court had ordered Plaintiff to submit the Rule 56 Statement prior to June 14, 2004, Attorney Conway's receptionist told Plaintiff that Mr. Conway was "busy", but would "get back" to Plaintiff. Affidavit of Barbara R. Burns, Exhibit A.

---

[1] Defendant inaccurately states that Plaintiff failed to pay the requisite docketing fee, or, alternatively, to file a motion for fee waiver. In fact, Plaintiff, then a full-time graduate student, did file a motion for fee waiver, in accordance with the instructions of the appellate court. To date, Plaintiff's motion has not been denied by the appellate court, which, as noted supra has not dismissed the appeal. Plaintiff further notes that, in any case, payment of a docketing fee and/or filing of a motion for fee waiver is not jurisdictional.

2

Ultimately, at approximately 4:00 p.m. on June 11, 2004, after telephoning defense counsel three times, Plaintiff was directed to Attorney Sean Nouri. Mr. Nouri informed Plaintiff that the Rule 56 Statement referenced by the court was actually a Rule 9 certification, or something like that. In response to Plaintiff's request, Mr. Nouri agreed to fax the form to Plaintiff, who provided a fax number. The document was then faxed by Mr. Nouri to Plaintiff in Edina, MN at approximately 5:10 p.m. CDT on June 11, 2004. [2] Plaintiff completed the Rule 56 Statement in accordance with the order of the district court, and submitted the signed responsive memorandum in its entirety, supported by affidavit of service, via United States Express Mail on June 13, 2004. Under separate cover, Plaintiff filed the deposition transcripts of Barbara R. Burns and David S. King, which the court ruled to accept.

Plaintiff now responds to Defendant's "Objection to the Plaintiff's Filings of June 15, 2004."

## ARGUMENT

I.  PLAINTIFF'S MOTION FOR STAY PENDING ADDITIONAL DISCOVERY WAS SUPPORTED BY CITATION OF PERTINENT MINNESOTA AND EIGHTH CIRCUIT CASE LAW AND BY THE ORDER OF THIS COURT, STATING THAT PLAINTIFF COULD OBTAIN ADDITIONAL DISCOVERY "WITH LEAVE OF COURT"

As Defendant himself acknowledges, Defendant's Motion for Summary Judgment has been pending before this court for more than one year. Within that time frame and within the parameters of the discovery order issued by this court

---

[2] The court may take judicial notice of the fact that all U.S. Postal offices were closed on June 11, 2004 due to the funeral of President Reagan; but that, even if this were not the case, the faxed document was not received until after 5:00 p.m., when all postal offices close.

3

on December 22, 2002, Plaintiff filed a timely motion to compel production of discoverable electronic data and media [3] to which Defendant himself testified as being both accessible and relevant on February 7, 2003. As noted, Plaintiff's Motion to Compel was not denied until September 2, 2003, at which time Plaintiff immediately appealed. It is further again noted that Plaintiff's appeal has not been dismissed by the United States Court of Appeals for the Second Circuit, and the fact that defense counsel believes that the appeal **should** have been dismissed is irrelevant. [4]

It is well settled that electronic data and media is discoverable, and that parties who are less than forthcoming in production of responsive electronic data, can face, and have faced, severe sanctions. See, e.g., Ryan v. Board of Police Commissioners of the City of St. Louis, 96 F.3d 1076 (8th Circuit 1996), (ordering reversal of judgment in non-producing party's favor). As Plaintiff has

---

[3] The Federal Rules of Civil Procedure expressly encompass "data compilations" and, thus, are broad enough to encompass the electronic and digital documents requested by Plaintiff in discovery and to which Defendant testified. Of particular interest to Plaintiff was the email correspondence that Defendant testified was exchanged between himself and Quinnipiac Dean Neil H. Cogan between the dates of October, 1999 and July 1, 2000. Plaintiff notes that Defendant's email correspondence is not only clearly discoverable, but highly probative in that it is reasonable to presume that Defendant would tend to be much more frank and incautious in his email communications, since emails are composed "off the cuff" and since recipients, including the Defendant, erroneously believe that, once they (or their secretaries) delete an email message, it can never be retrieved. In fact, deleted email messages can almost always be retrieved by computer forensic specialists, and, as in this case, these messages frequently provide evidence that is both probative and incriminating. Plaintiff further notes that, upon notice, which Plaintiff provided in November 2002, Defendant was obligated to preserve potentially relevant computer-generated evidence, even where the opponent has already obtained the data by other means. Fayemi v. Hambrecht and Quist, Inc., 174 F.R.D. 319 (S.D.N.Y. 1997).

