UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

Barbara R. Burns, et al,

      Plaintiff



v.

David S. King,

      Defendant

                       CIVIL ACTION

      Defendants          3-02 CV 897 (RNC)

---

**PLAINTIFF'S MOTION AND MEMORANDUM
IN SUPPORT OF RULE 72(b) DE NOVO REVIEW
OF THE SEPTEMBER 29, 2004 ORDER
OF MAGISTRATE DONNA N. MARTINEZ**

As provided and authorized by Rule 72 (b)(1)(B)(C) of the Federal Rules of Civil Procedure [1], Plaintiff Barbara R. Burns hereby serves and files specific, written objection to, and requests de novo review of, the September 29, 2004 Report and Recommendation of United States Magistrate Donna N. Martinez, served upon Plaintiff on October 1, 2004, on the basis that, as a matter of fact and law, the order is fundamentally and clearly erroneous, and also reveals disqualifying bias; that the recommended disposition mischaracterizes key facts and misstates the law; and that, as a consequence of bias, the magistrate clearly erred in applying the law and in considering and balancing equities.

Plaintiff also hereby renews Plaintiffs' earlier motion for disqualification of Magistrate Martinez as provided and authorized by 28 U.S.C. § § 144, 455, as set forth *infra*:

---

[1] FRCP 72 (b), stating that, within 10 days of being served with a copy of the recommended disposition, a party may file specific written objections to the proposed findings and recommendations. A finding that is dispositive and which effectively determines the action, as in this case, permits the district court to accept, reject, or modify the findings of the magistrate, and also consider new evidence. FRCP 72(b)(1)(B)(C)

1

### OPERATIVE FACTS AND PROCEDURAL HISTORY

In approximately October, 2002, Plaintiff was compelled to submit for review by Chief United States District Court Judge Alfred V. Covello certain actions by Magistrate Donna N. Martinez. Plaintiff asserted that the actions complained of were evidence of bias, warranting judicial disqualification, as well as acutely prejudicial not only to Plaintiff, but to the expeditious administration of justice and public confidence in the integrity and impartiality of the federal judiciary. The actions complained of included, but were not limited to, the appearance of inappropriate and/or *ex parte* communications between defense counsel and the magistrate's office, and obstruction by the magistrate of certain filings made by Plaintiff. [2]

By affidavit filed in accordance with Chief Judge Covello's instructions, Plaintiff duly noted for the record that Plaintiff's filings had been repeatedly returned by Magistrate Martinez based upon claimed procedural "deficiencies", while filings by the Defendant, evidencing the **same** alleged "deficiencies" were accepted without question. Following the apparent intervention of the office of Chief Judge Covello, Plaintiff's unmodified filings were subsequently accepted and duly docketed by the Clerk of the Court, a resolution in Plaintiff's favor.

At this same time, Chief Judge Covello—who could have summarily dismissed Plaintiff's complaint against Magistrate Martinez and did not do so—advised Plaintiff in writing that Plaintiff, at her option, could file a motion for disqualification of Magistrate Martinez on ground of disqualifying bias. Chief Judge Covello further communicated to Plaintiff that any such motion for disqualification of Magistrate Martinez was properly directed to United States District Court Judge Robert N. Chatigny. Plaintiff promptly filed the motion for disqualification, with service upon the Defendant, in approximately December 2002.

In a transcribed hearing on January 9, 2003, United States District Court Judge Chatigny responded to Plaintiff's motion for disqualification by stating, *inter alia*, that, in the sixteen years that Judge Chatigny had been a member of the United States District

---

[2] As set forth in detail by Plaintiff's filed Affidavit of Prejudice, a conference scheduled for December 2, 2002 was in fact was never held,; additionally, Magistrate Martinez went so far as to appear to deputize defense counsel to convene and preside over the conference, connoting bias, as well as both apparent and actual impropriety.

Court for the District of Connecticut, no such motion for disqualification as Plaintiff's had ever been filed. Judge Chatigny otherwise did not appear to consider or rule upon the merits of Plaintiff's Motion for Disqualification.[3]

Between the dates of December 2002 and the present date, Defense counsel filed a plethora of motions to enjoin or otherwise sanction Plaintiff and to achieve dismissal of the case off the merits, most, if not all, of which were denied. Plaintiff was forced to defend those motions filed by defense counsel that were not *ex parte*. Plaintiff was also forced to file appropriate and necessary motions to compel discovery, all of which were heard and decided by Magistrate Martinez. Between the dates of January 1, 2003 and September 2, 2003, Magistrate Martinez issued several discovery orders that clearly undermined the remedial purpose of FRCP 37(b), which evidenced bias and also acutely and unfairly prejudiced Plaintiff.[4]

On September 2, 2003, Magistrate Martinez issued an order denying Plaintiff's Motion to Compel production of certain archived Quinnipiac computer records to which Defendant testified at deposition on February 7, 2003, and which, though discoverable,

---

[3] Plaintiff notes that at least one federal circuit court has rejected the premise that a number of years of distinguished federal court service exempts even an Article III judge from disqualification where an appearance of impropriety has been established by a party. See, e.g. Haines v. Liggett Group, Inc., 975 F.2d 81 (3rd Circuit, 1992).

