UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Barbara R. Burns | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | NO: 302CV 00897(RNC) |
| V. | : | |
| | : | |
| David S. King | : | November 12, 2004 |
|     Defendant | : | |

FILED 2004 NOV 15 A 11:48 U.S. DISTRICT COURT HARTFORD

## PLAINTIFF'S COMPLIANCE WITH STANDING ORDER

## REGARDING TRIAL MEMORANDUM

The Plaintiff, Barbara R. Burns, ("Burns"), pursuant to the court's September 30, 2004 scheduling order and the Federal Rules of Civil Procedure and the Connecticut Local Rules hereby files Plaintiff's Trial Memorandum, a copy of which was simultaneously sent to Defendant's counsel via United States first-class mail and via electronic mail.

### 1. Trial Counsel

a. This action was filed on Plaintiff's behalf by Connecticut Attorney Earle Giovaniello in affiliation with Plaintiff. Attorney Giovaniello is principally a transactional attorney who represented Plaintiff in a related matter involving procurement of Plaintiff's academic records from Quinnipiac University, Defendant's employer. Plaintiff anticipates that Plaintiff will affiliate with a Connecticut trial attorney for trial in this matter. Plaintiff herein certifies Plaintiff's trial co-counsel as undeclared as of November 12, 2004

b. For defendant:
Matthew G. Conway
Fed. Bar No Ct09612
Conway & Stougton, LLP
201 Ann Street
Hartford, CT 06103
(860) 525-5529

1

## 2. Jurisdiction

Diversity and Federal Question Jurisdiction, Arising Under the federal Family and Educational Rights and Privacy Act (FERPA) and applicable federal statute governing disbursement of Title IV student loan proceeds; and the federal Fair Debt Collection Practices Act and the Federal Fair Credit Reporting Act, as amended, with pendant jurisdiction to enforce the Minnesota Consumer Fraud Act and common-law defamation and other tort claims.

## 3. Jury-Nonjury

Jury

## 4. Nature of Case

Plaintiff asserts breach of contract, defamation, intentional and negligent infliction of emotional distress, tortuous interference with prospective contractual relations and economic advantage and willful violation of the federal Family Educational Rights and Privacy Act (FERPA), as set forth with particularity by Plaintiff's Complaint, filed by Connecticut Attorney Earle Giovaniello on May 24, 2002 and never modified. To Defendant's knowledge, Plaintiff seeks equitable relief, and money damages in an amount exceeding $100,000, including actual damages, special damages, consequential damages, punitive damages, and costs, including an award of attorneys' fees.

## 5. Stipulations of Fact and Law

a. Stipulations of fact: The parties have stipulated that (1) Defendant never served as Dean of Quinnipiac University at any time relevant to this lawsuit; (2) Defendant was subject to the directives and policy determinations of Neil H. Cogan at all times relevant to this lawsuit; (3) Defendant at various times issued Letters of Good Standing to Plaintiff and other students at times when Plaintiff and other students were known to have student account balances; (4) Plaintiff had successfully completed all academic requirements for advancement to second-year law student status, at which time Plaintiff sought transfer certification from Dean Cogan; (5) Defendant, as the responsible Quinnipiac institutional executive, acknowledged Plaintiff's FERPA request for production of academic records in approximately May, 2000, at which time and for 45 days thereafter Plaintiff was domiciled in Florence, Italy; and (6) by Defendant's account, the May 25, 2000 Good Standing certification issue to Plaintiff by Dean Neil Cogan, superceding Defendant's May 24, 2000 certification to Dean Thomas Sullivan, was memorialized by the computer archives of Defendant's employer, Quinnipiac University. [1]

b. Stipulations of Law: The parties have stipulated that (1) the Family Educational Rights and Privacy Act required Defendant, as the responsible institutional executive, to produce requested academic records to Plaintiff within 45 days of Plaintiff's written demand, which Defendant has acknowledged was made in approximately May, 2000; (2) Plaintiff at all relevant times was a legal resident and domiciliary of the State of Minnesota; and (3) the United States District Court

---

[1] The referenced factual stipulations are derived from Defendant's Deposition, Dated February 7, 2003, which Defendant has adopted as his testimony and by Defendant's pleadings, filed in this case.

for the District of Connecticut, sitting in diversity, is bound by the substantive law of the State of Minnesota.[2]

### 6. Plaintiff's Claims

Plaintiff's Complaint against the Defendant asserts a colorable federal-question claim arising under the federal Family Educational Rights and Privacy Act (FERPA), in addition to making out prima facie claims for violations of both federal and Minnesota state consumer laws, which, according to interpretive case law and expressly stated legislative intent, are to be "liberally" and broadly construed so as to fulfill their stated remedial purpose.

