UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

Barbara R. Burns, et al

    Plaintiff        Case No.03-CV-897(RNC).

v.

David S. King,

    Defendant

PLAINTIFF'S MEMORANDUM

IN SUPPORT OF VIDEO TESTIMONY

OF NEIL H. COGAN

---

As directed by the December 6, 2004 order of this court, Plaintiff hereby submits this Memorandum in Support of Plaintiff's Noticed Video Testimony of Neil H. Cogan, as set forth infra.

OPERATIVE FACTS AND RELEVANT PROCEDURAL HISTORY

This matter is set for trial on January 11, 2004. Prior to the final pre-trial conference and well in advance of the ten-day notice period proscribed by the Second Circuit with respect to video conference testimony and argument, Plaintiff duly notified the court that Plaintiff proposed to preserve the trial testimony of a key witness, Neil H. Cogan "Cogan") via remote video conference transcription.[1]

---

[1] Plaintiff sought and obtained the approval of videoconference technicians in both the Santa Ana, CA and Hartford, CT federal courthouses that videoconference was feasible to preserve the testimony of Neil Cogan, a resident of Costa Mesa, CA.

As a preliminary matter, Plaintiff notes that, by letter dated on or about June 1, 2004, Cogan, presently a resident of California, stated that he would voluntarily submit to any order by this court directing him to give testimony in this matter. [2] Plaintiff had earlier noticed Cogan's deposition prior to the close of the discovery period on May 30, 2003 when it became clear that the Defendant would not produce email correspondence between the Defendant and Cogan to which Defendant testified at deposition on February 7, 2003. [3]

It is further expressly noted that, had Defendant produced the email to Plaintiff, as he was required to do on or before March 7, 2003, there would have been no need for a Cogan deposition. Thus, Defendant created the necessity of the procuring Cogan's testimony by withholding the discoverable email and other archived computer records, the unavailability of which was not communicated to Plaintiff until April 1, 2003.

Throughout this period, Plaintiff's father was seriously ill and, in fact, died on the weekend that the Cogan deposition was scheduled. Plaintiff timely moved for extension of the discovery period for 30 days, upon good cause shown. Plaintiff notes that another court of the Second Federal Circuit granted a similar extension requested by Plaintiff, based upon these same facts. Plaintiff is further constrained to note that the Defendant was granted a thirty-day extension in January 2003, to accommodate Defendant's attendance at the memorial service of a colleague who was not a relative, much less a close relative, of Defendant.

---

[2] Plaintiff was further told that, even in Cogan had not voluntarily submitted to the jurisdiction of this court, which Cogan has done, Cogan's testimony in these proceedings could be compelled by the issuance of an order by this court, stating that Cogan's testimony was integral to the case at bar and that such orders are routinely issued to obtain necessary and relevant testimony by out-of-state witnesses.

[3] Plaintiff demanded the email, upon which Defendant said in deposition he would rely, on February 8, 2003. On or about April 1, 2003, defense counsel responded to Plaintiff's Supplemental Interrogatory, served on February 8, 2003, by stating that, by the unsupported account of Defendant's secretary, the email could not be found.

In support of her motion for extension, Plaintiff duly submitted pertinent decisional authority, evidencing the determination of 2nd Circuit and the 8th Circuit appellate courts that a pro se plaintiff should always be granted extension of discovery in compelling circumstances, particularly in a case such as this one where the requested discovery is limited and is based upon the failure of the opposing party to provide other discoverable evidence that would obviate the necessity for the extension. [4] The circuit courts have further held that such latitude is appropriate *even in cases where the pro se party does not move the court for extension until long after the discovery period has expired, and/or when the necessity for the extension is necessitated by non-exigent circumstances, including, but not limited, to the pro se party's inexperience.*

Plaintiff also duly noted and preserved for appeal the refusal of Magistrate Donna Martinez to extend the discovery period. Plaintiff at this time renewed Plaintiff's earlier formal challenge to Magistrate Martinez' partiality, noting that the determination of whether pre-trial orders, including discovery orders, are tainted by judicial bias is one of law that an appellate court reviews de novo by an objective due-process standard and not a subjective abuse-of-discretion standard. At approximately this same time, Plaintiff

---

[4] The Advisory Committee Note to FRE 43(a) states in pertinent part that "justification is **particularly likely** (emphasis added) if the need arises from the interjection of new issues during trial or from the unexpected inability to present testimony as planned from a different witness." Here, Plaintiff reasonably expected that the Defendant would produce the email and other documentary evidence to which he testified at deposition in February 2003 and authenticate it, thereby obviating the necessity of Cogan's testimony. Defendant was clearly required to do so within 30 days of Plaintiff's Supplemental Request on February 8, 2003, if not before. Defendant chose to withhold the evidence and, to compound the inequity, did not tell Plaintiff that the computer data purportedly could not be "found" until April 1, 2003, almost 60 days later. Accordingly, Plaintiff's inability to present this testimony was clearly unexpected, as was Plaintiff's father's serious illness and death.

notified the court that Plaintiff wished to summon Neil Cogan via teleconference to testify at trial.

