FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

2004 DEC 20 A 11: 30

U.S. DISTRICT COURT
HARTFORD, CT.

| | | |
|---|---|---|
| Barbara R. Burns | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | NO: 302CV 00897(RNC) |
| V. | : | |
| | : | |
| David S. King | : | December 17, 2004 |
| Defendant | : | |

### PLAINTIFF'S COMPLIANCE WITH PRETRIAL ORDER
### REGARDING FINAL TRIAL MEMORANDUM

The Plaintiff, Barbara R. Burns, ("Burns"), pursuant to the court's pre-trial order and the Federal Rules of Civil Procedure and the Connecticut Local Rules hereby files Plaintiff's Final Trial Memorandum, a copy of which is contemporaneously sent to Defendant's counsel via United States first-class mail and via electronic mail.

### 1. Trial Counsel

a. This action was filed on Plaintiff's behalf by Connecticut Attorney Earle Giovaniello in affiliation with Plaintiff. Attorney Giovaniello is principally a transactional attorney who represented Plaintiff in a related matter involving procurement of Plaintiff's academic records from Quinnipiac University, Defendant's employer. Plaintiff anticipates that Plaintiff will affiliate with a Connecticut trial attorney for trial in this matter. Plaintiff herein certifies Plaintiff's trial co-counsel as undeclared as of December 17, 2004.

b. For defendant:
Matthew G. Conway
Fed. Bar No Ct09612
Conway & Stougton, LLP
201 Ann Street
Hartford, CT 06103
(860) 525-5529

1

## 2. Jurisdiction

Diversity and federal-question jurisdiction arising under the federal Family and Educational Rights and Privacy Act (FERPA) and applicable federal statute governing disbursement of Title IV student loan proceeds; and the federal Fair Debt Collection Practices Act and the Federal Fair Credit Reporting Act, as amended, with pendant jurisdiction to enforce the Minnesota Consumer Fraud Act.

## 3. Jury-Nonjury

Jury

## 4. Nature of Case

Plaintiff asserts breach of contract, defamation, intentional and negligent infliction of emotional distress, tortuous interference with prospective contractual relations and economic advantage and willful violation of the federal Family Educational Rights and Privacy Act (FERPA), and other federal consumer statutes, as set forth with particularity by Plaintiff's Complaint, filed by Connecticut Attorney Earle Giovaniello on May 24, 2002 and never modified. To Defendant's knowledge, Plaintiff seeks equitable relief, and money damages in an amount exceeding $100,000, including actual damages, special damages, consequential damages, punitive damages, and costs, including an award of attorneys' fees.

## 5. Stipulations of Fact and Law

a. Stipulations of fact: The parties have stipulated that (1) Defendant never served as Dean of Quinnipiac University at any time relevant to this lawsuit; (2) Defendant was subject to the directives and policy determinations of Neil H. Cogan at all times relevant to this lawsuit; (3) Defendant at various times issued Letters of Good Standing to Plaintiff and other students at times when Plaintiff and other students were known to have student account balances; (4) Plaintiff had successfully completed all academic requirements for advancement to second-year law student status, at which time Plaintiff sought transfer certification from Dean Cogan and that Plaintiff's law school record consists of coursework completed by Plaintiff at Quinnipiac School of Law between the dates of January 4, 1999 and July 1, 2000; and, as a Visiting Student pursuant to the Letters of Good Standing issued by Quinnipiac University and signed by Phyllis Andreas, the Defendant, and Dean Neil H. Cogan; (5) Defendant, as the responsible Quinnipiac institutional executive, acknowledged Plaintiff's FERPA request for production of academic records in approximately May, 2000, at which time and for 45 days thereafter Plaintiff was domiciled in Florence, Italy; and (6) by Defendant's account, the May 25, 2000 Good Standing certification issue to Plaintiff by Dean Neil Cogan, superceding Defendant's May 24, 2000

certification to Dean Thomas Sullivan, was memorialized by the computer archives of Defendant's employer, Quinnipiac University.[1]

b. Stipulations of Law: The parties have stipulated that (1) the Family Educational Rights and Privacy Act required Defendant, as the responsible institutional executive, to produce requested academic records to Plaintiff within 45 days of Plaintiff's written demand, which Defendant has acknowledged was made in approximately May, 2000; (2) Plaintiff at all relevant times was a legal resident of the State of Minnesota and a domiciliary of the States of Minnesota and New Jersey; and (3) the United States District Court for the District of Connecticut, sitting in diversity, is bound by the substantive law of the State of Minnesota.[2]

