UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED

2004 DEC 20  A 11: 30

U.S. DISTRICT COURT
HARTFORD, CT.

Barbara R. Burns,

      Plaintiff             CIVIL ACTION

v.

David S. King,

      Defendant           CASE NO. 02 CV 000897 (RNC)

PLAINTIFF'S SECOND MOTION IN LIMINE

---

Plaintiff Barbara R. Burns hereby moves the court for an order in limine prohibiting introduction by Defendant of evidence which relates to any and all references by witnesses to email created, communicated, and/or maintained by Quinnipiac University; and to any student handbook not distributed to, and acknowledged by, Plaintiff and other incoming first-year law students at orientation on January 4, 1999; and further prohibiting testimony by past and present Quinnipiac officers and employees with regard to the above-referenced email correspondence and handbook materials, based upon Defendant's failure to comply with discovery, specifically mandatory production to Plaintiff of the Quinnipiac computer archive and all Quinnipiac University handbooks cited by Defendant in deposition on February 7, 2003, and, although duly and timely requested, never produced to Plaintiff; and on the basis that the proffered evidence is inadmissible, highly prejudicial, irrelevant, not probative of the parties' legal claims, and potentially confusing to the jury.

## DISCUSSION

Defendant has asserted the defense of substantial truth to Plaintiff's claim of defamation. In so doing, Defendant has raised an affirmative defense with an accompanying legal burden to prove it. It is duly noted that, by order filed September 30, 2004, this court rejected Defendant's substantial truth defense as legally untenable.

1

The record before the court further confirms that, throughout discovery and in deposition, Plaintiff, in good faith, repeatedly asked questions, seeking an understanding of Defendant's substantial truth defense, which, as noted, was ultimately rejected by this court. It is undisputed by all parties and this court that Plaintiff was clearly entitled to explore and obtain, and Defendant was entitled to provide, this information under pertinent Federal discovery rules.

As the record further establishes, the Defendant, an associate dean, is a senior managerial employee of Quinnipiac University and that Defendant represented the University at various times relevant to this litigation vis a vis the Plaintiff. By his account, the Defendant, an associate dean, was responsible for implementing the academic and institutional policies created, devised, and promulgated by Quinnipiac Dean Neil H. Cogan, who served as Law School Dean until June 30, 2000. Defendant testified at deposition on February 7, 2003 that Defendant had no authority to devise or create Law School policies and that Defendant was bound by the policy determinations of Neil Cogan. King Deposition. [1]

*Refusal to Participate in Discovery*

Defendant's deposition, pleadings, and disclosures confirm that Defendant was willing to discuss at length Defendant's own unauthorized views regarding the existence and implementation of a Quinnipiac "Financial Good Standing" policy that, by Defendant's unsupported and uncorroborated allegations, was in effect between the dates of January 4, 1999 and July 1, 2000. By Defendant's account at deposition, this policy was referenced and documented by email correspondence that was allegedly exchanged between Defendant and Dean Neil Cogan and other Quinnipiac employees between the dates of August 3, 1999 and July 1, 2000. At the same time, Defendant has consistently refused to respond to Plaintiff's further inquiries regarding supporting facts, documents, and any other information apart from Defendant's own speculation and assertions, to support Defendant's position. [2]

---

[1] The deposition transcripts of both parties, in their entirety, have been duly filed with this court, which has evidenced that the court is familiar with both deposition transcripts.

[2] Plaintiff requested the King-Cogan email to which Defendant testified for the first time on February 7, 2003 on February 8, 2003. Plaintiff also requested via Interrogatory and Request for Production of Documents and Things dated November 22, 2002, any and all Quinnipiac documents upon which the Defendant would rely upon, including any and all Quinnipiac handbooks. Although defense counsel agreed

In fact, Defendant repeatedly testified in his deposition that he "did not know", "was not sure", and/or had "no idea" [3] as to whether the Quinnipiac University Handbook addressed the issue of "financial good standing" or, to his first-hand knowledge, that Plaintiff did not satisfy the standard for Good Standing set forth in the Quinnipiac handbook acknowledged by Plaintiff and other members of Plaintiff's first-year law school class and/or official Quinnipiac documents, including certifications issued by Cogan between the dates of January 4, 2000 and June 30, 2000. Deposition of David S. King, filed in Case No. 03-CV-897. Furthermore, Defendant repeatedly attempted to evade production of Quinnipiac records on ground that Quinnipiac was not a party to this litigation and, at one point, went so far as to request a protective order, the purpose of which was to prevent Plaintiff from obtaining Quinnipiac email and other records upon which Defendant stated that Defendant intended to rely.

