UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

Barbara R. Burns,

    Plaintiff              CASE NO. 3-02-CV-897 (RNC)

v.

David S. King,

    Defendants

AFFIDAVIT OF BARBARA R. BURNS

---

Barbara R. Burns, upon oath, deposes and says:

1. That I am the Plaintiff in the above-entitled action, namely *Burns v. King*, Case No. 3-02-CV-000-897.

2. **That I make this affidavit in support of my Motion to Set Aside Findings and for New Trial, filed on January 22, 2005 and appended hereto as Exhibit A; and to establish the necessity of bypassing the trial court and making direct application to the appellate court with respect to any necessary motion to facilitate any appeal or other appellate filing to enforce my Seventh Amendment right to a civil jury to decide heretofore-unresolved issues of fact on the basis that the assigned trial judge, Robert N. Chatigny, is biased against me within the meaning of 28 U.S.C. § § 144, 455, and favors the opposing party, as set forth *infra*:**

    1. That, upon the advice and with the assistance of competent counsel, I filed this action for defamation and attendant humiliation [1], damage to reputation, and lost opportunity to obtain money damages and equitable relief on May 25,

---

[1] Plaintiffs' claims were discussed at length with the trial judge in pre-trial conference in December 2004 and January 2005. At that time the trial judge stated that he understood perfectly that Plaintiff was not asserting an <u>independent</u> claim for emotional distress, but, rather, was asserting only a claim for defamation and <u>collateral</u> humiliation and emotional distress accruing to Defendant's defamatory statement to the University of Minnesota, which, prior to Defendant's statement, had invited Plaintiff's transfer application and recommended Plaintiff for matriculation to an L.LM program even higher-rated than that of the University of Minnesota. This remains unchanged.

1

2002; that I have never modified my complaint, as filed by Connecticut Attorney Earle Giovaniello on my behalf on May 25, 2002, and that, in my unmodified Summons and Complaint, I clearly stated a demand for trial by jury, which entitlement I do not waive and have never waived.

2. That throughout these proceedings and as documented by the court record, consisting of filings, transcripts and exhibits, I have, by necessity, noted for the record prejudicial and biased rulings, wherein certain discovery and other motions have not been treated even-handedly by the trial court, thereby evidencing bias and prejudicing me and my case within the meaning of 28 U.S.C. § § 144, 455, et seq., i.e., the opposing party has obtained extensions and other dispensations that have not been accorded to me under identical, or, in some cases, more compelling circumstances; and the trial court has granted motions in limine favoring the Defendant, i.e., the trial court has not permitted introduction of credible evidence that the Defendant has been sued by other Quinnipiac students [2] based upon substantially the same facts as those asserted by the Plaintiff's complaint in this case, at the same time permitting the Defendant to introduce litigation involving the Plaintiff and two other persons that was not even commenced until two years after this lawsuit was filed.

3. That, as a consequence of having filed one complaint of judicial misconduct against a Minnesota federal district court judge [3], which was resolved in my favor [4], and, over a 10-year period, a total of four judicial disqualifications for cause which were upheld by the chief judge of the district and/or the appellate court of jurisdiction [5,6], I am familiar with the legal standard and the required

---

[2] The Defendant testified in deposition to at least two and possibly as many as five student lawsuits; according to West's Digest, four new student lawsuits were filed in 2003.

[3] In accordance with the practice of the 8th Circuit, the complaint was styled IN RE: The Matter of John Doe. However, the complaint itself identifies the respondent judge as United States District Court Judge James M. Rosenbaum, whose wife, Hennepin County Court Judge Marilyn Brown Rosenbaum, was disqualified for cause in late 1994 upon motion of the undersigned Plaintiff and upheld by the chief judge of Judge Brown Rosenbaum's judicial district prior to the filing of the judicial misconduct complaint against U.S.D.C. James Rosenbaum. It is duly noted that U.S.D.C. James Rosenbaum was later the focus of a Congressional inquiry directly related to his fitness and judicial performance.

