Ms. Kunofsky:

In accordance with the court's order of December 9, 2004, instructing the parties to direct any necessary correspondence in this case directly to the court, I enclose a letter dated January 22, 2005, together with enclosures for immediate transmittal to Judge Robert N. Chatigny. Please note that the referenced communication by David S. King is submitted via fax under separate cover; and that a copy of this correspondence and all enclosures is contemporaneously filed with the Clerk of the United States District Court and served upon counsel of record, Matthew G. Conway.

January 22, 2005

Dear Judge Chatigny:                VIA FACSIMILE AND ELECTRONIC MAIL

I am constrained to bring to the attention of the court a very recent communication by the Defendant, David S. King, to Alex M. Johnson, Dean, University of Minnesota Law School. The communication, which is enclosed under separate cover, purports to respond to the January 14, 2005 directive of this court, in response to the Plaintiff's good-faith request for a truthful account of Plaintiff's academic record and tenure with Quinnipiac University School of Law. In actuality, it conforms to neither the spirit nor the letter of either the Plaintiff's request or the court's instruction to the Defendant. Additionally, the statement, which makes an unauthorized disclosure of private data, violates both Quinnipiac University institutional policy and the federal Family Educational Rights and Privacy Act (FERPA); and is substantially false. A copy of the email provided by the Plaintiff to the Defendant's attorney, setting forth the terms of the Plaintiff's authorization, is submitted under separate cover.

Plaintiff's specific objections to the Defendant's unauthorized direct communication with Dean Johnson-- which does not obviate the necessity of a hearing under the Minnesota Government Data Practices Act, Minn. Stat. 13.04(4), one of the primary objectives of the court's directive to the Defendant to issue a remedial statement--are that (1) the Defendant's letter, in clear violation of Quinnipiac institutional policies and applicable state and federal statute governing maintenance and dissemination of academic records, makes unauthorized disclosure of private data, i.e., the particulars of Plaintiff's student account with Quinnipiac University, with which, it is duly noted, the Defendant has consistently claimed to have no knowledge and which the Quinnipiac Bursar, Valerie Carbone testified under oath at trial had been timely and validity disputed by the Plaintiff; and which Ms. Carbone further testified is presently considered by Quinnipiac University to be suspended, pending the outcome of litigation between Plaintiff and Quinnipiac University, confirmed by this court as a non-party to the case at bar, *Burns v. King*, Case No. 03-CV-897; (2) the Defendant's letter persists in falsely asserting that there is, in fact, a "financial good standing policy" in effect at Quinnipiac University School of Law, which the University Bursar expressly denied, citing the same Quinnipiac website policy, setting forth the definition of "good standing" as that proffered by Plaintiff at trial; and (3) the Defendant's letter misstates and mischaracterizes the circumstances under which the January 4, 2000 Good Standing Letter was issued and re-issued by Quinnipiac Dean Neil H. Cogan to Plaintiff on a number of occasions between January 4, 2000 and May 25, 2000.

The practical result of this latest communication by the Defendant is that the Defendant's letter to Dean Johnson--far from rectifying a misrepresentation of Plaintiff's student status for transfer evaluation purposes--actually creates a *more* damaging and misleading picture--and, thereby, a greater injustice--than the previous statement by the Defendant, for which Plaintiff sued the Defendant and which was the basis for the defamation and attendant emotional distress claims asserted by Plaintiff's suit. Plaintiff takes this opportunity to remind the court that the court record is unequivocal that Plaintiff's claims were upheld--and Defendant's affirmative defense rejected--by this court not once, but twice,, i.e., on September 30, 2004, when this court denied Defendant's motion for summary judgment; and again on January 14, 2005, when the court instructed the Defendant to report to the University of Minnesota that, based upon criteria governing good standing published by both Quinnipiac University and the University of Minnesota, Plaintiff was, in fact, in good standing on May 24, 2000.

1

Plaintiff further duly notes that recorded in-court stipulations, such as that memorialized in the presence of this court on January 14, 2005, are legal under the decisional law of the state of Minnesota, which controls; and, absent lack of informed consent and/or duress, are presumed binding upon the court and the parties. Here, the Defendant, himself an attorney, was represented by, and had the benefit of, counsel when, on two different occasions, once on direct examination on January 12, 2005 and again on January 14, 2005, he voluntarily stated on the record that, in response to Plaintiff's good-faith request and the directive of this court, he would communicate to the University of Minnesota that, notwithstanding his May 24, 2000 communication to Dean Thomas Sullivan, Plaintiff was, in fact, in good standing, as defined by Quinnipiac University School of Law and the University of Minnesota Law School. As stated, he did not do this.

