February 3, 2005

U.S.D.J. Robert N. Chatigtny
United States District Court
450 Main Street
Hartford, CT 06103

FILED

2005 FEB -7 P 12: 20

U.S. DISTRICT COURT
HARTFORD, CT.

RE: Corrected Filing

Dear Judge Chatigny:

As directed my your correspondence of January 31, 2005, I return the enclosed Plaintiff's Motion to Set Aside Findings and for New Trial, submitted to you via electronic mail on January 22, 2005 and contemporaneously filed via first-class mail with the Clerk of the United States District Court for the District of Connecticut.

It is noted that the corrected filing is double-spaced and hole-punched; it is also noted that both parties have filed documents without hole punches that have been accepted by the Clerk of the Court for the past two years; and that the opposing party has filed letter correspondence that is not double-spaced.

It is further noted that the above-referenced January 22, 2005 Motion was submitted directly to you in accordance with the transcript of the court's order of December 9, 2004. Additionally, the Motion was copied to the court file via first-class mail, not email, as your January 31, 2005 correspondence states. On the basis that you authorized direct submissions to the court on December 9, 2004, and that the undersigned Plaintiff complied with your instructions, I am considering the Motion before the court and continuously filed with the court as of that date.

I will appreciate knowing if this would not also be the court's understanding.

Sincerely,
Barbara R. Burns

cc: File No. 03-CV-897 (RNC)

January 22, 2005

U.S.D.C. Robert N. Chatigny
United States District Court
District of Connecticut
450 Main Street
Hartford, CT 06103          VIA FACSIMILE AND ELECTRONIC MAIL

Dear Judge Chatigny:

I am constrained to bring to the attention of the court a very recent communication by the Defendant, David S. King, to Alex M. Johnson, Dean, University of Minnesota Law School. The communication purports to respond to the January 14, 2005 directive of this court, in response to the Plaintiff's good-faith request for a truthful account of Plaintiff's academic record and tenure with Quinnipiac University School of Law. In actuality, it conforms to neither the spirit nor the letter of either the Plaintiff's request or the court's instruction to the Defendant. Additionally, the statement, which makes unauthorized disclosure of private data, violates both Quinnipiac University institutional policy and the federal Family Educational Rights and Privacy Act (FERPA), and is substantially false. A copy of the defendant's letter to Dean Johnson, as well as the email provided by the plaintiff to the defendant's attorney, setting forth the terms of plaintiff's authorization, is enclosed.

Plaintiff's specific objections to the defendant's unauthorized direct communication with Dean Johnson—which does not obviate the necessity of a hearing under the Minnesota Government Data Practices Act, one of the primary objectives of the court's directive to the defendant to issue a remedial statement—are that (1) the letter, in clear violation of Quinnipiac institutional policy and applicable federal law, discloses private

1

data, i.e., particulars of Plaintiff's student account with Quinnipiac University, that the University Bursar, Valerie Carbone, testified had been timely disputed; and which Ms. Carbone further testified is presently considered by Quinnipiac University to be suspended, pending the outcome of litigation between Plaintiff and Quinnipiac University, a non-party to Case No. 3-02-897; (2) the letter persists in maintaining that there is, in fact, a "financial good standing policy" in effect at Quinnipiac University, which the University Bursar expressly denied, citing the same Quinnipiac website policy as that proffered by the Plaintiff at trial; and (3) the letter misstates and mischaracterizes the circumstances under which the January 4, 2000 Good Standing Letter was issued and re-issued on a number of occasions between January 4, 2000 and May 25, 2000 by Dean Neil Cogan to Plaintiff.

<u>The practical result of this latest communication by the Defendant is that the Defendant's letter to Dean Johnson, far from rectifying a misrepresentation of Plaintiff's student status for transfer evaluation purposes, actually creates a more damaging and misleading picture of Plaintiff's Quinnipiac academic record and tenure than the previous statement, for which Plaintiff sued the Defendant; and, thereby, gives rise to an even greater injustice than that that was the basis for the claims asserted by Plaintiff's suit.</u> Plaintiff again reminds the court that the court record confirms that Plaintiff's claims were upheld, and Defendant's affirmative defense rejected, by this court not once, but twice, i.e., on September 30, 2004, when the court denied Defendant's motion for summary judgment, and again on January 15, 2005, when the court instructed the Defendant to report to the University of Minnesota that, based upon criteria governing

2

good standing published by both Quinnipiac University and the University of Minnesota, Plaintiff was, in fact, in good standing on May 24, 2000.

<u>Plaintiff is further constrained to note that in-court stipulations, such as that memorialized in the presence of this court on January 15, 2005, are legal under the decisional law of the state of Minnesota, which governs; and, absent lack of informed consent or duress, are presumed binding upon the court and the parties.</u> Here, the Defendant, himself an attorney, was represented by, and had the benefit of, counsel when, on two different occasions, once during direct examination on January 13, 2005 at which time he was under oath, and again, on January 15, 2005, he voluntarily stated on the record that, in response to Plaintiff's request, he would communicate to the University of Minnesota that Plaintiff was in "good standing", as defined by Quinnipiac University and University of Minnesota policies.

