# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

Barbara R. Burns,

                    Plaintiff

v.

David S. King,

                    Defendant          District Court File No. 3-02-CV-000897 (RNC)

### NOTICE OF APPEAL

---

The Plaintiff, Barbara R. Burns, hereby notices appeal of the January 14, 2005 verbal order, of which a transcript was made, of the United States District Court for the District of Connecticut. Plaintiff hereby requests appellate review of all orders in this case, including, but not limited to, discovery orders. Plaintiff notes that a Motion for Waiver of Appellate filing fees and costs will be filed within 30 days of the date of this Notice of Appeal, as required by the Federal Rules of Appellate Procedure for the Second Circuit.

As provided and authorized by FRAP 4(a)(5), Plaintiff at this time also moves for Extension of Time to File Appeal of any judgment, if any, entered by the district court pursuant to the above-referenced January 14, 2005 verbal order of which a transcript was made. Plaintiff duly notes that "entry of judgment", as defined by the Federal Rules of Civil Procedure, occurs when a notation of judgment is made by the Clerk of the Court on the case docket. FRCP 58, 79(a). To date, Plaintiff has not received notice of docketing of judgment by the Clerk of the Court. [1]

2-11-05                              Barbara R. Burns

---

[1] Plaintiff filed a written request for an order in clarification with respect to an unsigned and uncertified notice issued by the trial judge's office. Plaintiff earlier filed a Motion to Set Aside the January 14, 2005 verbal order of which a transcript was made and for New Trial on January 22, 2005, which, to date, the trial court has not ruled upon, in addition to an Affidavit of Prejudice. Exhibits A, B.C

January 30, 2005                  VIA FACSIMILE AND ELECTRONIC MAIL

Dear Judge Chatigny:

   I am in receipt of a document dated January 18, 2005 that purports to be a "judgment" duly entered and filed by the office of Kevin F. Rowe, Clerk of the United States District Court for the District of Connecticut. It must be expressly noted that the "judgment" is not stamped with Mr. Rowe's seal, or otherwise certified by the office of the Clerk in any manner whatsoever.

   Furthermore, the document is unsigned, although it bears the typewritten signature of Linda Kunofsky. It is duly noted that Ms. Kunofsky is a member of your own personal staff; and, so far as I am aware, is not associated with Mr. Rowe's office and, accordingly, has no authority to file and certify official court documents. Under the Rules of Federal Civil Procedure, this authority is vested solely in the office of the Clerk of the Court.

   The record should further show that I have never received any order and/or memorandum signed by any judge or certified by any authorized court representative that sets forth the basis for the court's purported "disposition" of this case. Given these facts, the document mailed by Ms. Kunofsky is inadequate for appeal purposes, or, for that matter, any purpose.

   It is also noted that on January 22, 2005, the undersigned Plaintiff moved the United States District Court for the District of Connecticut for an order setting aside what the court represented on the record as a denial of Defendant's motion for judgment as a matter of law, together with what the court characterized as a dismissal on jurisdictional grounds. Plaintiff expressly requested hearing by a different district court judge, citing bias and inability to sit, within the meaning of 28 U.S.C. 144, 455.

   To date, the court has not denied or otherwise disposed of that motion, which is expressly authorized by the Rules of Court, and which, if Plaintiff is not mistaken, is a prerequisite to any appeal that is premised upon a denial of the right to a civil jury. As a consequence of the court's failure to date to issue and file formal findings, Plaintiff understandably has absolutely no idea as to the basis for the court's denial of Plaintiff's jury trial entitlement.

   As I am sure that the court must agree, it is difficult, if not impossible, to make any informed decision as to what appellate remedy is appropriate absent some clear statement by the court. I am also constrained to note that, prior to this time, this court's orders, including, but not limited to, the court's order upholding federal jurisdiction and denying Defendant's motion for summary judgment, thereby upholding Plaintiff's right to a jury trial, have been both detailed and clear.

   Please construe this communication as a request for an orderly disposition of Plaintiff's timely and proper motion to set aside the court's January 14, 2005 jurisdictional findings, and for an order in clarification of the unsigned, uncertified document issued by Ms. Kunofsky. As time is clearly of the essence, I request your written response via email within five business days.

   Thank for your attention to this information.

Sincerely,

Barbara R. Burns

cc: File No. 03-CV-897 (RNC)

cc: Matthew Conway

Ms. Kunofsky:

In accordance with the court's order of December 9, 2004, instructing the parties to direct any necessary correspondence in this case directly to the court, I enclose a letter dated January 22, 2005, together with enclosures for immediate transmittal to Judge Robert N. Chatigny. Please note that the referenced communication by David S. King is submitted via fax under separate cover; and that a copy of this correspondence and all enclosures is contemporaneously filed with the Clerk of the United States District Court and served upon counsel of record, Matthew G. Conway.

January 22, 2005

Dear Judge Chatigny:                     VIA FACSIMILE AND ELECTRONIC MAIL

I am constrained to bring to the attention of the court a very recent communication by the Defendant, David S. King, to Alex M. Johnson, Dean, University of Minnesota Law School. The communication, which is enclosed under separate cover, purports to respond to the January 14, 2005 directive of this court, in response to Plaintiff's good-faith request for a truthful account of Plaintiff's academic record and tenure with Quinnipiac University School of Law. In actuality, it conforms to neither the spirit nor the letter of either the Plaintiff's request or the court's instruction to the Defendant. Additionally, the statement, which makes an unauthorized disclosure of private data, violates both Quinnipiac University institutional policy and the federal Family Educational Rights and Privacy Act (FERPA); and is substantially false. A copy of the email provided by the Plaintiff to the Defendant's attorney, setting forth the terms of the Plaintiff's authorization, is submitted under separate cover.

Plaintiff's specific objections to the Defendant's unauthorized direct communication with Dean Johnson-- which does not obviate the necessity of a hearing under the Minnesota Government Data Practices Act, Minn. Stat. 13.04(4), one of the primary objectives of the court's directive to the Defendant to issue a remedial statement--are that (1) the Defendant's letter, in clear violation of Quinnipiac institutional policies and applicable state and federal statute governing maintenance and dissemination of academic records, makes unauthorized disclosure of private data, i.e., the particulars of Plaintiff's student account with Quinnipiac University, with which, it is duly noted, the Defendant has consistently claimed to have no knowledge and which the Quinnipiac Bursar, Valerie Carbone testified under oath at trial had been timely and validity disputed by the Plaintiff; and which Ms. Carbone further testified is presently considered by Quinnipiac University to be suspended, pending the outcome of litigation between Plaintiff and Quinnipiac University, confirmed by this court as a non-party to the case at bar, *Burns v. King*, Case No. 03-CV-897; (2) the Defendant's letter persists in falsely asserting that there is, in fact, a "financial good standing policy" in effect at Quinnipiac University School of Law, which the University Bursar expressly denied, citing the same Quinnipiac website policy, setting forth the definition of "good standing" as that proffered by Plaintiff at trial; and (3) the Defendant's letter misstates and mischaracterizes the circumstances under which the January 4, 2000 Good Standing Letter was issued and re-issued by Quinnipiac Dean Neil H. Cogan to Plaintiff on a number of occasions between January 4, 2000 and May 25, 2000.

