FILED

2005 FEB 23  P 1: 03

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Barbara R. Burns | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | NO: 302CV 00897(RNC) |
| V. | : | |
| | : | |
| David S. King | : | February 22, 2005 |
| Defendant | : | |

### DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION TO SET ASIDE AND/OR PLAINTIFF'S MOTION FOR A NEW TRIAL

The defendant herein objects to the plaintiff's Motion to Set Aside and for a New Trail[1] (Plaintiff's Correspondence Motion) filed with the court on or about February 8, 2005.[2] The defendant objects on the grounds that the plaintiff's motion for a new trial and motion to set aside are insufficient as a matter of law. Furthermore, the Plaintiff's Correspondence Motion contains numerous fabrications and distortions of the record.

---

[1] For the purpose of the following objection, the defendant will refer to the plaintiff's filing as a "motion." It is more accurately described as a simple letter addressed by the plaintiff to "Dear Judge Chatigny." It does not include the caption required pursuant to FRCP 7(b)(2) and FRCP 10(a). Moreover, the letter does not include the certificate of service required pursuant to FRCP 5(d), nor has the plaintiff filed a memorandum of law as is required pursuant to L.Civ.R. 7.

[2] The plaintiff, on or about January 22, 2005, the plaintiff attempted to file a letter that was similar to the letter to which the defendant now objects. It the defendant's understanding that the plaintiff's letter of January 22, 2005, was rejected by the clerk because it improperly filed. Thereafter, on or about February 8, 2005, the plaintiff submitted to the clerk an amended version of her letter dated January 22, 2005. Although the plaintiff changed the contents of her letter, she filed it bearing a date of January 22, 2005. The undersigned further notes that the plaintiff did not serve the defendant with a copy of her amended correspondence of February 8, 2005.

1

The defendant notes that the plaintiff has also filed, on or about February 8, 2005, an affidavit which she apparently intends to serve as a motion to recuse Judge Chatigny. The defendant will be filing a separate objection to the plaintiff's motion to recuse.

## I.   PROCEDURAL HISTORY

Jury selection in this case began on January 11, 2005. The plaintiff concluded her case-in-chief on January 14, 2005. At that time, the defendant moved for judgment as a matter of law pursuant to FRCP 50(a). From the bench, the Court (Chatigny, J.), on numerous grounds, granted judgment in favor of the defendant.

First, the Court held that **no reasonable person could find that the defendant's interpretation of financial good standing was an impermissible one.**[3] (January 14, 2005 – Trial Transcript Excerpt, at 5-6). In regards to the plaintiff's financial good standing with Quinnipiac University, the Court held that "crediting her evidence, a jury would nevertheless have to find, in my judgment, that **she was not in good standing financially in the eyes of the university as of the date the statement was made. No reasonable juror could find otherwise.**" (January 14, 2005 – Trial Transcript Excerpt, at 6).

Moreover, the Court held that, in regard to the damage element claimed by the plaintiff, she was not entitled to a presumption of special damages because she had been the "subject of court orders that she tells us that the entire community knows about. To my mind, **the**

---

[3] THE COURT: "Giving the plaintiff the benefit of every reasonable inference, could a fair minded, reasonable juror find that the defendant's interpretation of the statement is not a permissible one? Would a reasonable juror be able to say that it was not a permissible one? That in fact it did not refer to financial standing? I don't believe so."

2

somewhat general, indefinite, ambiguous statement made by the defendant pales in significance to the very scathing statements made by the court."[4] Furthermore, the Court stated that "[w]e have no witness telling us that in fact the plaintiff suffered harm to her reputation except the plaintiff herself. **I don't think that a reasonable jury could find that there was harm to her reputation given this very unusual circumstance.**" (January 14, 2005 – Trial Transcript Excerpt, at 7-8). The Court further held that, in regard to actual damages, "**I don't think that a reasonable jury could hold the defendant responsible for any delay in the plaintiff's pursuit of a legal education.**" (January 14, 2005 – Trial Transcript Excerpt, at 7-8). Finally, the Court expressed concern that it erred in denying the defendant's previous motion to dismiss, given that the plaintiff claimed no emotional distress damages. Moreover, the Court stated that "**[i]t would be** frankly – and I want to be judicious – **frivolous for the plaintiff to contend that but for defendant's statement she would have been employed at a prestigious law firm as a summer associate. I don't think anyone could claim that in good faith.**" (January 14, 2005 – Trial Transcript Excerpt, at 9-10). With that, on January 14, 2005, the Court entered judgment in favor of the defendant from the bench. Thereafter, on January 18, 2005, the Deputy Clerk issued written judgment in favor of the defendant.

