UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Barbara R. Burns | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | NO: 302CV 00897(RNC) |
| V. | : | |
| | : | |
| David S. King | : | March 2, 2005 |
|     Defendant | : | |

### DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION TO RECUSE

The defendant herein objects to the plaintiff's Motion to Recuse Judge Chatigny

("Recusal Motion"),[1] on the grounds that the plaintiff's motion is untimely, insufficient as a

matter of law, and contains numerous misrepresentations of the facts and procedural history of

this case.

In <u>McCann v. Communications Design Corp.</u>, 775 F. Supp.2d, 1506 (D. Conn. 1991),

the plaintiff also filed a motion to recuse, which was based upon allegations similar to those

made by the plaintiff in the present case.[2]  In introducing its decision, the Court noted that "it is

inherent in the judicial process that a district judge makes decisions that disappoint, and

occasionally, agitate one party or another...In this case, a simple pre-trial decision...has

---

[1] For purposes of this objection, the defendant will refer to the plaintiff's filing as a motion to recuse.  It is nothing more than an affidavit, bearing the title "Affidavit of Barbara R. Burns," in which she asserts that "**I make this affidavit in support of my Motion to set Aside Findings and for New Trial...and to establish the necessity of bypassing the trial court and making direct application to the appellate court with respect to any motion to facilitate any appeal or other appellate filing...**"  (Recusal Motion ¶ 2).  The plaintiff has not filed a memorandum of law in support of a motion to recuse.  In fact, although the affidavit contains numerous allegations of bias against Judge Chatigny, **it does not any contain request that Judge Chatigny be recused from the case.**  Nevertheless, the defendant feels compelled to file an objection.
[2] For instance, the plaintiff alleged the existence of a conspiracy between the judge and the defendant.

1

provoked an increasingly frantic and seemingly endless series of efforts by plaintiff to frustrate

the purpose of the court's decision. Plaintiff's efforts have culminated now in a series of *ad*

*hominem* attacks on the court and on opposing counsel and wholly fabricated charges of

conspiracy, all in an effort to drive the 'offending' judge from the case…" <u>McCann</u>, supra.

After acknowledging that "it would be relatively easy to reassign this case" the Court warned

> …the simple truth is that it would be injurious to our entire system of justice to reward a
> party who has made serious and wholly unsupported allegations of bias by giving that
> party precisely what he wants. Where there is no basis for recusal other than a litigant's
> unhappiness with a judge's decisions, the presiding judge has an obligation to prevent
> "judge shopping" by refusing to recuse himself…To reassign this case based on this
> record would suggest to any disappointed litigant that he may have a case reassigned
> simply because the presiding judge has ruled against him. This would not only be
> grossly unfair to the defendants in this case, but it would send a dangerous signal to
> other litigants. Id.

The McCann Court denied the plaintiff's motion to recuse. Denial of the plaintiff's

motion to recuse in the present matter is equally justified.

## I.    <u>PROCEDURAL HISTORY</u>

This case arises out of allegations by the plaintiff, Barbara R. Burns ("Burns"), against

David S. King ("King"), Associate Dean of Academic Affairs of Quinnipiac University School

of Law. In her Complaint of May 24, 2002, the plaintiff alleges that the defendant defamed her

by informing various individuals that the plaintiff "was not in good standing" with the

University.

On May, 29, 2003, the defendant moved for summary judgment in this matter on the

defense of truth. The Court (Chatigny, J.) denied the defendant's motion for summary

judgment on September 29, 2004. On the same date, the Court issued a pretrial order, setting a

2

trial date of December 14, 2004. Subsequently, the trial date was continued until January 11, 2005.

A telephonic pretrial conference took place on December 6, 2004. In the course of the conference, the plaintiff inquired as to whether a potential witness, namely Neil Cogan, could be required to appear and testify in the upcoming trial at a U.S. District Court in his domicile state of California, via a video conferencing arrangement with the U.S. District Court in Hartford. This scenario raised issues of both logistics (e.g. the technical feasibility) and jurisdiction. Specifically, the Court expressed concern that it had no jurisdiction over the witness through which it could compel his appearance of at a courthouse in California. The Court instructed the plaintiff to research the logistical feasibility of the arrangement, and also to submit a brief pertaining to jurisdiction.

A second telephonic pre-trial conference took place on December 9, 2004. Various court personnel were present during this conference, at least some of whom had brought to the attention of the judge conduct on the part the plaintiff towards them which they felt to be improper. The substance of these complaints were that the plaintiff was attempting, through Court personnel, to establish jurisdictional authority for this out of state witness' testimony, when her sole legitimate purpose for such contact was to determine whether the video conferencing scenario was technically feasible. As a result of these complaints, the Court (Chatigny, J.) forbade the plaintiff from directly contacting Court staff, and, instead authorized her to communicate with him directly by way of letter or motion. At no point during the conference was it suggested that the defendant or defense counsel had engaged in similarly

3

abusive conduct towards court personnel. As such, the Court did not place similar restrictions upon the defendant. At some point during the telephonic conference, the plaintiff accused Judge Chatigny of being biased against her. However, she did not file an affidavit in support of bias until February 2005, nearly two months later.

Jury selection in this case began on January 11, 2005. On January 11, 2005, the Court ruled in favor of the defendant on various pretrial motions. Once again, the plaintiff responded by accusing Judge Chatigny of being biased against her. However, as stated above, she did not file an affidavit in support of her allegations until well after trial.

The plaintiff concluded her case-in-chief on January 14, 2005. At that time, the defendant moved for judgment as a matter of law pursuant to FRCP 50(a). From the bench, the Court (Chatigny, J.), granted judgment in favor of the defendant.

On or about February 3, 2005[3], the plaintiff for the first time in this case, filed an affidavit in support of bias. It is to this affidavit that the defendant now responds.

