**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| Barbara R. Burns | : | CIVIL ACTION |
|     Plaintiff-appellant | : | |
| | : | NO: 302CV 00897(RNC) |
| V. | : | |
| | : | |
| David S. King | : | August 1, 2005 |
|     Defendant-appellee | : | |

## <u>DEFENDANT-APPELLEE'S OBJECTION TO PLAINTIFF-APPELLANT'S MOTION TO SUPPLEMENT RECORD ON APPEAL</u>

The defendant-appellee herein objects to the plaintiff-appellant's Motion to Supplement Record on Appeal ("Motion to Supplement") filed on or about July 11, 2005, on the grounds that the document which the plaintiff-appellant seeks to add to the record, namely the June 10, 2005, Letter of Susan G. McKinney, was issued approximately five months after trial and is therefore wholly irrelevant to the plaintiff-appellant's appeal. The defendant-appellee further objects on the grounds that the plaintiff-appellant's motion contains countless distortions and outright misrepresentations of the record before the court.

The plaintiff-appellant has also inserted within her present motion numerous arguments[1] that are already before the court via the plaintiff-appellant's motion for recusal. The defendant-appellee addressed these assertions at length in his Objection to Motion for Recusal.

---

[1] For instance, the plaintiff-appellant puzzlingly observes that Judge Chatigny, by permitting the testimony of <u>defense witness</u> Valarie Carbone out of the presence of the jury, and by dismissing the plaintiff-appellant's case, was "thereby usurping and violating the sanctity of the jury room." (Motion to Supplement at 2).

## I.     <u>RELEVANT PROCEDURAL HISTORY</u>

Jury selection in this matter began on January 11, 2005.  The sole issue raised at trial involved a question of whether the defendant-appellee, on May 24, 2000, defamed the plaintiff-appellant by representing to the University of Minnesota that she was not in good standing.  At trial, the plaintiff-appellant was afforded ample opportunity to offer evidence with which to satisfy the prima facie case for defamation.  The plaintiff-appellant concluded her case-in-chief on January 14, 2005.  At that time, the defendant-appellee moved for judgment as a matter of law pursuant to FRCP 50(a), asserting that the plaintiff-appellant had failed to make a prima facie case for defamation.  On January 14, 2005, the Court (Chatigny, J.), ruled from the bench granting judgment in favor of the defendant-appellee.  Judgment was entered in favor of the defendant-appellee on January 18, 2005.

On January 18, 2005, pursuant to an express agreement between the parties which the court had encouraged during trial, the defendant-appellee issued a letter of clarification ("King Correspondence") to the University of Minnesota.  The plaintiff-appellant filed her Notice of Appeal on February 14, 2005.  She filed her exhibits on appeal on or about March 2, 2005.

On June 7, 2005, nearly five months after the entry of judgment in favor of the defendant-appellee, Susan McKinney of the University of Minnesota issued a letter to Barbara Burns McKinney Correspondence") which reads, *in toto*, as follows:

"Dear Ms. Burns:

You have requested removal from your University of Minnesota Law School file of a letter dated January 18, 2005, from David S. King from Quinnipiac University.

The January 18, 2005, letter will be removed from your Law School file and destroyed, with no copies retained by the Law School."

On July 11, 2005, the plaintiff-appellant filed her motion to supplement record on appeal by adding the McKinney Correspondence, asserting triumphantly that its issuance amounted to the "strongest rejection of the Defendant-appellee's 'substantial truth' defense that the law allows." (Motion to Supplement at 4). The defendant-appellee objects to the plaintiff-appellant's motion to supplement the record on appeal by adding the McKinney Correspondence.

## II.    LEGAL AUTHORITY & ANALYSIS

### A.    The Record on Appeal

Pursuant to Federal Rules of Appellate Procedure ("FRAP") § 10, the record on appeal is comprised of : (1) the original papers and exhibits filed with the court; (2) the transcript of proceedings, if any, and; (3) a certified copy of the docket entries prepared by the district court.

### B.    Correction or Modification of the Record

Generally, documents filed in the district court by a party after the entry of judgment are not part of the record. See, U.S. v. Murdock, No. 03-1811 (6th Cir. 02/15/2005). However, the FRAP rules do provide for a correction or modification of the record under very specific and

limited circumstances.  Particularly, FRAP 10(e) provides for the correction or modification of the record:

> (1) If any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly.
>
> (2) If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded:
>
> (A) on stipulation of the parties;
>
> (B) by the district court before or after the record has been forwarded; or
>
> (C) by the court of appeals.
>
> (3) All other questions as to the form and content of the record must be presented to the court of appeals.  United States v. Zichettello, 208 F.3d 72 (2nd Cir. 03/30/2000).

