UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT



FILED

2005 AUG 19 A 11: 54

U.S. DISTRICT COURT
HARTFORD, CT.

Barbara R. Burns,

    Plaintiff/Appellant      CASE NO. 02-CV-897 (RNC)

v.

David S. King,

    Defendant/Appellee

---

**APPELLANT'S REPLY-MEMORANDUM AND MOTION
TO STRIKE AND TO SEAL APPELLEE'S AUGUST 1, 2005 MEMORANDUM
IN OPPOSITION AND APPELLEE'S EXHIBIT 37**

As provided and authorized by FRAP 10 and as otherwise provided by the Federal Rules of Civil Procedure, Plaintiff/Appellant Barbara R. Burns ("Appellant") hereby moves to strike Defendant/Appellee David King's ("Appellee") purported Memorandum in Opposition to Appellant's Motion to Supplement Record dated August 1, 2005; and to strike and to seal Defendant/Appellee's Exhibit 37, consisting of an unauthorized [1] January 16, 2004 memorandum, including exhibits, by Kevin S. Burke.

Appellant moves to strike Appellee's August 1, 2005 oppositional memorandum on the basis that the memorandum consists mainly of an *ad hominiem* attack upon Appellant and Susan G. McKinney, Data Practices Officer, University of Minnesota; and what little legal argument that is made is not relevant to a Motion to Supplement, which requires only that the moving party make some showing that the supplemental materials have

---

[1] As set forth in Plaintiff's First Motion in Limine and at trial, Burke was validly disqualified under MRCP 63.03, a Minnesota court rule that authorizes preemptory disqualification; the disqualification was upheld by the Minnesota appellate court.

1

been adjudged relevant by the district court and would, in some way, facilitate appellate review. Appellant further notes that the oppositional memorandum and other filings by defense counsel Sean Nouri—earlier declared by lead counsel Matthew Conway as too inexperienced and not competent to represent the Appellee in trial below[2] and who, consequently, did not participate in, and has no first-hand knowledge of, pertinent trial court proceedings—contains countless distortions and outright misrepresentations of the record that is before the appellate court.

Appellant moves to strike Appellee's Exhibit 37, consisting of a January 16, 2004 memorandum by Kevin S. Burke, to which an April 2, 1997 memorandum by Daniel Mabley was appended, on the basis that the January 16, 2004 Burke memorandum, inclusive of exhibits specified by Burke, has been superseded and sealed by order Judge Jack Nordby of the Fourth Judicial District of Minnesota, as set forth with specificity *infra*.

Finally, Appellant duly notes that, in consideration of Appellant's Affidavit of Prejudice [3], noticed at trial on January 13, 2005 and filed on or about January 18, 2005, together

---

[2] Appellant notes with interest that the oppositional memorandum, which alleges, without foundation, that Appellant has misrepresented certain pre-trial and trial proceedings in this court, as well as the June 10, 2005 Data Practices certification of Susan G. McKinney, which speaks for itself, is the same second-year associate that lead counsel Conway represented, in writing, to the court in December 2004 as too inexperienced and not competent to represent the Defendant/Appellee at trial in this court, necessitating an indefinite adjournment to accommodate attorney Conway's litigation schedule.

[3] As just **one** illustration of the misstatements and mischaracterizations by attorney Nouri to which Appellant refers in the opening paragraph of Appellant's instant Motion to Strike, Nouri claims that Appellant filed a "Motion for Recusal" to which Appellee filed a Memorandum in Opposition. Nouri further claims by implication that Appellee's Memorandum in Opposition to what Nouri mischaracterizes as a "Motion for Recusal", which Appellee did not file until *after* appeal was taken on February 12, 2005, is part of the record before the Second Circuit on appeal. This is an outright misrepresentation. First, Appellant did not ever file a "Motion for Recusal." Rather, Appellant filed an Affidavit of Prejudice together with the requisite Motion for New Trial on January 18, 2005. As noted, Appellee did not respond in any manner to Appellant's Affidavit of Prejudice until after appeal was taken, and the trial court divested, on February 12, 2005. Since the record on appeal cannot include filings that are made after appeal has been taken, Appellee's self-styled "Memorandum in Opposition" to Appellants alleged "Motion for Recusal" is not part of the record on appeal, and is also not relevant to a Motion to Supplement the appellate record on appeal.

2

with Appellant's Motion for New Trial, the trial judge, a chief judge, is required by the federal judicial disqualification statute to yield to the next most senior member of the United States District Court for the District of Connecticut, which appears to be United States District Court Judge Janet Bond Atherton. Accordingly, Appellant herewith serves a courtesy copy of this motion and memorandum upon Judge Atherton.