[4] Defense counsel's contention that Plaintiff's Motion to Compel and/or for leave to conduct supplemental discovery based upon facts previously unknown to, and/or unanticipated by, Plaintiff is barred by "stare decisis" (Plaintiff believes that defense counsel meant res judicata) is inaccurate and legally untenable. Specifically, Plaintiff has cited pertinent and controlling Minnesota and 8th Circuit decisional law that supports a grant of a stay to accommodate additional discovery to pro se parties who proceed diligently and in good faith; thus, Plaintiff's request is **supported**, not barred, by the legal doctrine of stare decisis, which, means, literally, "Yesterday's decision shall govern today's decision." Furthermore, given that the district court was divested of, and has not re-acquired, jurisdiction of the discovery order appealed, defendant's reliance upon the legal doctrine of res judicata is misplaced. Even if res judicata could apply, a district court may reconsider even a binding determination based upon new facts, as is the case here.

duly noted, both in Plaintiff's Motion to Compel and in Plaintiff's Responsive Memorandum and as Defendant himself admitted in deposition, the email correspondence between Defendant and Dean Cogan is directly relevant to Plaintiff's defamation claim; indeed, the computer archive, establishing that Dean Cogan's assistant, Mrs. Judith Larson, issued a Good Standing Letter, together with a pre-addressed envelope with Dean Thomas Sullivan's name and the address of the University of Minnesota Law School inscribed on it, on May 25, 2000 proves Plaintiff's claim that Dean Cogan, the deciding official, overruled Defendant's contrived "financial good standing policy" argument.

Defendant's willful non-disclosure and apparent destruction of this relevant and discoverable electronic data and media necessitated the corroborating testimony of Dean Cogan, who has stated that he will testify truthfully with respect to relevant events in response to an instruction by this court. By order filed in March 2004, this court expressly stated that additional and necessary discovery could be had with leave of court. On June 12, 2004, Plaintiff so moved this court for an order authorizing the deposition of Neil H. Cogan on the basis that Defendant had willfully withheld and likely destroyed relevant and discoverable evidentiary matter. Plaintiff specified an extension of thirty days, which cannot possibly prejudice the defendant, who himself created the necessity of the Cogan deposition and whose motion for summary judgment has been pending for more than one year. Specifically, Defendant and no one else is responsible for the necessity of an eleventh-hour deposition of a key party witness with whom Defendant, by his own sworn testimony, was in regular email correspondence for

5

Id. See, also, Rathbun v. W.T. Grant and Co., 300 Minn. 223, 219 N.W. 2d 641, 646 (1974). The pleadings of a pro se party are to be "liberally construed, even to the point that the pro se party has misconceived or mischaracterized her claims." Hutton v. Bosiger,

Under Minnesota and 8th Circuit law, the essential elements of a defamation action are that the defamatory communication must be communicated to someone other than the plaintiff; the writing must be false; and it must tend to harm the reputation of the plaintiff. Stuempages v. Parke Davis and Company, 297 N.W. 2d 252, 255 (Minn. 1980); Restatement (Second) of Torts § § 558, 559. Defamation per se is actionable without necessity of pleading and proving that plaintiff suffered any impairment of his reputation or other harm has a result; in other words, existence of damage is conclusively presumed, or assumed from publication or libel itself, without any evidence to show actual harm of any kind. Ritchie v. Paramount Pictures Corporation, 544 N.W. 2d 21 (Minn. 1996). Minnesota recognizes the torts of invasion of privacy and compelled self-defamation. Lewis v. Equitable Life Assurance Society, 389 N.W. 2d 876 (Minn. 1986).