[4] In January, 2003, Magistrate Martinez issued an injunction, which, under 28 U.S.C. § 636, no magistrate may do, upon the ex parte petition of the Defendant, claiming immediate and irreparable injury on ground that the scheduling of Defendant's deposition would conflict with Defendant's attendance at a memorial service for a colleague; the practical effect of the injunction was to prevent Plaintiff from taking the Defendant's deposition. When Plaintiff did take Defendant's deposition on February 7, 2003, Defendant testified to a Quinnipiac computer archive. As duly noted by Plaintiff, Defendant, in contravention of Rule 26, did not disclose the computer records in Defendant's Initial Disclosures, which included several hundred Quinnipiac documents, stating for the first time at deposition that Defendant would rely upon certain archived email that, by Defendant's account, was stored on the Quinnipiac server. Plaintiff duly requested the archived email via Interrogatory on February 8, 2003. Defense counsel responded on April 1, 2003 by stating that the email no longer existed, but offering no explanation, which was expressly requested by Plaintiff's Interrogatory Instructions. Magistrate Martinez denied Plaintiff's subsequent Motion to Compel. As a direct and proximate result of Defendant's refusal to produce the Quinnipiac archive, which Defendant communicated to Plaintiff in April 2003, more than 45 days after Defendant's response to Plaintiff's Interrogatory was due, Plaintiff noticed the Deposition of Neil H. Cogan on or about May 8, 2003, specifying a date of June 30, 2003. Dean Cogan agreed to testify truthfully as to relevant communications between Cogan and the Defendant. Dean Cogan further volunteered the use of Dean Cogan's offices at Whittier Law School, Costa Mesa, CA. Plaintiff's father died that weekend and Plaintiff sought leave to re-schedule the Cogan deposition, necessitated by Defendant's non-production and apparent destruction of the Quinnipiac computer archive. Defendant responded by filing a motion to suppress Dean Cogan's testimony, which Magistrate Martinez granted.

were not disclosed by defense counsel in Defendant's Initial Disclosures. [5] Plaintiff timely appealed the magistrate's order by filing a Notice of Appeal, with affidavit of service upon Defendant. The Notice of Appeal, submitted to the United States Court of Appeals for the Second Circuit via United States Express Mail, was received and docketed by the United States Court of Appeals for the Second Circuit on September 29, 2003. So far as Plaintiff is aware, the appellate court has never dismissed the appeal. At this time, jurisdiction as to the discovery issues encompassed by the appealed September 2, 2003 order must be presumed to have been transferred to, and vested in, the appellate court as of September 29, 2003. Exhibit A. [6]

On September 30, 2003, the district court entered an order adopting the appealed September 2, 2003 Martinez order, which, in consideration of Plaintiff's docketed interlocutory appeal, must be construed as being without jurisdiction. On or about October 1, 2003, Plaintiff properly moved to vacate the September 30, 2003 order for want of subject-matter jurisdiction. Exhibit B.

In approximately May, 2004, Defendant moved for sanctions against Plaintiff. The stated basis for Defendant's motion was that Plaintiff had allegedly failed to produce to Defendant a good-standing certification by Quinnipiac Dean Neil H. Cogan. As Plaintiff has made of record, this is not true, and, in fact, multiple copies of the certification have changed hands. [7]

---

[5] Plaintiff noted in her Motion to Compel that Defendant had been accorded considerable latitude by the magistrate, who, *inter alia*, granted an ex parte injunction, prohibiting Plaintiff from taking Defendant's deposition on the basis that Defendant stated that he was scheduled to appear at a memorial service for a colleague. Conversely and in a biased manner, the magistrate refused to allow Plaintiff, pro se, to re-schedule the June 30, 2003 deposition of Neil H. Cogan upon Plaintiff's statement that Plaintiff's father died that weekend.

[6] Magistrate Martinez states that the appeal was dismissed in February 2004. Martinez Order, P. 3 Plaintiff does not believe that this is correct, and, in fact, was told by the Second Circuit that the appeal notice had never been formally docketed, i.e., that the Second Circuit received the Appeal Notice from Plaintiff on September 30, 2003, and routed it for further processing to the district court, which did not process it and re-file it in the appellate court. Plaintiff received no dismissal order from either the district court or the appellate court.

[7] As the record confirms, Defendant himself produced three copies of the Cogan Good Standing Letter to Plaintiff, together with several hundred Quinnipiac documents, as part and parcel of his Initial Disclosures. Plaintiff, for her part, marked both the Cogan certification and an August, 1999 certification by the Defendant himself, as exhibits at the time of Defendant's February 7, 2003 deposition, at which time Defendant testified, under oath, that all Cogan correspondence had been archived on the Quinnipiac computer server, and that Defendant planned to rely upon the archive to bolster his defense. Plaintiff, for her part, brought additional copies of the Cogan certification, as well as the envelope that was inscribed with the name of Dean Thomas Sullivan, University of Minnesota Law School and that was addressed by

4

Additionally and as the district court record reviewed by Magistrate Martinez reflects, Plaintiff, and a disinterested third party, Kevin Burns, both averred by affidavit that, due to the temporary storage of Plaintiff's personal property that was effected by the general contractor hired by Kevin Burns, the responsive Quinnipiac records were not in Plaintiff's possession at any relevant time. Affidavit of Kevin Burns, Affidavit of Barbara Burns, Exhibits C and D. Plaintiff at this time is constrained to note that none of Defendant's assertions have been similarly supported by any disinterested and/or substantial witnesses. [8] Plaintiff also notes that the September 2, 2003 Martinez order expressly states that the scope of the order is limited to responsive Quinnipiac documents in Plaintiff's "custody and/or control." See, also, September 27, 2004 Martinez Order, P. 5, referencing the September 2, 2003 Martinez Order and Memorandum.

On September 27, 2004, Magistrate Martinez denied Plaintiff's motion to vacate the October 1, 2003 order of United States District Court Judge Robert N. Chatigny which—since the motion to vacate addressed an order that was issued by a higher-ranking judicial officer—she has no authority to do. Magistrate Martinez also granted sanctions to Defendant that were premised upon Plaintiff's alleged failure to produce documents that both Plaintiff and a credible and disinterested third-party witness have both testified are not in Plaintiff's possession, due to circumstances wholly beyond Plaintiff's knowledge or control.