Plaintiff has further set forth in her Complaint, which has never been modified, a host of common-law tort claims for actual, special, consequential, and punitive damages under a variety of cognizable legal theories, including, but not limited to, breach of express contract, breach of implied contract, breach of an implied covenant of good faith and fair dealing, intentional and negligent infliction of emotional distress, defamation, and tortuous interference with prospective economic advantage and prospective contractual relations.

Plaintiff notes that to the extent that Defendant has chosen to characterize Plaintiff as pro se, Plaintiff's pleadings must be "liberally construed" regardless of how inarticulately and inexpertly Plaintiff's claims are drawn, even to the point that Plaintiff has misconceived or mischaracterized her claims.

Plaintiff asserts that Defendant willfully and maliciously made a derogatory statement regarding Plaintiff's standing for transfer purposes that Defendant's superior, Dean Cogan, had formally ruled was inaccurate and invalid and of which Dean Cogan had formally so notified Defendant and his direct reports; that Defendant did so, and at the same time, withheld academic records in violation of FERPA, with the intent to thwart Plaintiff's transfer application to a high-rated ABA law school; that Defendant, by his deliberate and intentional act in publicizing information known to be inaccurate and subject to negative interpretation, forfeited qualified privilege; and, by impugning Plaintiff's professional reputation and honesty, was defamatory per se.

### 7. Defendant's Contentions

Defendant has no defense to Plaintiff's claims because, regardless of what Defendant and/or other Quinnipiac employees may have contended, Dean Neil Cogan made and communicated a policy that an actual or alleged student account balance did not operate to forfeit a Quinnipiac student's good standing status; and any differing opinions by lower-ranking Quinnipiac employees, including the Defendant as Associate Dean, were insufficient to terminate Cogan's apparent and actual [3] authority. Plaintiff further notes that (1) Defendant, by his own account, did not conduct a reasonable inquiry into the representations of the bursar's office, which had previously been demonstrated as unreliable; and (2) Defendant has admitted that he has been

---

[2] See Footnote 1.
[3] See King Deposition, stating that Cogan was responsible for formulating and implementing law school policies and that King and his direct reports, including Mary Ellen Durso, "work for the Dean."

3

sued by other Quinnipiac students with respect to his performance of his duties as AssociateDean, Quinnipiac University. [4]

## 8. Legal Issues

**a) Choice of Law:**

As Attorney Earle Giovaniello, in advising Plaintiff, corrected adduced, Defendant committed multi-state defamation by publishing a statement that was defamatory per se regarding Plaintiff to third parties, including but not limited to, Dean Thomas Sullivan, Dean, University of Minnesota Law School, Minneapolis, MN on May 24, 2000 via confirmed facsimile transmission, a form of telephone communication. At that time, and at all times relevant to this action, Plaintiff was, and is, a legal resident and domiciliary of the state of Minnesota. In an action for defamation by multi-state publication, this court has recognized that the substantive law of the plaintiff's domicile governs. See <u>Hazlitt v. Fawcett Publications,</u> 116 F.Supp. 538, 539(D.Conn.1953). A person's "domicile" is that where he or she maintains a permanent abode, with intent to return when absent therefrom. That permanent place of abode, to which Plaintiff intended and has consistently always returned when absent therefrom, by both Plaintiff's declaration [5] and the determination of Minnesota state authorities, is Minnesota.

Since Plaintiff at the time the defamatory statement was published on May 24, 2000; the time of the filing of the action on May 24, 2002; and the present time, was and is unquestionably a domiciliary of the state of Minnesota [6], the United States District Court for the District of Connecticut is bound by Minnesota substantive law. Procedural issues would be governed by the law of the forum state, Connecticut.