ARGUMENT

At the final pre-trial conference on December 6, 2004, this court raised, and directed Plaintiff to address, two issues: (1) the court's ability to obtain personal jurisdiction of Cogan, a California resident; and (2) the feasibility of video conference testimony at trial. Plaintiff will address each issue in turn:

A. *Jurisdiction*

As a preliminary matter, Plaintiff again notes that Cogan has voluntarily submitted to the jurisdiction of the United States District Court for the District of Connecticut. Specifically, Cogan has stated, in writing, that he will testify truthfully in response to any order [5] directing that he do so, issued by this court. Given that Cogan is the only party with standing to challenge this court's ability to obtain personal jurisdiction of him; and that Cogan is on record as stating that he waives any right that he might otherwise have to quash any subpoena or other order by this court on jurisdictional grounds, the issue of this court's ability to obtain jurisdiction of Cogan is a moot one.

Plaintiff further points that, even if Mr. Cogan had not voluntarily submitted to the jurisdiction of this court by stating that he will testify in response to an order by this court directing that he do so, which Cogan has done, this court could still

---

[5] It is Plaintiff's understanding, based upon discussions with Cogan, that the relationship between Neil Cogan and Quinnipiac University and its employees is governed by contract. Plaintiff has not seen the contract, but, based upon employment contracts to which Plaintiff has been a party, Plaintiff speculates that the contract likely contains a requirement that Cogan may not testify against Quinnipiac University and its employees in a legal proceeding unless compelled to do so by court order.

obtain personal jurisdiction of Mr. Cogan under the traditional "minimum contacts" analysis set forth in *International Shoe* [6] and its progeny.

*Minimum Contacts Analysis*

To survive a motion to dismiss for lack of personal jurisdiction, Plaintiff would have to make a prima facie showing that personal jurisdiction exists. See, e.g., Stevens v. Redwing, 146 F.3d 538, 543 (8th Circuit 1998). Because the Minnesota and Connecticut long-arm statutes extend jurisdiction to the outer limits permitted by the due process clause of the Constitution, the court would then assess whether the exercise of jurisdiction of Mr. Cogan conforms to due process requirements.

In such circumstances where due process considerations and jurisdictional nexus are congruent, the court <u>may</u> exercise jurisdiction of a non-resident who has certain "minimum contacts" with the states of Minnesota and Connecticut "such that the maintenance of (jurisdiction) does not offend traditional notions of fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts exist when the party's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Worldwide Volkswagon Co.v. Woodson*, 444 U.S. 286 297 (1980). Typically, the party must have "purposely availed himself of the privileges of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Here, Mr. Cogan was for many years, including, but not limited to, the historical period between January 1999 and July 1, 2000, a Connecticut law school dean. In that capacity, Mr. Cogan issued certifications to, among others, the dean of a

---

[6] International Shoe v. Washington, 326 U.S. 310, 316 (1945)

Minnesota law school regarding Plaintiff, a domiciliary of the states of Minnesota and New Jersey, that are directly at issue in this case. Upon information and belief, Mr. Cogan is also a member of the New York and Connecticut Bars, with a corresponding duty to comply with all directives of any court or other tribunal within the tri-state area of New York, New Jersey, and Connecticut.

In consideration of the above-stated facts, the United States District Court for the District of Connecticut clearly has and can obtain personal jurisdiction of Cogan upon issuance of an order [7], certifying that Cogan's testimony is necessary and relevant in a matter that arises as a direct result of Cogan's actions involving a Connecticut law school and a Minnesota resident domiciled at all relevant times in the tri-state area of New York, New Jersey, and Connecticut. Cogan himself has acknowledged this fact by voluntarily submitting to the jurisdiction of this court, stating that he will comply voluntarily with any order issued by this court and that, if asked to do so by this court, he will testify truthfully as to relevant events.