### 6. Plaintiff's Claims

Plaintiff's Complaint against the Defendant asserts a colorable federal-question claim arising under the federal Family Educational Rights and Privacy Act (FERPA), in addition to making out prima facie claims for violations of both federal and Minnesota state consumer laws, which, according to interpretive case law and expressly stated legislative intent, are to be "liberally" and broadly construed so as to fulfill their stated remedial purpose.

Plaintiff has further set forth in her Complaint, which has never been modified, a host of common-law tort claims for actual, special, consequential, and punitive damages under a variety of cognizable legal theories, including, but not limited to, breach of express contract, breach of implied contract, breach of an implied covenant of good faith and fair dealing, intentional and negligent infliction of emotional distress, defamation, and tortuous interference with prospective economic advantage and prospective contractual relations.

Plaintiff notes that to the extent that Defendant has chosen to characterize Plaintiff as pro se and the court has deemed Plaintiff pro se, Plaintiff's pleadings must be "liberally construed" and afforded substantial latitude, even to the point that Plaintiff has misconceived and/or mischaracterized her claims, and without regard to how inarticulately and inexpertly Plaintiff's claims have been drawn.

Plaintiff asserts that Defendant willfully and maliciously made a derogatory statement regarding Plaintiff's standing for transfer purposes that Defendant's superior, Dean Cogan, had formally ruled was inaccurate and invalid and of which Dean Cogan had formally so notified Defendant and his direct reports; that Defendant did so, and at the same time, withheld academic records in violation of FERPA, with the intent to thwart Plaintiff's transfer application to an ABA law school higher-rated that Quinnipiac University School of Law; that Defendant, by his deliberate and intentional act in disregarding the directive of a higher-ranking University official, namely Dean Neil H. Cogan, and by publicizing information that Defendant knew or should have known to be inaccurate and subject to

---

[1] The referenced factual stipulations are derived from Defendant's Deposition, Dated February 7, 2003, which Defendant has adopted as his testimony and by Defendant's pleadings, filed in this case.
[2] See Footnote 1.

3

negative interpretation, forfeited qualified privilege; and, by impugning Plaintiff's professional reputation and honesty, Defendant's communication was defamatory per se.

### 7. Defendant's Contentions

Defendant has no defense to Plaintiff's claims because, regardless of what Defendant and/or other Quinnipiac employees may have contended, Dean Neil Cogan made and communicated a policy that an actual or alleged student account balance did not operate to forfeit a Quinnipiac student's good standing status. Consequently, any differing opinions by lower-ranking Quinnipiac employees, including the Defendant as Associate Dean, were insufficient to terminate Cogan's apparent and actual [3] authority. Plaintiff further notes that (1) Defendant, by his own account, did not conduct a reasonable inquiry into the representations of the bursar's office, which had previously been demonstrated as unreliable; and (2) Defendant has admitted that he has been sued by other Quinnipiac students with respect to his performance of his duties as Associate Dean, Quinnipiac University, based a similar, if not the same, fact pattern as that asserted by Plaintiff. [4]

### 8. Legal Issues

**a) Choice of Law:**

As Attorney Earle Giovaniello, in advising Plaintiff, corrected adduced, Defendant committed multi-state defamation by publishing a statement that was defamatory per se regarding Plaintiff to third parties, including but not limited to, Dean Thomas Sullivan, Dean, University of Minnesota Law School, Minneapolis, MN on May 24, 2000 via confirmed facsimile transmission, a form of telephone communication. At that time, and at all times relevant to this action, Plaintiff was a legal resident and domiciliary of the state of Minnesota. In an action for defamation by multi-state publication, this court has recognized that the substantive law of the plaintiff's domicile governs. See <u>Hazlitt v. Fawcett Publications,</u> 116 F.Supp. 538, 539(D.Conn.1953). A person's "domicile" is that where he or she maintains a permanent abode, with intent to return when absent therefrom. That permanent place of abode, to which Plaintiff intended and, throughout the relevant period, consistently always returned when absent therefrom, by both Plaintiff's declaration [5] and the determination of Minnesota state authorities, was Minnesota.