Defendant's unreasonable refusal to answer Plaintiff's timely and proper follow-up questions between the dates of February 8, 2003 and April 15, 2003, clearly obstructed Plaintiff's discovery of the entire case. The record before the court is, or should be, unequivocal that, throughout the discovery period, Defendant selectively chose what questions and inquiries Defendant would and would not answer and that, as a consequence, Defendant and his attorneys clearly abused the discovery process. As a consequence, Defendant's counsel should not and cannot be allowed to use the same selected hearsay writings of the Defendant and other Quinnipiac employees that Defendant has consistently withheld from Plaintiff at any time throughout this litigation, including matters heard only by this court, outside the presence of the jury.

*Relevance*

Plaintiff again notes that the issue of "financial good standing" is irrelevant and moot since Defendant has failed to establish that such a policy, or, for that matter, such a concept, even exists at Quinnipiac University School of Law or any other ABA-approved law school. Indeed, the record before the court clearly establishes that when Defendant repeatedly tried to invoke this alleged financial good standing "policy" with respect to Plaintiff in November 1999, at which time he wrote to Plaintiff and communicated that

---

to produce them on April 8, 2003 at counsel's offices, counsel reneged and never produced the requested documents and other records.

[3] Defendant answered in this manner a total of 68 times in a deposition transcript totaling only 136 pages.

Plaintiff could not register for Winter, 2000 Quinnipiac classes, and, on at least three subsequent occasions [4], Defendant was consistently overruled by Dean Cogan, who ordered Defendant's direct-report, Mary Ellen Durso, to register Plaintiff and certify Plaintiff's good standing status. Records created and maintained in the ordinary course of business by Durso and other entities, including, but not limited to, CPA Examination Services (CPAES), further establish that Cogan also overruled Defendant as to this same issue when he directed Durso to release Plaintiff's transcripts to CPAES on December 22, 1999. This directive by Cogan, as Dean, directly countermanded an order by Defendant to Durso to withhold them on the basis that Plaintiff, by Defendant's unsupported account, was "not in financial good standing." By the Defendant's own testimony, Dean Cogan had the authority to overrule this, and other policy determination made and/or implemented by the Defendant, the Quinnipiac Registrar, Mary Ellen Durso, other members of the Registrar's staff, including, but not limited to, Phyllis Andreas, and Anne Traverso. Deposition of David S. King.

 As Plaintiff duly pointed out to the court at the time Plaintiff successfully opposed Defendant's summary judgment motion, the issue of whether Cogan's certification overrules that of Defendant's is not in dispute by either party. Specifically, Plaintiff's assertion that Cogan outranked King and that Cogan's determination, overruling Defendant's attempts to impose "financial good standing" restriction upon Plaintiff, was the only authoritative one is uncontroverted. Defendant not only has never disputed it, but, in fact, admitted in deposition that he worked for Cogan and that Cogan alone had the authority to make policy determinations. Id.

While Defendant has vaguely alluded to the fact that certain lines of authority involving unrelated fiscal and budgetary matters had been delegated to Defendant by John Leahy, the University President (who has never appeared on Defendant's witness list), Defendant has never produced any credible, non-hearsay evidence, or any evidence, other than Defendant's own suspicions and speculation, that such a divestiture and transfer of authority ever actually occurred; or, if it did occur, that it was effectively communicated

---

[4] Cogan overruled the Defendant on January 4, 2000, February 4, 2000, at which time he issued a Good Standing Letter to Georgetown University School of Law which resulted in Plaintiff's acceptance to the Georgetown Summer Program, and on May 25, 2000 when Cogan countermanded Defendant's May 24, 2000 correspondence to University of Minnesota Dean Thomas Sullivan by reissuing the Good Standing Letter that Defendant claimed on May 24, 2000 was invalid.