[4] See September 9, 1998 Order of Chief United States Circuit Judge Pasco M. Bowman II in JCP – 028, overruling and superseding the March 1995 order of U.S.D.J. James M. Rosenbaum.

[5] Removal of Marilyn Brown Rosenbaum, *supra*, upheld by the chief judge of the Fourth Judicial District of Minnesota; removal of Kevin S Burke, upheld by a three-judge panel, led by Minnesota Appellate Judge

showings that are required to sustain a disqualification of a trial court judge for bias; and that I am, and have been adjudged, fully capable of distinguishing between a trial court judge who is open to conviction and, after hearing, rules against me, but who is otherwise unbiased, and one who is not perfectly open to conviction and refuses to hear me with any degree of objectivity in the first instance.

4. That, based upon this knowledge, it has consistently been my position that, up to the time of a pre-trial conference on December 6, 2004 and excepting certain discovery rulings, which I duly and timely appealed, the assigned trial judge, Robert N. Chatigny, did not evidence bias within the meaning of 28 U.S.C. §§ 144, 455; that, in fact, his opinions, pre-December, 2004, evidenced exceptional diligence, and were most striking for their simplicity, unerring accuracy, and absolute clarity; and that, following what the trial court represented as a thorough review of my claims and the opposing party's arguments in opposition, the trial court, by order filed September 29, 2004 and appended hereto as Exhibit B, upheld federal jurisdiction, denied the opposing party's motion for summary judgment, and ordered this case to proceed to trial by jury in language that, as noted supra, was both graceful, and clear.

5. That, on December 6, 2004, the trial court convened a pre-trial conference at which time the trial court stated that trial, originally scheduled for December 14, 2004, would be continued; and, that, at that same time, the trial court established certain deadlines for, *inter alia*, Motions in Limine, which deadlines I met, as I have consistently met all deadlines imposed by the court in this case; and that, although the trial judge chose to convene the December 6, 2004 proceeding after dismissing his court reporter, the proceedings were nonetheless witnessed by disinterested parties, including, but not limited to, the conference call coordinator, who can and will verify my account of relevant events, as set forth *supra* and *infra*.

---

Randall Peterson; Removal of Edward Lynch and Leslie Metzen, upheld by a three-judge panel, led by Minnesota Appellate Judge Randall Peterson.

[6] The appellate order upholding the disqualification of Kevin S. Burke also operates to disqualify any other Minnesota trial judge from issuing a subsequent order in support of Burke regarding the same parties and the same subject matter. See, e.g., IN RE: Hormel's Trusts, 282 Minn. 197, 163 N.W. 2d 844 (Minn. 1968).

3

6. That, on December 9, 2004, the trial court convened a second pre-trial conference on the record in which the trial judge completely departed from the tone and substance of the December 6, 2004 pre-trial conference, i.e., his tone toward me was unjustifiably hostile; and that, furthermore, in a biased manner, he evidenced that he was pre-disposed to deny any future-filed motion for injunctive relief against the Defendant "even if you win"; and also, in a biased manner, arbitrarily established conditions by which the opposing party was accorded and assured greater access to information, informal communications channels, and to court resources than was accorded to me, the practical result of which was to open up, for the sole benefit of the opposing party, a channel of informal, off-the-record communication not equally available to me; and that, at this time, I duly noted and preserved for appeal my assertion that the trial court, in affording discriminatory and disparate treatment of the parties, was, or might be, biased within the meaning of 28 U.S.C. § § 144, 455;

7. That, at the time of the December 9, 2004 pre-trial conference, which was conducted by telephone and on the record, and in response to my statement that I would appeal any ruling that discriminated against me and favored the defendant, the trial judge at one point stated that, by his unilateral determination, the appeals court would "not consider it", or words of that substance and meaning; that, additionally, I "best not" or "should not" question his exercise of discretion and/or his personal integrity, or words of that substance and meaning; and that, while it would be an overstatement to state that these remarks were intended or construed as an overt threat, their context, tone, and substance were definitely coercive.