In the interest of creating a clear record, Plaintiff is constrained to again remind the court that it is undisputed by all parties--and Defendant, who asserted substantial truth as an affirmative defense, has never proven otherwise--that the term "good standing", as used by ABA-approved law schools in the United States, is not premised upon financial factors. To the contrary, the website policies of both the University of Minnesota and Quinnipiac University proffered by Plaintiff at trial expressly state that "good standing" is based solely upon academic factors, including adherence to ethical conduct requirements. Furthermore, and as the court can personally attest by a review of the court record, Defendant's own witness, Valerie Carbone, the Quinnipiac Bursar and a Quinnipiac employee of more than 40 years, testified under oath and on the record that (1) there was no such concept or policy as "financial good standing" in effect at Quinnipiac University School of Law; and (2) Quinnipiac institutional policy did not permit the Defendant to retroactively invalidate previously-issued transcripts and/or Good Standing Letters, as the Defendant attempted to do on May 24, 2000 with respect to the Plaintiff.

The court may further take judicial notice of the fact that the Defendant himself repeatedly testified in deposition and at trial that the Defendant had no expertise, authority, or knowledge of student account issues, and that the Defendant deferred to the University Bursar, Ms. Carbone, with regard to these issues. Given these facts, the in-court statements of Valerie Carbone must be considered authoritative and accorded more weight than those of the Defendant. Based upon the court file, record, and proceedings, including the testimony of Ms. Carbone, the court should conclude that Defendant's invocation of a "financial good standing policy" is a convenient fabrication that is not, and cannot be, binding upon the Plaintiff, Quinnipiac University and/or the University of Minnesota Law School.

It must further be expressly noted that, even if there was a Quinnipiac University "financial good standing policy", which Ms. Carbone testified that there was not, the details of Plaintiff's financial dealings with Quinnipiac University School of Law are private data under published Quinnipiac University policies, as well as the Minnesota Government Data Practices Act, and the federal Family Educational Rights and Privacy Act (FERPA). *Moreover, Quinnipiac institutional policies--to which the Defendant has unconvincingly asserted that he remained, and remains, faithful--expressly prohibit any communication of a student's academic or student record, including accounts receivable record, without the student's written consent.*

In this case, Plaintiff did not authorize either the Defendant or Quinnipiac University to communicate directly with the University of Minnesota. Rather, as Plaintiff's January 15, 2005 email to defense counsel, submitted under separate cover, expressly states, Plaintiff directed the Defendent to sign and execute the statement prepared by Plaintiff, or one substantially similar, *and return it to Plaintiff*, with the understanding that Plaintiff, as the "data subject", would deliver it to concerned authorities within the University of Minnesota.

<u>In sum, the Defendant's most recent act, is, for all intents and purposes, a republication of his original defamatory statement, with superficial "cosmetic" changes; and is, similarly, substantially false, misleading, and unprivileged. The statement also clearly evidences malice, which, as Plaintiff noted on the record, operates to defeat qualified privilege and may entitle Plaintiff to an award of punitive damages. Plaintiff specifically brings this point to the court's attention to make of record factors which support Plaintiff's entitlement to punitive damages on remand, following an appropriate filing by Plaintiff in the federal circuit court of jurisdiction to enforce Plaintiff's Seventh Amendment right to a civil jury.</u>

Specifically, as the court is, or should be, aware, if a punitive damage claim is permitted under state substantive law--in this case, the state of Minnesota, which would permit an award of treble damages with

respect to the Defendant's frivolous "substantial truth" defense under Minn. Stat. 549.20--it may be used to satisfy the jurisdictional amount in controversy because there is no "legal certainty" that the amount will not be recovered. In injunction actions, the amount in controversy is the value of the right to be recovered, or the extent of the injury to be prevented, and not the amount that the Plaintiff may recover. As the court itself noted, federal district courts have been given jurisdiction of suits between citizens of different states, even though the controversies do not involve issues of federal substantive law. The legislative intent underlying the enactment of the diversity-jurisdiction statute was to protect the out-of-state party from possible local bias in state courts.

Given these facts, the amount-in-controversy requirement is amply satisfied and the trial court's untimely disclaimer of subject-matter jurisdiction clearly erroneous. Plaintiff further notes that, notwithstanding any appellate action taken by Plaintiff, the trial court may, and under Minnesota law, must, enforce the above-referenced recorded stipulation, a determination in Plaintiff's favor, to which the Defendant voluntarily agreed prior to this court's disclaimer of subject-matter jurisdiction.