As the court is, or should be, aware, it is undisputed by all parties—and Defendant, who raised substantial truth as an affirmative defense, has never proven otherwise—that the term "good standing", as used by ABA-approved law schools in the United States, is <u>not</u> premised upon financial factors. To the contrary, the Defendant's "financial good standing" argument was categorically denied and disclaimed by the Quinnipiac University Bursar, Valerie Carbone. Furthermore, the University Bursar, an employee of more than forty years, testified under oath and on the record that Quinnipiac institutional policies also did <u>not</u> permit the Defendant to retroactively invalidate previously-issued transcripts and Good Standing Letters, as the Defendant attempted to do on May 24,

3

2000. The court may also take judicial notice of the fact that the Defendant himself repeatedly testified in deposition and at trial that the Defendant had no expertise, authority, or knowledge of student account issues, and that the Defendant deferred to the University Bursar as to these issues. Given these facts, the in-court statements of Ms. Carbone must be accorded considered authoritative and accorded more weight than those of the Defendant, and the court must conclude that Defendant's claims of a "financial good standing policy" at Quinnipiac University are a convenient fabrication that is and cannot be binding upon Plaintiff, Quinnipiac University and/or the University of Minnesota Law School.

It must further be expressly noted that, even if there was a Quinnipiac University "financial good standing policy", which Ms. Carbone confirmed that there is not, the details of Plaintiff's financial dealings with Quinnipiac University are private data under Quinnipiac institutional policies, as well as the Minnesota Government Data Practices Act, and the federal Family Educational Rights and Privacy Act (FERPA). *Moreover, Quinnipiac institutional policy, to which the Defendant has unconvincingly asserted that he remained and remains faithful, expressly prohibits any communication of a student's academic or student record, including accounts receivable record, without the student's written consent.* In this case, Plaintiff did <u>not</u> authorize either the Defendant or Quinnipiac University to communicate directly with the University of Minnesota. Rather, as Plaintiff's January 15, 2005 email to defense counsel expressly states, Plaintiff directed the Defendant to sign and execute the statement prepared by Plaintiff, or one substantially similar, and *return it to Plaintiff* on the understanding that Plaintiff, as the

4

"data subject", would deliver it to concerned authorities within the University of Minnesota.

. In sum, the Defendant's most recent act, which, for all intents and purposes, is a republication with superficial "cosmetic" changes, of his original defamatory message; and is demonstratively false and unprivileged. The statement also clearly evidences malice, which, as noted by Plaintiff on the record, operates to defeat qualified privilege and may entitle Plaintiff to a jury award of punitive damages. Plaintiff specifically brings these facts to the court's attention to make of record factors which would support Plaintiff's entitlement to punitive damages on remand, following an appropriate filing by Plaintiff in the federal circuit court to enforce Plaintiff's Seventh Amendment right to a civil jury.

Specifically, as the court is, or should be, aware, if a punitive damage claim is permitted under state substantive law, in this case, the state of Minnesota, which permits an award of treble damages, it may be used in making the jurisdictional amount in controversy, because there is no "legal certainty" that the amount will not recovered. In injunction actions, the amount in controversy is the value of the right to be recovered or the extent of the injury to be prevented, and not the amount the Plaintiff may recover. As the court itself noted, the federal courts have been given jurisdiction of suits between citizens of different states, even though the controversies do not involve issues of federal substantive law, to protect the out-of-state party from possible local bias in state courts.

5

Given these facts, the amount-in-controversy requirement is amply satisfied and the trial court's untimely disclaimer of subject-matter jurisdiction clearly erroneous. Plaintiff further notes that, notwithstanding any appellate action taken by Plaintiff, the trial court may enforce the above-referenced stipulation, a determination in Plaintiff's favor, to which the Defendant voluntarily agreed prior to this court's disclaimer of subject-matter jurisdiction.

<u>In consideration of the foregoing facts, Plaintiff is constrained to request that the court's untimely disclaimer of jurisdiction be set aside and that Plaintiff's entitlement to a jury trial be reinstated, subject to an order in limine excluding certain evidence wrongfully introduced, including meaningless and irrelevant dicta that both the court and the opposing party knew, or should have known, was unauthorized under Minnesota law and court rules, which control; and which has been formally rejected as unauthorized and invalid by the Minnesota courts, both trial and appellate. In the alternative, Plaintiff requests that the order of the trial court be stayed pending appeal. On the basis that the partiality and fitness of the assigned trial judge, Robert N. Chatigny, has been formally and properly challenged by the Plaintiff under 28 U.S.C. §§ 144, 455 on at least three occasions between the dates of December 6, 2004 and January 15, 2005, Plaintiff requests that any supplemental and/or collateral proceedings in this matter and/or any collateral matters, by conducted and heard by a different trial judge.</u>

Since, as the court itself noted, time is clearly of the essence, the court's prompt action is requested and expected.

6

Sincerely,

*[signature: Barbara R. Burns]*

Barbara R. Burns


cc: File 03-CV-897 (RNC)

cc: Matthew G. Conway