The practical result of this latest communication by the Defendant is that the Defendant's letter to Dean Johnson--far from rectifying a misrepresentation of Plaintiff's student status for transfer evaluation purposes--actually creates a *more* damaging and misleading picture--and, thereby, a greater injustice--than the previous statement by the Defendant, for which Plaintiff sued the Defendant and which was the basis for the defamation and attendant emotional distress claims asserted by Plaintiff's suit. Plaintiff takes this opportunity to remind the court that the court record is unequivocal that Plaintiff's claims were upheld--and Defendant's affirmative defense rejected--by this court not once, but twice,, i.e., on September 30, 2004, when this court denied Defendant's motion for summary judgment; and again on January 14, 2005, when the court instructed the Defendant to report to the University of Minnesota that, based upon criteria governing good standing published by both Quinnipiac University and the University of Minnesota, Plaintiff was, in fact, in good standing on May 24, 2000.

1

February 3, 2005


U.S.D.J. Robert N. Chatigtny
United States District Court
450 Main Street
Hartford, CT 06103

RE: Corrected Filing

Dear Judge Chatigny:

As directed my your correspondence of January 31, 2005, I return the enclosed Plaintiff's Motion to Set Aside Findings and for New Trial, submitted to you via electronic mail on January 22, 2005 and contemporaneously filed via first-class mail with the Clerk of the United States District Court for the District of Connecticut.

It is noted that the corrected filing is double-spaced and hole-punched; it is also noted that both parties have filed documents without hole punches that have been accepted by the Clerk of the Court for the past two years; and that the opposing party has filed letter correspondence that is not double-spaced.

It is further noted that the above-referenced January 22, 2005 Motion was submitted directly to you in accordance with the transcript of the court's order of December 9, 2004. Additionally, the Motion was copied to the court file via first-class mail, not email, as your January 31, 2005 correspondence states. On the basis that you authorized direct submissions to the court on December 9, 2004, and that the undersigned Plaintiff complied with your instructions, I am considering the Motion before the court and continuously filed with the court as of that date.

I will appreciate knowing if this would not also be the court's understanding.

Sincerely,

*Barbara R. Burns* (signature)

Barbara R. Burns

cc: File No. 03-CV-897 (RNC)

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

Barbara R .Burns,

       Plaintiff                CASE NO. 3-02-CV-897 (RNC)

v.

David S. King,

       Defendants

AFFIDAVIT OF BARBARA R. BURNS

---

Barbara R. Burns, upon oath, deposes and says:

1.    That I am the Plaintiff in the above-entitled action, namely *Burns v. King*, Case No. 3-02-CV-000-897.

2.    **That I make this affidavit in support of my Motion to Set Aside Findings and for New Trial, filed on January 22, 2005 and appended hereto as Exhibit A; and to establish the necessity of bypassing the trial court and making direct application to the appellate court with respect to any necessary motion to facilitate any appeal or other appellate filing to enforce my Seventh Amendment right to a civil jury to decide heretofore-unresolved issues of fact on the basis that the assigned trial judge, Robert N. Chatigny, is biased against me within the meaning of 28 U.S.C. § § 144, 455, and favors the opposing party, as set forth *infra*:**

    1.    That, upon the advice and with the assistance of competent counsel, I filed this action for defamation and attendant humiliation [1], damage to reputation, and lost opportunity to obtain money damages and equitable relief on May 25,

---

[1] Plaintiffs' claims were discussed at length with the trial judge in pre-trial conference in December 2004 and January 2005. At that time the trial judge stated that he understood perfectly that Plaintiff was not asserting an <u>independent</u> claim for emotional distress, but, rather, was asserting only a claim for defamation and <u>collateral</u> humiliation and emotional distress accruing to Defendant's defamatory statement to the University of Minnesota, which, prior to Defendant's statement, had invited Plaintiff's transfer application and recommended Plaintiff for matriculation to an L.LM program even higher-rated than that of the University of Minnesota. This remains unchanged.

1

2002; that I have never modified my complaint, as filed by Connecticut Attorney Earle Giovaniello on my behalf on May 25, 2002, and that, in my unmodified Summons and Complaint, I clearly stated a demand for trial by jury, which entitlement I do not waive and have never waived.

2.   That throughout these proceedings and as documented by the court record, consisting of filings, transcripts and exhibits, I have, by necessity, noted for the record prejudicial and biased rulings, wherein certain discovery and other motions have not been treated even-handedly by the trial court, thereby evidencing bias and prejudicing me and my case within the meaning of 28 U.S.C. § § 144, 455, et seq., i.e., the opposing party has obtained extensions and other dispensations that have not been accorded to me under identical, or, in some cases, more compelling circumstances; and the trial court has granted motions in limine favoring the Defendant, i.e., the trial court has not permitted introduction of credible evidence that the Defendant has been sued by other Quinnipiac students [2] based upon substantially the same facts as those asserted by the Plaintiff's complaint in this case, at the same time permitting the Defendant to introduce litigation involving the Plaintiff and two other persons that was not even commenced until two years after this lawsuit was filed.

3.   That, as a consequence of having filed one complaint of judicial misconduct against a Minnesota federal district court judge [3], which was resolved in my favor [4], and, over a 10-year period, a total of four judicial disqualifications for cause which were upheld by the chief judge of the district and/or the appellate court of jurisdiction [5] [6], I am familiar with the legal standard and the required

---

[2] The Defendant testified in deposition to at least two and possibly as many as five student lawsuits; according to West's Digest, four new student lawsuits were filed in 2003.