In the course of oral argument on the motion for judgment, the plaintiff began arguing for equitable relief. In response, defense counsel objected on the grounds that there was no claim for any equitable relief. Before elaborating his reasoning for entering judgment in favor of the defendant, the Court inquired as to whether the defendant recalled testifying that "if at

---

[4] See, In Re Barbara Burns, Trial Exhibit No. 38, attached.

3

any time somebody had asked him to inform the University of Minnesota what he meant by 'good standing,' – namely to clarify it would refer to financial indebtedness, nothing else – that he would have done so readily." (January 14, 2005 – Trial Transcript Excerpt, at 2). The defendant and defense counsel each acknowledged that the defendant had so testified. (January 14, 2005 - Trial Transcript Excerpt, at 3). In response to a request of the Court, the defendant agreed to issue the letter of clarification. Id. The plaintiff responded to the defendant's agreement to send the letter of clarification by stating "**Thank you, Your Honor. That means a lot to me.**" (January 14, 2005 – Trial Transcript Excerpt, at 3). At no point during this or any other dialogue with the Court, did the Court suggest that the defendant's letter of clarification be drafted by Barbara Burns, nor did the Court recommend involvement of the plaintiff in the drafting or editing of the contents of the letter.

On or about January 17, 2005, the plaintiff e-mailed to defense counsel a proposed draft letter,[5] addressed to Dean Alex M. Johnson of the University of Minnesota School of Law, which she had "ghost written" on behalf of David S. King. The letter was comprised substantially of factual inaccuracies and contained numerous misrepresentations of the testimony offered by the defendant and other witnesses at trial. At no point did the defendant agree to adopt the contents of the plaintiff's proposed letter within his correspondence to the University of Minnesota.

On January 18, 2005, in observance with the recommendation of the Court -- to which the plaintiff had expressly agreed -- the defendant issued a letter of clarification to the acting

---

[5] Attached.

4

dean of the University of Minnesota Law School. ("Letter of Clarification" dated January 18, 2005, attached). The Letter of Clarification incorporated the entire text of the May 24, 2000 letter to Dean Sullivan, and then clarified the issue as follows:

> Ms. Burns recently requested that I clarify my May 24, 2000, letter to Dean Sullivan. I understand that you are now the dean of the law school. Thus, I write to advise you that the reason I wrote the letter on May 24, 2000, is because Ms. Burns owed Quinnipiac University School of Law $11,810 at that time, and still does today. By indicating that she was not in good standing, I was not commenting on her academic standing at Quinnipiac University School of Law, as she was in good academic standing at that time. You should also know that Ms. Burns had permission to use the January 4, 2000, letter at the time it was sent to Dean Sullivan in January 2000. Thus, it should not be inferred that Ms. Burns wrongfully used the letter in January 2000.
>
> Finally, my letter of May 24, 2000, was not intended to imply that Ms. Burns had been involved in any improper conduct at Quinnipiac University School of Law at any time. ("Letter of Clarification" at 1-2).

On or about February 7, 2005, the plaintiff filed her Plaintiff's Correspondence Motion wherein she asserted that the defendant's issuance of the above Letter of Clarification to Dean Johnson justified the Court's granting of a new trial or, alternatively, a setting aside of the judgment in favor of the defendant. (Plaintiff's Correspondence Motion at 6.). The plaintiff further asserted that the Court erred in granting judgment in favor of the defendant on the grounds that she was entitled to punitive damages. (Plaintiff's Correspondence Motion at 5-6).