## II.    LEGAL AUTHORITY & ANALYSIS

## A.    Recusal Under 28 U.S.C. § 144 & 28 U.S.C. 455 (a)

The procedure by which a party may move for disqualification is set forth in 28 U.S.C. § 144, which states that "Whenever a party to any proceeding in a district court makes a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." The affidavit filed by the

---

[3] The affidavit is dated February 2, 2005, but was not received by the defendant until February 8, 2005.

moving party must "state the facts and the reasons for the belief that the bias or prejudice

exists, and shall be filed not less than ten days before the beginning of the term at which the

proceeding is to be heard...A party may file only one such affidavit in any case."

In addition, 28 U.S.C. § 455 (a), provides that "Any justice, judge, or magistrate judge

of the United States shall disqualify himself in any proceeding in which his impartiality might

reasonably be questioned." Moreover, Section 455(b) enumerates five instances which

mandate the disqualification of a judge, such as relationship to the parties. Of these, only

455(b)(1), appears to be pertinent to the present case. It provides a means for recusal where a

judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed

evidentiary facts concerning the proceeding."

Courts have held that sections 144 and 455(b)(1) should be construed together, *in pari*

*materia*. United States v. Pugliese, 805 F.2d 1117, 1125 (2d Cir.1986); Lamborn v. Dittmer,

726 F.Supp. 510, 514 (S.D.N.Y.1989); Apple v. Jewish Hosp. and Medical Center, 829 F.2d

326, 333 (2d Cir.1987).

Section 455(a) "establishes an objective standard 'designed to promote public

confidence in the impartiality of the judicial process.'" In re Drexel Burnham Lambert Inc., 861

F.2d at 1313. The basis for recusal under section 455(a) is broader than under sections 144 and

455(b)(1). United States v. Wolfson, 558 F.2d 59, 62-63 (2d Cir.1977); Apple, supra, at 333.

The substantive standard for determining recusal pursuant to section 455(a) is whether a

reasonable person, knowing and understanding all the relevant facts, would conclude that the

judge's impartiality might reasonably be questioned.  In re Drexel Burnham Lambert Inc., 861

supra, at 1313.  The Second Circuit Court of Appeals has stated that:

> [l]ike all legal issues, judges determine appearance of impropriety - not by considering
> what a straw poll of the only partly informed man-in-the-street would show - but by
> examining the record facts and the law, and then deciding whether a reasonable person
> knowing and understanding all the relevant facts would recuse the judge.
> In re Drexel Burnham Lambert Inc., supra, at 1313.

Section 455(a) "was not meant to require disqualification every time one party can

make some argument, no matter how unreasonable, that the appearance of prejudice would

result." Lamborn, supra, at 516.  Indeed, a "judge must be alert to avoid the possibility that

those who would question his impartiality are in fact seeking to avoid the consequence of his

expected adverse decision." Id (emphasis added).  The appearance-of-impartiality test is one of

reasonableness; it does not require recusal in response to vague, unsupported or speculative

charges of impartiality. Smith v. Pepsico, Inc., 434 F.Supp. 524, 525 (S.D.Fla.1977).

In passing on the grounds of personal bias and prejudice, the facts alleged in the

affidavit must be accepted as true. Berger v. United States, 255 U.S. 22, 41 S.Ct. 230 (1921).

This statutory obligation, however, does not preclude a court from putting the facts alleged into

their proper context and examining the surrounding circumstances. Rosen v. Sugarman, 357

F.2d 794, 798 (2d Cir.1966).  The affidavit must show a true personal bias and must allege

specific facts and not mere conclusions and generalities. United States v. IBM, 475 F.Supp. at

1379.  "An application for the disqualification of a judge must rest on a factual basis and not on

the whim of a litigant who asserts vague contentions." Hunt v. Mobil Oil Corp., 557 F.Supp.

368, 376 (S.D.N.Y.).  Moreover, test is not the subjective feelings or "beliefs" of the movants.

Hunt, Supra, at 376.

**B.      Discretion of the Trial Court in Considering Recusal Motions, Limitations**

The decision whether to grant a recusal motion is a matter within the sound discretion

of the district court.  In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1312 (2d Cir.1988);

Apple v. Jewish Hosp. and Medical Center, 829 F.2d 326, 333 (2d Cir.1987).  As noted by the

Court of Appeals:

> The judge presiding over a case is in the best position to appreciate the implications of
> those matters alleged in a recusal motion. In deciding whether to recuse himself, the
> trial judge must carefully weigh the policy of promoting public confidence in the
> judiciary against the possibility that those questioning his impartiality might be seeking
> to avoid the adverse consequences of his presiding over their case . . . . Litigants are
> entitled to an unbiased judge; not to a judge of their choosing.

> Drexel, supra, at 1312.

A recusal motion is a serious matter, "strik[ing] at the integrity of the judicial process."

In re International Business Machs. Corp., 618 F.2d 923, 927 (2d Cir.1980).  Recusal motions

should not be used as "strategic devices to judge shop." Lamborn v. Dittmer, 726 F.Supp. 510,

515 (S.D.N.Y.1989).  The judge to whom a recusal motion is addressed is presumed to be

impartial, United States v. International Business Machs. Corp., 475 F.Supp. 1372, 1379

(S.D.N.Y.1979); and, there is a substantial burden on the moving party to show that the judge is

not impartial.  Lamborn, supra, at 514.  It is "vital to the integrity of the system of justice that a

judge not recuse himself on unsupported, irrational or highly tenuous speculation." Hinman v.

Rogers, 831 F.2d 937, 939 (10th Cir.1987).