**C.    The post-trial McKinney Letter is irrelevant to the plaintiff-appellant's appeal and does not belong on the record on appeal**

As will be shown, the plaintiff-appellant has no valid legal basis for the inclusion of the McKinney letter in the record on appeal.  In her motion to supplement, the plaintiff-appellant attempts to circumvent this unhappy reality by adopting a strategy of distortion and deception regarding the record before the court.  After demonstrating the legal deficiency of the plaintiff-appellant's motion, the defendant-appellee will respond to the plaintiff-appellant's latest misrepresentations.

1.      **The plaintiff-appellant's motion to supplement the record with a post-trial document is not authorized under applicable FRAP rules.**

As is addressed below, the plaintiff-appellant's present motion is premised on an outright embellishment of the contents significance of the McMinney letter. Realistically, however, the level of 'creative license' and/or wishful thinking utilized by the plaintiff-appellant in interpreting the McKinney letter is irrelevant to her present motion. Even if the letter did contain the message that the plaintiff-appellant would like it to contain, it would still have no bearing upon the present appeal, because it was issued *after* the trial and does not qualify for any of the limited exceptions which would permit its addition to the record. As was explained above, documents filed in the district court by a party after the entry of judgment are not part of the record. Murdock, supra. A party may move for correction or modification of the record under very limited circumstances provided for under FRAP 10(e).

FRAP 10(e)(1) provides for the correction or modification of the record in cases where a difference has arisen after trial regarding "what occurred in the district court." Likewise, FRAP 10(e)(2) provides for correction or modification of the record "if anything material to either party is omitted from or misstated on the record."

Here, it is rather obvious that neither of the conditions provided for under FRAP 10(e) has been satisfied. Specifically, the McKinney letter is not admissible under FRAP 10(e)(1), because it does nothing to resolve a difference regarding what "*occurred during trial*."[2] In fact, as is explained in detail below, the McKinney letter cannot be added to the record under FRAP

---

[2] The defendant-appellee certainly does not dispute that there exist differences between the parties as to what did occur during trial. However, any and all such differences can be readily resolved by reference to the existing record.

10(e)(1) because it pertains solely to post-trial events, namely, the University of Minnesota's

verification that it had destroyed a letter which the defendant-appellee had issued to the

University of Minnesota *after trial*.  Similarly, the plaintiff-appellant can find no valid

justification under FRAP 10(b)(2), since she has not alleged that "anything material to either

party" has been omitted from or misstated on the record.  Moreover, even if she had made such

an allegation, the McKinney letter cannot in any way be read to rectify such an omission or

misstatement, since, once again, it pertains solely to post-trial matters.

**2.    The plaintiff-appellant has misrepresented the contents and significance of the McKinney letter.**

It is important to note that the McKinney letter is actually comprised of nothing more

than a generic two-sentence confirmation that the University has granted her request to

expunge David King's letter of January 18, 2005 from her file.  The letter plainly says <u>nothing</u>

more than that; however, according to Barbara Burns, it amounts to nothing less than a

"certification" by Susan McKinney, whom the plaintiff-appellant has anointed as the

"quintessential reasonable juror," that "*conclusively* establishes as erroneous both the

Defendant-appellee's 'substantial truth' defense and the trial court's usurpation of the fact-

finding function.  This *compels* a conclusion that McKinney's findings are relevant and

necessary to any informed and credible disposition of the issues of the perception of Plaintiff-

appellant's reputation within the Minnesota Community identified by the trail court as the

relevant community…" (Motion to Supplement at 5, emphasis added).

Thus, in the eyes of Barbara Burns, Susan McKinney, as "Data Practices Officer and Responsible Authority," "the Quintessential Reasonable Juror" and as "a respected member and officer of the University of Minnesota community," is empowered with a sort of super-judicial appellate authority through which she can restore the "fact-finding" function which the Court "usurped" from the jury and to adjudge the merits of the plaintiff-appellant's defamation claim against the defendant-appellee. Clearly, the plaintiff-appellant's aggrandizement of Susan McKinney's function finds no basis in the law or reality.