## RELEVANT PROCEDURAL HISTORY

On February 12, 2005, Appellant took appeal from the January 14, 2005 transcripted order of the United States District Court for the District of Connecticut. On or about February 24, 2005, Appellant filed a Designation of Appellate Record, specifying separate appendices.

As noted by Appellant, Appellee was required to file a cross-designation of appellate record within 15 days of the filing of Appellant's designation, which occurred on February 24, 2005, and did not do so. Appellant duly objected to an untimely designation of Appellate Record by Appellee and also advised the district court that certain of Appellee's Exhibits, including Exhibit 37, had been superseded. The district court authorized Appellant to file a motion to supplement and/or modify the record.

In mid-June, Appellant moved for supplementation of the trial court record to include the June 10, 2005 Certification of Susan G. McKinney, Data Practices Officer, University of Minnesota, on or about June 18, 2005. Appellant then timely filed Appellant's Brief and Appendix, including the June 10, 2005 Certification of Susan G. McKinney, on July 11, 2005 in accordance with the briefing order issued by the United States Court of Appeals for the Second Circuit.

On August 1, 2005, Appellee late-filed what Appellee represents as a valid oppositional memorandum to Appellant's authorized [4] Motion to Supplement and/or Modify the Record on Appeal. In actuality, and as set forth *supra* and *infra*, Appellee's oppositional memorandum—consisting of much sentimental embellishment and *ad hominiem* attack and no constructive legal argument that supplementation would not facilitate and enhance appellate review and the interests of justice, which is the showing that is required to defeat Appellant's motion to supplement—is a rather bizarre conglomeration of untruth, knowing and/or unknowing misrepresentation [5], and unsupported opinion. Much of its commentary, including *ad hominiem* attack and speculation as to Appellant's motive for introducing the McKinney certification and McKinney's authority to make findings as to accuracy and completeness of data, is also irrelevant and has no bearing upon the merits of Appellant's proper and authorized motion to supplement and/or modify the appellate record, which is the only issue that Appellant placed before this court.

This motion to strike and to seal Appellee's Exhibit 37 follows.

## OPERATIVE FACTS

On May 24, 2000, Connecticut Attorney Earle Giovaniello, on behalf of Appellant, filed this action, asserting diversity jurisdiction and compensable claims of, *inter alia*, contract breach, tortuous interference with prospective economic advantage, and

---

[4] Appellant notified the trial court of the necessity of a motion to supplement and/or modify the appellate record pursuant to FRAP 10 in early June 2005. The district court directed Appellant to file the motion, stating that the court would act upon it.

[5] As just one of many possible examples, Appellee attorney Nouri, seconding lead attorney Conway, represents that Appellee King did not violate the Family Educational Rights and Privacy Act (FERPA). In fact, as King himself admitted in deposition, King withheld academic records that King admitted that he knew that Appellant requested in writing in mid-2000 for more than 45 days after the request was receive-stamped by King's office. Furthermore, King did so for more than two years, until defense counsel Conway produced the records in discovery in November 2002.

defamation. The original Complaint, construed by the trial court as a pro se action, has never been amended.

Throughout the course of the proceedings, Appellee—clearly unable to defend on the merits—filed not fewer than three motions to dismiss off the merits. All were denied.

On or about May 19, 2004, Appellee moved for summary judgment. On September 29, 2004, the court denied Appellee's motion for summary judgment and ordered the case to proceed to trial. At this same time, the trial judge upheld Appellant's designation of Minnesota law, thereby overruling Appellee's designation of Connecticut law; and further held that Appellant could not sue the Appellee, an employee of Quinnipiac University, for breach of contract.

On December 6, 2004, after moving the trial court to strike Appellant's proffer of certain documents created by Quinnipiac Dean Neil Cogan and maintained by Quinnipiac University, Appellee's employer on the stated basis that Appellant did not produce the same to Appellee in accordance with this court's December 2002 scheduling order, defense counsel Conway filed what Appellee has designated as Exhibit 37, consisting of a January 16, 2004 memorandum by a peremptorily-removed Minnesota trial court judge, Kevin S. Burke. Prior to December 6, 2004, Conway gave no indication and made no disclosure that Appellee intended to rely upon the Burke memorandum, as the court's scheduling order, strictly enforced against the pro se Plaintiff, required.