Here, Plaintiff has established that on May 24, 2000, Defendant published a statement that Plaintiff was "not in good standing" to a third party, Dean Thomas Sullivan of the University of Minnesota Law School; that, based upon the documented actions of Dean Neil Cogan in overruling Defendant's attempts to condition good standing upon financial factors [5], Defendant's statement was

---

[5] Defendant, to date, has failed to produce any documentary evidence, i.e., a Quinnipiac Law School Handbook to prove his claim that a policy of "financial good standing" even exists; and, although

false, or, at least, that there is a genuine issue of fact upon which reasonable minds could differ, as to whether the statement was, or could be, true; and that the statement, which impugns Plaintiff's reputation for honesty, is defamatory per se, and, thus, presumptively damaged Plaintiff's standing in the Minnesota academic community, wherein Plaintiff had performed not only creditably, but with academic distinction.

Defendant has offered not a scintilla of non-hearsay evidence[6] that supports his convenient account of a "financial good standing policy" that, in fact, was expressly overruled by his superior, Neil Cogan [7], and which "policy" Defendant himself testified that Defendant himself did not observe with respect to Plaintiff and other students. [8]

Assuming, *arguendo*, that such a policy did exist, which is not the case, Defendant further has not established the absence of a factual dispute as to whether, in fact, Plaintiff had an outstanding balance as of May 25, 2000; and that, even if Plaintiff did, it would have, or should have, impacted Plaintiff's

---

Defendant cited Quinnipiac officials who, by Defendant's account, supported him and his policy interpretations, including University President Leahy, none of these men have issued any statement in support of Defendant's position.

[6] On Page 8-9 of his Memorandum, Defendant cites an unsigned, unauthenticated hearsay writing that Defendant attributes to Dean Neil Cogan. Plaintiff notes that the writing is unsigned and that Defendant offers no proof that Dean Cogan either wrote it, or appended it to a document that Dean Cogan did write; and that, even if Defendant did establish that Dean Cogan wrote it or incorporated it into a signed writing, it does not authorize Defendant to revoke the Good Standing status of Plaintiff or any other law student. Rather, it merely states that Plaintiff will receive no credit for Spring 2000 coursework until the issue of the $3,000 allegedly owed by Plaintiff in the fall of 1999 was resolved. Plaintiff met this condition by establishing that Anne Traverso unilaterally and without Plaintiff's consent, rejected some $6700 in Title IV financial aid funds issued to and received by Quinnipiac Bursar Valerie Carbone in November, 1999. As a matter of law, Traverso's rejection of perfect tender extinguished Plaintiff's financial obligation.

[7] There is a genuine issue of fact as to Defendant's authority: Defendant, through counsel, claims in pleadings that his is the final policy-interpreting word as to "good standing"; at the same time Defendant testified under oath, in deposition, that the policy-making official is "the Dean and I work for the Dean."

[8] Defendant testified in deposition that Defendant granted Letters of Good Standing to Plaintiff and other students, notwithstanding outstanding student account balances.

8

transfer application to the University of Minnesota.[9] To the contrary, a reasonable juror could and likely would conclude that Quinnipiac Financial Aid and Bursar personnel were negligent in late-billing and inaccurately maintaining Plaintiff's student and financial aid accounts; and that Traverso's unilateral refusal to process "crossover" financial aid and to apply the $6700 in Title IV Stafford funds issued by Firstar Bank to Quinnipiac University in the fall of 1999 obviated any "delinquency" claimed by Quinnipiac.

**Given these facts, which are confirmed by Defendant's own writings and deposition testimony, the court must conclude that, at the very least, there is a genuine issue of fact upon which reasonable jurors could differ as to whether Defendant's defamatory statement was or could be true, precluding grant of summary judgment to Defendant. By the legal standard applied by Minnesota and Eighth Circuit courts to any grant of summary judgment, any and all doubt as to a factual dispute must be resolved in favor of the non-moving party, in this case, the Plaintiff. Woody v. Kreuger, supra, at 823.**

Defendant's persistent attempts to liken the case at bar to any case involving public-figure defamation are absurd and warrant consideration of sanctions. Plaintiff is constrained to note that (1) the Defendant's "policy statements",

---

[9] Assuming a transcript-hold policy exists and has been communicated by an institution to its student body, which, in the case of Quinnipiac Law, was not the case, a transcript hold policy precludes issuance of future transcripts pending resolution of any outstanding account balance. In this case, pursuant to the orders of Dean Cogan, Plaintiff had **already filed** all necessary transcripts with the University of Minnesota, in addition to a Good Standing Letter issued by Dean Cogan himself on May 25, 2000, countermanding Defendant's May 24, 2000 statement. Under Quinnipiac University policies, as Dean Cogan himself confirmed to Plaintiff, there is no policy or regulation that permits University personnel, including the Defendant, to gratuitously volunteer information, particularly disputed information, to third parties, such as Dean Sullivan, with no need to know and no interest in Quinnipiac accounts receivable issues. Defendant's statements that he was "only following Quinnipiac policies", are disingenuous, as well as untrue.