Since the September 2, 2003 court order directing production in the first instance, expressly states that Plaintiff is required only to produce responsive documents in Plaintiff's custody and/or control and since, in fact, no response documents were, in fact, in Plaintiff's custody and/or control at any legally relevant time, both the finding that Plaintiff violated a discovery order and the proposed sanction are clearly erroneous and evidence both bias and abuse of discretion. Moreover, Magistrate Martinez improperly denied Plaintiff's motion for sanctions against the Defendant, which, in the circumstances presented by Plaintiff, mandated sanctions against Defendant and/or defense counsel, and

---

Dean Cogan's secretary, Mrs. Judith Larsen on May 25, 2000. All told, Defendant has obtained not fewer than four copies of the certification, not counting the archived copies and the three paper copies he produced to Plaintiff in November 2002.

[8] Although Defendant has cited as his supporters, among other others, the President of Quinnipiac University, to date Defendant has produced no substantial or disinterested witness to corroborate Defendant's account of relevant events. On October 1, 2004, United States District Court Judge Chatigny denied Defendant's motion for summary judgment.

Magistrate Martinez' refusal to award sanctions is error. [9] Finally, Magistrate Martinez afforded Plaintiff no opportunity to defend Defendant's allegations at a hearing. By the standard imposed by at least one federal circuit court, this, too, was an abuse of discretion. [10]

On October 1, 2004, United States District Court Judge Chatigny upheld Plaintiff's claims and denied Defendant's Motion for Summary Judgment.

This Motion for De Novo Review and Disqualification follows.

*Standard for Grant of De Novo Review under FRCP 72 (b)*

FRCP 72 (b) provides for a mandatory de novo review of the order of a U.S. magistrate by an Article III U.S. District Court judge. Rule 72(b) review is of right and imposes upon a district court judge an affirmative duty to read the entire record below that is relevant to any Objection that is filed.

When, as in this case, a magistrate's order is dispositive and, effectively, determines the action, the district court is empowered under Rule 72(b)(1)(B)(C) to accept, reject, or modify the magistrate's order *also, to consider new evidence.* The district court must reverse if the exercise of judicial power by the magistrate is unauthorized, or otherwise erroneous. In any de novo review involving a dispositive matter, the district court is not circumscribed by the "plain error" standard. See, e.g., Haines v. Liggett Group, Inc., 975 F. 2d 81.

*Analysis*

Here, Magistrate Martinez has made a dispositive ruling that is also injunctive in nature, which clearly comes within the ambit of Rule 72(b)(1)(B)(C). The ruling further reveals bias. Specifically, Magistrate Martinez finds "implausible" Plaintiff's and Kevin Burns' good-faith (and true) testimony that Plaintiff at one time had and, through no fault of

---

[9] Magistrate Martinez inaccurately states that Plaintiff's motion for sanctions was premised upon Plaintiff's belief that Defendant's motions were frivolous. In fact, Defendant's attempt to sanction Plaintiff for failing to produce to Defendant a computer record that Defendant has admitted that Defendant not only possessed, but intended to use against Plaintiff, and then apparently destroyed, was frivolous. Additionally, and as Plaintiff's motion set forth, Defendant, by his own testimony, withheld required disclosures between the dates of November 22, 2002 and February 7, 2003, and subsequently lied about it. Under the controlling law of this circuit, this is ample grounds for Rule 37 sanctions against the Defendant. See, e.g., Jones v. Niagara Transp. Auth. (NFTA), 836 F. 2d, at 734; see, also, National Hockey League v. Metro Hockey Club, Inc., 427 U.S., at 643!

[10] See, e.g., Haines v. Liggett Group, Inc., supra, 975 F 2d, 81, at 83, holding that "party (seeking review of a pretrial discovery order) has absolute right to be heard by testimony and argument."

Plaintiff's, subsequently lost custody of a document, the Cogan Good Standing certification, to which Defendant testified that Defendant not only had unrestricted access, but planned to rely upon for his own defense, (and which document was created and apparently, deliberately and intentionally destroyed while in the custody of the Defendant's employer, Quinnipiac University, the entity Defendant has claimed to represent and to be in principal-agent privity, at all times relevant to this litigation).

At the same time and in a clearly biased manner, Magistrate Martinez has also held that she finds **the same unsupported [11] argument, i.e., that the Defendant had and, through no fault of his own, subsequently lost custody of certain Quinnipiac computer records, completely believeable when made by the Defendant.** In other words, the notion that a party could have and fortuitously lose custody or dominion of evidentiary matter is completely incredible and "implausible", *unless the evidence in question is held and lost by a party favored by the judicial officer ruling upon the motion, in which case it is "plausible."*

In conducting any meaningful de novo review of the record below, which contains the entirety of Magistrate Martinez' discovery rulings, the district court should find, as did the *Haines* court, that it is impossible to reconcile and vindicate an appearance of propriety and impartiality with the statements and actions of Magistrate Martinez in this case. The district court should further conclude that, the appearance of impartiality will be served only by reassignment of a different magistrate judge, or, alternatively, by a remand of the parties' discovery motions for reconsideration consistent with this court's instructions.

Plaintiffs will specifically address each of the Magistrate's proposed findings in turn, as set forth *infra*.

*Defendant's Motion for Sanctions*

In approximately May, 2003—after appearing to destroy a Quinnipiac email archive to which Defendant himself cited as both accessible and relevant to his defense in the litigation at bar and in existence on February 7, 2003—Defendant moved for Rule 37

---

[11] As noted, Defendant has never produced any substantial witness to support Defendant's account of relevant events; Defendant's personal secretary and direct-report, Phyllis Andreas, additionally has no expertise in Information Technology and, even if independent of Defendant, which she is not, is not qualified to testify as to the circumstances of the apparent removal and/or destruction of archived email to which Defendant himself testified on February 7, 2003 from the Quinnipiac computer server.

discovery sanctions against Plaintiff. Defendant's motion was premised upon Plaintiff's alleged failure to produce to Defendant "any letter **that she possesses** (emphasis added) from Dean Cogan or his staff members, issued on or after May 24, 2000." Martinez Memorandum, P.2.