Plaintiff is constrained—as is the court—to reject out of hand Defendant's "Court I/Count II defamation claim dichotomy because, clearly, Plaintiff has asserted a single defamation claim which arises from the same nucleus of operative fact. By the standard applicable to federal rules of pleading, Plaintiff has asserted a single defamation claim.

---

[4] See King Deposition, filed with the court.
[5] Plaintiff has never claimed New Jersey as her domicile and has consistently and formally objected to Defendant's attempts to do so.
[6] Plaintiff holds a Minnesota driver license, a Minnesota car registration, a Minnesota professional license; and has continuously, since 1993, been a subscriber to a Minnesota state-sponsored health insurance plan limited by statute to Minnesota residents; in August 1999, the Minnesota Department of Human Services formally upheld Plaintiff's Minnesota citizenship, stating that Plaintiff's attendance at Quinnipiac School of Law in Hamden, CT, necessitating extensive residency outside the state of Minnesota, did not forfeit Plaintiff's Minnesota domicile and attendant citizenship privileges thereof, including Plaintiff's eligibility for state-sponsored health insurance.

### b) Defamation – Minnesota Substantive Law

- Did Defendant know, or should Defendant reasonably have known that his statements regarding Plaintiff's status were untrue at the time he published his statement to Dean Thomas Sullivan and other persons on or about May 24, 2000?

As a matter of law, given Dean Cogan's policy determination that account status does not preclude Good Standing certification, are Defendant's beliefs and opinions to the contrary relevant? And, taking into account, Dean Cogan's policy directive to Defendant in January 2000, were Defendant's statements to the contrary in May 2000, in fact true?

Has Defendant met his burden that Defendant could and/or did overcome the presumption of Dean Cogan's actual and apparent authority?

As a matter of fact, did Defendant's statement to Dean Sullivan and other third parties damage Plaintiff's reputation for honesty and fitness to practice the law? If yes, is Plaintiff required to prove damages?

As a matter of fact, did Defendant act willfully and with malice in misrepresenting, Plaintiff's academic performance, fitness, and standing within Quinnipiac University School of Law to third parties? If yes, did Defendant, by his willful and malicious acts, forfeit any entitlement to qualified privilege?

Were Defendant's statements regarding Plaintiff's alleged indebtedness published, upon an improper motive and for an improper purpose, to third parties without a need to know?

As a matter of fact, did Defendant take any steps to correct any misapprehension on the part of Dean Sullivan and/or other third parties as to Plaintiff's eligibility for transfer, based upon the eligibility criteria of the transferee institutions?

### c) Other Claims– Minnesota Law

Has Plaintiff met her burden in satisfying the elements of the claims set forth in Plaintiff's Complaint and to which Defendant has pled no affirmative defense?

### 9. Voir Dire Questions

- Do you or anyone in your family/close friends know the plaintiff, Barbara Burns?
- Do you or anyone in your family/close friends know the defendant, David S. King?
- Have you or anyone in your family/close friends ever attended Quinnipiac University?
- Have you or anyone in your family/close friends ever been employed by Quinnipiac University or any other university or college?
  Have you, or anyone with whom you are acquainted, sued Quinnipiac University?
- Is there any reason why you do not think you could be fair to both parties in this case?

### 10. List of Witnesses

a) Plaintiff's Witnesses:

1.      Defendant David S. King

       Quinnipiac University School of Law
       275 Mount Caramel Avenue
       Hamden, CT 06518-1908

      This witness is expected to testify as to his dealings with the plaintiff since the time of her enrollment with the University, including the circumstances surrounding her visiting at other schools and his issuance of Good Standing certifications under conditions identical to those presented by this litigation; his admitted lack of familiarity with records maintained by the Quinnipiac Bursar and/or Financial Aid office [7]; and his lack of discretion to amend policy determinations made by the Dean of the Law School. Estimated total time needed for testimony is two days.

2.     Barbara Burns
       13684 Harmony Way
       Apple Valley, Minnesota

      The plaintiff is expected to testify as to her allegations against the defendant and her alleged injuries. Estimated total time needed for testimony is one day.