It is undisputed by all parties that, by the determination of both Plaintiff and Defendant, Cogan's testimony is highly probative as to the issue of the Defendant's "substantial truth" defense and, specifically, whether, as a matter of fact, there is such a concept as "financial good standing"; and whether, as a matter

---

[7] Plaintiff has researched the methodology used by both federal and state courts which routinely require and procure the testimony and/or appearance of out-of-state residents under similar circumstances. In such cases, the trial judge who is trying the case issues an order, containing a finding of fact that the testimony of an out-of-state resident is integral to an orderly and proper legal disposition of the case. The party who requires the out-of-state witness's appearance and testimony, in this case, the Plaintiff, files the order with a court of competent jurisdiction in the witness's state of domicile and moves that court for an order upholding the trial judge's finding that the witness is integral to a proper disposition of the case and that the witness's due process rights would not be violated by an order requiring the testimony. It is Plaintiff's understanding that such an order issues routinely, upon an ex parte application, even by state courts, e.g., a New Jersey court desiring the appearance of a New York witness, which are not part of a federal system.

of fact, the Defendant, an associate dean, who worked under Cogan, had the authority to devise and implement such a policy in the face of Cogan's acts between October 1999 and July 1, 2000 in overruling the Defendant, his subordinate, on at least three different occasions when the Defendant tried to do so. In these circumstances, the court may and should issue an appropriate order, finding that Cogan's testimony is integral to this case.

B. *Feasibility of and Authority for Videoconference Testimony*

Videotaped remote testimony is expressly addressed and authorized by FRCP 43 (a). The Hartford federal courthouse has been designated a Videoconference Site by the Second Circuit. In a publication, directed to both pro se parties and counsel, the Second Circuit advocates and extols the many benefits of videoconference technology and the ease of its implementation and usage.

The informational packet disseminated by the Second Circuit directs parties who wish to utilize videoconference technology for testimony or argument to notice such a request within ten days of the date the videoconference testimony is to be preserved and heard. The Second Circuit states further that, while judicial authorization is required, it is usually, if not almost always, granted.

In this case, Plaintiff has obtained confirmation by federal courts personnel responsible for videoconferencing in Hartford, CT and Santa Ana, CA, that there are no technological impediments to Plaintiff's proposed real-time, remote videotaped presentation of the testimony of Neil Cogan at trial, presently scheduled for January 11, 2005. The Hartford court has further advised Plaintiff that there have been instances of other, judicially-approved videoconferenced

testimony at trial, as well as oral argument in appeals involving Connecticut parties and counsel.

Attendant costs are minimal and would be solely borne by Plaintiff. Qualified videoconference technicians in both the Santa Ana federal court and the Hartford federal court have assured Plaintiff that, as set forth in the informational materials distributed by the Second Circuit, the process is "simple" and "quick". Thus, a videotaped remote real-time transmission of Cogan's trial testimony would burden neither the court or the opposing party, nor unduly delay the proceedings. Qualified persons have further assured Plaintiff that the quality of the witness' remote testimony is virtually indistinguishable from testimony given on-site, and that there are no impediments to an accurate stenographic and/or audio-taped record.

The court should further conclude that the opposing party, who has been aware for more than one year that Plaintiff would call and rely upon the testimony of Cogan, cannot establish prejudice from a videotaped cross-examination of Cogan. Indeed, Defendant himself has claimed, albeit implausibly, that Cogan supports Defendant's account of relevant events. On this basis, Defendant would presumably *benefit* from the appearance of Cogan, at Plaintiff's expense, at trial.

Additionally, given Defendant's consistently-stated litigation position, Defendant is, or should be, estopped from objecting to Cogan's trial testimony, however presented. Defendant is or should be bound by his testimony and by the legal position that he has consistently taken, and upon which Plaintiff has relied, throughout the three years that this case has been pending. Having consistently

taken the position, under oath, in deposition, and in discovery that (1) Cogan supports his account of relevant events; and (2) that there was archived email and other computer records that are clearly discoverable in this litigation and which Defendant has repeatedly refused to share with Plaintiff, he should not be permitted to register an untimely objection to Cogan's testimony at trial.

## CONCLUSION

In consideration of the foregoing facts and in consideration of the fact that other members of this court have permitted video-conference remote testimony at trial, this court should issue an appropriate order containing a factual finding that the testimony of Neil Cogan is integral to an orderly disposition of the merits of Plaintiff's claim; and also permit Plaintiff to record, preserve, and introduce the testimony of Neil Cogan by means of videoconference technology in regular and extensive use in this court as well as the United States Court of Appeals for the 2nd Circuit.

DATED: 12-09-04        BY: /s/ Barbara R. Burns

Barbara R. Burns