Since Plaintiff at the time the defamatory statement was published on May 24, 2000; and the time of the filing of the action on May 24, 2002 was and is unquestionably a domiciliary of the

---

[3] See King Deposition, stating that Cogan was responsible for formulating and implementing law school policies and that King and his direct reports, including Mary Ellen Durso, "work for the Dean."
[4] See King Deposition, filed with the court.
[5] Plaintiff never claimed New Jersey as her domicile at any time relevant to the historical period, and has consistently and formally objected to Defendant's attempts to do so.

4

state of Minnesota [6], the United States District Court for the District of Connecticut is bound by Minnesota substantive law. Procedural issues would be governed by the law of the forum state, Connecticut.

Plaintiff is constrained—as is the court—to reject out of hand Defendant's "Court I/Count II defamation claim dichotomy because, clearly, Plaintiff has asserted a single defamation claim which arises from the same nucleus of operative fact. By the standard applicable to federal rules of pleading, Plaintiff has asserted a single defamation claim. [7]

**b) Defamation – Minnesota Substantive Law**

- Did Defendant know, or should Defendant reasonably have known that his statements regarding Plaintiff's status were untrue at the time he published his statement to Dean Thomas Sullivan and other persons on or about May 24, 2000?

   As a matter of law, given Dean Cogan's policy determination that account status does not preclude Good Standing certification, are Defendant's beliefs and opinions to the contrary relevant? And, taking into account, Dean Cogan's policy directive to Defendant in January 2000, were Defendant's statements to the contrary in May 2000, in fact true?

   Has Defendant met his burden that Defendant could and/or did overcome the presumption of Dean Cogan's actual and apparent authority?

   As a matter of fact, did Defendant's statement to Dean Sullivan and other third parties damage Plaintiff's reputation for honesty and fitness to practice the law? If yes, is Plaintiff required to prove damages?

   As a matter of fact, did Defendant act willfully and with malice in misrepresenting, Plaintiff's academic performance, fitness, and standing within Quinnipiac University School of Law to third parties? If yes, did Defendant, by his willful and malicious acts, forfeit any entitlement to qualified privilege?

   Were Defendant's statements regarding Plaintiff's alleged indebtedness published, upon an improper motive and for an improper purpose, to third parties without a need to know?

   As a matter of fact, did Defendant take any steps to correct any misapprehension on the part of Dean Sullivan and/or other third parties as to Plaintiff's eligibility for transfer, based upon the eligibility criteria of the transferee institutions?

**c) Other Claims– Minnesota Law**

   Has Plaintiff met her burden in satisfying the elements of the claims set forth in Plaintiff's Complaint and to which Defendant has pled no affirmative defense?

---

[6] Plaintiff holds a Minnesota driver license, a Minnesota car registration, a Minnesota professional license; and has continuously, since 1993, been a subscriber to a Minnesota state-sponsored health insurance plan limited by statute to Minnesota residents; in August 1999, the Minnesota Department of Human Services formally upheld Plaintiff's Minnesota citizenship, stating that Plaintiff's attendance at Quinnipiac School of Law in Hamden, CT, necessitating extensive residency outside the state of Minnesota, did not forfeit Plaintiff's Minnesota domicile and attendant citizenship privileges thereof, including Plaintiff's eligibility for state-sponsored health insurance.

[7] The court upheld Plaintiff's choice of law by order filed September 30, 2004.

### 9. Voir Dire Questions

- Do you or anyone in your family/close friends know the plaintiff, Barbara Burns?
- Do you or anyone in your family/close friends know the defendant, David S. King?
- Have you or anyone in your family/close friends ever attended Quinnipiac University?
- Have you or anyone in your family/close friends ever been employed by Quinnipiac University or any other university or college?
    Have you, or anyone with whom you are acquainted, sued Quinnipiac University?
- Is there any reason why you do not think you could be fair to both parties in this case?