to the Quinnipiac student body and other third parties who, reasonably, continued to rely upon certifications issued by Cogan as Dean. To the contrary, it is undisputed that Cogan retained all the accoutrements of office until his contract with Quinnipiac expired on June 30, 2000, including exclusive occupation of the Dean's Suite, where Cogan met with Plaintiff on May 25, 2000. Consequently, even if Defendant's claims that a transfer of authority occurred were true, which Defendant has not established, it would, as a matter of law, be insufficient to terminate Cogan's apparent authority as Dean.

Furthermore, even if the transfer claimed and specified by Defendant in his deposition did occur and was effectively and adequately communicated to third parties, which is not the case, the budget-planning and other administrative powers described by Defendant at deposition would not extend to law school academic policies and certifications, which, within by the express terms of the Quinnipiac Law School Handbook distributed to Plaintiff and other incoming law students and the accepted custom and practice of the ABA law school community of which Quinnipiac was a part, are the exclusive province of the Dean. Indeed, Defendant himself stated in deposition that good standing issues and other academic and official law school policies were subject to the sole discretion of Cogan, as Dean of the law school, until the expiration of Cogan's contract on June 30, 2000. [5]

Consequently, to permit Defendant to parade a succession of Quinnipiac employees, none of whom have the authority to recant or change Cogan's documented rejection of any "financial good standing" policy at Quinnipiac School of Law between the dates of January 4, 1999 and June 30, 2000 and/or a plethora of hearsay writings authored by Quinnipiac employees, including the Defendant, with no authority to formulate policies governing good standing at Quinnipiac Law School, would serve no purpose other than to mislead and confuse the jury and to unnecessarily prolong trial. Put another way, even if

---

[5] As noted, Defendant has never established that any "financial good standing" policy exists, at Quinnipiac University or any other ABA law school. Since the financial good standing concept is integral to Defendant's substantial truth theory, which is an affirmative defense, it is Defendant's burden to prove that there is a financial good standing policy and not Plaintiff's to prove that there is not. By this standard, Defendant clearly has not met his burden of proof of the financial good standing policy, which, in fact, the court, in denying summary judgment, has rejected. Consequently, there is no factual issue regarding Plaintiff's eligibility under any "financial good standing" framework for a jury to decide, and the introduction of witness testimony that is premised upon the concept of "financial good standing" is not relevant and also has potential to confuse the jury.

the Defendant presented 100 Quinnipiac employees, all of whom testified that Plaintiff owed money to the law school and, by their determination, should be denied good standing status, it would not change or affect the validity of Cogan's determination, communicated to Plaintiff, CPAES, Georgetown, the University of Minnesota and others that, by Cogan's determination, Plaintiff was in good standing.

Given these facts, the issue of whether Plaintiff was or was not in "financial good standing" is moot because, by the determination of Cogan, the Dean, there was never any such policy in effect at Quinnipiac School of Law at any legally relevant time or, if there was, the Dean chose not to apply it to Plaintiff. Accordingly, Plaintiff is entitled to grant of Plaintiff's Motion in Limine, disallowing the unauthorized and gratuitous commentary of Quinnipiac employees having no authority to overrule or countermand prior good standing certifications in Plaintiff's favor by Dean Cogan; and, arguably, grant of partial summary judgment as to the issue of whether King's determination could be superceded by the determination of a higher-ranking University official, Cogan, to whom Defendant himself testified that Defendant reported.

## CONCLUSION

The court should grant Plaintiff's Second Motion in Limine; and should further consider grant of partial summary judgment to Plaintiff as to the inability of the Defendant, an associate dean, to overcome the ruling of a higher-ranking University official, the Dean, contradicting Defendant's attempted assertion, promulgation, implementation, and/or application of a "financial good standing" policy to Plaintiff or any other law student enrolled at Quinnipiac University School of Law between the dates of January 4, 1999 and June 30, 2000.

DATED: 12-07-04                    BY: _Barbara R. Burns_

Barbara R. Burns

6