8. That at that same time, the trial court confirmed its earlier instruction that the trial court had authorized and would rule upon "as soon as possible" motions in limine in addition to other pre-trial motions; and that, as stated, *supra*, I complied with the order of the trial court to submit all such motions by December 20, 2004 and otherwise complied with all pre-trial orders issued by the trial court in this case.

9. That, on or about January 7, 2005, the trial court convened a third pre-trial conference at which time the trial court initially stated that the trial court proposed to exclude a key witness, former Quinnipiac University Law School Neil Cogan, whose testimony was integral to my case and highly unfavorable to the defendant's case; that, subsequently, the trial judge agreed to hear argument for admission of this testimony on January 11, 2005, stating that he would favorably consider the motion on condition that Plaintiff could produce Second Circuit decisional authority that authorized videotaped trial testimony; and that, at this same time, the trial court stated for the first time since authorizing the filing of certain pre-trial motions on December 6 and 7, 2004 that, notwithstanding its earlier transcripted pledge to "rule upon" all pre-trial motions "as soon as possible", the trial court was not "obligated" to rule upon the motions in limine that, as noted, the trial court previously had expressly authorized and had pledged it would rule upon "as soon as possible."

10. That on January 11, 2005, after Plaintiff introduced Second Circuit decisional authority that authorized videotaped trial testimony, the trial court arbitrarily denied the motion to admit the testimony of Cogan, which, as noted, strongly favored the Plaintiff and strongly disfavored the Defendant.

11. That, further, in a biased manner and in contravention of controlling appellate decisional authority mandating "wide latitude" in dealing with the trial testimony of a pro se party, the trial court ordered Plaintiff to present trial testimony in a question and answer format that would make the presentation of Plaintiff's testimony less effective and prejudice Plaintiff's case; and that this was done for no other reason than that it was more convenient and otherwise more favorable to the opposing party; and that the trial judge stated on the record that, notwithstanding controlling determinations of the 2nd and 8th Circuit appellate courts, holding that pro se parties are to be afforded more latitude than represented parties, the trial judge did not see any reason why the "the Defendant should be prejudiced because the Plaintiff is pro se", or words of that substance and meaning.

12. That, on this same date, following jury selection, the trial judge usurped the prerogative of both parties to introduce their respective cases to the jury and thereupon delivered a biased opening statement, in which the trial judge—who had previously reviewed and upheld the claims asserted by the Plaintiff by denying the Defendant's summary judgment motion—stated to the jury in a biased manner that the fact that Plaintiff's claims had proceeded to trial did not mean that Plaintiff's claims were meritorious, when, in fact and as noted, the same trial judge had previously determined, following what the trial judge represented was a thorough review, that Plaintiff's claims were viable and meritorious of a jury trial, and that Defendant's substantial truth defense was not viable. Exhibit B.

13. That, notwithstanding the previous pre-trial instructions of the trial judge to the parties, stating that any and all objections would be heard at side bar outside the hearing of the jury, the trial judge inexplicably departed from this position and, without warning, would not permit any of the side bars requested by Plaintiff, thereby forcing Plaintiff to make arguments in support of Plaintiff's objections in the presence of the jury, virtually of all of which the trial judge denied, often with sarcasm and derision, the effect of which was to bias the jury and to acutely prejudice Plaintiff's case.