In consideration of the foregoing facts, Plaintiff is constrained to request that the court's untimely disclaimer of jurisdition be set aside and that Plaintiff's entitlement to a jury trial be reinstated, subject to an order in limine, excluding certain evidence wrongfully introduced, including, but not limited to, irrelevant and meaningless dicta that both the court and the Defendant knew or should have known, was unauthorized under Minnesota law and court rules which control, and which has been demonstrated by Plaintiff as having been formally rejected by Minnesota trial and appellate courts. In the alternative, Plaintiff requests that the order of the trial court be stayed pending conclusion of appropriate appellate proceedings. On the basis that Plaintiff has formally invoked 28 U.S.C. 144, 455 and has formally challenged the fitness of the assigned trial judge, Robert N. Chatigny, on the record on at least three occasions between the dates of December 6, 2004 and January 15, 2005, Plaintiff requests that any necessary supplemental and/or collateral proceedings in this matter and/or that involve these same parties, be heard and conducted by a different trial court judge.

Since, as the court itself noted on the record, time is clearly of the essence, the court's prompt action is requested and expected.

Barbara R. Burns

cc: File No. 03-CV-897 (RNC) (for filing via U.S.Mail)

cc: Matthew G. Conway

3

Westlaw.

Slip Copy  
2004 WL 2381736 (D.Conn.)  
(Cite as: 2004 WL 2381736 (D.Conn.))

FOR EDUCATIONAL USE ONLY

Page 1

**H**  
**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,  
D. Connecticut.

Barbara R. BURNS, Plaintiff,  
v.  
David S. KING, Defendant.

No. 3:02CV00897 (RNC).

Sept. 29, 2004.

Barbara R. Burns, Hackensack, NJ, pro se.

US Court of Appeals, New York, NY, Matthew G. Conway, Conway & Stoughton, Hartford, CT, for Defendant.

*RULING AND ORDER*

CHATIGNY, J.

*1 Plaintiff Barbara Burns, a resident of Minnesota, brings this diversity action alleging defamation, against defendant David King, an associate dean at Quinnipiac University Law School ("Quinnipiac") and a resident of Connecticut. [FN1] Defendant has filed a motion for summary judgment [Doc. # 55]. For the following reasons, defendant's motion is denied.

> FN1. Plaintiff also appears to assert a claim for breach of contract by defendant and Quinnipiac. Because Quinnipiac is not a party to this action, and plaintiff does not allege that a contract existed between herself and defendant, she cannot prevail on this claim.

*I. BACKGROUND*

Plaintiff alleges the following facts as the basis for her complaint. She attended law school at Quinnipiac from January 4, 1999, until May 8, 2000, when she sought to transfer to another law school. She applied to several schools and claims that Neil Cogan, Dean of Quinnipiac, issued a letter stating that she was in good standing at the law school. On May 24, 2000, plaintiff alleges, defendant told several employees of Quinnipiac that plaintiff was *not* in good standing with the law school and later made the same statement to persons at Georgetown University and to the Dean of the University of Minnesota Law School. [FN2] Plaintiff further claims that as a result of defendant's statements regarding her lack of good standing, her applications for transfer were suspended and that she suffered emotional distress and damage to her reputation.

> FN2. The complaint does not specify the circumstances or form of the alleged publication to persons at Georgetown University.

*II. DISCUSSION*

To prevail on a motion for summary judgment, the moving party must establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see generally Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To withstand a properly supported motion, a plaintiff who would bear the burden of proof at trial cannot rest on the allegations in the complaint but must offer evidence that would permit a reasonable person to find in his favor. *See* Fed.R.Civ.P. 56(e). In deciding a motion for summary judgment, the court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party...." *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). Only when reasonable minds could not differ is summary judgment proper. *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:02-cv-00897-RNC   Document 159-2   Filed 02/03/2005   Page 5 of 7                    Page 3 of

Slip Copy                              FOR EDUCATIONAL USE ONLY                                           Page 2
2004 WL 2381736 (D.Conn.)
(Cite as: 2004 WL 2381736 (D.Conn.))

152, 116 L.Ed.2d 117 (1991).

A court of the United States sitting in diversity jurisdiction must look to the law of the forum state for the rules governing choice of law. *See Klaxon Co. v. Stentor Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Connecticut choice of law rules, the applicable substantive law is that of the state with "the most significant relationship to the occurrence and the parties." *O'Connor v. O'Connor,* 201 Conn. 632, 648, 519 A.2d 13 (1986). "Contacts to be taken into account in applying the principles of § 6 [of the Restatement (Second) Conflicts of Law] to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Dugan v. Mobile Medical Testing Services, Inc.,* 265 Conn. 791, 800, 830 A.2d 752 (2003), citing Restatement (Second) Conflicts of Law, § 145(2).