[3] In accordance with the practice of the 8th Circuit, the complaint was styled IN RE: The Matter of John Doe. However, the complaint itself identifies the respondent judge as United States District Court Judge James M. Rosenbaum, whose wife, Hennepin County Court Judge Marilyn Brown Rosenbaum, was disqualified for cause in late 1994 upon motion of the undersigned Plaintiff and upheld by the chief judge of Judge Brown Rosenbaum's judicial district prior to the filing of the judicial misconduct complaint against U.S.D.C. James Rosenbaum. It is duly noted that U.S.D.C. James Rosenbaum was later the focus of a Congressional inquiry directly related to his fitness and judicial performance.

[4] See September 9, 1998 Order of Chief United States Circuit Judge Pasco M. Bowman II in JCP – 028, overruling and superseding the March 1995 order of U.S.D.J. James M. Rosenbaum.

[5] Removal of Marilyn Brown Rosenbaum, *supra*, upheld by the chief judge of the Fourth Judicial District of Minnesota; removal of Kevin S Burke, upheld by a three-judge panel, led by Minnesota Appellate Judge

showings that are required to sustain a disqualification of a trial court judge for bias; and that I am, and have been adjudged, fully capable of distinguishing between a trial court judge who is open to conviction and, after hearing, rules against me, but who is otherwise unbiased, and one who is not perfectly open to conviction and refuses to hear me with any degree of objectivity in the first instance.

4.   That, based upon this knowledge, it has consistently been my position that, up to the time of a pre-trial conference on December 6, 2004 and excepting certain discovery rulings, which I duly and timely appealed, the assigned trial judge, Robert N. Chatigny, did not evidence bias within the meaning of 28 U.S.C. § § 144, 455; that, in fact, his opinions, pre-December, 2004, evidenced exceptional diligence, and were most striking for their simplicity, unerring accuracy, and absolute clarity; and that, following what the trial court represented as a thorough review of my claims and the opposing party's arguments in opposition, the trial court, by order filed September 29, 2004 and appended hereto as Exhibit B, upheld federal jurisdiction, denied the opposing party's motion for summary judgment, and ordered this case to proceed to trial by jury in language that, as noted supra, was both graceful, and clear.

5.   That, on December 6, 2004, the trial court convened a pre-trial conference at which time the trial court stated that trial, originally scheduled for December 14, 2004, would be continued; and, that, at that same time, the trial court established certain deadlines for, *inter alia*, Motions in Limine, which deadlines I met, as I have consistently met all deadlines imposed by the court in this case; and that, although the trial judge chose to convene the December 6, 2004 proceeding after dismissing his court reporter, the proceedings were nonetheless witnessed by disinterested parties, including, but not limited to, the conference call coordinator, who can and will verify my account of relevant events, as set forth *supra* and *infra*.

---

Randall Peterson; Removal of Edward Lynch and Leslie Metzen, upheld by a three-judge panel, led by Minnesota Appellate Judge Randall Peterson.
[6] The appellate order upholding the disqualification of Kevin S. Burke also operates to disqualify any other Minnesota trial judge from issuing a subsequent order in support of Burke regarding the same parties and the same subject matter. See, e.g., IN RE: Hormel's Trusts, 282 Minn. 197, 163 N.W. 2d 844 (Minn. 1968).

6.   That, on December 9, 2004, the trial court convened a second pre-trial conference on the record in which the trial judge completely departed from the tone and substance of the December 6, 2004 pre-trial conference, i.e., his tone toward me was unjustifiably hostile; and that, furthermore, in a biased manner, he evidenced that he was pre-disposed to deny any future-filed motion for injunctive relief against the Defendant "even if you win"; and also, in a biased manner, arbitrarily established conditions by which the opposing party was accorded and assured greater access to information, informal communications channels, and to court resources than was accorded to me, the practical result of which was to open up, for the sole benefit of the opposing party, a channel of informal, off-the-record communication not equally available to me; and that, at this time, I duly noted and preserved for appeal my assertion that the trial court, in affording discriminatory and disparate treatment of the parties, was, or might be, biased within the meaning of 28 U.S.C. § § 144, 455;

7.   That, at the time of the December 9, 2004 pre-trial conference, which was conducted by telephone and on the record, and in response to my statement that I would appeal any ruling that discriminated against me and favored the defendant, the trial judge at one point stated that, by his unilateral determination, the appeals court would "not consider it", or words of that substance and meaning; that, additionally, I "best not" or "should not" question his exercise of discretion and/or his personal integrity, or words of that substance and meaning; and that, while it would be an overstatement to state that these remarks were intended or construed as an overt threat, their context, tone, and substance were definitely coercive.

8.   That at that same time, the trial court confirmed its earlier instruction that the trial court had authorized and would rule upon "as soon as possible" motions in limine in addition to other pre-trial motions; and that, as stated, *supra*, I complied with the order of the trial court to submit all such motions by December 20, 2004 and otherwise complied with all pre-trial orders issued by the trial court in this case.

9.  That, on or about January 7, 2005, the trial court convened a third pre-trial conference at which time the trial court initially stated that the trial court proposed to exclude a key witness, former Quinnipiac University Law School Neil Cogan, whose testimony was integral to my case and highly unfavorable to the defendant's case; that, subsequently, the trial judge agreed to hear argument for admission of this testimony on January 11, 2005, stating that he would favorably consider the motion on condition that Plaintiff could produce Second Circuit decisional authority that authorized videotaped trial testimony; and that, at this same time, the trial court stated for the first time since authorizing the filing of certain pre-trial motions on December 6 and 7, 2004 that, notwithstanding its earlier transcribed pledge to "rule upon" all pre-trial motions "as soon as possible", the trial court was not "obligated" to rule upon the motions in limine that, as noted, the trial court previously had expressly authorized and had pledged it would rule upon "as soon as possible."

10. That on January 11, 2005, after Plaintiff introduced Second Circuit decisional authority that authorized videotaped trial testimony, the trial court arbitrarily denied the motion to admit the testimony of Cogan, which, as noted, strongly favored the Plaintiff and strongly disfavored the Defendant.

11. That, further, in a biased manner and in contravention of controlling appellate decisional authority mandating "wide latitude" in dealing with the trial testimony of a pro se party, the trial court ordered Plaintiff to present trial testimony in a question and answer format that would make the presentation of Plaintiff's testimony less effective and prejudice Plaintiff's case; and that this was done for no other reason than that it was more convenient and otherwise more favorable to the opposing party; and that the trial judge stated on the record that, notwithstanding controlling determinations of the 2nd and 8th Circuit appellate courts, holding that pro se parties are to be afforded more latitude than represented parties, the trial judge did not see any reason why the "the Defendant should be prejudiced because the Plaintiff is pro se", or words of that substance and meaning.