The defendant herein objects to the motion for a new trial and motion to set aside contained within Plaintiff's Correspondence Motion.

## II.    LEGAL AUTHORITY & ANALYSIS

### A.    Rule 59 Motion for a New Trial

The plaintiff, without providing a citation to authority, requests that her "entitlement to a jury trial be reinstated." (Plaintiff's Correspondence Motion at 6). Neither the Federal Rules of Civil Procedure ("FRCP") nor the Local Rules appear to provide for the "reinstatement of jury trial" as is requested by the plaintiff. However, the Federal Rules do authorize the filing of a motion for a New Trial. Specifically, FRCP 59(a) provides that:

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

The decision to grant a new trial is "committed to the sound discretion of the trial judge." Metromedia Co. v. Fugazy, 983 F.2d 350, 363 (2d Cir. 1992). The burden on the party seeking a new trial under rule 59 is substantial. See Strobl v. New York Mercantile Exch., 582 F.Supp. 770, 777 (S.D.N.Y.1984). Under Rule 59, a motion for new trial should not be granted unless, in the opinion of the district court, the jury has reached a seriously erroneous result, or the verdict is a miscarriage of justice. See Song v. Ives Labor, Inc., 957 F.2d 1041, 1047 (2d Cir. 1992). However, a new trial should be granted only if the jury's verdict is egregious. DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 133-34 (2d Cir. 1998).

6

Rule 59(b) provides that "Any motion for a new trial shall be filed no later than 10 days after entry of the judgment".

**B.     Rule 60(b), Relief from Judgment or Order**

The plaintiff further requests that "the court's untimely disclaimer of jurisdiction be set aside." (Plaintiff's Correspondence Motion at 6.) Once again, the plaintiff does not provide citation to any legal authority in support of her motion to set aside. Although the Federal Rules of Civil Procedure do not -- outside of the context of a Motion for Default[6]-- appear to expressly provide for a motion to set aside, this Court has, on a least one occasion, characterized a FRCP 60(b) motion as a motion to set aside. See, Miller v. Jones, 779 F.Supp.2d 207 (1991) (Cabranes, J.). FRCP 60(b) provides that:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

The decision as to whether relief should be granted under Rule 60(b) is committed to the sound discretion of the Court. Securities and Exchange Commission v. McNulty, 137 F.3d

---

[6] See FRCP 55(c)

7

732, 738 (2d Cir.), cert. denied, 525 U.S. 931 (1998). The first five clauses under 60(b) cover specifically enumerated bases for the setting aside of judgment, including mistakes, inadvertence, excusable neglect, newly discovered evidence, and fraud. The final enumerated clause, clause (6), permits relief from judgment for "any other reason justifying relief from the operation of judgment." However, relief under Rule 60(b)(6) is available only in "extraordinary circumstances." Ackermann v. United States, 340 U.S. 193, 199, 95 L. Ed. 207, 71 S. Ct. 209 (1950).

### C. The plaintiff has failed to satisfy her legal burden under Rules 59 and 60(b).

The plaintiff has failed to meet the required showing that, absent a new trial, there would be a seriously erroneous result, or that judgment in favor of the defendant was a miscarriage of justice, as is required under Rule 59. See Song, supra. Further, the plaintiff has failed to that allege that the setting aside of the judgment in favor of the defendant is justified due to (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) a void judgment; (5) a satisfied, released, or discharged, prior judgment. See, FRCP 60(b)(1)-(5). Moreover, the plaintiff has failed to demonstrate the existence of "extraordinary circumstances" justifying a setting aside of the verdict pursuant to FRCP 60(b)(6). Ackermann, supra.

The plaintiff has based her present motion for a new trial or to set aside upon the defendant's post-trial issuance of the Letter of Clarification to Dean Alex M. Johnson of the University of Minnesota Law School. The plaintiff also infers that the Court's granting of judgment was erroneous because she was entitled to punitive damages. (Plaintiff's

8

Correspondence Motion at 5-6). The defendant addresses each of the plaintiff's assertions below.