**C**      **Timeliness requirement**

Pursuant to Section 144, an affidavit in support of recusal must be "timely" in order to

invoke the disqualification procedure. See <u>Apple</u>, 829 F.2d at 333. While section 144's

mandate that the affidavit be filed "not less than ten days before the beginning of the term" is

no longer interpreted literally - because courts now sit continuously - "**[i]t is well-settled that a**

**party must raise its claim of a district court's disqualification at the earliest possible**

**moment after obtaining knowledge of facts demonstrating the basis for such a claim.**"

<u>Apple</u>, supra, at 333(emphasis added); see also <u>In re Martin-Trigona</u>, 573 F. Supp. 1237, 1244

(D. Conn. 1983). ("One seeking recusal must do so at the earliest moment after he obtains the

knowledge that forms the basis for the motion."; <u>Lamborn</u>, supra,. at 514 ("earliest possible

moment"); <u>Duplan Corp. v. Deering Milliken, Inc.</u>, 400 F.Supp. 497, 510 (D.S.C.1975).

While section 455 does not explicitly contain a timeliness requirement, the Court of

Appeals has applied the same timeliness criteria to motions brought under section 455 as it

applies to those brought under section 144, <u>In re IBM</u>, supra, at 932; <u>In re Martin-Trigona</u>, 573

F. Supp. at 1245, and recusal motions have been denied on the basis of untimeliness even when

there has been only a short delay, see, e.g., id. at 1244-45 (delay of 12 days); see also <u>Lamborn</u>,

726 F. Supp. at 515. In fact, the <u>Martin-Trigona</u> court commented that:

> [t]he purpose of a timeliness requirement for the assertion of claims of personal bias is
> to prevent a litigant from using motions to disqualify as dilatory tactics or as means to
> "sample the temper of the court" before deciding whether to raise an issue of
> disqualification . . . or to ambush a court that is on the verge of acting - possibly to his
> detriment - on matters he deems important.

<u>In re Martin-Trigona</u>, 573 F. Supp. at 1245.

8

**D.    Extrajudicial Bias Requirement**

    The disqualification procedure set forth in section 144 requires that the affidavit filed by a party be legally "sufficient" as well as "timely."  The Second Circuit Court of Appeals has held that sections 144, 455(a), and 455(b)(1) look to extrajudicial conduct as the basis for determining whether a judge should disqualify himself, not to "what the judge has learned from or done in the proceedings before him," King v. United States, 576 F.2d 432, 437 (2d Cir.1978), or, in other words, conduct which arises within a judicial context.  Apple, 829 F.2d at 333; In re IBM, 618 F.2d at 928-29.

    "Extrajudicial conduct" does not mean conduct arising geographically outside of the courtroom, but rather, conduct arising from something outside of rulings or statements made by the trial judge in the course of his judicial duties. Id.; Allen-Myland v. International Business Machs., Corp., 709 F.Supp. 491, 494 (S.D.N.Y.1989).  The test is the same under both sections 144 and 455: "'The determination should be made on the basis of conduct extrajudicial in nature as distinguished from conduct within a judicial context.'"  In re IBM, supra at 928. Although the Court of Appeals "concedes 'that conduct in the course of a trial might be relevant to indicate a bias that can only be explained as a personal prejudice against a party, the fact is that no case in this circuit has ever found such bias on the basis of a trial court's rulings or conduct.  This reticence . . . is well justified.'"  In re IBM, supra, at 928.

**III.    Grounds of Defendant's Objection to Plaintiff's Recusal Motion**

    As a preliminary matter, the defendant notes that, despite plaintiff's assertion that "I make this affidavit...to establish the necessity of *bypassing the trial court* and making direct

application to the appellate court…"(Recusal Motion ¶ 2, emphasis added), it is the jurisdiction of the district court to exercise its discretion in ruling upon a motion to recuse. In Re Drexel, supra.

The Court, in exercising this discretion, should deny the plaintiff's motion to recuse on numerous grounds. First, the motion should be denied because it is untimely. The motion should also be denied because it is insufficient as a matter of law. Moreover, the motion should be denied when it is considered within the context of the plaintiff's history of judge shopping. Finally, to the extent that the plaintiff has attempted to assert a due process claim under the Seventh Amendment in support of her motion to recuse, her motion should be denied because the plaintiff's Seventh Amendment claim has no merit and adds no weight to her recusal motion.

**A. The plaintiff's motion is untimely.**

In her recusal motion, the plaintiff sets forth her own confusing timeline regarding the alleged development of bias on the part of Judge Chatigny. First, she states cryptically, that "It has *consistently* been my position that, up to the time of a pre-trial conference on December 6, 2004 and *excepting certain discovery rulings which I duly and timely appealed*, the assigned trial judge, Robert N. Chatigny, did not evidence bias within the meaning of 28 U.S.C. § § 144, 455…" (Recusal Motion ¶ 4, emphasis added). The plaintiff even generously remarks that Judge Chatigny's opinions, pre-December, 2004 "evidenced exceptional diligence, and were most striking for their simplicity, unerring accuracy, and absolute clarity…" Id.

Leaving aside the inherent contradiction[4] contained within the above excerpt from the plaintiff's recusal motion, the plaintiff alleges that Judge Chatigny's bias towards her materialized during a telephonic pretrial conference which took place on December 9, 2004. The plaintiff alleges that, in the course of the conference, "the trial judge completely departed from the tone and substance of the December 6, 2004 pretrial conference, i.e., his tone towards me was unjustifiably hostile…" (Recusal Motion ¶ 6). The plaintiff further asserts that, in the course of the conference, she "duly noted and preserved for appeal my assertion that the trial court, in affording discriminatory and disparate treatment of the parties, was, or might be, biased within the meaning of 28 U.S.C. § 144, 455." (Recusal Motion ¶ 6).

As a preliminary matter, the plaintiff's verbal statement that she was "preserving for appeal" her allegation that the judge was biased against her was insufficient for the purpose of recusal, which requires the filing of an affidavit by the party asserting bias. See Apple, supra. The plaintiff has failed to offer citation to any legal authority which establishes that the affidavit filing requirement can be fulfilled via a mere verbal statement.