In short, the plaintiff-appellant has only arrived at her conclusion regarding the relevance of the McKinney letter by grossly mischaracterizing the contents of the letter and by placing McKinney herself on an absurd pedestal.

3.  **The plaintiff-appellant has also misrepresented what actually occurred before and during trial.**

The plaintiff-appellant's use of creative license and wishful thinking is hardly limited to her treatment of the McKinney letter. Specifically, she asserts that the McKinney letter belongs on the record because:

> As the trial judge noted in his transcripted order of dismissal, the administrative hearing convened by the University of Minnesota…were [sic] ongoing at the time of trial. The trial judge further acknowledged that the administrative challenge was directly relevant to the merits of the case at bar and, at the conclusion of his transcripted dismissal order, directed the Defendant to rectify the substantially false impression that the Defendant created by his statement that Plaintiff was not in good standing by the standard observed by the Minnesota Law School and Quinnipiac University between 2000 and the present.

(Motion to Supplement at 2).

The plaintiff-appellant further asserts in her motion that the "trial judge himself declared the administrative proceedings, concluded by McKinney in the Plaintiff's favor, to be relevant to the point of instructing the Defendant to issue a written statement to the University of Minnesota…" (Motion to Supplement at 4).

Although her precise argument is difficult to decipher, the plaintiff-appellant appears to be asserting here that the McKinney letter is should be part of the record because related somehow to the resolution of a direct order issued by the Court. Underlying this fanciful assertion is a series of interwoven fabrications of the record, each of which the defendant-appellee addresses separately below.

      **a.     The Court did not, as the plaintiff-appellant asserts, acknowledge that the plaintiff-appellant's administrative challenge was "directly relevant to the merits of the case at bar."**

The plaintiff-appellant's assertion that the Court somehow acknowledged that the plaintiff-appellant's administrative challenge was "directly relevant to the merits of the case at bar" is an utter fabrication of the record before the court. Unsurprisingly, the plaintiff-appellant makes this assertion without providing a single citation to the trial transcripts. One need only review the transcripts themselves to conclude that none of the Court's actual statements can even remotely be taken to support plaintiff-appellant's assertion. Rather, the Court, in elaborating its rationale for dismissing the plaintiff-appellant's claim, made passing reference[3] to a pending hearing.

---

[3] The Court: "As to the delay in her career progress marked by the university's refusal to continue to look at her transfer application, I think that the plaintiff's testimony alone is insufficient as a matter of law to permit a

**b.    The Court could not, and did not, order or direct the defendant-appellee to issue the letter of clarification**

The plaintiff-appellant also wrongfully infers that the remedy of injunctive relief was available to her at the time of trial.  In fact, the plaintiff-appellant never properly asserted or preserved such a claim.  Thus, while it was entirely within the Court's power to suggest or recommend that the defendant-appellee issue a letter of clarification to the University Minnesota, it had expressly informed the plaintiff-appellant[4] that, at the time of the telephonic conference of 12/09/2004, that it did not "see the prospect for injunctive relief."  Thus, the plaintiff-appellant's assertion that the Court 'ordered' the defendant-appellee to issue the letter of clarification despite the Court's express disclaimer is frivolous.

Indeed, had the Court issued such an order or directive, compelling the defendant-appellee to issue the letter of clarification, and had the defendant-appellee failed to comply with

---

reasonable finding that the statement has caused her harm.  I think a reasonable jury would be bound to speculate about the effect the defendant's statement had.

It may be, and I'm willing to assume that in fact the university did cease considering her transfer application pending some further investigation or clarification of her situation as is apparently underway now.  The plaintiff has asked for a hearing, they have told her she will get a hearing, and perhaps that hearing won't be necessary if indeed the letter of clarification goes out, as I believe it should, and as I trust it will."  Emphasis added.  Transcript at 469-70.

[4] Court:  "One point that we did not discuss the other night but I meant to mention then and I will mention now, is that as I read the plaintiff's deposition.  There seems to be some interest, in fact strong interest, on her part in getting injunctive relief.  While I don't remember the testimony word for word, I recall being struck by a statement to the effect that "that's what the case is really about."  And I wanted to be clear, there is no possibility under the law of obtaining injunctive relief in this case against anybody except Mr. King because he's the only party.  And injunctive relief would be available as to him only if the requirements of injunctive relief were met.

And I won't say more except to say that this case does not appear to me to be a vehicle for obtaining injunctive relief against Mr. King.  If he were continuing to say to third parties that the plaintiff was not in good standing and it was necessary to order him to stop doing that, then you could see why an injunction might be appropriate.  But this is something that happened and years have passed and here we are.