Duly noting that the Burke memorandum was unauthorized and invalid under Minnesota law and court rules [6], which controlled, and that the Burke memorandum was

---

[6] See, e.g., *McClelland v. Pierce*, 376 N.W. 2d 876 (Minn) 1986; see also, *Citizens State Bank v. Wallace*, 477 N.W. 2d 741 (Minn. App) 1991, stating that any exercise of judicial power by a Minnesota trial judge subsequent to a Notice of Removal filed in substantial conformity with MRCP 63.03 is "without authority."

5

not created until almost five years after the events giving rise to this litigation occurred and was clearly irrelevant to defamatory statements published by King in 2000, Appellant duly moved for a motion in limine, citing unfair prejudice, irrelevance, and unfair surprise. The trial judge, in a biased manner, took no action on the motion in limine and permitted Appellee to introduce evidence that Appellee, in violation of the scheduling order, had not disclosed to Appellant in discovery.

After denying a request by lead counsel Conway for an indefinite adjournment [7], the trial court conducted several pre-trial conferences between the dates of December 6, 2004 and January 9, 2005. At one of these conferences, the trial judge defined two factual issues that, by the court's determination, were properly decided by a civil jury: (1) whether there was a "financial good standing" policy, as Appellee claimed; and (2) whether Appellant met the criteria for "good standing" as defined by Quinnipiac University.

At trial on January 14, 2005, Appellee called as a witness Valerie Carbone, the Quinnipiac University Bursar. On cross-examination, Carbone, the deciding Quinnipiac official to whom the Appellee had repeatedly deferred as to all financial issues, testified that (1) the Quinnipiac University "good standing" policy applicable to Appellant at all relevant times did <u>not</u> include a financial component, thereby refuting the statements of King that it did; and (2) Appellee's assertion and that of Anne Traverso that Appellant was in default of a financial obligation in the amount of $3000 in November 1999 as a consequence of "late-billed" summer tuition "could not have happened", i.e., that the

---

Citing *Wallace*, the Minnesota appellate court upheld Barbara Burns' removal of Kevin Burke, declaring the removal to be "of right." *IN RE: Burns*, CX 95 141 (Minn App) 1995.

[7] Conway requested adjournment of the January 11, 2005 trial date, stating that his second-year associate, Sean Nouri, was too inexperienced and not competent to represent Appellee King.

Quinnipiac computer system would not permit "late billing" and that "late billing" was "impossible", thereby refuting the testimony of the Appellee and Anne Traverso, who testified that a "late-billed" summer tuition charge caused Appellant's Quinnipiac student account to become delinquent in September 1999. Transcript, January 14, 2005, Cross-Examination of Valerie Carbone.

In a biased manner, the trial judge excluded Carbone's testimony, which conclusively discredited Appellee's "financial good standing" defense and proved Appellant's case, from the hearing of the jury. *It must further be, and is, expressly noted that Carbone was the only witness that the trial judge would not permit the jury to hear.*

Shortly thereafter, the trial judge took the case from the jury, thereby invading the sanctity of the jury room, usurping the jury's fact-finding function as to which witnesses it chose to believe, and depriving Appellant of her Seventh Amendment right to a civil jury. The trial judge then disclaimed jurisdiction on grounds that he himself had previously rejected on September 30, 2004, and dismissed the case.

On or about January 18, 2005, Appellant filed the requisite motion for new trial, together with an Affidavit of Prejudice. At approximately this same time, the Appellee, David King, republished a statement substantially similar, if not identical, to his May 24, 2000 defamatory statement regarding Appellant to University of Minnesota Dean Alex M. Johnson. Appellee did so without Appellant's consent.[8]

---

[8] Defense counsel Nouri, who shares the Appellee's and lead counsel Conway's propensity to misrepresent facts unfavorable to King, stated that Appellant authorized King to communicate the statement ordered by the trial judge to Johnson. Nothing could be further from the truth. In truth, Appellant emailed Conway on January 14, 2005, stating that any statement should be written by King and transmitted, through Conway, to Appellant. Appellant further stated in the same January 14, 2005 email, a copy of which was filed in the district court before appeal was taken and which is thus part of the record on appeal, that Appellant did not trust King and would never authorize King to speak or write to any third party regarding Appellant.