9

and, consistent with the "liberal construction" afforded by both Minnesota and Eighth and Second Circuit courts with respect to pro se parties, this court should not only reject the arguments contained in Defendant's "Objection" but should consider construing Plaintiff's Complaint to include **additional counts** for invasion of privacy, compelled self-defamation, disparagement and tortuous interference with prospective advantage and expectancy claims. [10]

## CONCLUSION

The court should disallow Defendant's reply-brief-cum-"Objection" as procedurally deficient and unauthorized by the Federal Rules of Civil Procedure. The court should consider and decide Plaintiff's motion for leave to take the deposition of Neil H. Cogan upon good cause shown pursuant to this court's earlier-filed order, stating that additional discovery may be had by petitioning for leave of court. Finally, the court should conclude that Plaintiff has made out a claim for per se defamation and, with respect to each element of Plaintiff's claim, has established a genuine factual issue upon which reasonable minds could and would differ, precluding a grant of summary judgment to the Defendant.

DATED: 7-27-04        BY: *[signature]*
                          Barbara R. Burns

---

[10] Minnesota courts have held that "once defamation is established, either by character of defamation itself or proof of pecuniary loss, bars are lowered, and general damages for wounded feelings and humiliation are recoverable as "parasitic damages." Ritchie v. Paramount Pictures Corporation, supra, at 119.

11

## CERTIFICATION OF MAILING

I hereby certify that on July 29, 2004, I placed in an envelope, first-class postage prepaid and addressed to the parties named below Plaintiff's Memorandum in Opposition and supporting exhibits, and the Affidavit of Barbara Burns and that the same was by me deposited in a U.S. Postal Box at Bloomington, Hennepin County, Minnesota.

PARTIES SERVED:

Kevin F. Rowe, Clerk, U.S. District Court, 450 Main Street, Hartford, CT 06301

Matthew Conway, Conway and Stoughton, 201 Ann Street, Hartford, CT 06301

DATED: July 29, 2004                         BY: _____
                                                 Barbara R. Burns

[19] KeyCite Notes

↪**237** Libel and Slander
 ↪**237III** Justification and Mitigation
  ↪**237k54** k. Truth as Justification in General. Most Cited Cases

True statements, however disparaging, are not actionable.

[20] KeyCite Notes

↪**237** Libel and Slander
 ↪**237III** Justification and Mitigation
  ↪**237k54** k. Truth as Justification in General. Most Cited Cases

Truth as a defense does not go to verbal accuracy of allegedly defamatory statement, but to underlying implication of statement, at least where statement involves more than a simple allegation.

[21] KeyCite Notes

↪**237** Libel and Slander
 ↪**237IV** Actions
  ↪**237IV(E)** Trial, Judgment, and Review
   ↪**237k123** Questions for Jury
    ↪**237k123(7)** k. Justification and Mitigation. Most Cited Cases

Whether underlying implication of allegedly defamatory statements made about employees upon discharge, gross insubordination, was false, thus precluding employer from raising truth as a defense, was question for jury.

[22] KeyCite Notes

↪**237** Libel and Slander
 ↪**237II** Privileged Communications, and Malice Therein
  ↪**237k40** Qualified Privilege
   ↪**237k41** k. In General. Most Cited Cases

Publication of an untrue defamatory statement will not render originator of statement liable if statement is published under circumstances that make it conditionally privileged and privilege is not abused.

[23] KeyCite Notes

↪**237** Libel and Slander
 ↪**237II** Privileged Communications, and Malice Therein
  ↪**237k40** Qualified Privilege
   ↪**237k44** Discharge of Duty to Others
    ↪**237k44(3)** k. As to Character of Employee. Most Cited Cases