As set forth by the affidavits of Plaintiff and a disinterested party, Kevin Burns, Plaintiff was **not** in possession of any such documents at any relevant time, and, accordingly, did not intentionally, willfully, or even volitionally withhold any evidentiary matter from Defendant. [12] To the contrary, the record is unequivocal that Plaintiff has faithfully complied with any and all orders of this court to date and, with respect to the appealed September 2, 2003 Martinez order, went to considerable lengths to comply with Defendant's discovery requests by, *inter alia*, obtaining records held by third parties, including, but not limited to, the University of Minnesota. [13] This fact, in and of itself, precludes a Rule 37 sanction, which is intended to punish a party for **deliberately, intentionally,** and **willfully** violating applicable discovery rules. [14]

As Magistrate Martinez herself states there is no order by this court and/or any federal discovery rule that requires Plaintiff or any other party to produce evidentiary matter that is not in Plaintiff's "custody." September 27, 2004 Martinez Memorandum, P. 2-3, stating that Plaintiff has an obligation to "produce responsive documents that are in her custody and control." By this standard, the magistrate's September 29, 2004 ruling that Plaintiff did, or could have violated, a court discovery order or a federal discovery rule, is clearly erroneous, as well as unduly punitive and, consequently, an abuse of discretion.

Plaintiff is further constrained to note that, in this case, the equitable doctrine of unclean hands should operate to deny Defendant relief. Specifically, Defendant himself testified

---

[12] As an offer of proof of the truthfulness of his testimony, Kevin Burns has offered to be polygraphed, or, alternatively, to testify in the presence of the court. Plaintiff for her part has **always** provided the court with all information the court has requested, whether or not it helped Plaintiff's case.

[13] To conform to the court's order to file "any letter that Plaintiff possesses from Dean Cogan and his staff" within 10 days of the September 29, 2004 Martinez order, Plaintiff herewith submits a copy of the Cogan certification and a copy of the envelope given to Plaintiff by Dean Cogan's secretary, Mrs. Judith Larsen, on May 25, 2000 that Plaintiff obtained from the University of Minnesota. Plaintiff notes that a copy of the letter and the envelope was given by Plaintiff to Mary Ellen Durso immediately after the meeting with Cogan on May 25, 2000 and should also be in Plaintiff's Quinnipiac file, which Defendant produced to Plaintiff as part of his Initial Disclosures and which Defendant clearly controls and possesses within the meaning of Rule 37 of the Federal Rules of Civil Procedure.

[14] See, e.g., Baba v. Japan Travel Bureau Int'l, 111 F.3d, at 5, citing as a pre-requisite for discovery sanctions "willfulness, bad faith, or any fault."

on February 7, 2003 that certain archived Quinnipiac computer records, including the May 25, 2000 Cogan certification and other word-processed documents, including the envelope given by Mrs. Larson to Plaintiff on May 25, 2000 was not only accessible to Defendant (who did not disclose it in November 2002, as required under FRCP 26) as of February 7, 2003, but that Defendant intended to use these records to discredit Plaintiff. King Deposition, filed in Case No. 3-02-CV-897. Defendant apparently destroyed, or at least knowingly suppressed this evidence sometime between February 8, 2003 and April 1, 2003, ostensibly to avoid production to Plaintiff. [15]

 Under Rule 37 and as otherwise provided by the Federal Rules of Civil Procedure, Defendant cannot obtain sanctions against Plaintiff based upon Plaintiff's alleged failure to produce to Defendant his **own** documents. Conversely, sanctions are mandated when Rule 11 is violated and when Rule 37 is violated knowingly and intentionally. Both Rule 11 and Rule 37 violations have occurred here, as a result of volitional and willful acts by the Defendant.

 In applying Rule 37 to the facts of the case at bar, Magistrate Martinez may be correct that—assuming *arguendo*, Plaintiff actually possessed the responsive discovery, which both Plaintiff and a disinterested party, Kevin Burns, have testified was and is **not** the case the mere fact that the requested discovery is or is not probative is irrelevant to a determination as to whether Plaintiff did or did violate Rule 37. At the same time, whether the material is probative **is** relevant to the issue of sanctions.

 Specifically, in order to establish that he is entitled to sanctions, Defendant must prove that he was prejudiced by Plaintiff's alleged non-production. Defendant cannot possibly do this, since he himself possessed and destroyed the same documents that he demands

---

[15] On February 8, 2003, Plaintiff duly made written demand by Interrogatory to defense counsel, identifying and demanding production of the computer records to which Defendant testified and disclosed for the first time on February 7, 2003, and which were not mentioned in Defendant's Rule 26 disclosures, which included several hundred Quinnipiac documents, which defense counsel produced to Plaintiff on November 22, 2002. Defense counsel responded to Plaintiff's Interrogatory some 30 days later, on or about April 1, 2003, stating that, notwithstanding the sworn testimony of Defendant, an administrator and associate dean, Defendant's secretary could not "find" the computer records and, hence, they would not be produced to Plaintiff. When Plaintiff, appropriately, moved to compel and for sanctions, defense counsel responded with a blizzard of technical objections, stating, inter alia, that, notwithstanding that defense counsel was hired and paid by Quinnipiac and had throughout the litigation produced voluminous Quinnipiac records as required disclosures and that Defendant himself had testified that Defendant would rely upon institutional computer records, defense counsel could not produce the same records to which his client testified were both in existence and accessible to the Defendant and defense counsel.