3.     Ann Traverso
       Director of Financial Aid
       Quinnipiac University School of Law
       275 Mount Caramel Avenue
       Hamden, CT 06518-1908

      This witness is expected to testify as to communications between Traverso and the plaintiff regarding "cross-over enrollment" rules proscribed by Title IV with respect to institutional receiving Title IV funds, including, but not limited, Traverso's telephone call to a friend of Traverso's in New York regarding the friend's opinion as to whether Traverso should or should not disburse cross-over funds to Plaintiff, which determination by an FAA of another institution is not relevant or binding upon Plaintiff or Quinnipiac University; and the perjured testimony contained in Traverso's affidavit filed in this case, in which Traverso represented that Plaintiff rejected a financial aid check, which, by the certification and business records of the disbursing bank, Plaintiff endorsed and cashed in November 1999. Estimated time of testimony: one day.

4.     Mary Ellen Durso
       Law School Registrar
       Quinnipiac University School of Law
       275 Mount Caramel Avenue

---

[7] See, King Deposition, February 7, 2003, in which Defendant repeatedly refused to answer Plaintiff's questions regarding Financial Aid office and Bursar Office records and policies, stating that he didn't "work there" and "knew nothing about it" or words of that substance and meaning.

Hamden, CT 06518-1908

This witness is expected to testify that she works as a direct report to the Defendant, David S. King; that, upon Dean Cogan's orders, she repeatedly and on numerous occasions issued Good Standing Letters, transcripts and other certifications by fax and other means, notwithstanding that Plaintiff and other Quinnipiac students did or did not have account balances; that, to her first-hand knowledge, Defendant was formally overruled by Dean Cogan as to his alleged indebtedness/Good Standing analysis in December 1999 and January 2000, and at other times between January 2000 and May 2000; that she has represented herself as an expert with regard to federal and state law governing academic records access to Plaintiff and others; and that, to her first-hand knowledge, she as Records Custodian, received FERPA requests from Plaintiff at various times between May 2000 and November 2002, to which she, as institutional records custodian, failed to respond within the 45 day period specified by FERPA. Estimated time for testimony: 5 hours.

4. Neil H. Cogan
   Whittier School of Law
   Whittier, CA

This witness is expected to testify that he held the office of Dean, Quinnipiac School of Law under contract at all times relevant to this lawsuit and did not leave the office of Dean until July 1, 2000; that at various times during 1999 and 2000, he utilized his discretion and authority as Dean to overrule certain determinations by Defendant regarding issuance of transcripts and other certifications with regard to Plaintiff and other students; that he issued a Good Standing Letter over his own signature, which he copied to Defendant, in January 2000, which he re-issued, accompanied by an envelope pre-addressed and pre-stamped to Dean Thomas Sullivan on May 25, 2000; that, by his certification as Dean, Plaintiff achieved second-year status as of January 2000; and that he pledged to Plaintiff in January 2000 and subsequently that he would assist Plaintiff with her transfer process. Estimated time for testimony: 1 day.

Plaintiff reserves the right to call Quinnipiac University personnel, whose testimony Defendant has represented he is familiar; Jonas Zdonys, Department of Education, State of Connecticut; and, possibly, a U.S. Department of Education representative and/or a representative of Firstar Bank, if necessary, to impeach Anne Traverso. Plaintiff hereby advises the availability of "expert" witnesses consisting of those named in Plaintiff's deposition in the unlikely event that Plaintiff is required to prove actual damages.

Director of Information Technology
Quinnipiac University
875 Mt. Carmel
Hamden, CT 06301

This witness will give expert testimony regard the storage and retrieval capabilities of Quinnipiac University electronic data processing and information technology systems.

## 11. Exhibits

The Plaintiff reserves the right to amend the following exhibit list to include documents in the possession of the Defendant but not yet produced by the Defendant, along with any additional documents made pertinent by Defendant's production. The disputed discovery items are subject to a motion to compel currently before the Court.