### 10. List of Witnesses

a) Plaintiff's Witnesses:

1.  Defendant David S. King
    Quinnipiac University School of Law
    275 Mount Caramel Avenue
    Hamden, CT 06518-1908

    This witness is expected to testify as to his dealings with the plaintiff since the time of her enrollment with the University, including the circumstances surrounding her visiting at other schools and his issuance of Good Standing certifications under conditions identical to those presented by this litigation; his admitted lack of familiarity with records maintained by the Quinnipiac Bursar and/or Financial Aid office [8]; and his lack of discretion to amend policy determinations made by the Dean of the Law School. Estimated total time needed for testimony is 1 day.

2.  Barbara Burns
    13684 Harmony Way
    Apple Valley, Minnesota

    The plaintiff is expected to testify as to her claims against the defendant and her injuries. Estimated total time needed for testimony is 1 day.

3.  Ann Traverso
    Director of Financial Aid
    Quinnipiac University School of Law
    275 Mount Caramel Avenue
    Hamden, CT 06518-1908

---

[8] See, King Deposition, February 7, 2003, in which Defendant repeatedly refused to answer Plaintiff's questions regarding Financial Aid office and Bursar Office records and policies, stating that he didn't "work there" and "knew nothing about it" or words of that substance and meaning.

      This witness is expected to testify as to communications between Traverso and the plaintiff regarding "cross-over enrollment" rules proscribed by Title IV with respect to institutional receiving Title IV funds, including, but not limited, Traverso's telephone call to a friend of Traverso's in New York regarding the friend's opinion as to whether Traverso should or should not disburse cross-over funds to Plaintiff, which determination by an FAA of another institution is not relevant or binding upon Plaintiff or Quinnipiac University; and the perjured testimony contained in Traverso's affidavit filed in this case, in which Traverso represented that Plaintiff rejected a financial aid check, which, by the certification and business records of the disbursing bank, Plaintiff endorsed and cashed in November 1999. Estimated time of testimony: ½ day.

4.     Mary Ellen Durso
        Law School Registrar
        Quinnipiac University School of Law
        275 Mount Caramel Avenue
        Hamden, CT 06518-1908

  This witness is expected to testify that she works as a direct report to the Defendant, David S. King; that, upon Dean Cogan's orders countermanding those of the Defendant, she repeatedly and on numerous occasions issued Good Standing Letters, transcripts and other certifications by fax and other means, notwithstanding that Plaintiff and other Quinnipiac students did or did not have account balances; that, to her first-hand knowledge, Defendant was formally overruled by Dean Cogan as to his alleged indebtedness/Good Standing analysis in December 1999 and January 2000, and at other times between January 2000 and May 2000; that she has represented herself as an expert with regard to federal and state law governing academic records access to Plaintiff and others; and that, to her first-hand knowledge, she as Records Custodian, received FERPA requests from Plaintiff at various times between May 2000 and November 2002, to which she, as institutional records custodian, failed to respond within the 45 day period specified by FERPA. Estimated time for testimony: ½ day.

    4.     Neil H. Cogan
          Whittier School of Law
          Whittier, CA

  This witness is expected to testify that he held the office of Dean, Quinnipiac School of Law under contract at all times relevant to this lawsuit and did not leave the office of Dean until July 1, 2000; that at various times during 1999 and 2000, he utilized his discretion and authority as Dean to overrule certain determinations by Defendant regarding issuance of transcripts and other certifications with regard to Plaintiff and other students; that he issued a Good Standing Letter over his own signature, which he copied to Defendant, in January 2000, which he re-issued, accompanied by an envelope pre-addressed and pre-stamped to Dean Thomas Sullivan on May 25, 2000; that, by his certification as Dean, Plaintiff achieved second-year status as of January 2000; and that he pledged to Plaintiff in January 2000 and subsequently that he would assist Plaintiff with her transfer process. Estimated time for testimony: ½ day

James Trella
Director of Information Technology
Quinnipiac University
275 Mt. Carmel
Hamden, CT 06518

This witness is expected to impeach Defendant's assertions and those of his staff that certain archived email between Defendant and Neil Cogan to which Defendant referred in deposition was not retrievable from the Quinnipiac server between the dates of May 25, 2002 and the present date. This witness is further expected to testify to, and authenticate, the issuance of the Good Standing Letter issued on May 25, 2000 by the office of Dean Neil Cogan to Plaintiff.