14. That on January 12, 2005, defense counsel conducted a cross-examination of the Defendant, in which counsel solicited from the Defendant a statement that the Defendant had graduated from Dartmouth College in 1964; that, at the break immediately following this testimony, the trial judge's law clerk approached the Defendant and stated to him, within the hearing of Plaintiff and others, that the clerk's father had attended Dartmouth and was a member of the same class as the Defendant [7]; that the law clerk, presumably with the knowledge and approval of the trial judge, subsequently approached and engaged the Defendant in this type of friendly exchange throughout the course

---

[7] The trial judge had previously disqualified a juror, a Ms. Cote, on the basis that the juror and Plaintiff, standing in the same line to enter the courthouse prior to jury selection, had chatted about the weather, on the basis that this innocent exchange could prejudice the Defendant. It is noted that the Plaintiff properly volunteered this information at sidebar during voir dire.

6

of the trial, at the same time refusing to speak to Plaintiff, even with regard to administrative matters such as scheduled presentation of evidence and witnesses that are squarely within the administrative purview of the clerk, thereby creating an appearance of impropriety and affording an additional channel of direct and/or indirect informal, off-the-record communication with the trial judge that was not afforded evenhandedly to the Plaintiff.

15. That, throughout this first day of trial, the trial judge repeatedly and consistently overruled objections by Plaintiff, after which he sustained the same objections by the Defendant, i.e., the trial judge ruled that Defendant was not competent to act as official records custodian for Quinnipiac University, his employer, and therefore could not authenticate relevant and probative evidence submitted by Plaintiff; and, at the same time, stated that the Defendant was competent and could authenticate relevant and potentially highly probative hearsay writings consisting of Quinnipiac documents submitted and/or created, by the Defendant himself.

16. That throughout this time period, the trial judge repeatedly made rulings on the record, and then "flip-flopped" following adjournment, resulting in revised rulings that always favored the Defendant, creating the impression that ex parte communication had occurred during adjournment or recess, thereby creating an appearance of impropriety, if not actual wrongdoing.

17. That furthermore, the trial judge, in a biased manner, ruled to exclude virtually all evidence submitted by Plaintiff, including, but not limited to, published policies of Quinnipiac University that were clearly within the business records exception of the hearsay rule, and which, additionally, were subsequently cited and authenticated by a competent Quinnipiac University officer, Valerie Carbone, the University Bursar; and this evidence was highly probative and, in and of itself, proved Plaintiff's case and conclusively disproved Defendant's "substantial truth" defense, i.e., that the disputed issue of "good standing" was based upon academic factors only, thereby corroborating Plaintiff's account and directly contradicting and discrediting Defendant's account.

18. That on January 11, 2005, the trial judge stated on the record that, notwithstanding that the Defendant had been permitted unlimited time to present his testimony on January 12, 2005, the trial judge would limit Plaintiff's testimony on January 14, 2005 to only two hours and that the trial judge offered no substantial reason, or any reason, for this limitation.

19. That, at this same time, the trial judge initially upheld Plaintiff's subpoena of one Anne Traverso, stating that Traverso <u>must</u> appear to give testimony at 9:30 a.m. on January 12, 2005 pursuant to Plaintiff's subpoena, which Plaintiff, over the objections of defense counsel, refused to modify; that the trial judge further overruled, on the record, defense counsel's objection and further expressly directed defense counsel not to contract Traverso for the purpose of authorizing Traverso to appear at a later time that day; and that defense counsel disobeyed this transcripted directive by the court by contacting Traverso on the evening of January 11, 2004 and telling Traverso that she did not "have to show up until 2:00 p.m.", thereby authorizing Traverso to disregard Plaintiff's subpoena requiring Traverso to appear at 9:30 a.m.

20. That on January 12, 2005, following an overnight adjournment, the trial judge inexplicably reversed himself, stating on the record that, notwithstanding his earlier directive, upon which Plaintiff had relied, upholding Plaintiff's subpoena and stating that Traverso <u>must</u> appear at 9:30 a.m., he would <u>not</u> sanction defense counsel for unilaterally disregarding the trial judge's January 11, 2005 order and authorizing Traverso to appear at 2 p.m., which action by defense counsel was tantamount to witness tampering, and thereby foreclosed Plaintiff's tactical decision to depose Traverso on the morning of January 12, 2005, <u>prior</u> to direct examination of the Defendant, which would have permitted Plaintiff to use Traverso's testimony to impeach the Defendant; and which action by the trial court in permitting the Defendant to disregard a subpoena and a court order enforcing a subpoena both acutely prejudiced Plaintiff's presentation of her case and also demeaned the judicial office in that it permitted the Defendant to disregard both a subpoena and a court order with impunity.