*2 "[T]he law of defamation is designed to protect a person's interest in reputation. Injury is suffered, if at all, at the place in which the plaintiff enjoys a reputation, usually the place where he or she is domiciled. Accordingly, the place of the plaintiff's domicile typically has the 'most significant relationship' to the occurrence and the parties." Robert D. Sack, Sack on Defamation § 15.3.2 (3d Ed.2003) Vol. II. *See also Wells v. Liddy,* 186 F.3d 505, 521 (4th Cir.1999), *cert. denied,* 528 U.S. 1118, 120 S.Ct. 939, 145 L.Ed.2d 817 (2000) (applying Maryland choice of law rules); *Lee v. Bankers Trust Co.,* 166 F.3d 540, 545 (2d Cir.1999) (applying New York choice of law rules); *Zimmerman v. Bd. of Pubs. of Christian Reformed Church, Inc.* 598 F.Supp. 1002, 1011 (D.Colo.1984) (applying Colorado choice of law rules). Connecticut courts have not yet addressed this issue, but federal courts in this district have concluded that, in a case of multistate defamation, Connecticut would apply the law of plaintiff's domicile. [FN3] *See, e.g., Dale Sys., Inc. v. Time, Inc.,* 116 F.Supp. 527, 530 (D.Conn.1953). Therefore, Minnesota law applies in the present case.

> FN3. Multistate defamation usually arises in the context of mass publication. The same reasons that have persuaded courts in those cases to apply the law of the plaintiff's domicile are also applicable in this more limited context. Even though there was no mass publication, this case involves repeated publication of the same statement to different persons in different jurisdictions, one of which is the plaintiff's domicile.

Defendant contends that the doctrine of substantial truth affords him an absolute defense to plaintiff's defamation claim and that he is therefore entitled to summary judgment. I disagree.

Under Minnesota law, in order to state a claim for defamation, a plaintiff must "prove that a statement was false, that it was communicated to someone besides the plaintiff, and that it tended to harm the plaintiff's reputation and to lower him in the estimation of the community." *Richie v. Paramount Pictures Corp.,* 544 N.W.2d 21, 25 (Minn.1996). Truth is an absolute defense to a defamation claim. *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 255 (Minn.1980). In evaluating the truth of a statement for purposes of a defamation claim, the court inquires whether the statement is substantially true. "A statement is substantially accurate if its gist or sting is true, that is, if it produces the same effect on the mind of the recipient which the precise truth would have produced." *Jadwin v. Minneapolis Star and Tribune Co.,* 390 N.W.2d 437, 441 (Minn.App.1986). "If the statement is true in substance, inaccuracies of expression or detail are immaterial." *Id.* The doctrine of substantial truth, then, protects a speaker who utters a statement that is subject to multiple interpretations. *Hunter v. Hartman,* 545 N.W.2d 699, 707 (Minn.App.), rev. denied, 1996 Minn. LEXIS 415 (Minn.1996). "A commentator who advocates one of several feasible interpretations of some event is not liable in defamation simply because other interpretations exist." *Id.* Defendant contends that the doctrine of substantial truth shields him from liability because his statement, that plaintiff was not in good standing, could refer either to academic or financial standing. Defendant is correct that the parties

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2381736 (D.Conn.)
(Cite as: 2004 WL 2381736 (D.Conn.))

FOR EDUCATIONAL USE ONLY

Page 3

contend for two possible interpretations of "good standing." [FN4] However, plaintiff contests the truth of the statement, regardless of whether good standing referred to academic or financial good standing. Although she disputes that "financial good standing" would be a reasonable interpretation of "good standing," she also disputes that she owed the law school any money. The doctrine of substantial truth cannot shield a party from liability where the truth of *both* possible interpretations is contested. The purpose of the doctrine is to prevent a speaker from being liable in defamation where the gist of the statement has the same effect as the truth would have had. According to plaintiff, neither interpretation is true. Defendant, therefore, has not sustained his burden.

> FN4. Plaintiff claims that the only feasible interpretation is that the phrase refers to academic standing. Defendant contends that he intended to comment only on plaintiff's financial standing.

### III. CONCLUSION

*3 For the foregoing reasons, defendant's motion for summary judgment [Doc. # 55] is denied.

So ordered.

2004 WL 2381736 (D.Conn.)

**Motions, Pleadings and Filings (Back to top)**
- 3:02CV00897  (Docket)
               (May. 24, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| | |
|---|---|
| Date/Time of Request: | Wednesday, February 02, 2005 16:05:00 Central |
| Client Identifier: | BB |
| Database: | DCT |
| Citation Text: | Slip Copy |
| Lines: | 155 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.