12.   That, on this same date, following jury selection, the trial judge usurped the prerogative of both parties to introduce their respective cases to the jury and thereupon delivered a biased opening statement, in which the trial judge—who had previously reviewed and upheld the claims asserted by the Plaintiff by denying the Defendant's summary judgment motion—stated to the jury in a biased manner that the fact that Plaintiff's claims had proceeded to trial did not mean that Plaintiff's claims were meritorious, when, in fact and as noted, the same trial judge had previously determined, following what the trial judge represented was a thorough review, that Plaintiff's claims were viable and meritorious of a jury trial, and that Defendant's substantial truth defense was not viable. Exhibit B.

13.   That, notwithstanding the previous pre-trial instructions of the trial judge to the parties, stating that any and all objections would be heard at side bar outside the hearing of the jury, the trial judge inexplicably departed from this position and, without warning, would not permit any of the side bars requested by Plaintiff, thereby forcing Plaintiff to make arguments in support of Plaintiff's objections in the presence of the jury, virtually of all of which the trial judge denied, often with sarcasm and derision, the effect of which was to bias the jury and to acutely prejudice Plaintiff's case.

14.   That on January 12, 2005, defense counsel conducted a cross-examination of the Defendant, in which counsel solicited from the Defendant a statement that the Defendant had graduated from Dartmouth College in 1964; that, at the break immediately following this testimony, the trial judge's law clerk approached the Defendant and stated to him, within the hearing of Plaintiff and others, that the clerk's father had attended Dartmouth and was a member of the same class as the Defendant [7]; that the law clerk, presumably with the knowledge and approval of the trial judge, subsequently approached and engaged the Defendant in this type of friendly exchange throughout the course

---

[7] The trial judge had previously disqualified a juror, a Ms. Cote, on the basis that the juror and Plaintiff, standing in the same line to enter the courthouse prior to jury selection, had chatted about the weather, on the basis that this innocent exchange could prejudice the Defendant. It is noted that the Plaintiff properly volunteered this information at sidebar during voir dire.

of the trial, at the same time refusing to speak to Plaintiff, even with regard to administrative matters such as scheduled presentation of evidence and witnesses that are squarely within the administrative purview of the clerk, thereby creating an appearance of impropriety and affording an additional channel of direct and/or indirect informal, off-the-record communication with the trial judge that was not afforded evenhandedly to the Plaintiff.

15. That, throughout this first day of trial, the trial judge repeatedly and consistently overruled objections by Plaintiff, after which he sustained the same objections by the Defendant, i.e., the trial judge ruled that Defendant was not competent to act as official records custodian for Quinnipiac University, his employer, and therefore could not authenticate relevant and probative evidence submitted by Plaintiff; and, at the same time, stated that the Defendant was competent and could authenticate relevant and potentially highly probative hearsay writings consisting of Quinnipiac documents submitted and/or created, by the Defendant himself.

16. That throughout this time period, the trial judge repeatedly made rulings on the record, and then "flip-flopped" following adjournment, resulting in revised rulings that always favored the Defendant, creating the impression that ex parte communication had occurred during adjournment or recess, thereby creating an appearance of impropriety, if not actual wrongdoing.

17. That furthermore, the trial judge, in a biased manner, ruled to exclude virtually all evidence submitted by Plaintiff, including, but not limited to, published policies of Quinnipiac University that were clearly within the business records exception of the hearsay rule, and which, additionally, were subsequently cited and authenticated by a competent Quinnipiac University officer, Valerie Carbone, the University Bursar; and this evidence was highly probative and, in and of itself, proved Plaintiff's case and conclusively disproved Defendant's "substantial truth" defense, i.e., that the disputed issue of "good standing" was based upon academic factors only, thereby corroborating Plaintiff's account and directly contradicting and discrediting Defendant's account.

18. That on January 11, 2005, the trial judge stated on the record that, notwithstanding that the Defendant had been permitted unlimited time to present his testimony on January 12, 2005, the trial judge would limit Plaintiff's testimony on January 14, 2005 to only two hours and that the trial judge offered no substantial reason, or any reason, for this limitation.

19. That, at this same time, the trial judge initially upheld Plaintiff's subpoena of one Anne Traverso, stating that Traverso _must_ appear to give testimony at 9:30 a.m. on January 12, 2005 pursuant to Plaintiff's subpoena, which Plaintiff, over the objections of defense counsel, refused to modify; that the trial judge further overruled, on the record, defense counsel's objection and further expressly directed defense counsel not to contract Traverso for the purpose of authorizing Traverso to appear at a later time that day; and that defense counsel disobeyed this transcripted directive by the court by contacting Traverso on the evening of January 11, 2004 and telling Traverso that she did not "have to show up until 2:00 p.m.", thereby authorizing Traverso to disregard Plaintiff's subpoena requiring Traverso to appear at 9:30 a.m.

20. That on January 12, 2005, following an overnight adjournment, the trial judge inexplicably reversed himself, stating on the record that, notwithstanding his earlier directive, upon which Plaintiff had relied, upholding Plaintiff's subpoena and stating that Traverso _must_ appear at 9:30 a.m., he would _not_ sanction defense counsel for unilaterally disregarding the trial judge's January 11, 2005 order and authorizing Traverso to appear at 2 p.m., which action by defense counsel was tantamount to witness tampering, and thereby foreclosed Plaintiff's tactical decision to depose Traverso on the morning of January 12, 2005, _prior_ to direct examination of the Defendant, which would have permitted Plaintiff to use Traverso's testimony to impeach the Defendant; and which action by the trial court in permitting the Defendant to disregard a subpoena and a court order enforcing a subpoena both acutely prejudiced Plaintiff's presentation of her case and also demeaned the judicial office in that it permitted the Defendant to disregard both a subpoena and a court order with impunity.