### 1. Plaintiff has failed to demonstrate that defendant's issuance of the Letter of Clarification provides a basis for the Court to grant a new trial or set aside the entry of Judgment in Favor of Defendant.

**a. The plaintiff has mischaracterized the Court's suggestion that Defendant issue a Letter of Clarification as a binding directive.**

The plaintiff variously mischaracterizes the Court's suggestion regarding the issuance of the Letter of Clarification by the defendant as a "directive" (Plaintiff's Correspondence Motion at 1) and an "in-court stipulation." (Plaintiff's Correspondence Motion at 4). Moreover, the plaintiff misrepresents the testimony of the defendant by falsely asserting that the defendant stated at trial that he would "communicate to the University of Minnesota that the plaintiff was in "good standing", as defined by Quinnipiac University and University of Minnesota policies." (Plaintiff's Correspondence Motion at 3). The plaintiff also misrepresents the holding of the Court by falsely asserting that "on January 15 [sic], 2005…the court instructed the Defendant to report to the University of Minnesota that, based upon criteria governing good standing published by both Quinnipiac University and the University of Minnesota, Plaintiff was, in fact, in good standing on May 24, 2000." (Plaintiff's Correspondence Motion at 2-3).

The defendant notes that the Court did not, as the plaintiff alleges, issue a directive or order[7] compelling the defendant's issuance of a letter of clarification to the University of Minnesota, nor did it state anything regarding the logistics of the issuance of the letter or its substantive content, other than as stated in the transcript. Rather, the Court simply asked defense counsel if the defendant recalled testifying " that if at any time somebody had asked him to inform the University of Minnesota what he meant by 'good standing,' namely to clarify it would refer to financial indebtedness, nothing else…" (January 14, 2005 - Transcript Excerpt, at 2). Defense counsel and the defendant confirmed that the defendant had so testified. Id. In fact, the defendant, Mr. King, specifically stated, "[c]ertainly, Your Honor. As I said in my original letter to Dean Sullivan, if he had any questions, please call. I am happy to clarify this situation." (January 14, 2005 – Trial Transcript Excerpt at 3). Thereafter, on January 18, 2005, the defendant kept his word and issued the attached letter to Dean Alex Johnson.

**b. Plaintiff's assertion that she did not authorize defendant's issuance of the Letter of Clarification is directly contradicted by her own statements at trial.**

The plaintiff further misrepresents the record before the Court by falsely asserting that she did not authorize the defendant's issuance of the letter of clarification. (Plaintiff's Correspondence Motion at 1). This assertion is belied by her own statement in open court. Specifically, in response to the judge's invitation that "we agree that that [the defendant's

---

[7] Specifically, the Court, in reference to its suggestion that the defendant issue the letter to the University of Minnesota, stated, "Can we agree that that will be done? I don't see any reason why it shouldn't be done…I think it should be done." (January 14, 2005 - Trial Transcript Excerpt, at 2-3). Clearly, although the Court recommended that the letter of clarification be issued by Dean King, it did not in any way order the issuance of the letter.

10

issuance of a letter of clarification] will be done?", the plaintiff replied "[t]hank you, Your Honor. **That means a lot to me.**" (January 14, 2005 - Trial Transcript Excerpt, at 3). Thus, the plaintiff clearly agreed to the issuance of the clarification letter.

**c. Plaintiff had no authority to dictate the contents of the Letter of Clarification.**

On January 17, 2005, the plaintiff e-mailed to defense counsel a "proposed rebuttal letter," which she had "ghost-written" on behalf of David S. King. In the attached e-mail, the plaintiff, after falsely asserting that the defendant had agreed to such an arrangement at trial, instructed him to submit to her the proposed letter, or one substantially similar, addressed to a number of parties, including Dean Alex M. Johnson, of the University of Minnesota Law School. The plaintiff's proposed letter contained numerous inaccurate or unsupported assertions,[8] and even suggested that the plaintiff's claim had somehow been vindicated at trial.