The plaintiff was required to file her affidavit "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." Apple, supra at 333.

---

[4] What the plaintiff appears to be asserting, via her caveat "excepting certain discovery rulings," is that Judge Chatigny actually evidenced bias against the plaintiff previously in ruling upon certain discovery matters which were resolved long before September, 2004, which is when the Court ruled in favor of the plaintiff by denying the defendant's summary judgment motion. However, the plaintiff is careful to explain that Judge Chatigny's denial of the defendant's motion for summary judgment was "graceful and clear." Therefore, the plaintiff is asserting that Judge Chatigny was biased against her at some point prior to his denial of the defendant's motion for summary judgment. Then, for a period of time ranging from the September 29, 2004, through December 9, 2004, that Judge Chatigny was unbiased, but became biased again on or after December 9, 2004. Thus, according to the plaintiff, Judge Chatigny is graceful, sincere, and unbiased when he rules in her favor, but biased when he rules against her.

In other words, the plaintiff was required to file her affidavit at the "first opportunity after discovery of the disqualifying facts." <u>Duplan</u>, supra, at 510.

Recusal motions have been denied on the basis of untimeliness even when the delay period was as short as twelve days. See <u>In re Martin-Trigona</u>, supra, at 1245. The purpose of so enforcing the timeliness requirement is "to prevent a litigant from using motions to disqualify as dilatory tactics or as means to 'sample the temper of the court' before deciding whether to raise an issue of disqualification . . . or to ambush a court that is on the verge of acting - possibly to his detriment - on matters he deems important." Id.

Here, taking the allegations contained within the affidavit at face value, the plaintiff first "discovered" bias on the part of Judge Chatigny on December 9, 2004. Her recusal affidavit was not filed until February 3, 2005, or some fifty-six days later. If twelve days is untimely, then most certainly fifty-six days is as well. See, <u>Lamborn</u>, supra. Moreover, the plaintiff waited until after the defendant prevailed at trial on his motion for judgment, before filing her recusal motion, thereby creating the impression that, in fact, she was waiting to "sample the temper of the court" before deciding to proceed with her attempt to recuse Judge Chatigny. <u>In re Martin-Trigona</u>, supra. In doing so, the plaintiff has created the distinct impression that she is engaging in the very type of conduct that the timeliness requirement was intended to prevent. Id.

Therefore, the defendant objects to the plaintiff's motion for recusal as being untimely.

**B. Plaintiff has failed to allege or identify extrajudicial bias by Judge Chatigny.**

In her Recusal Motion, the plaintiff provides a seemingly endless description of rulings, orders, and conduct allegedly undertaken by Judge Chatigny which, according to the plaintiff, evidence his bias against her.  In the following analysis, the defendant sorts these allegation into separate categories, namely, rulings and orders by Judge Chatigny, and conduct or statements by Judge Chatigny.  As will be shown, even if the plaintiff's allegations are assumed to be true, neither category provides a legal justification for the judge's recusal from the case.  The defendant will also respond to plaintiff's wholly unsubstantiated, tortuous, and frankly, irrational, theory that the Court conspired with the defendant and/or defense counsel during trial.

The plaintiff alleges that Judge Chatigny issued various orders and rulings which evidenced bias against her.  These include: the Court's order of December 9, 2004, which "arbitrarily established conditions"[5] by which the "opposing party was accorded and assured greater access to information, informal communication channels, and to court resources than was accorded to me" (Recusal Motion ¶ 6); the Court's "arbitrary"[6] denial of the her "motion to admit the testimony of Cogan" (Recusal Motion ¶ 10); the Court's decision in favor of the defendant on a pretrial memorandum which operated to require the plaintiff to present her

---

[5] The plaintiff fails to mention that the Court placed restrictions upon the plaintiff's contact with Court personnel as a result of complaints by such personnel that the plaintiff was treating them in a harassing manner.  Having sanitized this critical fact from her version of the story, the plaintiff states that the Court's disposition was "unjustified."

[6] The decision was hardly arbitrary.  In fact, the Court denied the plaintiff's motion, after both sides briefed the issue, on the grounds that the plaintiff had failed to demonstrate that it had jurisdiction to compel Neil H. Cogan, who lives in California, to participate in the plaintiff's proposed video testimony.

13

testimony in the question and answer format, which, according to the plaintiff, "was done for no other reason than that it was more convenient or otherwise more favorable to the defendant."[7] (Recusal Motion ¶ 10); the Court's dismissal of a juror "with whom the plaintiff had spoken prior to voir dire" (Recusal Motion ¶ 14, footnote 7); the Court's decision to not permit the plaintiff to introduce at trial credible evidence "that the defendant had been sued by other Quinnipiac students based upon substantially the same facts as those asserted by the plaintiff's complaint in this case" (Recusal Motion ¶ 2)[8]; the Court's decision to permit the defendant to admit into evidence "litigation involving the Plaintiff and two other persons that was not even commenced until two years after this lawsuit was filed"[9] (Recusal Motion ¶ 2); the Court, on the opening day of trial, "repeatedly and consistently overrul[ing] objections by the plaintiff"[10] (Recusal Motion ¶ 2); the Court, "in a biased manner, rul[ing] to exclude virtually all evidence submitted by Plaintiff, including, but not limited to, published policies of

---

[7] The Court ruled after both sides briefed the issue and the plaintiff presented no authority for presenting her testimony other than in question and answer format. Had the Court permitted the plaintiff to testify in her proposed narrative format, the defendant would have been utterly prevented from objecting to testimony that would be otherwise inadmissible (e.g. hearsay testimony) before it was presented to the jury. The defendant's interest in preventing such an occurrence certainly amounts to more than mere convenience, as the plaintiff puts it.