So I just want it to be clear that I don't presently see any prospect for the plaintiff getting injunctive relief."  Telephonic Conference Transcript, 12/09/04 at 4-5.

said order, then the plaintiff-appellant's recourse would be with the trial court, which would

presumably have the power to sanction the defendant-appellee for his alleged failure to comply

with the court order.  While it is of little use here to elaborate  the hypothetical logistical details

involved in the enforcement of such a hypothetical order, what should be abundantly clear is

that the  Second Circuit Court of Appeals would play no role in such enforcement.  In fact, the

issue would not properly be before the Court of Appeals because the defendant-appellee never

appealed the alleged order.

> **c.     The plaintiff-appellant's characterization of King's post trial correspondence as "unauthorized" is a blatant misrepresentation of the record before the court.**

The plaintiff-appellant repeats the same misrepresentation which she has made in her

previous post-trial motions regarding her own testimony at trial.  Specifically, she falsely

asserts that the defendant-appellee issued his January 18, 2005, post-trial correspondence to the

University of Minnesota "without authorization of the plaintiff."  This representation is directly

contradicted by the plaintiff-appellant's own trial testimony.  Specifically, the plaintiff-

appellant, during direct examination of herself as a witness during trial, expressly stated that

she would feel "vindicated" if the defendant-appellee would issue a letter of clarification to the

University of Minnesota which expressly stated that  was in good academic standing with

Quinnipiac University and that she had not engaged in any sort of misconduct.[5]

---

[5] BY MS. BURNS:
Q.  The next question is:  Would a statement by the defendant confirming that there was no misconduct and clarifying that plaintiff's academic performance was satisfactory as he testified, would that correct the University of Minnesota's misunderstanding that is the present basis for an ongoing review?

Subsequently, and immediately prior to hearing argument on the defendant-appellee's motion for judgment as a matter of law, the Court asked defense counsel if the defendant-appellee recalled testifying " that if at any time somebody had asked him to inform the University of Minnesota what he meant by 'good standing,' namely to clarify it would refer to financial indebtedness, nothing else…" (January 14, 2005 - Transcript at 463-4).  Defense counsel and the defendant-appellee confirmed that the defendant-appellee had so testified.  Id.  In fact, the defendant-appellee, Mr. King, specifically stated, "[c]ertainly, Your Honor.  As I said in my original letter to Dean Sullivan, if he had any questions, please call.  I am happy to clarify this situation."  (January 14, 2005 – Trial Transcript Excerpt at 3).  Following this exchange, the Court inquired,  "we agree that that [the defendant-appellee's issuance of a letter of clarification] will be done?"  To this, the plaintiff-appellant replied "**[t]hank you, Your Honor.  That means a lot to me**."  (January 14, 2005 - Trial Transcript  at 464, emphasis added).

Thus, the plaintiff-appellant's assertion that the letter was not authorized is directly belied by her own statements before the trial court.  The defendant-appellee objects to the plaintiff-appellant's systematic distortions of the record.

**CONCLUSION**

As has been shown, the plaintiff-appellant has no valid legal basis for the addition of the McKinney letter to the record on appeal.  Moreover, the plaintiff-appellant's attempt to justify

---

A.   And the answer is:  Yes, it absolutely would.
Q.   The next question is:  Would you feel vindicated if the defendant provided this clarification as he said in his testimony that he would do upon the plaintiff's request?
A.   And the answer is:  Yes, I would feel vindicated.

the inclusion of the McKinney Letter is based upon a series of interwoven distortions and

outright fabrications of the record before the court.

      For the foregoing reasons, the defendant-appellee respectfully requests that the court

sustain its objection to the plaintiff-appellant's motion to supplement.


                         DEFENDANT-APPELLEE,
                         DAVID S. KING,


By:      _____
          Sean Nourie
          Fed. No. ct26205
          Matthew G. Conway
          Fed. No. ct09612
          Conway & Stoughton, LLP
          201 Ann Street
          Hartford, CT 06103
          (860) 525-5529
          fax (860) 525-1191


## CERTIFICATION

      This is to hereby certify that a copy of the foregoing has been mailed, postage prepaid on this 1st day of August 2005, to the following pro se party:

Barbara R. Burns
980 Main Street
Hackensack, NJ 07601


                    _____
                       Sean M. Nourie