7

In late January, Appellant duly notified the trial court that King's "remedial" communication was as harmful, if not more harmful than the original May 24, 2000 communication on which Appellant had sued. Appellant duly noted that the trial court was clearly biased. The trial court took no action regarding King's January 18, 2005 defamatory publication. Appellant appealed. [9]

On January 25, 2005, Appellant administratively challenged King's January 18, 2005 statement to Johnson, as well as King's May 24, 2000 defamatory communication to Thomas Sullivan, Johnson's predecessor, under the Minnesota Government Data Practices Act (MGDPA), Minn. Stat. 13.04, et seq., which includes the University of Minnesota. On June 10, 2005, Susan G. McKinney, Data Practices Officer and the MGDPA "responsible authority" [10] ruled and certified the King statements as "inaccurate" and "incomplete" within the meaning of Minn. Stat. 13.04(04), thereby entitling Appellant to remedial action by the University. By findings published on June 10, 2005 in accordance with Minn. Stat. 13.04(4), McKinney ordered the most drastic remedial action permitted under the MGDPA: excision of the offending King documents from Appellant's University of Minnesota Law School file, destruction, and third-party notification to Admissions Office personnel and others that the King statements had been adjudged "inaccurate" and/or "incomplete."

---

[9] Consistent with the Fabian strategy of delay and obstruction to which he has adhered throughout the course of this litigation, Appellee, through counsel, attempted to claim that appellate jurisdiction had not transferred and that the trial court was not divested of Appellant's February 12, 2005 Notice of Appeal. The appellate court, which docketed the appeal and issued a briefing order on March 22, 2005, disagreed.

[10] Notwithstanding defense counsel Nouri's unfounded attack upon Susan McKinney and his attempts to undermine her authority to make findings and certifications regarding accuracy and completeness of challenged University records and data, McKinney derives her authority from a Minnesota legislative statute, Minn. Stat. 13.04(4), of which the United States District Court for the District of Connecticut, sitting in diversity, is required to take mandatory judicial notice.

At approximately this same time, the Minnesota appellate court found that the January 16, 2004 Burke memorandum, designated by Appellee as Exhibit 37, was premised upon a <u>default</u> judgment by Burke arising from two unauthorized proceedings on December 2 and December 8, 2003, following what the appellate court deemed a timely Notice of Removal filed on November 12, 2003 by Renee De Fina in substantial conformity with the Minnesota disqualification statute, MRCP 63.03, of which Appellant requested the trial court to take judicial notice at trial. The appellate court, citing New York, Connecticut, and Minnesota decisional authority, further held that, even if Burke had not been validly disqualified under MRCP 63.03, which he was, *a show-cause or other legal proceeding is subject to procedural due process requirements, including notice; and that the failure of a Minnesota trial court to notify a party of a proceeding, as the Hennepin County District Court failed to notify Appellant, Kevin Burns, and Renee DeFina of the "default" December 2, 2004 and December 8, 2004 proceedings convened by Burke, rendered any judgment arising from such a proceeding **void for want of due process**.* [11]

As Appellant duly noted before, during and after trial at bar, the January 16, 2004 Burke memorandum was declared invalid and without authority by Judge Michael Bertolson of the Second Judicial District, St. Paul, MN on July 22, 2004. On February 14, 2005, on Barbara Burns' motion, the Burke Memorandum, inclusive of exhibits, that comprises Appellee's Exhibit 37, was sealed by Judge Jack Nordby of the Fourth Judicial District, Minneapolis, Minnesota.

---

[11] Minnesota state courts, in common with federal courts, authorize writs of mandamus and prohibition, and expressly authorize writs of prohibition to enjoin abuses of judicial power, including, but not limited to, mistaken exercise by a trial judge validly disqualified. In accordance with the procedural rules set forth by the Minnesota Supreme Court in *Powell v. Anderson*, 660 N.W. 2d 107 (Minn) 2003, Barbara Burns duly moved for vacateur of the December 2 and December 8, 2004, citing the holding of the Minnesota Court of Appeals that Appellant could not be bound by them, and for a writ for prohibition against Burke.

In other collateral proceedings, Barbara Burns sued the County of Hennepin, including the Fourth Judicial District, in the United States District Court for the District of New Jersey, asserting federal claims arising under Title 42, Section 1983 of the United States Code and, *inter alia*, common-law defamation and abuse of process claims. By order filed April 12, 2005, Judge William H. Walls of the District of New Jersey denied County of Hennepin's Motion to Dismiss and upheld Barbara Burns' civil-rights and pendant state law claims. [12]

In mid-June, Appellant moved the trial court to supplement the appellate record with the June 10, 2005 certification of Susan McKinney. This Memorandum and Motion to Strike and to Seal Exhibit 37 follows in response to Appellee's August 1, 2005 Memorandum in Opposition.