9

from Plaintiff. Moreover, Defendant knew, or should have known, that Cogan overruled Defendant as to Defendant's dilatory and bad-faith "financial good standing" argument that Defendant unsuccessfully attempted to apply to Plaintiff not once but several times between the dates of October 1, 1999 and May 25, 2000; and to which Defendant himself did not adhere with any degree of consistency.

Since Defendant was not harmed and his case was unaffected, he cannot establish a legal entitlement to sanctions against Plaintiff. Even if Defendant could establish prejudice, which he cannot, Plaintiff, as Magistrate Martinez herself acknowledges, cannot be sanctioned for failing to produce evidentiary matter of which, to date, Plaintiff has not reacquired dominion. The district court should find that, under applicable Federal Rules, Plaintiff's obligation to produce requested discovery should incept when Plaintiff acquires custody and/or control of it, or as otherwise specified under FRCP 26 (a)(3), whichever is sooner.

*Plaintiff's Motion for Sanctions Against Defendant*

As a preliminary matter, Plaintiff notes that Magistrate Martinez' argument that withheld evidence may lead to other evidence is more applicable to Plaintiff's motion to compel than Defendant's because, as Plaintiff has demonstrated by a preponderance of credible evidence, including Defendant's own deposition testimony, any omission by Plaintiff was inadvertent and unintentional whereas Defendant's actions were willful and premeditated, and directly calculated to thwart the posture favoring trial on the merits that has been consistently upheld, articulated, and favored by this court since the inception of this litigation.

Specifically, Defendant, by his own deposition testimony, knowingly withheld from Plaintiff a mandated disclosure of the Quinnipiac computer archive for more than three months, from the date of his Initial Disclosures in November 2002 and his deposition in February 2003. Following a completely unwarranted and improper ex parte motion for a "protective order", which Magistrate Martinez obligingly granted without notice or hearing to Plaintiff and for which Defendant and/or defense counsel should have been sanctioned and were not, Defendant appeared for deposition on February 7, 2003. At that time, after admitting that the Quinnipiac computer archive existed and that Defendant and his attorney exercised dominion of it as of February 7, 2003, Defendant withheld the

archive for approximately 60 days after Plaintiff's February 8, 2003 Interrogatory, which is approximately 30 days longer than the 30-day period allowed under the Federal Rules for discovery responses.

When Defendant finally did address the issue of the computer archive, in response to Plaintiff's February 8, 2003 Interrogatory, Defendant offered only the affidavit of his secretary and direct report, Phyllis Andreas. The affidavit recited that that Andreas— who, in addition to not being independent of Defendant, did not testify to the existence of the archive in the first instance and who has no Information Technology responsibilities or expertise—could not "find it" as of April 1, 2003. [16] At approximately this same time, on April 8, 2003, defense counsel—presumably because there is no official Quinnipiac University official policy statement that supports Defendant's assertions of a published "financial good standing policy"—reneged upon his promise to produce the Quinnipiac University Handbook for inspection by Plaintiff at the time of Plaintiff's deposition.

Magistrate Martinez' conclusion that Plaintiff's motion was wholly premised upon Plaintiff's subjective belief that Defendant's motion to compel was frivolous is also plainly erroneous and misleading. As Plaintiff's motion papers clearly state, Plaintiff moved for Rule 11 sanctions that, in the circumstances, are mandatory because Defendant, without reasonable inquiry, asserted an unmeritorious and completely frivolous "substantial truth" defense premised upon an nonexistent "financial good standing" that Defendant and his attorney knew or should have known was not well grounded in law or in fact and which lacked evidentiary support. Plaintiff moved for Rule 37 discovery sanctions, which, in the circumstances, are strongly indicated, if not

---

[16] The court may take judicial notice of the similarity of the fact pattern set forth by Andreas' affidavit, which wsa obviously solicited by Defendant and/or defense counsel, to what was popularly referred to as "Rose Mary's stretch." As the court may note, Rose Mary Woods, secretary to President Nixon, once claimed that some 18 ½ minutes of incriminating dialogue between President Nixon and certain members of his staff was "accidentally erased." Expert witnesses later established that Woods' testimony was likely not true and that the erasures were deliberate attempts by President Nixon and other culpable persons to destroy evidence. In making this point, it is not Plaintiff's intent to demean or impugn the honesty of Ms. Andreas, who, Plaintiff is certain, has testified truthfully to the best of her limited Information Technology knowledge and expertise, but, rather, to bring to the attention of the court the impossible position in which the Defendant has unfairly placed her. Plaintiff submits that the "missing" Quinnipiac archives are properly a matter for discussion between parties and counsel, the court, and the Director of Information Technology at Quinnipiac University. As noted elsewhere in this record, Plaintiff has informally conferred with persons knowledgeable in the area of Information Technology; these persons, without exception, have assured Plaintiff that, if created as Defendant testified, the King-Cogan email correspondence, if not deliberately destroyed, is "still on the server somewhere" and that archived email and other stored information is capable of being retrieved by competent forensic IT specialists.

mandatory, because Defendant, by his own admission, withheld required disclosures, apparently destroyed evidence, and lied about it.

Plaintiff is further constrained to point out that—after reinstating the action following entry of default to Plaintiff on August 7, 2002 on the stated basis that Defendant could and would defend on the merits—Defendant filed numerous motions for sanctions against Plaintiff and/or to dismiss the case off the merits. All were denied, and on October 1, 2004, the court upheld Plaintiff's claims and denied Defendant's motion for summary judgment.