1. Deposition Transcript of David S. King Dated February 7, 2003
2. Deposition Transcript of Neil H. Cogan, Not Yet Taken
3. Quinnpiac University Academic and Other Academic Records Regarding Plaintiff
4. Academic References Given to Plaintiff by Quinnipiac and University of Minnesota Law Professors and Other Faculty (5)
5. Plaintiff's Professional Credentials and Licenses (3)
6. Plaintiff's Academic Honors, including Plaintiff's Appointment to Sigma Iota Epsilon, a national academic honor society for graduates of MBA programs who earn GPAs of 3.75 or higher (3)
7. Letters of Good Standing Issued to Plaintiff by David S. King
8. Letters of Good Standing Issued to Plaintiff by Neil H. Cogan

## 12. Deposition Testimony

Neil H. Cogan

## 13. Requests for Jury Instructions

See attached Requests to Charge

## 14. Anticipated Evidentiary Problems

The Plaintiff anticipates that much of the Defendants's evidence will be based on inadmissible hearsay, including, but not limited to hearsay conversations and writings in which Defendant has alleged that Dean Cogan changed Dean Cogan's policy determination set forth by Dean Cogan's Good Standing certifications to Plaintiff dated January 4 , 2000 and May 25, 2000, and will object accordingly during trial.

 Plaintiff further notices Plaintiff's intent to move to suppress any defense by Defendant with regard to the computer records cited by Defendant in his deposition, which by Defendant's account conclusively prove that Dean Cogan issued a Good Standing Letter to Dean Thomas Sullivan on May 25, 2000. Plaintiff has demanded these discoverable records, beginning in February, 2003. Defendant has repeatedly refused to produce said record and has even attempted to recant Defendant's testimony as to the existence of the records, stating, following Plaintiff's

demand for production, that said records do not exist. Plaintiff notes that a formal and timely Motion to Compel was filed by Plaintiff in approximately March 2003.

Finally, Plaintiff herein notices Plaintiff's First Motion in Limine, in which Plaintiff moves to suppress the evidentiary materials submitted by Defendant relating to the issue of alleged financial indebtedness. As both Attorney Giovaniello and Plaintiff have commented, Plaintiff's good standing status is contingent upon the discretionary determinations of Dean Neil Cogan, not Defendant. Since Dean Cogan formally overruled Defendant's assertion that good standing status at Quinnipiac University is not contingent upon the status of a student's financial account with the University, Defendant's "evidence" that Plaintiff did or did not have an outstanding balance is not legally relevant.

## 15. Proposed Findings and Conclusions

### a. Proposed findings of fact:

1. That at various times during 1999 and 2000, Barbara Burns was a student at Quinnipiac University School of Law
2. That Barbara Burns fulfilled all academic requirements for attainment of second-year standing, by the determination of Dean Neil Cogan.
3. That Dean Cogan served as Dean of Quinnipiac School of Law and as Defendant's direct supervisor at all relevant times.
4. That Cogan's policy determinations were at all relevant times binding upon Defendant and his staff.
5. That at various times between November, 1999 and May 2000, Cogan overruled Good Standing certifications made by Defendant with respect to Plaintiff, and issued several Good Standing Letters, copies of which were provided to Defendant, the last one of which was personally addressed to Dean Thomas Sullivan and word-processed by Dean Cogan's personal assistant, Mrs. Judith Larson, on May 25, 2000, following a meeting between Plaintiff and Cogan.
6. That Defendant himself issued a Good Standing Letter to Plaintiff at a time when Plaintiff was known to have an account balance in excess of $3000 in approximately August, 1999 and that, by Defendant's own testimony in deposition, there is no institutional policy that prevented Defendant from doing so.

### b. Proposed Conclusions of Law:

a. Plaintiff's Claim - Defamation

(1) The court should conclude that, by willfully violating applicable statutory requirements mandating academic records access, and by willfully disregarding the instructions of a higher-ranking official who was Defendant's supervisor and publishing defamatory statements to persons without a legitimate need to know, Defendant has forfeited qualified privilege and/or that qualified privilege does not apply.