**11. Exhibits**

1. Deposition Transcript of David S. King Dated February 7, 2003
2. Good Standing Letters Issued by Neil H. Cogan.
3. Good Standing Letters Issued by Defendant and other Quinnipiac personnel
4. Quinnipiac University Academic and Other Academic Records Regarding Plaintiff
5. Letters of Recommendation Issued to Plaintiff by Quinnipiac Faculty
6. Letters of Recommendation Issued to Plaintiff by University of Minnesota Faculty
7. Quinnipiac Computer Archives and other records that establish the May 25, 2000 re-issuance of the January 4, 2000 Good Standing Letter by Dean Cogan to Plaintiff

**12. Plaintiff's Objections to Defendant's Proposed Exhibits**

Plaintiff objects to all of Defendant's Exhibits except Exhibits 38, 39, and 65 on the basis of relevance [9], on the basis that Defendant withheld the document in violation of applicable discovery rules [10]; and on the basis that the document is misleading, with potential to confuse the jury. [11] See Plaintiff's Motions in Limine.

---

[9] Any financial aid records are irrelevant, except for impeachment purposes, because Dean Cogan formally overruled Defendant's position that financial indebtedness and good standing for transfer or accreditation purposes was in any way related and/or that financial indebtedness barred good standing. The opinions of lower-ranking Quinnipiac employees, i.e., Mary Ellen Durso, who worked for Cogan, are irrelevant and not binding upon the court or the Plaintiff because the contrary opinions of lower-ranking Quinnipiac employees do not affect the validity of the Cogan Good Standing certifications issued to Plaintiff. In fact, Defendant himself testified in deposition that Durso was required to transcript the Georgetown and other credits completed in accordance with Good Standing Letters issued by Cogan whether or not Durso agreed with them.

[10] Defendant has referenced, but has never produced to Plaintiff, any internal Quinnipiac email correspondence, including, but not limited to, Exhibit 41.

[11] In illustration, Exhibit 36 suggests that Plaintiff rejected financial aid issued through William Mitchell College of Law. In fact, Plaintiff never applied and consequently never matriculated at William Mitchell College of Law, except as a Visiting Quinnipiac student. Consequently, under applicable federal regulations governing disbursement of Title IV financial aid, William Mitchell had no power to handle or otherwise receive from Anne Traverso financial aid monies that, by law, were the property of Plaintiff and not Quinnipiac University.

### 13. Requests for Jury Instructions

Plaintiff's Jury Instructions were filed under separate cover and acknowledged as received by the court.

### 14. Anticipated Evidentiary Problems

The Plaintiff anticipates that much of the Defendants's evidence will be based on inadmissible hearsay, including, but not limited to hearsay conversations and writings in which Defendant has alleged that Dean Cogan changed Dean Cogan's policy determination set forth by Dean Cogan's Good Standing certifications to Plaintiff dated January 4 , 2000 and May 25, 2000, and will object accordingly during trial.

Plaintiff further notices Plaintiff's intent to move to suppress any defense by Defendant with regard to the computer records cited by Defendant in his deposition, which by Defendant's account conclusively prove that Dean Cogan issued a Good Standing Letter to Dean Thomas Sullivan on May 25, 2000. Plaintiff has demanded these discoverable records, beginning in February, 2003. Defendant has repeatedly refused to produce said record and has even attempted to recant Defendant's testimony as to the existence of the records, stating, following Plaintiff's demand for production, that said records do not exist. Plaintiff notes that a formal and timely Motion to Compel was filed by Plaintiff in approximately March 2003 and renewed thereafter. Plaintiff has listed the Quinnipiac Director of Information Technology, James Trella, as a witness at trial and has subpoenaed pertinent Quinnipiac computer records in accordance with an order by this court that Plaintiff may do so.