21. That, notwithstanding that Traverso had clearly been coached by the Defendant's attorney and, in fact, admitted on the witness stand that she had been in regular communication with defense counsel for more than one year regarding this case, the trial judge—who previously stated on the record in the presence of the jury that it was "not my job to help you (Plaintiff)"—persisted in "helping" the Defendant by interrupting Plaintiff's direct examination of Traverso and, moreover, did so in the presence of the jury and not at sidebar; and that, over Plaintiff's objection and after stating that "I'm the judge", the trial judge proceeded to act as the Defendant's "shadow counsel" and to rehabilitate Traverso by soliciting inadmissible character evidence to vitiate credible non-hearsay evidence that Traverso had mishandled Title IV monies directed to the Plaintiff and the University Bursar, Valerie Carbone, i.e., that, notwithstanding the fact that Traverso, by the account of another Financial Aid Administrator, one James Cleaveland, as well as the Quinnipiac University Bursar, Valerie Carbone, had mishandled Plaintiff's Quinnipiac account by taking actions that were unauthorized under Title IV and/or institutional policies (and notwithstanding that Traverso herself testified that Traverso is no longer employed as a Financial Aid Administrator for Quinnipiac University or any other institution and now holds a much less responsible sales job, in which she works out of her home), Traverso was nonetheless competent because, by Traverso's unsupported and self-serving account, Traverso handled the student accounts of other Quinnipiac students properly.[8]

22. That the trial judge repeatedly interrupted Plaintiff's testimony, at one point and in response to Plaintiff's objection that the court was "mocking the witness", apologizing for conduct that would cause Plaintiff and other persons to conclude that the court was not treating Plaintiff respectfully; and that, during defense counsel's cross-examination, of the Plaintiff, the trial judge appeared to encourage defense counsel to harass and annoy the Plaintiff by

---

[8] Although Defendant testified to at least two and possibly as many as five Quinnipiac student lawsuits naming the Defendant and Plaintiff introduced a West's Digest Report evidencing four new student lawsuits against Quinnipiac in 2003, the trial judge would not allow this evidence to be admitted into the record.

permitting, and even overtly encouraging, testimony regarding facts to which the parties had previously stipulated, i.e., that Plaintiff was a competent law student; and by permitting defense counsel to read into the record a completely irrelevant and superceded commentary [9] regarding a real estate matter involving Plaintiff and two other parties that was certified "wholly meritorious" by three attorneys of reputation, which claims were upheld by a federal court of the Second Circuit, and which the trial judge knew or should have known was without authority and not reliable, and therefore not within the public records exception to the hearsay rule; and that, when Plaintiff claimed the right to introduce the appellate order that invalidated and vitiated the prejudicial, irrelevant, and prejudicial evidence introduced by defense counsel, the trial judge—only after Plaintiff challenged for bias in open court in the presence of the jury—allowed Plaintiff to submit it, but, in a biased manner, did <u>not</u> permit it to be marked as an exhibit, and, in a biased and discriminatory manner, did <u>not</u> allow Plaintiff to read it in the presence of the jury, although, as noted, defense counsel was permitted to do so.

23. That, at one point, Plaintiff directly asked the trial judge for assurances that he was not predisposed to take the case from the jury and that, if Plaintiff testified to her personal legal matters and those of other persons, thereby incurring legal detriment, the trial judge would in fact submit the case to the jury and not simply permit defense counsel to harass Plaintiff by soliciting this irrelevant and prejudicial testimony, and then direct a verdict for the Defendant; and that, in response to this direct query by Plaintiff, the trial judge stated on the record, "I'll give it to the jury."