8

21. That, notwithstanding that Traverso had clearly been coached by the Defendant's attorney and, in fact, admitted on the witness stand that she had been in regular communication with defense counsel for more than one year regarding this case, the trial judge—who previously stated on the record in the presence of the jury that it was "not my job to help you (Plaintiff)"—persisted in "helping" the Defendant by interrupting Plaintiff's direct examination of Traverso and, moreover, did so in the presence of the jury and not at sidebar; and that, over Plaintiff's objection and after stating that "I'm the judge", the trial judge proceeded to act as the Defendant's "shadow counsel" and to rehabilitate Traverso by soliciting inadmissible character evidence to vitiate credible non-hearsay evidence that Traverso had mishandled Title IV monies directed to the Plaintiff and the University Bursar, Valerie Carbone, i.e., that, notwithstanding the fact that Traverso, by the account of another Financial Aid Administrator, one James Cleaveland, as well as the Quinnipiac University Bursar, Valerie Carbone, had mishandled Plaintiff's Quinnipiac account by taking actions that were unauthorized under Title IV and/or institutional policies (and notwithstanding that Traverso herself testified that Traverso is no longer employed as a Financial Aid Administrator for Quinnipiac University or any other institution and now holds a much less responsible sales job, in which she works out of her home), Traverso was nonetheless competent because, by Traverso's unsupported and self-serving account, Traverso handled the student accounts of other Quinnipiac students properly. [8]

22. That the trial judge repeatedly interrupted Plaintiff's testimony, at one point and in response to Plaintiff's objection that the court was "mocking the witness", apologizing for conduct that would cause Plaintiff and other persons to conclude that the court was not treating Plaintiff respectfully; and that, during defense counsel's cross-examination, of the Plaintiff, the trial judge appeared to encourage defense counsel to harass and annoy the Plaintiff by

---

[8] Although Defendant testified to at least two and possibly as many as five Quinnipiac student lawsuits naming the Defendant and Plaintiff introduced a West's Digest Report evidencing four new student lawsuits against Quinnipiac in 2003, the trial judge would not allow this evidence to be admitted into the record.

permitting, and even overtly encouraging, testimony regarding facts to which the parties had previously stipulated, i.e., that Plaintiff was a competent law student; and by permitting defense counsel to read into the record a completely irrelevant and superceded commentary [9]regarding a real estate matter involving Plaintiff and two other parties that was certified "wholly meritorious" by three attorneys of reputation, which claims were upheld by a federal court of the Second Circuit, and which the trial judge knew or should have known was without authority and not reliable, and therefore not within the public records exception to the hearsay rule; and that, when Plaintiff claimed the right to introduce the appellate order that invalidated and vitiated the prejudicial, irrelevant, and prejudicial evidence introduced by defense counsel, the trial judge—only after Plaintiff challenged for bias in open court in the presence of the jury—allowed Plaintiff to submit it, but, in a biased manner, did <u>not</u> permit it to be marked as an exhibit, and, in a biased and discriminatory manner, did <u>not</u> allow Plaintiff to read it in the presence of the jury, although, as noted, defense counsel was permitted to do so.

23.  That, at one point, Plaintiff directly asked the trial judge for assurances that he was not predisposed to take the case from the jury and that, if Plaintiff testified to her personal legal matters and those of other persons, thereby incurring legal detriment, the trial judge would in fact submit the case to the jury and not simply permit defense counsel to harass Plaintiff by soliciting this irrelevant and prejudicial testimony, and then direct a verdict for the Defendant; and that, in response to this direct query by Plaintiff, the trial judge stated on the record, "I'll give it to the jury."

24.  That following Plaintiff's testimony on January 14 and prior to any testimony by any defense witnesses, the trial judge dismissed the jury, thereby preventing the jury from hearing the testimony of Valerie Carbone, who corroborated Plaintiff's testimony and, *inter alia*, testified that, to the knowledge of Ms. Carbone, a 40-year employee of Quinnipiac University, there was no such

---

[9] Defense counsel cited a January 16, 2004 court "order" that was not in existence at any time relevant to the litigation; and which was invalidated by a preemptory challenge under a state court rule that has been upheld by an appellate court of competent jurisdiction 87 times since 1896, according to West's Digest.

concept as "financial good standing" and that "good standing" was defined not by the Defendant, but by the University website policy; that certain of Anne Traverso's actions, including, but not limited to, intercepting Title IV checks that were payable to the Plaintiff, were improper and unauthorized under University policies; that pending adjudication of Plaintiff's contract claims against Quinnipiac University, the University took the official position that Plaintiff's obligation to pay disputed tuition charges to Quinnipiac was suspended and that, as of the date of Carbone's testimony, Plaintiff's student account was not due and payable and/or in a past-due status, thereby directly contradicting the testimony of the Defendant and Anne Traverso and proving Plaintiff's case.

25. That, in consideration of the foregoing Paragraphs 6-21, I noted on the record at the end of the first day of trial, January 11, 2005, a formal challenge to the trial judge's partiality, stating that I would file a formal Affidavit of Prejudice; that the trial judge summarily responded on the record that he would not consider such a challenge with any degree of objectivity; that I asked him directly if he did not think that he should wait to consider the evidence, i.e., that he should reserve judgment until he actually read my Affidavit of Prejudice; and that he clearly stated that this would not be necessary.

26. That in consideration of the foregoing facts, I believe that a reasonable member of the public, particularly one with any degree of sophistication regarding judicial ethics and legal proceedings, would conclude that the trial judge is biased against me and favors the opposing party; and that such a reasonable member of the public would at least consider the possibility that the trial judge has been the recipient, directly or indirectly, of ex parte communications with the Defendant and/or the Defendant's attorney.

27. That, as a person who has always had great respect for the integrity of the federal courts, and, particularly, the federal courts of this circuit, I make this affidavit in good faith, to raise for review the due process violations that have occurred in this case and have accrued to me, as a consequence of the actions of a United States District Court judge that are an abuse of discretion and the

11

judicial process and which, in this case, have operated to deprive me of my Seventh Amendment right to a trial by a civil jury that, in consideration of the court file, record, and proceedings, including, but not limited, to, the in-court testimony of Valerie Carbone, and other evidence that was wrongfully kept from the jury by the trial judge whose partiality is hereby challenged, I should have and would have won.

Witness by hand, this 2nd day of February, 2005, at Bloomington, Hennepin County, MN.

DATED: *2-02-05*                     BY: 

                                          Barbara R. Burns

Subscribed and sworn to before me.

Witness by hand and seal, this 2nd day of February, 2005 at Edina, Hennepin County, MN.


DATED: *02/06/2005*                  BY _____

                                          NOTARY PUBLIC-MINNESOTA

> RYAN R NASH
> Notary Public
> Minnesota
> My Commission Expires January 31, 2009

                         Certification

Barbara Burns, upon oath, hereby certifies that on February 2, 2005, a true and correct copy of the Affidavit of Barbara R. Burns, dated February 2, 2005, was mailed to defense counsel, Matthew G. Conway, Conway and Stoughton, P.A., 201 Ann Street, Hartford, CT 06301 via United States first-class mail and filed by United States Express Mail with the Clerk of the United States District Court, 450 Main Street, Hartford, CT 06103.