Clearly, the defendant was under no obligation to adopt the plaintiff's inaccurate and distorted version of the facts and circumstances surrounding this case. Rather, the defendant, by sending his own letter of clarification to Dean Johnson on January 18, 2005, fulfilled his January 14, 2005, agreement before the Court.

**d. The Minnesota Government Data Practices Act is irrelevant to the plaintiff's present motions.**

The plaintiff asserts that the defendant's issuance of the January 18, 2005 correspondence to Dean Johnson entitles her to a hearing under the Minnesota Government

---

[8] For instance, the proposed letter represents that on May 24, 2000, Dean Cogan reissued to Ms. Burns the Good Standing Letter previously issued to Ms. Burns on January 4, 2000. (Page 1). The defendant notes that the plaintiff offered no evidence at trial that Dean Cogan issued her such a letter on May 24, 2000.

11

Data Practices Act, because her financial dealings with Quinnipiac University are "private data" under the Act. (Plaintiff's Correspondence Motion at 4). The plaintiff's attempt to evoke the Act here is without merit. As a preliminary matter, the defendant notes that 13.01 of the Minnesota Government Data Practices is specifically limited in its applicability to state agencies, political subdivisions, and statewide systems of Minnesota.[9] As such, the act is clearly inapplicable to Dean King, who is not employed by any agency of the state of Minnesota. Even if it were somehow applicable the David King, this Court would be without jurisdiction to enforce the Act.

More importantly, defendant's alleged violations of the Act would provide no basis whatsoever for the granting of a new trial or the setting aside of the verdict in favor on the defendant.

**e. FERPA is irrelevant to the plaintiff's present motions.**

The plaintiff's attempt to evoke the Federal Educational Rights and Privacy Act (FERPA) is similarly flawed. First, no private cause of action exists under FERPA, either directly or implicitly through 42 U.S.C. Sec. 1983. <u>Gonzaga University v. Doe</u>, No. 01-679 (2002). Rather, the sole remedy available in such cases permits withholding by the federal government of funding which would be otherwise available to an educational institution. <u>Id</u>. Regardless, even if the defendant's post-trial issuance of the Letter of Clarification did constitute a violation under FERPA, such violation would not provide a basis for a new trial or

---

[9] Minnesota Statutes § 13.01, Governent Data Practices "Subdivision 1. Applicability. All state agencies, political subdivisions and statewide systems shall be governed by this chapter."

12

justify a setting aside of the verdict, since the sole issue addressed at trial was the plaintiff's defamation claim against the defendant.

**f. The plaintiff's allegation that the defendant violated Quinnipiac University rules is irrelevant to her present motion.**

The plaintiff further asserts that the defendant's issuance of the letter of clarification constituted a clear "violation of Quinnipiac institutional policy" (Plaintiff's Correspondence Motion at 1). More specifically, the plaintiff claims that this letter "discloses private data, i.e. particulars of Plaintiff's student account with Quinnipiac University..." (Plaintiff's Correspondence Motion at 1-2). What the plaintiff fails to state, however, is that line in the letter of clarification advising the University of Minnesota that Ms. Burns "owed Quinnipiac University School of Law $11,810" is a matter of public record, which had been the subject of much testimony at the instant trial. Regardless, even if the defendant's issuance of the letter of clarification did constitute such a violation, it adds nothing to the plaintiff's motion for a new trial or motion to set aside in regards to her defamation claim against David King.

**g. Plaintiff's assertion that the Letter of Clarification is "more damaging" is frivolous.**

The plaintiff further asserts, without elaborating precisely how or why, that the defendant's Letter of Clarification "actually creates a more damaging and misleading picture of Plaintiff's Quinnipiac academic records and tenure than the previous statement, for which Plaintiff sued the Defendant; and, thereby gives rise to an even greater injustice than that that was the basis for the claims asserted by Plaintiff's suit." (Plaintiff's Correspondence Motion at

13

2). This very same plaintiff has asserted during trial that the letter of May 24, 2000, had created the impression that she was not a competent student academically; that she somehow misused the January 4, 2000, of Dean Cogan; and that she engaged in academic misconduct. The Letter of Clarification specifically eliminates any possible ambiguity as to each of these issues.[10] The plaintiff's latest allegation that she suffered greater harm despite the fact that the Letter of Clarification eliminated all possible ambiguity regarding the first letter is belied by her own testimony at trial, and highlights the frivolous and disingenuous nature of her entire claim against the defendant. Regardless, even if the defendant's post-trial Letter of Clarification did somehow harm the plaintiff, such alleged new harms would not provide a basis for the granting of a new trial under FRCP 59 nor the setting aside of the verdict under FRCP 60(b).