[8] The "credible evidence' referred to by the plaintiff was comprised of nothing more than her own, wholly unsubstantiated testimony. Moreover, the plaintiff's assertion that the "defendant had been sued by other Quinnipiac students based upon substantially the same facts as those asserted by the plaintiff's complaint in this case" is an utter fabrication.

[9] In fact, the order at issue, which effected a dismissal of the plaintiff's case with prejudice and an award of sanctions against her, expressly found that Barbara Burns "has commenced 10 different civil suits in Hennepin County since 1991…[t]he nexus of all of these claims involve a piece of real property located at 13684 Harmony Way, City of Apple Valley, Minnesota." Findings of Fact, Conclusions of Law, and Order Dismissing Case with Prejudice, dated 1/14/04. As such, the litigation clearly was not, as the plaintiff falsely represents, initiated two years after the present lawsuit.

[10] During the course of the trial, it became increasingly clear that the plaintiff had not familiarized herself with the Federal Rules of Evidence. Specifically, she clearly did not understand the hearsay rule and exceptions. In fact, on January 12, 2005, at the plaintiff's request, the Court provided the plaintiff with a copy of the rules. That same day, the Judge ordered a recess in order to provide the plaintiff with additional time to review the rules prior to hearing argument on the admissibility of the plaintiff's various exhibits.

Quinnipiac University"[11] (Recusal Motion ¶ 17); the Court's decision to limit the plaintiff's

testimony to "only two hours," after permitting the defendant "an unlimited amount of time to

present his testimony"[12] (Recusal Motion ¶ 18); the Court's refusal to enforce the plaintiff's

subpoena of Ann Traverso (Recusal Motion ¶ 19-20); the Court's refusal to sanction defense

counsel for what she characterizes as "witness tampering"[13] (Recusal Motion ¶ 19-20); the

Court's decision to permit defense counsel to interject "superceded commentary" regarding a

real estate matter involving Plaintiff and two other parties…"[14] (Recusal Motion ¶ 22); the

Court's refusal to permit the plaintiff to introduce the appellate order[15] that "invalidated and

---

[11] Despite the plaintiff's assertion that she had complied with all pretrial orders, she ignored the requirement set forth within the Court's pretrial order requiring that she specifically disclose, list and identify each of her trial exhibits. At trial, the plaintiff attempted to offer into evidence numerous documents, including the documents which she represented encompass the written policies of Quinnipiac. The defendant objected on the grounds that that plaintiff should be forbidden from introducing evidence which had not been disclosed in the Plaintiff's Pretrial Compliance.

[12] The defendant was called to testify by the plaintiff. In fact, the plaintiff was not limited in any way to the length of time she had to conduct a direct examination of the defendant.

[13] The plaintiff misstates the facts. The plaintiff allegedly subpoenaed a witness, Ann Traverso, to testify at trial. When defense counsel inquired whether Ms. Traverso was going to be called the next day, the plaintiff indicated that she would be contacting the witness. After the plaintiff failed to contact the witness and the witness called the number listed on the subpoena to no avail, defense counsel raised the issue with the Court advising the Court that Ms. Traverso indicated that she would not be able to appear until 2:00 p.m. The plaintiff claims that she was "foreclosed" on her "tactical decision to depose" the witness that morning. The discovery period had ended on May 30, 2003. The fact that defense counsel simply inquired of the plaintiff when this witness would be needed so as to accommodate a non-party witness' schedule in the midst of a snow storm which postponed the beginning of Court, hardly consisted of what the plaintiff characterized as "witness tampering".

[14] See Footnote 8, supra.

[15] This is another utter fabrication by the plaintiff. In fact, after defense counsel read into the record portions of In Re Barbara Burns, the plaintiff asserted that that ruling had been overturned on appeal. Judge Chatigny requested that the plaintiff produce of copy of the actual ruling overturning In Re Barbara Burns. In response, the plaintiff indicated that such a ruling existed, but that she had not brought it with her that day. Judge Chatigny then ordered a recess for the purpose of permitting the plaintiff to retrieve the order. He also made available to the plaintiff the Court's online research resources to assist her in locating the order. When trial reconvened, the plaintiff represented to the court that she had located the order in question. However, upon further questioning by the Court, the plaintiff revealed that she had not located an actual order overturning In Re Barbara Burns. Instead, she was attempting to introduce into evidence an appellate order on a completely unrelated matter, and, copies of articles pertaining to a inter-court dispute involving various judges in Minnesota, but having nothing to do with the plaintiff or In Re Barbara Burns.

15

vitiated the prejudicial, irrelevant, and prejudicial [sic] evidence offered by defense counsel"

(Recusal Motion ¶ 22); the Court's decision to dismiss the jury for the day prior to the

testimony of Valerie Carbone, whose examination took place in the jury's absence[16] (Recusal

Motion ¶ 24); and, finally, the Court's decision to grant judgment in favor of the defendant,

"despite assurances that he was not *predisposed* to take the case from the jury."[17] (Recusal

Motion ¶ 24, emphasis added).

   The plaintiff also accuses the Court of making certain statements and engaging in other

conduct at trial which, as she alleges, evidenced bias against her.  These include: the Court's

December 9, 2004, statement to the plaintiff,[18] which she characterizes as "coercive," that she

"'best not' or 'should not'"  question his exercise of discretion and/or his personal integrity, or

words of that substance and meaning…" (Recusal Motion ¶ 6); the Court's statement that "the

defendant should not be prejudiced because the plaintiff is pro se" (Recusal Motion ¶ 11); the

Court's statement of January 11, 2005, made in response to the plaintiff's threat that she would

be filing an affidavit of prejudice, that the Court "would not consider such a challenge with any

---

[16] Valerie Carbone was a witness called by the defense, not the plaintiff.  She was called to simply testify regarding the amount of money owed by the plaintiff.  Her testimony added nothing to the plaintiff's case-in-chief, and therefore was irrelevant to the Court's decision to enter judgment in favor of the defendant.