## LEGAL AUTHORITIES

*Motion to Supplement or Modify the Record on Appeal*

The record on appeal is comprised of the filings of the parties; the transcripts of trial court proceedings; and the exhibits, if any. FRAP 10. Upon timely designation of the appellate record, parties and counsel may file separate or joint appendices. An appellate court may consider, on review for abuse of discretion, documents and other materials proffered by a party that the trial court has ruled as excluded. Id.

FRAP 10(d) and (e) expressly permit correction or modification of the record, including, but not limited to, supplementation, in cases where (1) there is a difference

---

[12] The County of Hennepin, after waiving personal service on January 10, 2005, moved for dismissal, or, alternatively, for transfer of venue. The New Jersey federal court denied the motion to dismiss, but granted the venue motion, transferring the case to Minnesota. Appellant, maintaining that venue was proper in New Jersey, filed a Writ for Mandamus, requesting the United States Court of Appeals for the Third Circuit to block the transfer. By order filed July 25, 2005, United States Magistrate Judge Janie S. Mayeron of the District of Minnesota denied Hennepin County's motion to enforce the transfer, and ruled that the Minnesota federal court would yield to the Third Circuit in Philadelphia.

about whether the record truly discloses what occurred in the district court; (2) if anything material to either party is omitted or misstated in the record by error or accident, (3) on stipulation of the parties, and/or by (4) order the district court or (5) the court of appeals. In Appellant's opening Motion to Supplement Record, Appellant cited 8th Circuit authority that permits supplementation of the record in cases where the trial court has determined that an ongoing collateral proceeding is relevant, but which has not been concluded as of the time appeal is taken. [13]

*Analysis and Discussion*

Here, as discussed *infra*, the trial court has correctly determined that a collateral administrative proceeding convened under the Minnesota Government Data Practices Act by the University of Minnesota, the recipient of the Appellee's May 24, 2000 defamatory publication and January 18, 2005 republication, was inter-related and directly relevant to the issue of Appellant's damages. The trial court further concluded that the true measure of Appellant's damages is whether a juror could find that King's statements damaged Appellant in the eyes of the University of Minnesota academic community. By this yardstick, the findings of Susan McKinney, which, as noted, were based in substantial part upon the Carbone testimony that the trial judge withheld from the jury, are highly relevant and unequivocally probative.

Specifically, the administrative proceeding convened by the University of Minnesota goes to the quality of the reputation that Appellant enjoyed, and enjoys, in the reference Minnesota community and, in particular, the perception of Appellant by the University of Minnesota, the academic community to which Appellant sought transfer

---

[13] In the 8th Circuit case cited by Appellant's Motion to Supplement Record, filed on July 13, 2005, the district court denied the motion to supplement and the appellate court reversed.

11

and the recipient of the defamatory King communication that is the basis for this litigation. Furthermore and as noted by Appellant, the determination of Susan McKinney, Data Practices Officer, was based, in substantial part, upon the trial testimony of Valerie Carbone that the trial judge withheld from the jury, and which Appellant raised as serious and prejudicial error on appeal. As Appellant argued to the appellate court, the McKinney certification, based, in substantial part, upon Susan McKinney's evaluation of the trial testimony of Valerie Carbone that the trial judge would not let the jury hear, refutes and disproves the trial judge's contention that "**no reasonable juror**" could find that Appellant was damaged by the Appellee's statement.

Appellant specifically brings to the court's attention the fact that—as the trial judge himself stated on the record—the litigation and trial process is "*supposed to be about the truth.*" Transcript, January 13, 2005 Trial Proceedings in Case No. 02-CV-897 (RNC). Here, in a good-faith quest for the truth, Appellant placed the defamatory publication before an authorized officer of the recipient community, the University of Minnesota. On June 10, 2005, the University of Minnesota, through its Data Practices Officer, Susan McKinney, ruled that the King communication was, as a matter of fact and law, defamatory and that Appellant was damaged by it, a resolution in Appellant's favor.

Consistent with the litigation strategy that Appellee has consistently pursued throughout this litigation, defense counsel—who cannot refute the substance of McKinney's findings—employ a range of dilatory legal maneuvers, including *ad hominiem* attack, to discredit the credibility of both Appellant and McKinney and to keep McKinney's certification, which speaks for itself, out of the record. The two

main themes argued by the Nouri memorandum are that (1) McKinney's findings are not binding upon this court, which they are; and/or (2) even if they are accurate and binding and enhance the appellate court's understanding of the Minnesota community's perception of Appellant, they discredit the Appellee and should therefore be arbitrarily kept out of the record on procedural grounds. [14] Neither argument has merit.