Given these facts, the court may properly conclude that (1) notwithstanding Defendant's claims that Defendant has formally asserted his right to defend Plaintiff's action on the merits, no Defendant and/or his attorney has ever worked harder to avoid the merits of any case; (2) Defendant's motion to compel "discovery" that Defendant's principal, Quinnipiac University, itself created, maintained, and destroyed without the disclosure to Plaintiff mandated by FRCP 26 is, as a matter of fact and law, "frivolous" within the meaning of Rule 11, as well as violative of the letter and the spirit of Rule 37 and federal discovery rules; and (3) Defendant, who has filed not fewer than six different motions for dismissal of the action off the merits all of which have been denied, has engaged in what is clearly abusive motion practice, which, in and of itself, is grounds for at least consideration of an award of sanctions to Plaintiff under Rule 11, and as otherwise provided by the Federal Rules of Civil Procedure.

## CONCLUSION

In consideration of the foregoing facts, the court should grant Plaintiff's renewed motion for disqualification of Magistrate Donna N. Martinez and summarily reverse the September 27, 2004 order for which review has been sought under FRCP 72(b)(1)(B)(C), or, alternatively, should remand the parties' motions for reconsideration by the magistrate, in accordance with the instructions of the district court.

DATED:    *10-7-04*    BY: *Barbara R. Burns*

Barbara R. Burns

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BARBARA BURNS,                          :
                                        :
        Plaintiff,                      :
                                        :
        v.                              :       CASE NO.   3:02CV897(RNC)
                                        :
DAVID S. KING,                          :
                                        :
        Defendant.                      :

## RULING ON PENDING MOTIONS

In May 2002, the plaintiff, Barbara Burns, commenced this defamation action against the defendant, David A. King. Pending before the court are the defendant's motion "for sanctions against plaintiff for failure to comply with a discovery order of the court" (doc. #88) and the plaintiff's motion "for sanctions against the defendant" (doc. #90).[1] For the reasons set forth below, defendant's motion for sanctions (doc. #88) is granted in part and denied in part, and plaintiff's motion for sanctions against the defendant (doc. #90) is denied.

I.   Defendant's motion for sanctions (doc. #88)

Defendant requests that the court impose sanctions upon the plaintiff for her failure to comply with the court's August 29, 2003 order.[2] On August 29, 2003, the undersigned granted in part

---

[1]On September 3, 2003, this case was referred to the undersigned by Chief Judge Chatigny for all purposes except trial.

[2]Defendant requests that the court "sanction the plaintiff, pursuant to FRCP 37(b) by issuing an order precluding the plaintiff from introducing into evidence copies of any letter allegedly

the defendant's motion to compel, and ordered the plaintiff to produce "any letter which she possesses from Dean Cogan or his staff members issued on or after May 24, 2000."[3] Defendant states that, despite twice testifying under oath that she possessed such a document, the plaintiff has not complied with the court's August 29, 2003 discovery order by producing it.

Plaintiff, in response, states that defendant's motion for sanctions should be denied because (1) defendant's motion "is procedurally deficient and untimely," (2) the August 29, 2003 discovery order was appealed by the plaintiff on September 29, 2003 and the appeal "operates to divest the district court of jurisdiction," (3) plaintiff is either not in possession of the requested documents or discovery of them should be had through "less burdensome means, including defendant's own records," and (4) the discovery referred to in the defendant's motion has "no probative value in determining the controversy in defendant's favor."

---

issued by Dean Cogan or his staff on or after May 24, 2000. In the alternative, the defendant requests that the Court issue an order based upon paragraph FRCP 37(c) by striking out the plaintiff's pleadings or parts thereof relating to the letter, or staying further proceedings until the letter is produced, or dismissing the action, or by rendering a judgment by default against the plaintiff for her failure to comply with the order." See doc. #92.

[3]It appears that the defendant seeks specifically a copy of a letter that the plaintiff claims to have received on May 25, 2000 from the former Dean of Quinnipiac Law School, Dean Cogan, indicating that the plaintiff was a student in good standing at the law school.

With regard to the plaintiff's first objection, the court finds that the defendant's motion for sanctions is neither procedurally deficient nor untimely. As to the second objection, the appeal which the plaintiff claims "divests this court of jurisdiction" was taken with regard to a recommended ruling issued by the undersigned on September 2, 2003. No appeal was taken from the August 29, 2003 endorsement order requiring the plaintiff to produce the May 2000 "Good Standing" letter. Moreover, the appeal which was taken by plaintiff was dismissed by the United States Court of Appeals for the Second Circuit on February 17, 2004. See doc. #93. As to the third objection, the plaintiff's argument that she is not in "possession" of the requested documents is implausible. Plaintiff has, on at least two occasions, testified at deposition that she possessed the requested document. Plaintiff's current assertion that she does not "possess the copies of the May 25, 2000 Cogan letter and envelope because they were stored at [her] house in Minnesota" has no bearing on her obligation to produce responsive documents, so long as they are in her "custody or control." Fed. R. Civ. P. 34(a). Lastly, plaintiff's argument that the documents sought by defendant would have no "probative value in determining the controversy in defendant's favor" misses the mark. This court already has ordered the plaintiff to produce the document. The scope of discovery is broad, and is normally allowed into any matter that bears upon the

3

issues or reasonably could lead to relevant information.  See Oppenheimer Fund Inc. v. Sanders, 473 U.S. 340, 351 (1978). Information need not be admissible as evidence in order to be discoverable. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 29-30 (1984).  "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  In the Second Circuit, "[t]his obviously broad rule is liberally construed." Daval Steele Products v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991) (citing Oppenheimer, 437 U.S. at 351).  The document(s) sought by the defendant bears on the issues, or could reasonably lead to the discovery of admissible evidence in this case.[4]

Because the plaintiff has failed and/or refused to comply with this court's August 29, 2003 order, the court must determine what sanction, if any, is appropriate under the circumstances.  If a party fails to provide discovery or to comply with a court's discovery orders, Rules 37(b) and 37(d) of the Federal Rules of Civil Procedure provide for the entry of such orders "as are just," including any of several sanctions enumerated in Rule 37(b).  Among