(2) Under Minnesota substantive law, a statement is defamatory per se if it lowers the estimation of the Plaintiff in the eyes of others within his or her community. When defamation is per se, actual damages need not be proved. In this case, King represented falsely to a third party, Sullivan, a domiciliary of the state of Minnesota, that Plaintiff did not meet good standing criteria for transfer purposes. The statement was false; by certification that post-dated King's defamatory statement, Plaintiff did meet the criteria for transfer certification, which does not encompass financial indebtedness by Dean Cogan's certification. Defendant's "substantial truth" argument fails because Cogan made a conclusive policy determination when he overruled Defendant's financial-indebtedness argument; thus, Defendant's proposed defense was absolutely and categorically foreclosed by a higher-ranking institutional official who was, by Defendant's own account, his direct supervisor. Consequently, Defendant's subsequent attempt to invoke the overruled and discredited "financial indebtedness" rationale was not "feasible" or even reasonable. In fact, no person who has been apprised of all operative facts has ever adopted Defendant's convoluted and contrived position statement.[8]

Defendant additionally represented to Sullivan that Plaintiff falsified the Cogan Good Standing certification, impugning Plaintiff's honesty and integrity and causing University of Minnesota Law School personnel and others to doubt Plaintiff's integrity and honesty. In fact, Plaintiff did not misrepresent Cogan's certification to anyone and did nothing more than deliver the certification that Cogan prepared, contained within an envelope that Cogan addressed personally to Sullivan.

By Defendant's own analysis, the court should conclude as a matter of law that any statement by the defendant that the plaintiff was "not in good standing" does meet the legal standard defining per se defamation because the statement does charge improper, i.e., financial irresponsible conduct.[9] Defendant has also attempted to state that Plaintiff's academic performance was inadequate, when, in fact, Quinnipiac University failed to transcript all coursework completed by Plaintiff, which coursework qualified for transfer credit and should have been included in calculated Plaintiff's Quinnipiac GPA. Finally, Defendant impugned Plaintiff's honesty by stating that Plaintiff falsely procured and/or communicating the Cogan certification, when, in fact, Plaintiff obtained the certification honestly and presented it to third parties to whom Cogan intended as the recipients, in perfect conformity with Cogan's instructions, and with his knowledge and approval.

---

[8] **Various law school administrators, including the University of Connecticut School of Law, where Plaintiff earned a grade of B+ in an advanced course, Uniform Commercial Code, have all accepted the Cogan Good Standing Letter that Defendant has attempted to discredit. The court may further infer that no reasonable person could conclude that an act of insubordination by an employee who was expressly told by his supervisor that his rationale was incorrect and would not have prospective application, could be a "supportable interpretation." Since Defendant, by his own admission, must obey Cogan's policy determinations, no other interpretation of that specific policy can be deemed to exist.**
[9] See King Deposition, February 7, 2003, stating that financial mismanagement or irresponsibility reflects poorly upon the ability to practice the law.

10

Thus, the Court should conclude, as a matter of law, that Defendant's disregard of Dean Cogan's written directives, which were not misunderstood by any person other than Defendant, does not constitute and cannot constitute a "supportable interpretation." Consequently, the Defendant's statements were not true or substantially true, were published to third parties without a need to know; damaged Plaintiff's reputation for honesty, integrity, and overall fitness to practice the law in the eyes of persons within Plaintiff's Minnesota community. As a matter, Defendant's statements were defamatory per se by the standard imposed under Minnesota law, which recognizes the doctrine of compelled self-defamation. Lewis v. Equitable Life Assur. Soc., 389 N.W.2d 876, 889 (Minn. 1986).

> (2) The Court should also conclude that the defendant's statements were, as a matter of law, not subject to a qualified privilege. Defendant willfully disobeyed a directive by a high-ranking University official who was Defendant's direct supervisor. Defendant published irrelevant, false and damaging information to third parties, namely Sullivan and others, without a need to know and who have been established to be indifferent to Quinnipiac University's accounts receivable management issues.

Plaintiff further notes that, even if Defendant's financial indebtedness rationale had not been overruled by Cogan, which it was, and even if it was relevant, which it isn't, Plaintiff has brought forth credible evidence that Defendant and certain of his colleagues contributed significantly to delays and other factors which caused Plaintiff's account to register an outstanding balance when, in fact, this should not have been the case. Consequently, the court should find that Defendant's equitable defenses are barred by the doctrine of unclean hands.

Defendant's actions were willful and malicious, and were published for no other purpose than to thwart Plaintiff's transfer application. He published false and derogatory statements and innuendo to third parties without a legitimate need to know and in blatant disregard of the policy determination of a superior who overruled him as to this precise issue as applied specifically to the Plaintiff. The court must find that, as a matter of law, Defendant has forfeited qualified privilege.