Finally, Plaintiff herein notices Plaintiff's First Motion in Limine, in which Plaintiff moves to suppress the evidentiary materials submitted by Defendant relating to the issue of alleged financial indebtedness. As both Attorney Giovaniello and Plaintiff have commented, Plaintiff's good standing status is contingent upon the discretionary determinations of Dean Neil Cogan, not Defendant. Since Dean Cogan formally overruled Defendant's assertion that good standing status at Quinnipiac University is **not** contingent upon the status of a student's financial account with the University, Defendant's "evidence" that Plaintiff did or did not have an outstanding balance is not legally relevant.

### 15. Proposed Findings and Conclusions

**a. Proposed findings of fact:**

1. That at various times during 1999 and 2000, Barbara Burns was a student at Quinnipiac University School of Law
2. That Barbara Burns fulfilled all academic requirements for attainment of second-year standing, by the determination of Dean Neil Cogan.
3. That Dean Cogan served as Dean of Quinnipiac School of Law and as Defendant's direct supervisor at all relevant times.

4. That Cogan's policy determinations were at all relevant times binding upon Defendant and his staff.
5. That at various times between November, 1999 and May 2000, Cogan overruled Good Standing certifications made by Defendant with respect to Plaintiff, and issued several Good Standing Letters, copies of which were provided to Defendant, the last one of which was personally addressed to Dean Thomas Sullivan and word-processed by Dean Cogan's personal assistant, Mrs. Judith Larson, on May 25, 2000, following a meeting between Plaintiff and Cogan.
6. That Defendant himself issued a Good Standing Letter to Plaintiff at a time when Plaintiff was known to have an account balance in excess of $3000 in approximately August, 1999 and that, by Defendant's own testimony in deposition, there is no institutional policy that prevented Defendant from doing so.

**b. Proposed Conclusions of Law:**

a. Plaintiff's Defamation Claims

(1) The court should conclude that, by willfully violating applicable statutory requirements mandating academic records access, and by willfully disregarding the instructions of a higher-ranking official who was Defendant's supervisor and publishing defamatory statements to persons without a legitimate need to know, Defendant has forfeited qualified privilege.

(2) Under Minnesota substantive law, a statement is defamatory per se if it lowers the estimation of the Plaintiff in the eyes of others within his or her community. When defamation is per se, actual damages need not be proved. In this case, King represented falsely to a third party, Sullivan, a domiciliary of the state of Minnesota, that Plaintiff did not meet good standing criteria for transfer purposes. The statement was false; by certification that post-dated King's defamatory statement, Plaintiff did meet the criteria for transfer certification, which does not encompass financial indebtedness by Dean Cogan's certification. Defendant's "substantial truth" argument fails because Cogan made a conclusive policy determination when he overruled Defendant's financial-indebtedness argument; thus, Defendant's proposed defense was absolutely and categorically foreclosed by a higher-ranking institutional official who was, by Defendant's own account, his direct supervisor. Consequently, Defendant's subsequent attempt to invoke the overruled and discredited "financial indebtedness" rationale was not "feasible" or even reasonable. In fact, no person who has been apprised of all operative facts has ever adopted Defendant's convoluted and contrived position statement.[12]

---

[12] Various law school administrators, including the University of Connecticut School of Law, where Plaintiff earned a grade of B+ in an advanced course, Uniform Commercial Code, have all accepted the Cogan Good Standing Letter that Defendant has attempted to discredit. The court may further infer that no reasonable person could conclude that an act of insubordination by an employee who was expressly told by his supervisor that his rationale was incorrect and would not have prospective application, could be a "supportable interpretation." Since Defendant, by his own admission, must obey Cogan's policy determinations, no other interpretation of that specific policy can be deemed to exist.

Defendant additionally represented to Sullivan that Plaintiff falsified the Cogan Good Standing certification, impugning Plaintiff's honesty and integrity and causing University of Minnesota Law School personnel and others to doubt Plaintiff's integrity and honesty. In fact, Plaintiff did not misrepresent Cogan's certification to anyone and did nothing more than deliver the certification that Cogan prepared, contained within an envelope that Cogan addressed personally to Sullivan with the expectation and understanding that Plaintiff would give it to Sullivan.