24. That following Plaintiff's testimony on January 14 and prior to any testimony by any defense witnesses, the trial judge dismissed the jury, thereby preventing the jury from hearing the testimony of Valerie Carbone, who corroborated Plaintiff's testimony and, *inter alia*, testified that, to the knowledge of Ms. Carbone, a 40-year employee of Quinnipiac University, there was no such

---

[9] Defense counsel cited a January 16, 2004 court "order" that was not in existence at any time relevant to the litigation; and which was invalidated by a preemptory challenge under a state court rule that has been upheld by an appellate court of competent jurisdiction 87 times since 1896, according to West's Digest.

concept as "financial good standing" and that "good standing" was defined not by the Defendant, but by the University website policy; that certain of Anne Traverso's actions, including, but not limited to, intercepting Title IV checks that were payable to the Plaintiff, were improper and unauthorized under University policies; that pending adjudication of Plaintiff's contract claims against Quinnipiac University, the University took the official position that Plaintiff's obligation to pay disputed tuition charges to Quinnipiac was suspended and that, as of the date of Carbone's testimony, Plaintiff's student account was not due and payable and/or in a past-due status, thereby directly contradicting the testimony of the Defendant and Anne Traverso and proving Plaintiff's case.

25. That, in consideration of the foregoing Paragraphs 6-21, I noted on the record at the end of the first day of trial, January 11, 2005, a formal challenge to the trial judge's partiality, stating that I would file a formal Affidavit of Prejudice; that the trial judge summarily responded on the record that he would not consider such a challenge with any degree of objectivity; that I asked him directly if he did not think that he should wait to consider the evidence, i.e., that he should reserve judgment until he actually read my Affidavit of Prejudice; and that he clearly stated that this would not be necessary.

26. That in consideration of the foregoing facts, I believe that a reasonable member of the public, particularly one with any degree of sophistication regarding judicial ethics and legal proceedings, would conclude that the trial judge is biased against me and favors the opposing party; and that such a reasonable member of the public would at least consider the possibility that the trial judge has been the recipient, directly or indirectly, of ex parte communications with the Defendant and/or the Defendant's attorney.

27. That, as a person who has always had great respect for the integrity of the federal courts, and, particularly, the federal courts of this circuit, I make this affidavit in good faith, to raise for review the due process violations that have occurred in this case and have accrued to me, as a consequence of the actions of a United States District Court judge that are an abuse of discretion and the

judicial process and which, in this case, have operated to deprive me of my Seventh Amendment right to a trial by a civil jury that, in consideration of the court file, record, and proceedings, including, but not limited to, the in-court testimony of Valerie Carbone, and other evidence that was wrongfully kept from the jury by the trial judge whose partiality is hereby challenged, I should have and would have won.

Witness by hand, this 2nd day of February, 2005, at Bloomington, Hennepin County, MN.

DATED: 2-02-05    BY: _____

Barbara R. Burns

Subscribed and sworn to before me.

Witness by hand and seal, this 2nd day of February, 2005 at Edina, Hennepin County, MN.

DATED: 02/02/2005    BY: _____

NOTARY PUBLIC-MINNESOTA

RYAN R NASH
Notary Public
Minnesota
My Commission Expires January 31, 2009

### Certification

Barbara Burns, upon oath, hereby certifies that on February 2, 2005, a true and correct copy of the Affidavit of Barbara R. Burns, dated February 2, 2005, was mailed to defense counsel, Matthew G. Conway, Conway and Stoughton, P.A., 201 Ann Street, Hartford, CT 06301 via United States first-class mail and filed by United States Express Mail with the Clerk of the United States District Court, 450 Main Street, Hartford, CT 06103.

DATED: 2-02-05    BY: _____

Barbara R. Burns

Subscribed and sworn to before me.