DATED:                               BY:

                                          Barbara R. Burns

Subscribed and sworn to before me.

12

Ms. Kunofsky:

In accordance with the court's order of December 9, 2004, instructing the parties to direct any necessary correspondence in this case directly to the court, I enclose a letter dated January 22, 2005, together with enclosures for immediate transmittal to Judge Robert N. Chatigny. Please note that the referenced communication by David S. King is submitted via fax under separate cover; and that a copy of this correspondence and all enclosures is contemporaneously filed with the Clerk of the United States District Court and served upon counsel of record, Matthew G. Conway.

January 22, 2005

Dear Judge Chatigny:                     VIA FACSIMILE AND ELECTRONIC MAIL

I am constrained to bring to the attention of the court a very recent communication by the Defendant, David S. King, to Alex M. Johnson, Dean, University of Minnesota Law School. The communication, which is enclosed under separate cover, purports to respond to the January 14, 2005 directive of this court, in response to the Plaintiff's good-faith request for a truthful account of Plaintiff's academic record and tenure with Quinnipiac University School of Law. In actuality, it conforms to neither the spirit nor the letter of either the Plaintiff's request or the court's instruction to the Defendant. Additionally, the statement, which makes an unauthorized disclosure of private data, violates both Quinnipiac University institutional policy and the federal Family Educational Rights and Privacy Act (FERPA); and is substantially false. A copy of the email provided by the Plaintiff to the Defendant's attorney, setting forth the terms of the Plaintiff's authorization, is submitted under separate cover.

Plaintiff's specific objections to the Defendant's unauthorized direct communication with Dean Johnson-- which does not obviate the necessity of a hearing under the Minnesota Government Data Practices Act, Minn. Stat. 13.04(4), one of the primary objectives of the court's directive to the Defendant to issue a remedial statement--are that (1) the Defendant's letter, in clear violation of Quinnipiac institutional policies and applicable state and federal statute governing maintenance and dissemination of academic records, makes unauthorized disclosure of private data, i.e., the particulars of Plaintiff's student account with Quinnipiac University, with which, it is duly noted, the Defendant has consistently claimed to have no knowledge  and which the Quinnipiac Bursar, Valerie Carbone testified under oath at trial had been timely and validity disputed by the Plaintiff; and which Ms. Carbone further testified is presently considered by Quinnipiac University to be suspended, pending the outcome of litigation between Plaintiff and Quinnipiac University, confirmed by this court as a non-party to the case at bar, *Burns v. King*, Case No. 03-CV-897; (2) the Defendant's letter persists in falsely asserting that there is, in fact, a "financial good standing policy" in effect at Quinnipiac University School of Law, which the University Bursar expressly denied, citing the same Quinnipiac website policy, setting forth the definition of "good standing" as that proffered by Plaintiff at trial; and (3) the Defendant's letter misstates and mischaracterizes the circumstances under which the January 4, 2000 Good Standing Letter was issued and re-issued by Quinnipiac Dean Neil H. Cogan to Plaintiff on a number of occasions between January 4, 2000 and May 25, 2000.

The practical result of this latest communication by the Defendant is that the Defendant's letter to Dean Johnson--far from rectifying a misrepresentation of Plaintiff's student status for transfer evaluation purposes--actually creates a *more* damaging and misleading picture--and, thereby, a greater injustice--than the previous statement by the Defendant, for which Plaintiff sued the Defendant and which was the basis for the defamation and attendant emotional distress claims asserted by Plaintiff's suit. Plaintiff takes this opportunity to remind the court that the court record is unequivocal that Plaintiff's claims were upheld--and Defendant's affirmative defense rejected--by this court not once, but twice,, i.e., on September 30, 2004, when this court denied Defendant's motion for summary judgment; and again on January 14, 2005, when the court instructed the Defendant to report to the University of Minnesota that, based upon criteria governing good standing published by both Quinnipiac University and the University of Minnesota, Plaintiff was, in fact, in good standing on May 24, 2000.

1

Plaintiff further duly notes that recorded in-court stipulations, such as that memorialized in the presence of this court on January 14, 2005, are legal under the decisional law of the state of Minnesota, which controls; and, absent lack of informed consent and/or duress, are presumed binding upon the court and the parties. Here, the Defendant, himself an attorney, was represented by, and had the benefit of, counsel when, on two different occasions, once on direct examination on January 12, 2005 and again on January 14, 2005, he voluntarily stated on the record that, in response to Plaintiff's good-faith request and the directive of this court, he would communicate to the University of Minnesota that, notwithstanding his May 24, 2000 communication to Dean Thomas Sullivan, Plaintiff was, in fact, in good standing, as defined by Quinnipiac University School of Law and the University of Minnesota Law School. As stated, he did not do this.

In the interest of creating a clear record, Plaintiff is constrained to again remind the court that it is undisputed by all parties--and Defendant, who asserted substantial truth as an affirmative defense, has never proven otherwise--that the term "good standing", as used by ABA-approved law schools in the United States, is not premised upon financial factors. To the contrary, the website policies of both the University of Minnesota and Quinnipiac University preferred by Plaintiff at trial expressly state that "good standing" is based solely upon academic factors, including adherence to ethical conduct requirements. Furthermore, and as the court can personally attest by a review of the court record, Defendant's own witness, Valerie Carbone, the Quinnipiac Bursar and a Quinnipiac employee of more than 40 years, testified under oath and on the record that (1) there was no such concept or policy as "financial good standing" in effect at Quinnipiac University School of Law; and (2) Quinnipiac institutional policy did not permit the Defendant to retroactively invalidate previously-issued transcripts and/or Good Standing Letters, as the Defendant attempted to do on May 24, 2000 with respect to the Plaintiff.

The court may further take judicial notice of the fact that the Defendant himself repeatedly testified in deposition and at trial that the Defendant had no expertise, authority, or knowledge of student account issues, and that the Defendant deferred to the University Bursar, Ms. Carbone, with regard to these issues. Given these facts, the in-court statements of Valerie Carbone must be considered authoritative and accorded more weight than those of the Defendant. Based upon the court file, record, and proceedings, including the testimony of Ms. Carbone, the court should conclude that Defendant's invocation of a "financial good standing policy" is a convenient fabrication that is not, and cannot be, binding upon the Plaintiff, Quinnipiac University and/or the University of Minnesota Law School.