### h. The Plaintiff's assertion that her claim has been upheld twice by the Court is false.

Astonishingly, the plaintiff asserts that her "claims were upheld, and the Defendant's affirmative defense rejected, by this court not once, but twice, i.e. on September 30, 2004, when the court denied the Defendant's motion for summary judgment, and again on January 15[sic], 2005, when the court instructed the Defendant to report to the University of Minnesota

---

[10] "the reason I wrote the letter on May 24, 2000, is because Ms. Burns owed Quinnipiac University School of Law $11,810 at that time, and still does today. **By indicating that she was not in good standing, I was not commenting on her academic standing at Quinnipiac University School of Law,** as she was in good academic standing at that time. **You should also know that Ms. Burns had permission to use the January 4, 2000, letter at the time it was sent to Dean Sullivan in January 2000. Thus, it should not be inferred that Ms. Burns wrongfully used the letter in January 2000.**

Finally, **my letter of May 24, 2000, was not intended to imply that Ms. Burns had been involved in any improper conduct at Quinnipiac University School of Law at any time.** ("Letter of Clarification" at 1-2).

that, based upon criteria governing good standing published by the Quinnipiac University and the University of Minnesota, Plaintiff was, in fact, in good standing on May 24, 2000." (Plaintiff's Correspondence Motion at 2-3).

The plaintiff is wildly wrong on both counts. First, the Court, in denying the defendant's motion for summary judgment, did not reject the defendant's affirmative truth defense. Rather, it merely held that the defendant was not entitled to summary judgment on that issue, presumably because it felt that the defendant had failed to demonstrate that there existed no genuine issue of material fact as to the issue of substantial truth. As such, the holding hardly amounted to a rejection of the substantial truth defense or an affirmation of the plaintiff's claims.

Nor can the Court's holding of January 14, 2005, be rationally characterized as a rejection of the defendant's substantial truth defense or an affirmation of the plaintiff's claims. In reality, the Court, in elaborating its rationale for granted judgment in favor of the defendant, ruled in favor of the defendant on the issue of substantial truth[11] by expressly stating that "no reasonable person could find that the defendant's interpretation of financial good standing was an impermissible one." Moreover, it is simply incomprehensible precisely how the plaintiff is

---

[11] Under the doctrine of substantial truth, "A commentator who advocates one of several feasible interpretations of some event is not liable in defamation simply because other interpretations exist. Consequently, remarks on a subject lending itself to multiple interpretations cannot be the basis of a successful defamation action because as a matter of law no threshold showing of "falsity" is possible in such circumstances." Id, citing to Bose Corp. v. Consumers Union, 466 U.S. 485, 512-13, 104 S.Ct. 1949, 1966, 80 L.Ed.2d 502 (1984). The "Substantial Truth" test is a broad one, "if any 'reasonable person' could find the statements to be 'supportable interpretations' of their subjects, the statements are incapable of carrying a defamatory meaning, even if a 'reasonable jury' could find that the statements were mischaracterizations." See Hunter v. Thompson, 454 N.W.2d at 707, citing Moldea v. New York Times Co., 22 F3d. 310, 317 (1994).

able to interpret the Court's decision to grant judgment in favor of the defendant as an affirmation of her claims. Presumably, had her claims been affirmed, she would have no need to file a motion for a new trial or to set aside the verdict. Regardless, neither the plaintiff's strained optimism nor her penchant for acts of intellectual contortion add weight to either of her present motions.