[17] Even assuming that Judge Chatigny did make such a statement to the plaintiff, a pre-trial statement that he was not predisposed to grant judgment as a matter of law in favor of the defendant is simply not equivalent to a vow that he would not make such a ruling.  Nor could the Court make such a promise to a party prior to trial.

[18] According to the plaintiff, the Court made this statement in response to the plaintiff's statement that she would "appeal any ruling that discriminated against me in favor of the defendant."  It is difficult to imagine a clearer example of a party who is attempting to "ambush" the Court before it has a chance to act to that party's possible detriment.  See In re Martin-Trigona, supra.  What the plaintiff was saying, in effect, was, *either rule in my favor, or, I will accuse you of bias.*

16

degree of objectivity"[19] (Recusal Motion ¶ 25); and, the Court's statement to the jury, during his introduction of the case, that "the fact that the plaintiff's claims had proceeded to trial did not mean that Plaintiff's claims were meritorious"[20] (Recusal Motion ¶ 12).

Other conduct by the Court which, by the plaintiff's account, evidenced bias against her include: her allegation that the court "forced" her to make her objection arguments in the presence of the jury,[21] and denied virtually all of them, "often with sarcasm or derision, the effect of which was to bias the jury and to acutely prejudice Plaintiff's case"[22] (Recusal Motion ¶ 12); her allegation that Judge Chatigny, in the presence of the jury "acted as 'shadow counsel' on behalf of the defendant by interrupting Plaintiff's direct examination of Traverso" (Recusal Motion ¶ 20); her allegation that the Court, during cross-examination of the plaintiff, encouraged defense Counsel to "harass and annoy"[23] the plaintiff "by permitting, and even overtly encouraging" certain testimony by the plaintiff, (Recusal Motion ¶ 22); and, her allegation that the Court, in response to her allegation in open court that the Court was

---

[19] The plaintiff's allegation that the Court made any such statement "on the record" is an obvious misrepresentation.

[20] This statement was a truism. It would clearly be improper for the jury to make any assumptions regarding the merit of a party's claims, based solely upon the fact that the case had proceeded to the trial stage.

[21] The Court permitted both parties to make certain of their objection arguments in front of the jury. As such, the plaintiff's allegation that she was treated unfairly in this regard is frivolous.

[22] Even if the plaintiff's recitation of these statements was true, it is nonsensical for the plaintiff to allege that she was somehow prejudiced in this matter as a result of the jury's observations of her interactions with Judge Chatigny, since the Court's entry of judgment in favor of the defendant precluded the case from going to the jury.

[23] The plaintiff's alleged annoyance during cross-examination adds no merit to her Motion to Recuse, since the test for bias "is not the subjective feelings or 'beliefs' of the movants." Hunt, Supra.

"'mocking the witness'...apologized for conduct that would cause Plaintiff and other persons to conclude that the court was not treating Plaintiff respectfully"[24] (Recusal Motion ¶ 22).

The most outlandish claims, however, contained within the plaintiff's Recusal Motion are those pertaining to an alleged conspiracy that, according to the plaintiff, developed during trial between the Court and the defendant, following "friendly exchange" between a law clerk of the Court and the defendant.  As the plaintiff explains:

> on January 12, 2005, defense counsel conducted a cross-examination of the Defendant, in which counsel solicited from the Defendant a statement that the Defendant had graduated from Dartmouth College in 1964; that, at the break immediately following this testimony, the trial judge's law clerk approached the Defendant and stated to him, within the hearing of Plaintiff and others, that the law clerk's father had attended Dartmouth and was a member of the same class as the Defendant...(Recusal Motion ¶ 14)

The most obvious response to this allegation would be to point out, simply, that the law clerk, and Judge Chatigny, are *different* people, and that, therefore, communications between the clerk and the defendant about the *law clerk's father's* attendance at Dartmouth at the same time as the defendant, some thirty years ago, has no bearing whatsoever upon the question of the trial judge's partiality in the case.  The plaintiff addresses this obvious flaw in her argument by inferring, through vague and irrational inferences that:

> ...the law clerk, *presumably* with the knowledge and approval of the trial judge, subsequently approached and engaged the defendant in this type of friendly exchange throughout the course of the trial, at the same time refusing to speak to Plaintiff, even with regard to administrative matters...thereby creating an appearance of impropriety and affording an additional channel of direct/and or indirect, informal, off-the-record

---

[24] Here, the plaintiff distorts the substance of the Court's "apology" to make it sound as if the Court admitted to mocking the plaintiff.  In reality, the Court simply "apologized" that the plaintiff felt that she was somehow being mistreated.

communication with the trial judge that was not afforded evenhandedly to the Plaintiff. (Recusal Motion ¶ 14, emphasis added)

Having laid the "foundation" of her theory that there existed a conspiracy between the Court -- through the law clerk -- and the defendant, the plaintiff claims that "the trial judge repeatedly made rulings on the record, and then 'flip-flopped' following adjournment, resulting in revised rulings that always favored the Defendant, creating the impression that *ex parte* communication had occurred during the adjournment or recess, thereby creating an appearance of impropriety, if not actual wrongdoing." (Recusal Motion ¶ 14). The defendant notes that the plaintiff has not provided any factual basis whatsoever in support of her allegation of *ex parte* communications. Nor does the plaintiff identify with specificity the circumstances or substance of the alleged "flip-flops." Instead, her suggestion that such improper conduct took place is based entirely on wild conjecture.