First, there is an irrebuttable, constitutionally-mandated presumption that a judgment that emanates from a proceeding convened under authority of a state statute by an expressly authorized official is valid and binding upon courts of other states. In this case, Susan McKinney, the designated Data Practices Officer and "responsible authority", was clearly authorized by operation of Minn. Stat. 13.04(4) to convene an administrative proceeding to evaluate the accuracy and completeness of King's statements to Sullivan and Johnson; to make findings; and to fashion an appropriate remedy within the parameters of the Minnesota Government Data Practices Act. The diversionary—and self-serving—*ad hominiem* attack and technical arguments made by defense counsel Nouri, including Nouri's implied disparagement of McKinney's credentials and fitness, is clearly insufficient to overcome McKinney's actual and apparent authority under Minn. Stat. 13.04(4) and the presumptive validity of her MGDPA findings and certification.

---

[14] Appellee used this same argument to keep out virtually all of Appellant's highly favorable academic records and references, as well as certifications by Neil Cogan, that King knew, or should have known, had been authenticated by the Quinnipiac Registrar. Appellant raised on appeal as serious and prejudicial error certain evidentiary rulings by the trial judge that effectively permitted the merits of the case to be sacrificed at the altar of technicality and reduced the parties, the court, and the jury to the role of pallbearer at a miscarriage of justice.

13

Appellee's argument that no post-trial matters may be raised on appeal and are not properly before the court on a motion to supplement the appellate record is equally misguided. Provided that they occur before appeal is taken, as in this case, certain post-trial matters, including, but not limited to, denial of injunctive relief or sanctions, are not only reviewable, but immediately and *independently* appealable as of right.

Here, after trial, *but before taking appeal*, Appellant duly raised the issue of King's January 18, 2005 defamatory republication in the trial court. Appellant also filed a timely motion for a new trial and for post-trial relief. Appellant expressly cited the January 18, 2005 King republication and the attendant necessity of both an injunctive and an administrative remedy, which, as the trial court itself acknowledged, was pending before and during trial, and immediately post-trial, but before appeal was taken on February 12, 2005. The McKinney certification, declared by the trial court to be inter-related and relevant and which clearly enhances the appellate court's understanding of the context of both money damages and equitable relief sought by Appellant, is therefore properly before the trial court under FRAP 1(e) (1)(2)(b).

*Motion to Strike and Seal Appellee's Exhibit 37*

A motion to strike affords a proper remedy for a pleading that is frivolous, scandalous, or otherwise without merit. A motion to strike is proper in the case of a pleading that is filed upon an improper motive and for an improper purpose or otherwise in violation of Rule 11.

A motion to seal an otherwise public court record is appropriate in cases where the court order or record is void or otherwise not binding upon the moving party, has no prospective future application, and places the moving party at risk of irreparable harm

14

that outweighs the interest of public access to the record. Trial courts have broad discretion to seal otherwise-public court records, including court orders and memoranda. The inherent authority of a Minnesota trial court to seal an otherwise public court record is undisputed and is expressly stated in Rule 9, "Records of the Judicial Branch", an addendum to the Minnesota Government Data Practices Act, Minn. Stat. 13.04, et seq.

Here, a Minnesota court, namely Judge Jack Nordby of the Fourth Judicial District of Minnesota, has sealed the January 14, 2004 Burke Memorandum and supporting documents that the Appellee has designated in this court as Appellee Exhibit 37. For texture, Appellant notes that the Minnesota court did so, on Appellant's motion, in response to an attempt by a Minnesota attorney, Christopher Renz [15], to unethically trade on it *in a manner **substantially similar, if not identical**, to the modus operandi utilized by Appellee and his attorneys, Sean Nouri and Matthew Conway.*

Specifically, Renz brought an action in the Hennepin County District Court in the Fourth Judicial District of Minnesota. Appellant, the named respondent, moved to dismiss. Renz, **who, like King, could not maintain the action on the merits**, resorted to *ad hominiem* attack, *ex parte* communication, and a plethora of dilatory procedural devices, including a claim that Renz had not received a copy of court papers that the docket confirmed Renz not only received, but acted upon by writing a response and filing it with the court prior to the hearing in which he asserted he had not been served.

---

[15] Renz was disciplined by the Minnesota Lawyers' Board of Professional Responsibility, which issued an admonition. On March 1, 2005, the court granted Appellant's Motion to Dismiss and awarded judgment to Appellant.