---

[4]Plaintiff also adds that she does not believe she is obligated to produce the May 25, 2000 letter from Dean Cogan because she will not need it "to prevail at trial." In addition, because the court has not yet set a trial date in this matter, plaintiff asserts that "no obligation to produce trial exhibits and evidence has been triggered by Rule 26(a)(3)." Both arguments are without merit.

these are an order that designated facts shall be taken to be established for purposes of the action, <u>see</u> Rule 37(b)(2)(A); an order preventing the disobedient party from introducing certain documents, or supporting or opposing designated claims or defenses, <u>see</u> Rule 37(b)(2)(B); the entry of dismissal or default, <u>see</u> Rule 37(b)(2)(C); the striking of the pleadings of the offending party, <u>see</u> Rule 37(b)(2)(C); and the award of reasonable expenses, including attorney's fees, <u>see</u> Rule 37(b)(2). There is no indication in Rule 37 that this list of sanctions was intended to be exhaustive.

Based on the facts before the court, an order consistent with Rule 37(b)(2)(B) is appropriate. The court orders that, unless the plaintiff produces the requested document(s) in response to the undersigned's August 29, 2003 order within ten (10) days of the date of this order, the plaintiff shall be precluded from using such documents to support or oppose any of her claims or defenses at trial or otherwise in this action. To the extent that the defendant requests any sanctions in the alternative, those requests are denied.

II. <u>Plaintiff's motion for sanctions (doc. #90)</u>

Plaintiff's motion for sanctions is based on the assertion that "defendant has persistently and extensively engaged in abusive motion practice throughout the course of this litigation, which operates to acutely prejudice plaintiff." Plaintiff's statement is

5

based largely on her belief that defendant's current motion for sanctions (doc. #88) is "frivolous." In addition, plaintiff makes general claims that the defendant abused the discovery process by destroying evidence. As a result, plaintiff not only seeks monetary sanctions, but also "renews [her] motion for judgment against the Defendant, or, in the alternative, for a protective order."

The defendant's motion for sanctions was not frivolous. Therefore, the motion cannot be a basis to support an award of sanctions against the defendant. Turning to the assertion that defendant or defense counsel engaged in the destruction of documents, or otherwise abused the discovery process, the plaintiff has offered no evidence to support her conclusory allegation. For these reasons, the plaintiff's motion is unsupported, and her request for sanctions is denied.

III. Conclusion

Accordingly, defendant's motion for sanctions against plaintiff for failure to comply with a discovery order of the court (doc. #88) is GRANTED IN PART, DENIED IN PART, and plaintiff's motion for sanctions against defendant (doc. #90) is DENIED.

SO ORDERED at Hartford, Connecticut this 27th day of

September, 2004.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

Barbara R. Burns,

      Plaintiff

v.

David S. King,

      Defendant        3-02-CV-897 (RNC)

---

Barbara R. Burns, upon oath, deposes and says:

1. That I am the named Plaintiff in the above-entitled action.

2. That I make this affidavit in response to a September 27, 2004 order by Magistrate Donna N. Martinez, of which I have duly sought de novo review as provided and authorized by FRCP 72(b)(1)(B)(C).

3. That, in response to the directive set forth on Page 5 of the September 27, 2004 order, I hereby file, as Exhibits A-1 and A-2 to this Affidavit, a copy of the Good Standing Letter issued to me by Quinnipiac Dean Neil H. Cogan, over the objections of the Defendant, Associate Dean David S. King, on January 4, 2000, at which time Dean Cogan formally rejected the "financial good standing" argument that is the basis for the Defendant's defense to this litigation; and re-issued to me on May 25, 2000 by Dean Cogan, together with a pre-addressed envelope inscribed with the name and address of Dean Thomas Sullivan, University of Minnesota Law School with the instruction and expectation that I would use it in support of my 2000/2001 transfer application to the University of Minnesota Law School.

4. That, as stated, none of the Quinnipiac records, including, but not limited to, Exhibits A-1 and A-2, are, or have been, in my custody and/or control since May 2001, or in the custody and/or control of any agent of mine since approximately June 2002; and that, to comply with the discovery requests of the Defendant and certain orders by this court, I obtained Exhibit A, in addition to other responsive documents requested by the Defendant, from third parties, including, but not limited to, the University of Minnesota; and that the documents appended hereto as Exhibit A-1 and A-2 that I obtained from the University of Minnesota are the only responsive documents that are in my custody and/or control at this time.

DATED:    October 7, 2004            BY: 

Barbara R. Burns

Subscribed and sworn to before me.

DATED: 10/9/04                       BY:

NOTARY

JULIA A. SIGVERTSEN
Notary Public
Minnesota
My Commission Expires Jan. 31, 2005

A- 1

# Q

## QUINNIPIAC COLLEGE
## SCHOOL OF LAW

Office of the Dean

January 4, 2000

To Whom It May Concern:

By this letter, I am certifying that Barbara Burns is a student in good standing and eligible to take up to 11 course credits at another law school for credit toward a degree at Quinnipiac College School of Law, subject to achieving a grade of C or better at such other law school. I am certifying further that, in the alternative, she may register for the Spring 2000 semester at Quinnipiac College School of Law.

Credit for courses attended at Quinnipiac College School of Law or any other school of law are subject to a condition contained in a separate letter of this date.

Please inform Mrs. Judith Larsen, my assistant, at 203-287-3202, to which school you wish an original copy of this letter to be sent.