## 16. Trial Time
5-7 days

## 17. Further Proceedings
At present time, the following briefs and motions have been filed by the Plaintiff in this case, but have not yet been ruled upon by the court:

• Plaintiff's Rule 72(b) Motion for De Novo Review

**18. Election for Trial by Magistrate**
The parties have not agreed to have the case tried by a United States Magistrate.

**19. Verdict Form**
See attached

DATED: November 12, 2004            BY: *[signature]*

**Barbara R. Burns**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Barbara R. Burns | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | NO: 302CV 00897(RNC) |
| V. | : | |
| | : | |
| David S. King | : | November 12, 2004 |
|     Defendant | : | |

## PLAINTIFF'S PROPOSED JURY INTERROGATORIES AND VERDICT FORMS

### JURY INTERROGATORIES
**Plaintiff's Claims**

A. Plaintiff's claim that the defendant communicated defamatory words, orally and in writing, about her to third parties which impugned Plaintiff's honesty, integrity and fitness to practice the law, and which tended to lower the estimation of Plaintiff in the eyes of persons in her community.

**Absolute defense - Truth**

1. Do you find that Defendant's statement that Plaintiff in any way misrepresented the Good Standing Letter given to Plaintiff by Dean Neil Cogan for transmittal to Dean Thomas Sullivan was not true?

    Yes_____    No_____

2. Do you find, as a matter of fact, that, at various times between November, 1999 and May, 2000, Dean Neil Cogan, Defendant's direct supervisor, reviewed and overruled Defendant as to Defendant's conclusion that alleged financial indebtedness precluded certification of Good Standing status?

    Yes          No.

3. If your answer to Question #2 is "yes", is Defendant's statement to Dean Thomas Sullivan that Plaintiff was not in good standing as of May 24, 2000 not true?

    Yes          No

If you answer "yes" to this question, then you must return a verdict for the Plaintiff as to the non-availability of the defense of truth to Plaintiff's defamation claim.

**Elements of a Defamation Claim - Minnesota**

1. Do you find, as a matter of fact, that Defendant published to Dean Thomas Sullivan the fact that Plaintiff was not in good standing and that Plaintiff misrepresented or might misrepresent a Good Standing certification issued by Dean Neil Cogan via confirmed facsimile transmission on or about May 24, 2000?

Yes_____    No_____

2. Do you find, as a matter of fact, that Defendant's statements impugned Plaintiff's reputation for honesty and/or Plaintiff's personal integrity and/or Plaintiff's fitness to practice the law and caused estimation of Plaintiff to be lowered in the eyes of the recipients of Defendant's communications?

Yes_____    No_____

3. Do you find that Plaintiff was damaged as a result of Defendant's publication?

Yes_____    No_____

If you answered "yes" to these questions, then you must return a verdict for the Plaintiff.

**Qualified Privilege**

If you have answered "yes" to all three, and the Judge has determined that the defendant's statement was not subject to a qualified privilege, then you must return a verdict in favor of the plaintiff as to Plaintiff's claim for defamation.

However, if you answered yes to all three above, and the Judge has determined that the defendant's statement was subject to a qualified privilege, then you must answer the following question:

4. Do you find that Defendant's statements were willful and do you find that Defendant's statements were published to third parties without a legitimate need to know the facts of Plaintiff's actual or alleged financial dealings with Quinnipiac University.
Yes_____    No_____

If you answer "yes" to this question, then you must return a verdict for the Plaintiff.

**Damages**

What amount of damages do find that the plaintiff is entitled to as a result of the defendant's conduct?

$_____

## PLAINTIFF's VERDICT FORM

We the jury find the issues in this case in favor of the Plaintiff, Barbara Burns. We order the Defendant to pay compensatory damages to the Plaintiff in the amount of $_____ .

We further order the Defendant to pay special and consequential damages to the Plaintiff in the amount of $_____ and punitive damage in the amount of $_____ .

_____
Jury Foreperson


## PLAINTIFF'S VERDICT FORM

We the jury find the issues in this case in favor of the plaintiff and find damages in the amount of $_____ .

_____
Jury Foreperson