By Defendant's own analysis, the court should conclude as a matter of law that any statement by the defendant that the plaintiff was "not in good standing" does meet the legal standard defining per se defamation because the statement does charge improper, i.e., financial irresponsible conduct. [13]. Defendant has also attempted to state that Plaintiff's academic performance was inadequate [14]; that Plaintiff forfeited scholarship entitlement and/or that Plaintiff was 27th in a class of 39, when, in fact, Quinnipiac University failed to transcript all coursework completed by Plaintiff, which coursework qualified for transfer credit and should have been included in calculated Plaintiff's Quinnipiac GPA. Finally, Defendant impugned Plaintiff's honesty by stating that Plaintiff falsely procured and/or communicating the Cogan certification, when, in fact, Plaintiff obtained the certification honestly and presented it to third parties to whom Cogan intended as the recipients, in perfect conformity with Cogan's instructions, and with his knowledge and approval.

Thus, the Court should conclude, as a matter of law, that Defendant's disregard of Dean Cogan's written directives, which were not misunderstood by any person other than Defendant, does not constitute and cannot constitute a "supportable interpretation." Consequently, the Defendant's statements were not true or substantially true, were published to third parties without a need to know; damaged Plaintiff's reputation for honesty, integrity, and overall fitness to practice the law in the eyes of persons within Plaintiff's Minnesota community. As a matter, Defendant's statements were defamatory per se by the standard imposed under Minnesota law, which recognizes the doctrine of compelled self-defamation. Lewis v. Equitable Life Assur. Soc., 389 N.W.2d 876, 889 (Minn. 1986); and which rejects the doctrine of substantial truth in cases of private-figure defamation.

(2) The Court should also conclude that the defendant's statements were, as a matter of law, not subject to a qualified privilege. Specifically, Defendant willfully disobeyed a directive by a high-ranking University official who was Defendant's direct supervisor. Defendant published irrelevant, false and damaging information to third parties, namely Sullivan and others, without a need to know and who have been established to be indifferent to Quinnipiac University's accounts receivable management issues.

---

[13] See King Deposition, February 7, 2003, stating that financial mismanagement or irresponsibility reflects poorly upon the ability to practice the law.

[14] This contention by Defendant is contradicted by the fact that (1) Plaintiff completed coursework at higher-rated institutions with academic distinction; and (2) Plaintiff was recommended with enthusiasm by a Quinnipiac professor, Marilyn Ward Ford, to the University of Connecticut, a much higher-rated school than Quinnipiac, and that, in fact, Plaintiff performed well there.

Plaintiff further notes that, even if Defendant's financial indebtedness rationale had not been overruled by Cogan, which it was, and even if it was relevant, which it isn't, Plaintiff has brought forth credible evidence that Defendant and certain of his colleagues contributed significantly to delays and other factors which caused Plaintiff's account to register an outstanding balance when, in fact, this should not have been the case. Consequently, the court should find that Defendant's equitable defenses are barred by the doctrine of unclean hands.

Defendant's actions were willful and malicious, and were published for no other purpose than to thwart Plaintiff's transfer application. He published false and derogatory statements and innuendo to third parties without a legitimate need to know and in blatant disregard of the policy determination of a superior who overruled him as to this precise issue as applied specifically to the Plaintiff. The court must find that, as a matter of law, Defendant has forfeited qualified privilege.

### 16. Trial Time
4 days

### 17. Further Proceedings

At the present time, the following briefs and motions have been filed by the defendant in this case, but have not yet been ruled upon by the court:

1. Plaintiff's First and Second Motions in Limine
2. Plaintiff's Memoranda In Support of Video Testimony and Narrative Testimony

### 18. Election for Trial by Magistrate
The parties have **not** agreed to have the case tried by a United States Magistrate.

### 19. Verdict Form
Submitted and filed under separate cover and acknowledged by the court.

DATED: December 17, 2004           BY: *[signature]*

**Barbara R. Burns**