It must further be expressly noted that, even if there was a Quinnipiac University "financial good standing policy", which Ms. Carbone testified that there was not, the details of Plaintiff's financial dealings with Quinnipiac University School of Law are private data under published Quinnipiac University policies, as well as the Minnesota Government Data Practices Act, and the federal Family Educational Rights and Privacy Act (FERPA). *Moreover, Quinnipiac institutional policies--to which the Defendant has unconvincingly asserted that he remained, and remains, faithful--expressly prohibit any communication of a student's academic or student record, including accounts receivable record, without the student's written consent.*

In this case, Plaintiff did not authorize either the Defendant or Quinnipiac University to communicate directly with the University of Minnesota. Rather, as Plaintiff's January 15, 2005 email to defense counsel, submitted under separate cover, expressly states, Plaintiff directed the Defendent to sign and execute the statement prepared by Plaintiff, or one substantially similar, *and return it to Plaintiff*, with the understanding that Plaintiff, as the "data subject", would deliver it to concerned authorities within the University of Minnesota.

 In sum, the Defendant's most recent act, is, for all intents and purposes, a republication of his original defamatory statement, with superficial "cosmetic" changes; and is, similarly, substantially false, misleading, and unprivileged. The statement also clearly evidences malice, which, as Plaintiff noted on the record, operates to defeat qualified privilege and may entitle Plaintiff to an award of punitive damages. Plaintiff specifically brings this point to the court's attention to make of record factors which support Plaintiff's entitlement to punitive damages on remand, following an appropriate filing by Plaintiff in the federal circuit court of jurisdiction to enforce Plaintiff's Seventh Amendment right to a civil jury.

Specifically, as the court is, or should be, aware, if a punitive damage claim is permitted under state substantive law--in this case, the state of Minnesota, which would permit an award of treble damages with

respect to the Defendant's frivolous "substantial truth" defense under Minn. Stat. 549.20--it may be used to satisfy the jurisdictional amount in controversy because there is no "legal certainty" that the amount will not be recovered. In injunction actions, the amount in controversy is the value of the right to be recovered, or the extent of the injury to be prevented, and not the amount that the Plaintiff may recover. As the court itself noted, federal district courts have been given jurisdiction of suits between citizens of different states, even though the controversies do not involve issues of federal substantive law. The legislative intent underlying the enactment of the diversity-jurisdiction statute was to protect the out-of-state party from possible local bias in state courts.

Given these facts, the amount-in-controversy requirement is amply satisfied and the trial court's untimely disclaimer of subject-matter jurisdiction clearly erroneous. Plaintiff further notes that, notwithstanding any appellate action taken by Plaintiff, the trial court may, and under Minnesota law, must, enforce the above-referenced recorded stipuation, a determination in Plaintiff's favor, to which the Defendant voluntarily agreed prior to this court's disclaimer of subject-matter jurisdiction.

In consideration of the foregoing facts, Plaintiff is constrained to request that the court's untimely disclaimer of jurisdition be set aside and that Plaintiff's entitlement to a jury trial be reinstated, subject to an order in limine, excluding certain evidence wrongfully introduced, including, but not limited to, irrelevant and meaningless dicta that both the court and the Defendant knew or should have known, was unauthorized under Minnesota law and court rules which control, and which has been demonstrated by Plaintiff as having been formally rejected by Minnesota trial and appellate courts. In the alternative, Plaintiff requests that the order of the trial court be stayed pending conclusion of appropriate appellate proceedings. On the basis that Plaintiff has formally invoked 28 U.S.C. 144, 455 and has formally challenged the fitness of the assigned trial judge, Robert N. Chatigny, on the record on at least three occasions between the dates of December 6, 2004 and January 15, 2005, Plaintiff requests that any necessary supplemental and/or collateral proceedings in this matter and/or that involve these same parties, be heard and conducted by a different trial court judge.

Since, as the court itself noted on the record, time is clearly of the essence, the court's prompt action is requested and expected.

*Barbara R. Burns*

Barbara R. Burns

cc: File No. 03-CV-897 (RNC) (for filing via U.S.Mail)

cc: Matthew G. Conway

Westlaw.

FOR EDUCATIONAL USE ONLY

Slip Copy                                                                 Page 1
2004 WL 2381736 (D.Conn.)
(Cite as: 2004 WL 2381736 (D.Conn.))

**H**
Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.

Barbara R. BURNS, Plaintiff,
v.
David S. KING, Defendant.

No. 3:02CV00897 (RNC).

Sept. 29, 2004.

Barbara R. Burns, Hackensack, NJ, pro se.

US Court of Appeals, New York, NY, Matthew G.
Conway, Conway & Stoughton, Hartford, CT, for
Defendant.

*RULING AND ORDER*

CHATIGNY, J.

**\*1** Plaintiff Barbara Burns, a resident of
Minnesota, brings this diversity action alleging
defamation, against defendant David King, an
associate dean at Quinnipiac University Law School
("Quinnipiac") and a resident of Connecticut. [FN1]
Defendant has filed a motion for summary
judgment [Doc. # 55]. For the following reasons,
defendant's motion is denied.

> FN1. Plaintiff also appears to assert a
> claim for breach of contract by defendant
> and Quinnipiac. Because Quinnipiac is not
> a party to this action, and plaintiff does not
> allege that a contract existed between
> herself and defendant, she cannot prevail
> on this claim.

*I. BACKGROUND*

Plaintiff alleges the following facts as the basis for
her complaint. She attended law school at
Quinnipiac from January 4, 1999, until May 8,
2000, when she sought to transfer to another law
school. She applied to several schools and claims
that Neil Cogan, Dean of Quinnipiac, issued a letter
stating that she was in good standing at the law
school. On May 24, 2000, plaintiff alleges,
defendant told several employees of Quinnipiac that
plaintiff was *not* in good standing with the law
school and later made the same statement to persons
at Georgetown University and to the Dean of the
University of Minnesota Law School. [FN2]
Plaintiff further claims that as a result of defendant's
statements regarding her lack of good standing, her
applications for transfer were suspended and that
she suffered emotional distress and damage to her
reputation.

> FN2. The complaint does not specify the
> circumstances or form of the alleged
> publication to persons at Georgetown
> University.