### i. Plaintiff's assertion that defendant's post-trial issuance of the Letter of Clarification entitles her to punitive damages on her dismissed claim against David King is without legal basis

The plaintiff alleges that the defendant's issuance of the Letter of Clarification amounts to "a republication of his original defamatory statement, with superficial "cosmetic changes" and is, similarly, substantially false, misleading, and unprivileged." (Plaintiff's Correspondence Motion at 5). The plaintiff further asserts that this "clearly evidences malice" and "operates to defeat qualified privilege and may entitle Plaintiff to an award of punitive damages." Id. As a preliminary matter, the defendant submits that the defendant's conduct in relation to the plaintiff subsequent to trial has no bearing whatsoever on the allegations contained within her complaint, on which the plaintiff's lawsuit against the defendant was based. Her allegations of additional, post-trial misconduct do not operate to entitle her to a new trial, nor a setting aside of the judgment in favor of the defendant.

### 2. The plaintiff's assertion that the Rule 50 granting of judgment was improper because she was entitled to punitive damages is without merit

The plaintiff further alleges that, since she was entitled to punitive damages under Minnesota law, the Court's judgment in favor of the defendant was erroneous. The defendant

16

notes that the Court specifically addressed the plaintiff's damage claim at trial. Specifically, the Court rejected any claim which she may have had to a presumption of special damages, given the community's awareness of the "scathing" nature of the statements made by other courts about the plaintiff. (January 14, 2005 - Trial Transcript Excerpt, at 7-8). Moreover, after noting that the plaintiff withdrew her claim for emotional damages, the Court commented that "[i]t would be frankly – and I want to be judicious – frivolous for the plaintiff to contend that but for defendant's statement she would have been employed at a prestigious law firm as a summer associate." (January 14, 2005 - Trial Transcript Excerpt, at 7-8). The Court's granting of judgment in favor of the defendant could hardly be erroneous, given the plaintiff's failure to present compelling evidence as to the existence of actual or special damages.

Under Minnesota law, "a claim for punitive damages may be allowed…'only upon clear and convincing evidence' that the acts of the defendant showed deliberate disregard for the rights or safety of others." LeDoux v. Northwest Pub., Inc., 521 N.W.2d 59, 70 (Minn. App. 1994). Here, the plaintiff was unable to show, by a preponderance of evidence, that she was damaged as a result of the defendant's alleged defamatory conduct. Having failed to meet this lesser standard, it is certain that she would be unable to satisfy the more stringent "clear and convincing evidence" standard required under Minnesota law to establish a claim for punitive damages. Id.

## CONCLUSION

The plaintiff has failed to establish that a new trial is justified in this matter under FRCP 59 in order to avoid a seriously erroneous result or a miscarriage of justice. Song, supra.

Likewise, she has failed to demonstrate that a setting aside of the judgment in favor of the defendant is justified due to (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) avoid judgment ; or (5) a satisfied, released, or discharged, prior judgment. Moreover, the plaintiff has failed to demonstrate the existence of "extraordinary circumstances" justifying a setting aside of the verdict pursuant to FRCP 60(b)(6). Ackermann, supra.

In fact, the defendant's post-trial issuance of the Letter of Clarification has no bearing upon the plaintiff's previous allegation of defamation against the defendant, and therefore can not operate to afford the plaintiff a right to a new trial or a setting aside of the judgment. Moreover, the plaintiff's assertion that the judgment in favor of the defendant was erroneous because she was entitled to punitive damages is frivolous.

As such, the defendant respectfully requests that the Court deny the plaintiff's motion for a new trial and motion to set aside judgment.

DEFENDANT,
DAVID S. KING,

By: _____
Sean Nourie
Fed. No. ct26205
Matthew G. Conway
Fed. No. ct09612
Conway & Stoughton, LLP
201 Ann Street
Hartford, CT 06103
(860) 525-5529
fax (860) 525-1191

18

## CERTIFICATION

This is to hereby certify that a copy of the foregoing has been mailed, postage prepaid on this 22nd day of February 2005, to the following pro se party:

Barbara R. Burns
980 Main Street
Hackensack, NJ 07601

_____
Sean M. Nourie