Pursuant to 28 U.S.C. § 144, an affidavit in support of bias must be "sufficient" as well as "timely." The Second Circuit Court of Appeals has held that "sections 144, 455(a), and 455(b)(1) look to extrajudicial conduct as the basis for determining whether a judge should disqualify himself, not to 'what the judge has learned from or done in the proceedings before him,' King v. United States, 576 F.2d 432, 437 (2d Cir.1978)(emphasis added). Bias is not determined based upon an analysis of "conduct which arises within a judicial context." Apple, supra at 333. Extrajudicial conduct is not limited to "conduct arising geographically outside of the courtroom, but rather, conduct arising from something outside of rulings or statements made by the trial judge in the course of his judicial duties." King, supra, at 437.

19

In her affidavit, the plaintiff cites, as evidence of bias, an extensive list of rulings and orders made by Judge Chatigny, as well as various statements and conduct by Judge Chatigny, in both pretrial and trial proceedings. As has been shown, however, the plaintiff's reliance upon such rulings, orders, statements, or conduct is insufficient as a matter of law to constitute a showing of bias, because, even if the Court assumes that the allegations are true, they do not meet the definition of 'extrajudicial conduct.' See <u>King</u> and <u>Apple</u>, supra.

Moreover, the fact that the defendant may have attended Dartmouth with the father of a an individual who clerks for Judge Chatigny, bears no rational relation to the conduct of Judge Chatigny, be it judicial or extrajudicial. In fact, it would be utterly illogical for the plaintiff to assert that Judge Chatigny developed a bias in the case as a result of facts which may have developed via a conversation between the law clerk and the defendant at trial, given the plaintiff's assertion that the judge actually became biased against her approximately one month prior to trial. As one Court has stated, "[i]t is vital to the integrity of the system of justice that a judge not recuse himself on unsupported, irrational or highly tenuous speculation." <u>Hinman v. Rogers</u>, supra, at 939.

Moreover, the plaintiff's highly attenuated and vague allegation that the defendant engaged in *ex parte* communications with the Court falls far short of the standard required to justify recusal, because <u>an affidavit in support of bias</u>, "must show a true personal bias and <u>must allege specific facts and not mere conclusions and generalities</u>." (emphasis added) <u>United States v. IBM</u>, supra. Thus, the plaintiff's unsupported suggestion that such conduct took place adds nothing to her affidavit.

The plaintiff has failed to demonstrate the existence of extrajudicial bias on the part of Judge Chatigny. As such, her motion to recuse must be denied.

**C. The plaintiff has a history of judge shopping**

Recusal motions should not be used as "strategic devices to judge shop." <u>Lamborn</u>, supra at 515. Although the Court has a statutory obligation to accept as true the facts contained within an affidavit in support of recusal, the Court is not precluded from "putting the facts alleged into their proper context and examining the surrounding circumstances. <u>Rosen</u>, supra, at 798.

In her Recusal Motion, the plaintiff asserts: "I am familiar with the legal standard and the required showings that are required to sustain a disqualification of a trial court judge for bias..."(Recusal Motion ¶ 2-3) She then states, "I am, and have been adjudged, fully capable of distinguishing between a judge who is open to conviction..."(Recusal Motion ¶ 3). There is little doubt that the plaintiff has developed an expertise pertaining to the recusal or removal process. Indeed, the plaintiff, by her own admission, has a history of accusing judges who rule against her of bias or misconduct. Specifically, she reveals that she has "filed one complaint of judicial misconduct against a Minnesota federal district court judge..." and, "over a 10-year period, a total of four judicial disqualifications for cause..." (Recusal Motion ¶ 2-3).

There is at least one additional motion for disqualification for cause which the plaintiff, curiously, chose not to disclose in her affidavit. Specifically, in <u>Burns v. Mayer</u>, (Minn. App. Ct.)(1998) (unpublished opinion, attached), the Appellate Court, in affirming the decision of the trial court and denying the motions filed by the appellant, Barbara R. Burns, noted that,

"Burns first claims that the…order is 'without authority' because the judge failed to honor a notice of removal. Because Burns previously removed two other judges, for her to remove a third judge requires a showing of actual prejudice…Burns makes only conclusory allegations of prejudice against the judge in question." Id. (emphasis added). This decision reveals a number of things. First, it demonstrates that the Minnesota state courts follow a rule whereby a party is permitted to disqualify, without a showing of cause, the judge initially assigned to a case. Conversely, it reveals that a showing of prejudice is required to remove the successor judge. It also demonstrates that the plaintiff has a history of making unfounded and conclusory allegations of prejudice.

Thus, by the defendant's math, the plaintiff has, on at least six separate occasions[25], successfully disqualified, as a matter of right, the judge initially assigned to her case. Additionally, the plaintiff reveals that she has moved to disqualify four separate Minnesota state court judges for cause, which, added to the removal referred to within Burns v. Mayer, supra, totals at least five "for cause" removals filed by the plaintiff in Minnesota. Finally, the plaintiff has also revealed that she filed a "complaint of judicial misconduct" against a Minnesota federal district court judge. Thus, in Minnesota alone, the plaintiff has, on at least twelve separate occasions, either attempted to have a judge removed from her case, or has otherwise accused an assigned judge of bias against her.

---

[25] Because Minn. R. Civ. P. 63.03 permits disqualification as a matter of right prior of the judge initially assigned to a case, it is fair to assume that Barbara Burns so disqualified at least one judge in each of the cases in which she admits that she took the additional, more difficult step of removing the replacement judge on a showing of actual prejudice. In the Mayer case, the plaintiff managed to remove two judges as a matter of right, making for a total of at least six judges so removed.