Sincerely yours,

Neil H. Cogan

275 Mount Carmel Avenue, Hamden, CT 06518-1950     Tel. 203-287-3200     Fax 203-287-3209



# QUINNIPIAC COLLEGE
## SCHOOL OF LAW

Office of the Dean

January 4, 2000

Dean Thomas Sullivan
University of Minnesota Law School
229 19th Avenue, SE
Minneapolis, MN 55487

Dear Dean Sullivan:

By this letter, I am certifying that Barbara Burns is a student in good standing and eligible to take up to 11 course credits at another law school for credit toward a degree at Quinnipiac College School of Law, subject to achieving a grade of C or better at such other law school. I am certifying further that, in the alternative, she may register for the Spring 2000 semester at Quinnipiac College School of Law.

Credit for courses attended at Quinnipiac College School of Law or any other school of law are subject to a condition contained in a separate letter of this date.

Sincerely yours,

Neil H. Cogan

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT



Barbara R. Burns,

        Plaintiff

v.

David S. King,

        Defendant              3--02-CV-897 (RNC)

---

## AFFIDAVIT OF KEVIN E. BURNS

Kevin E. Burns, upon oath, deposes and says:

1. That I have no financial or other interest in the above-referenced matter, and that I am a disinterested party to this action.

2. That I make this affidavit in response to statements contained in the September 27, 2004 order by United States Magistrate Donna N. Martinez, characterizing as "implausible" statements by Barbara Burns and by me that Plaintiff Barbara Burns' lost dominion of certain Quinnipiac University records stored at our jointly-owned property in Minnesota between the dates of June, 2002 and the present date.

3. That, in fact and as previously stated by affidavit filed and of record in this case, all of Barbara Burns' personal papers, including certain Quinnipiac records were boxed by Paul Wynes, the general contractor hired by Barbara Burns and me to supervise and manage structural repairs and renovations to our property between the dates of November, 2001 and June, 2003.

1

4.   That, among other jobs "subbed out" by Mr. Wynes was a $5,000 contract to Home Value Interiors, Inc., Bloomington, Minnesota to replace wall-to-wall carpeting of the entire first-floor of the house executed by and between me and Home Value Interiors, Inc. in the summer of 2002; and that, upon request by the court, I can and will produce the Home Value Interiors, Inc. contract, as well as invoices and other records created in the ordinary course of business, to support my statements herein.

5.   That, as I have previously averred by affidavit, Home Value Interiors, Inc. did not properly seal the sub-floor, resulting in an "air bubble" which required the carpet installation job to be re-done; that this necessitated a "rip up and re-install" of the entire carpet installation; and that, after several months of "wrangling" between Mr. Wynes and Home Value Interiors, Inc., the "rip and reinstall" was commenced sometime in early winter, 2003.

6.   That, throughout this time period, Barbara Burns was in residence in northern New Jersey due to the serious illness of her father, who underwent cardiac surgery at the Deborah Hospital in Trenton, NJ in late January, 2003, and who died of cardiac-related complications after a long illness, on July 1, 2003; and that, by agreement, I alone dealt with Mr. Wynes and the sub-contractors engaged by Mr. Wynes, including Home Value Interiors, Inc., at all relevant times.

7.   That, in preparation for the "rip up and re-install" negotiated by Mr. Wynes with Home Value Interiors, Inc., I authorized Mr. Wynes to box and place in storage all of the personal property situated on the first floor of the house, including, but not limited to, Barbara Burns' personal papers stored in the office area off the

2

kitchen; that I did not consult Barbara Burns about this storage arrangement in advance or at any time thereafter; that I did not obtain her agreement prior to authorizing Mr. Wynes to box and store these items; and that, consequently, Barbara Burns had no knowledge of the storage of the first-floor furniture and other personal property until approximately May, 2003.

8.    That I expressly instructed Mr. Wynes not to discard any legal or other personal papers; that I obtained his assurances that he did not; and that, consequently, it is my good-faith belief that the Quinnipiac records pertinent to this litigation must be among the materials boxed and stored by Mr. Wynes, but which, despite a good-faith effort, have, to date, not been found.

9.    That I make this affidavit to establish that, as the person who authorized a third party to box and store these records without consultation with Barbara Burns, I am the responsible party with respect to any prejudice claimed by the opposing party as a consequence of Barbara Burns' inability to produce pertinent Quinnipiac records that, to my first-hand knowledge, she has neither seen nor possessed at any relevant time.

10.    That, in consideration of the above-stated facts which I know and can prove as true, I do not believe that Barbara Burns should be penalized for a decision and action made and taken unilaterally by me, without consultation with her and without her knowledge or approval; and that, to conclusively establish the truthfulness of my testimony, I am willing to be polygraphed, and/or to submit to direct examination, under oath, by United States District Court Judge Robert N. Chatigny.

11. That the statements of fact contained herein are true, to the best of my

knowledge, and, as to statements of opinion and belief, I believe that they are true.

DATED: _10/9/04_                    BY: _[signature]_

                                              Kevin E. Burns

Subscribed and sworn to before me.

DATED: _10|9|04_                    NOTARY PUBLIC-MINNESOTA

_[signature]_

_[notary seal]_
TIANA WILSON
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2007

4

CERTIFICATION OF SERVICE BY MAIL

Barbara R. Burns, upon oath, deposes and says that I placed in an envelope, first-class postage prepaid and addressed to the parties named below Plaintiff's Motion and Memorandum In Support of Rule 72 (b) De Novo Review of the September 29, 2004 Order of Magistrate Donna N. Martinez; the Affidavit of Kevin Burns; and the Affidavit of Barbara R. Burns, including Exhibits A-1- and A-2, and that the same was deposited in a U.S. Postal Box at St. Paul, Ramsey County, Minnesota.

PARTIES SERVED:

Kevin F. Rowe
Clerk, U.S. District Court
450 Main Street
Hartford, CT 06301

Matthew G. Conway
Conway and Stoughton
201 Ann Street
Hartford, CT 06301

DATED: October 7, 2004          BY: _Barbara R. Burns_

Barbara R. Burns