*II. DISCUSSION*

To prevail on a motion for summary judgment, the
moving party must establish that there is no genuine
issue of material fact and that it is entitled to
judgment as a matter of law. Fed.R.Civ.P. 56(c); *see
generally Celotex Corp. v. Catrett,* 477 U.S. 317,
106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To
withstand a properly supported motion, a plaintiff
who would bear the burden of proof at trial cannot
rest on the allegations in the complaint but must
offer evidence that would permit a reasonable
person to find in his favor. *See* Fed.R.Civ.P. 56(e).
In deciding a motion for summary judgment, the
court resolves "all ambiguities and draw[s] all
inferences in favor of the nonmoving party...."
*Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520,
523 (2d Cir.), *cert. denied,* 506 U.S. 965, 113 S.Ct.
440, 121 L.Ed.2d 359 (1992). Only when
reasonable minds could not differ is summary
judgment proper. *Bryant v. Maffucci,* 923 F.2d 979,
982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2381736 (D.Conn.)
**(Cite as: 2004 WL 2381736 (D.Conn.))**

FOR EDUCATIONAL USE ONLY

Page 2

152, 116 L.Ed.2d 117 (1991).

A court of the United States sitting in diversity jurisdiction must look to the law of the forum state for the rules governing choice of law. *See Klaxon Co. v. Stentor Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Connecticut choice of law rules, the applicable substantive law is that of the state with "the most significant relationship to the occurrence and the parties." *O'Connor v. O'Connor,* 201 Conn. 632, 648, 519 A.2d 13 (1986). "Contacts to be taken into account in applying the principles of § 6 [of the Restatement (Second) Conflicts of Law] to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Dugan v. Mobile Medical Testing Services, Inc.,* 265 Conn. 791, 800, 830 A.2d 752 (2003), citing Restatement (Second) Conflicts of Law, § 145(2).

*\*2* "[T]he law of defamation is designed to protect a person's interest in reputation. Injury is suffered, if at all, at the place in which the plaintiff enjoys a reputation, usually the place where he or she is domiciled. Accordingly, the place of the plaintiff's domicile typically has the 'most significant relationship' to the occurrence and the parties." Robert D. Sack, Sack on Defamation § 15.3.2 (3d Ed.2003) Vol. II. *See also Wells v. Liddy,* 186 F.3d 505, 521 (4th Cir.1999), *cert. denied,* 528 U.S. 1118, 120 S.Ct. 939, 145 L.Ed.2d 817 (2000) (applying Maryland choice of law rules); *Lee v. Bankers Trust Co.,* 166 F.3d 540, 545 (2d Cir.1999) (applying New York choice of law rules); *Zimmerman v. Bd. of Pubs. of Christian Reformed Church, Inc.* 598 F.Supp. 1002, 1011 (D.Colo.1984) (applying Colorado choice of law rules). Connecticut courts have not yet addressed this issue, but federal courts in this district have concluded that, in a case of multistate defamation, Connecticut would apply the law of plaintiff's domicile. [FN3] *See, e.g., Dale Sys., Inc. v. Time, Inc.,* 116 F.Supp. 527, 530 (D.Conn.1953). Therefore, Minnesota law applies in the present case.

> FN3. Multistate defamation usually arises in the context of mass publication. The same reasons that have persuaded courts in those cases to apply the law of the plaintiff's domicile are also applicable in this more limited context. Even though there was no mass publication, this case involves repeated publication of the same statement to different persons in different jurisdictions, one of which is the plaintiff's domicile.

Defendant contends that the doctrine of substantial truth affords him an absolute defense to plaintiff's defamation claim and that he is therefore entitled to summary judgment. I disagree.

Under Minnesota law, in order to state a claim for defamation, a plaintiff must "prove that a statement was false, that it was communicated to someone besides the plaintiff, and that it tended to harm the plaintiff's reputation and to lower him in the estimation of the community." *Richie v. Paramount Pictures Corp.,* 544 N.W.2d 21, 25 (Minn.1996). Truth is an absolute defense to a defamation claim. *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 255 (Minn.1980). In evaluating the truth of a statement for purposes of a defamation claim, the court inquires whether the statement is substantially true. "A statement is substantially accurate if its gist or sting is true, that is, if it produces the same effect on the mind of the recipient which the precise truth would have produced." *Jadwin v. Minneapolis Star and Tribune Co.,* 390 N.W.2d 437, 441 (Minn.App.1986). "If the statement is true in substance, inaccuracies of expression or detail are immaterial." *Id.* The doctrine of substantial truth, then, protects a speaker who utters a statement that is subject to multiple interpretations. *Hunter v. Hartman,* 545 N.W.2d 699, 707 (Minn.App.), rev. denied, 1996 Minn. LEXIS 415 (Minn.1996). "A commentator who advocates one of several feasible interpretations of some event is not liable in defamation simply because other interpretations exist." *Id.* Defendant contends that the doctrine of substantial truth shields him from liability because his statement, that plaintiff was not in good standing, could refer either to academic or financial standing. Defendant is correct that the parties

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2381736 (D.Conn.)
(Cite as: 2004 WL 2381736 (D.Conn.))

FOR EDUCATIONAL USE ONLY

Page 3

contend for two possible interpretations of "good standing." [FN4] However, plaintiff contests the truth of the statement, regardless of whether good standing referred to academic or financial good standing. Although she disputes that "financial good standing" would be a reasonable interpretation of "good standing," she also disputes that she owed the law school any money. The doctrine of substantial truth cannot shield a party from liability where the truth of *both* possible interpretations is contested. The purpose of the doctrine is to prevent a speaker from being liable in defamation where the gist of the statement has the same effect as the truth would have had. According to plaintiff, neither interpretation is true. Defendant, therefore, has not sustained his burden.

> FN4. Plaintiff claims that the only feasible interpretation is that the phrase refers to academic standing. Defendant contends that he intended to comment only on plaintiff's financial standing.

*III. CONCLUSION*

**\*3** For the foregoing reasons, defendant's motion for summary judgment [Doc. # 55] is denied.

So ordered.

2004 WL 2381736 (D.Conn.)

**Motions, Pleadings and Filings (Back to top)**
- 3:02CV00897  (Docket)
(May. 24, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATION OF SERVICE

I hereby certify that on February 11, 2005, I placed in an envelope, postage prepaid and addressed to the parties named below, Plaintiff's Notice of Appeal, appended with Plaintiff's Letter Motion to Set Aside January 14, 2005 Verbal Order and for New Trial; Plaintiff's Letter Motion for Order in Clarification, and Plaintiff's Affidavit of Prejudice, and that the same was by me deposited in a U.S. Postal Box at Bloomington, MN.

PARTIES SERVED:

Kevin Rowe, Clerk of U.S. District Court, 450 Main Street, Hartford, CT 06103

Matthew Conway, Conway and Stoughton, 201 Ann Street, Hartford, CT 06103

2/11/05