Case 3:02-cv-00897-RNC    Document 165    Filed 03/02/2005    Page 23 of 26

The plaintiff's history of judge shopping is not limited to formalized motions to remove

or recuse. For instance, in In Re Barbara Burns (copy attached), the Court (Mabley, J.) issued

an order placing restrictions upon the plaintiff's interactions with the Court. The Findings of

Fact contained therein are significant because they reveal similar conduct on the part of the

plaintiff within the Minnesota courts. Specifically, the Court found that

> 10. Ms. Burns will not accept a judge's order as a final disposition. She regularly
> resubmits the same motions over and over, despite repeated unfavorable rulings. **She
> also resubmits some motions to different judges who are not assigned to the case.
> It is common for Ms. Burns to go from judge to judge and floor to floor in the
> Government Center attempting to find any judge to sign or hear her "motions."**
>
> 14. **Ms. Burns' frequently engages in "splitting" by attempting to have one judge
> sign an order that another has just denied and misrepresenting to one judge what
> another judge allegedly told Ms. Burns.** Id, (emphasis added.)

The plaintiff also has a history of engaging in similar conduct in the present case.

Specifically, in addition to her present motion to recuse Judge Chatigny, the plaintiff has, on

three separate occasions,[26] moved for the disqualification of Magistrate Martinez based upon an

allegation of bias. In the course of filing her recusal motion dated April 21, 2003, the plaintiff,

by her own admission, directly contacted the acting Chief Judge (Covello, J.) in an attempt to

disqualify Magistrate Martinez, and went so far as to suggest that Judge Covello had both

authorized and, appeared to support disqualification.

---

[26] The plaintiff filed her first Motion for Disqualification of Magistrate Martinez on or about October 10, 2002.
On October 25, 2002, Judge Chatigny denied the motion on the grounds that the plaintiff "…has shown no reason
to question Magistrate Judge's impartiality."[26] On or about April 21, 2003, the plaintiff filed a second Motion for
Disqualification of Magistrate Martinez. On August 28, 2003, the Court denied the plaintiff's second Motion for
Disqualification. The plaintiff filed her third Motion to Disqualify Magistrate Martinez on or about October 11,
2004. On November 24, 2004, the Court denied the plaintiff's third disqualification motion, noting that "the
plaintiff's allegations concerning bias on the part of the Magistrate Judge are unjustified."

As has been demonstrated, the plaintiff has an extensive history of making unsupported and conclusory allegations of bias or misconduct against judges who are guilty of nothing more than ruling against her.  If any party could ever by accurately described as a "serial judge-shopper", it would be this plaintiff.

It is improper for a party to use a recusal motion as a strategic device to judge shop. Lamborn.  Moreover, in determining the merits of a party's affidavit in support of recusal, the court is not precluded from "putting the facts alleged into their proper context and examining the surrounding circumstances."  Rosen, supra.  As such, the Court here is not be precluded from considering the plaintiff's present motion within the context of her history of making such allegations against judges who have ruled against her.  The defendant therefore objects to the plaintiff's motion to recuse on the grounds that she has used it as a strategic device for the purpose of judge shopping.

**D.  The plaintiff's attempt to assert the seventh amendment has no merit and adds nothing to her motion to recuse**

In the final paragraph of her affidavit, the plaintiff asserts that "I make this affidavit in good faith, to raise for review the due process violations that have occurred in this case and have accrued to me, as a consequence of the actions of a United States District Court judge that are an abuse of discretion and the judicial process and which, in this case, have operated to deprive me of my Seventh Amendment right to a trial by a civil jury…" (Recusal Motion ¶ 27). The plaintiff asserts that her due process rights were violated as a result of the Court's decision to permit the testimony of a witness, Valerie Carbone, out of the presence of the jury.  Id.

24

However, as was mentioned above, Valerie Carbone was a witness for the defense, and not for the plaintiff. Her testimony therefore added nothing to the plaintiff's case-in-chief, and therefore was irrelevant to the Court's decision to enter judgment in favor of the defendant, after the plaintiff had rested her case.

In the event that the plaintiff is actually attempting to assert that the Court's decision to grant judgment in favor of the defendant somehow impugned her rights under the Seventh Amendment, the defendant notes that it is well settled that a trial court can grant judgment under FRCP 50 "without offense to the Seventh Amendment." Weisgram v. Marley Co., 528 U.S. 400 (2000). In other words, the seventh amendment is not an issue where "one of the parties is entitled to judgment as a matter of law." Christensen v. Ward, 916 F.2d 1462, 1466 (10th Cir.). Moreover, a party's contention that the district court abridged the Seventh Amendment when it entered the judgment as a matter of law "lacks merit." Fineman v. Armstrong World Indus., 980 F.2d 171, 184 (3d Cir. 1992).

The plaintiff has failed to assert a valid seventh amendment due process claim. Moreover, even if her assertion were valid, it would be of no relevance to her present motion to recuse, since it is not evidence of extrajudicial bias on the part of Judge Chatigny.

## CONCLUSION

The defendant objects to the plaintiff's motion to recuse on the grounds that it is untimely and insufficient as a matter of law for the purposes of 28 U.S.C. § 144 and 28 U.S.C. 455 (a)(b). Moreover, the defendant objects to the plaintiff's motion to recuse on the grounds that the plaintiff has a history of filing such motions as a strategic device to judge shop.

Finally, the defendant objects on the grounds that the plaintiff's attempt to assert bias on the basis of an alleged Seventh Amendment due process violation is both without merit and irrelevant to her motion to recuse.

In consideration of the foregoing, the defendant respectfully requests that the Court deny the plaintiff's motion to recuse Judge Chatigny.

DEFENDANT,
DAVID S. KING,

By:

Sean Nourie
Fed. No. ct26205
Matthew G. Conway
Fed. No. ct09612
Conway & Stoughton, LLP
201 Ann Street
Hartford, CT 06103
(860) 525-5529
fax (860) 525-1191

## CERTIFICATION

This is to hereby certify that a copy of the foregoing has been mailed, postage prepaid on this 2nd day of March 2005, to the following pro se party:

Barbara R. Burns
980 Main Street
Hackensack, NJ 07601

Sean M. Nourie