Rule 60 has historically been liberally construed by federal courts in furtherance of its remedial purpose and has been held to apply to obvious errors of law. Thus, equitable principles may be taken into consideration by a court in the exercise of its discretion under Rule 60 and relief may be granted for reasons other than those enumerated in Rule 60. *Newman v. Fjelstad*, 271 Minn. 514, 137 N.W. 2d 181 (1965).

Here, Plaintiff has clearly demonstrated entitlement to relief from operation of the January 14, 2005 judgment on ground of mistake, fraud, and on the basis that prior judgments upon which the January 14, 2005 judgment is based have been demonstrated as having been reversed or otherwise vacated and that it is no longer equitable that the January 14, 2005 judgment should have prospective application, as discussed *infra*.

### A. Mistake, inadvertence, surprise, and excusable neglect

The Facts section of this brief and the Certification of Barbara R. Burns sets forth more than adequate proof that district court clearly erred in its formulation of the premise upon which the January 14, 2005 judgment was based. Specifically, the trial court, by its own admission, credited hearsay writings consisting of uncertified memoranda recounting the dicta of a validly-disqualified Minnesota district court judge of questionable repute and motives, remote in time and contemporaneously considered and rejected throughout the historical period by two Minnesota trial courts and a Minnesota legal ethics tribunal headed by a Minnesota district court judge, and, consequently, unreliable and untrustworthy within the meaning of FRE 803. Among other obvious deficiencies, these hearsay writings contained allegations, formally

20

found by the Minnesota Court of Appeals to be unfounded and unproven, and encompassed events so remote in time and so irrelevant to the contract and tort claims at issue that they should not have been considered at all.[11]

In admitting and crediting the uncertified memoranda, the trial court committed at least three obvious legal errors:

1. The trial court inexplicably and inconsistently changed its theory as to who had the burden of proof on causation of Plaintiff's damages. Specifically, in its pre-trial rulings, the trial court, which, in a clear abuse of discretion, condoned the Defendant's "scorched earth" litigation tactics and permitted the Defendant to delve into the private lives of the Plaintiff and two non-parties, nevertheless appeared to correctly reason that the Defendant had the burden to prove that the Plaintiff's damages were the result of something other than the Defendant's actions. In its final judgment from the bench, however, the court inexplicably "flip-flopped" and clearly erred by assigning the burden to the Plaintiff, i.e., the court appeared to require the Plaintiff to show by evidence that was clear and convincing that the Plaintiff had a good reputation and, conversely, did not require the Defendant to prove that she had a bad one, a burden that the

---

[11] Assuming *arguendo* that Defendant argued it at trial, which he did not, the January 16, 2004 Burke "judgment" that Defendant raised on appeal was, as the Minnesota appellate court found, a <u>default</u> judgment of which the Hennepin County District Court, acting under the influence of Burke, did not notify Plaintiff and/or the other two parties, as required under Minn. R. 77.04 (stating that all court orders must be certified as mailed to all affected parties and counsel at the address specified on the Certificate of Representation and Parties by the Court Administrator). As a consequence of Burke's deliberate and intentional acts in circumvention of MRCP 77.04, the Plaintiff and the co-parties did not receive notice by the Court Administrator and did not appear at any proceedings convened by Burke in Case No. 03-17802. Had the Plaintiffs and the co-parties received notice, they would have appeared and, as was the case in the contested show-cause proceedings convened by Burke in December, 1994, would have won. Under Minnesota law, the failure to appear because of any reasonable ground is cause for relief. *Ken Mar Airpark, Inc. v. Toth Aircraft and Accessories Co.*, 12 F.R.D. 399 (W.D. Mo. 1952). See, also, Herr and Haydock, "Minnesota Practice; Civil Rights Annotated West 1998 § 60.13.

Defendant, who produced nothing more substantial than the Burke memorandum, did not carry.

2. The trial court improperly undertook to determine credibility in contravention of the decisional law of Minnesota and the 8th Federal Circuit, stating that a trial court or appellate court, in evaluating a motion for summary judgment or judgment as a matter of law may not undertake to determine credibility, but may determine only if there is an issue of fact to be tried. Here, the Plaintiff clearly prevailed as the first factual issue framed by the trial court as a jury question, i.e., whether "good standing" status at Quinnipiac University could be conditioned upon financial factors, by soliciting the testimony of the University Bursar, who stated it could not. The Plaintiff also elicited testimony from Carbone, the University Bursar, that, at the very least, created a genuine factual issue as to whether Plaintiff owed the balance claimed by the Defendant and whether Quinnipiac University had refused tender of $6,700 in Title IV funds.

3. The trial court plainly erred in making inferences and crediting evidence in favor of the moving Defendant and not the non-moving Plaintiff. Specifically, the trial court admitted and credited the 11-year-old Burke memorandum that was **rejected** by the Ramsey County District Court in July 2004, six months prior to trial in the *Burns-King* litigation at bar, and **sealed** by the Hennepin County District Court on February 14, 2005. At the same time, the trial court attempted to keep out the appellate court order overruling and reversing Burke, of which the court was required to take mandatory judicial notice. The trial court, in an objectively biased manner, also excluded credible business

records—in some cases, drawn from Quinnipiac University's own files and produced by the Defendant himself in discovery to Plaintiff and authenticated by the Defendant himself in his capacity as the records custodian—that were overwhelmingly favorable to the Plaintiff. Similarly and notwithstanding the fact that the Defendant stipulated that the Plaintiff was a competent law student and that it was undisputed by all parties that the Plaintiff's law school work was not in question, the trial judge inexplicably chose to ignore the numerous academic honors and accolades bestowed upon the Plaintiff by not fewer than five law professors, and to focus upon a lone disputed Evidence grade for which Plaintiff earned transfer credit and a "P" grade and which had no effect upon Plaintiff's transcript or GPA. [12] The cumulative effect of these plainly erroneous rulings was that the record contained almost none of the relevant, probative, and credible non-hearsay evidence submitted by the Plaintiff in substantial conformity with the Rules of Evidence.

The district court's conclusions regarding the public perception of Plaintiff within the Minnesota legal and academic communities are, similarly, misguided and fundamentally erroneous.

As discussed at length in the Facts section of this brief, the record is unequivocal that Plaintiff elicited in-court admissions by the defendant himself and produced non-hearsay business records, proving that Plaintiff was a competent law student who, by the determination of the Quinnipiac Dean, Neil Cogan, had achieved 2-L good standing status and was eligible for transfer. Plaintiff produced Letters of

---

[12] Under the terms of the consortium agreement between the four Minnesota law schools, any passing grade earned at any of the participating Minnesota law schools qualified for transfer credit and a recorded grade of P (Pass). Pass grades have zero grade points and have no impact upon a law student's GPA.

23

Recommendation from a total of three University of Minnesota professors and two Quinnipiac professors, all of whom recommended Plaintiff enthusiastically for transfer admission to the top-rated L.LM program in the nation.

Finally, the University of Minnesota Data Practices Officer, Susan McKinney, the arch-typical Minnesota juror, formally found that the Defendant, King, had misrepresented the Plaintiff's status with Quinnipiac University and thereby harmed the Plaintiff. As noted, McKinney, an MGDPA "responsible authority" enjoys a special status under the Minnesota Government Data Practices Act, Minn. Stat. 13.04, et seq. Consequently and notwithstanding defense counsel's jaundiced assessment of McKinney's competence and authority, Minnesota courts—and, derivatively, a Connecticut federal court, sitting in diversity—are required to defer to her findings.

<u>Given these facts, the trial court's predicate conclusion that "no reasonable juror" could "possibly find" for Plaintiff as a basis for its disclaimer of jurisdiction was clearly and fundamentally erroneous. If the trial judge's own observation in the context of a pre-trial rebuke of defense counsel that "This is supposed to be about the truth" has any credibility, the January 18, 2005 judgment is properly vacated on the court's own motion.</u>

### B. **A prior judgment upon which the judgment was based has been reversed or otherwise vacated.**

As set forth in the Facts section of this brief, the Burke/Mabley memoranda in question upon which the January 18, 2004 judgment was based, was reviewed and formally rejected by a Ramsey County District Court in July 2004, six months prior to the *Burns-King* trial. The context of that proceeding was an attempt by a

24

Minnesota attorney to misrepresent the memoranda in a manner substantially similar, if not identical, to the "scorched earth" modus operandi utilized by defense counsel Nouri and Conway at bar.

Specifically, Plaintiff argued in opposition to introduction of the memoranda in the Ramsey County proceedings that Burke had been validly removed as of right under Minn. Rule of Civ. P. 63.03; that the Minnesota appellate court upheld the removal as of right; and that, consistent with the appellate court's interpretation of MRCP 63.03., Burke could not issue any substantive order, or be seconded as to any substantive judicial act, involving the Plaintiff, the removing party. *McClelland v. Pierce*, 376 N.W. 2d, 217 (Minn. 1985); *Citizens State Bank v. Wallace*, 477 N.W. 2d 741 (Minn. App. 1991); *IN RE: Hormel's Trusts*, 282 Minn. 197, 163 N.W. 2d 844 (Minn. 1968).

The Ramsey County Court, interpreting the Minnesota judicial disqualification rule, MRCP 63.03, agreed. At hearing on July 16, 2004, Judge Michael Bertolson of the Second Judicial District of Minnesota struck the Burke-Mabley memoranda, stating that, pursuant to MRCP 63.03, neither the court nor the Plaintiff were bound by it and that the court would not consider it. This relevant ruling by a Minnesota court of competent jurisdiction is binding upon a Connecticut court, sitting in diversity, and was disclosed prior to trial in Plaintiff's timely and authorized Motion in Limine, filed on or about December 6, 2004.

As set forth with specificity in the Facts section of this brief, the Fourth Judicial District of Minnesota, the same judicial district from which the memoranda originated, sealed it on February 14, 2005. The seal order issued on the pro se motion

of the Plaintiff, following an attempt by a Minnesota attorney, Christopher P. Renz, to misrepresent and unethically trade on it in a manner substantially similar to the modus operandi utilized by defense counsel Nouri and Conway.

On March 1, 2005, the Minnesota Lawyers' Board of Professional Responsibility docketed a complaint of lawyer misconduct filed by the Plaintiff against Renz. On July 25, 2005, Judge Kenneth Jorgenson of the First Judicial District of Minnesota, in his capacity as Director, Minnesota Lawyers' Board of Professional Responsibility, issued a finding of attorney misconduct and admonition of Renz.

In consideration of the foregoing facts, the Connecticut District Court, sitting in diversity, cannot disregard pertinent interpretations of MRCP 63.03 by Minnesota courts and other judicial bodies of competent jurisdiction and, in the process, give more credence to the memoranda than that accorded by courts and other judicial bodies of the state of Minnesota. This compels a conclusion that, in doing so, the Connecticut District Court committed obvious legal error, warranting relief under FRCP 60(b).

C. **Fraud**

As noted and discussed in the Facts section of this brief, the Defendant vacated a default judgment granted to the Plaintiff by representing to the court that the Defendant could and would defend on the merits. As the trial court record, including the trial transcript proves, the Defendant did not do this.

Rather, he filed not fewer than three motions, seeking to dismiss the action off the merits on jurisdictional grounds. When the court upheld the Plaintiff's good-faith damage estimate, the Defendant filed a motion for summary judgment, stating that his substantial

26

truth defense afforded him an absolute defense to the Plaintiff's defamation and contract claims. The court rejected this argument and scheduled the case for trial. When faced with an imminent trial date, the Defendant sought to indefinitely delay trial.

When this tactic failed, defense counsel resorted to eleventh-hour *ad hominium* attack and reprehensible "scorched earth" litigation tactics that, as demonstrated herein, would not be permitted in Minnesota. In attacking Plaintiff's character and delving into the private lives of the Plaintiff and two other persons insured by another Conway and Stoughton client, the Chubb Group of Insurance Companies, defense counsel departed from its previously-disclosed defense theory and the deposition of David King, wherein King stated that Plaintiff's good character was not disputed and that Plaintiff's character was not a litigation issue. Plaintiff specifically brings this fact to the court's attention in light of the court's ruling that any defense not properly and timely disclosed to the opposing party would be suppressed.

Plaintiff promptly filed an authorized Motion in Limine, wherein Plaintiff disclosed the Bertolson ruling, striking the Burke-Mabley memorandum. When presented with Plaintiff's First Motion in Limine, defense counsel predictably attacked the Plaintiff. Defense counsel also challenged the validity of the Ramsey County Court's authorized interpretation of MRCP 63.03 by attempting to distinguish and differentiate different types of civil actions, i.e., defense counsel attempted to argue that the Minnesota disqualification rule, correctly interpreted by Judge Bertolson and Judge Jorgenson in a manner completely consistent with three opinions of the Minnesota intermediate appellate court and the supreme court, was inapplicable to a contract action that included a count for defamation. Defense counsel could not or would not cite any authority in

27

support of this assertion apart from defense counsel's contention that "everyone knows that this is the way it should be", or words of that substance and meaning. Defense counsel's argument is without merit.

By the determination of Minnesota's highest courts, operation of the judicial disqualification rule to these facts renders the substantive "judgment" of a validly disqualified Minnesota district court judge "without authority" and subjects it to the same hearsay limitations as any other out-of-court testimony. *Citizens State Bank v. Wallace*, supra, 477 N.W. 2d 741, at 742. The defendant's selective interpretation of MRCP 63.03 and his self-serving attempts to "spin" Judge Bertolson's order, which granted judgment to the Plaintiff on July 22, 2004, is further refuted by the subsequent rulings of two other Minnesota tribunals.

As noted, *supra*, on February 14, 2005 and July 25, 2005, respectively, the Hennepin County District Court and the Minnesota Lawyers' Board of Professional Responsibility both concurred with the Ramsey County District Court that the memoranda did not have the force of law and was not binding upon the Minnesota courts or the Plaintiff. Both rejected the memoranda, which was then sealed by the Hennepin County District Court on the Plaintiff's pro se motion.

This compels a conclusion that, assuming *arguendo*, the Burke-Mabley memoranda ever rose to the level of a judgment the same was reversed or otherwise vacated. Defense counsel's attempts to present it as valid, operative, binding, or relevant is tantamount to a fraud upon the court. Since a Connecticut District Court, sitting in diversity, cannot depart from interpretations of Minnesota law and court rules by Minnesota courts, the January 18, 2005 judgment should not have prospective application and equitable

28

doctrines of unclean hands, estoppel, and and estoppel by laches should operate to deny the Defendant relief.

Similarly, the Connecticut District Court, sitting in diversity, cannot with propriety condone and permit litigation conduct and tactics that have been formally censured and prohibited by Minnesota courts and other Minnesota legal tribunals of competent jurisdiction. To the contrary, the posture of a federal court sitting in diversity should harmonize with previous rulings of state courts of competent jurisdiction with regard t the same issues and the same parties.

Here, two Minnesota attorneys who attempted the same reprehensible litigation tactics as those utilized by defense counsel were sanctioned and censured. It is axiomatic that any order by this court that rewards the same conduct with a judgment that permits the Defendant to evade the consequences of his demonstrated inability to prove his substantial truth defense on the merits is simply wrong and is properly vacated on motion of the Plaintiff or on the court's own motion. <u>It also goes without saying that, if Defendant's allegations that Plaintiff truly was regarded by the Minnesota legal community as a frivolous litigant whose truthfulness is suspect were credible, no Minnesota court would even hear, much less grant, Plaintiff's pro se motions attacking the validity of, and sealing, the Burke memoranda, as two Minnesota courts and a Minnesota legal ethics tribunal have all done within the twelve-month period immediately preceding and post-dating the January 18, 2005 judgment.</u>

In consideration of the foregoing facts, an order vacating the January 18, 2005 judgment of this court is dictated by principles of comity and is necessary to achieve harmony with

29

the rulings of not fewer than three Minnesota judicial bodies, all of whom have rejected and censured the tactics employed by defense counsel at bar.

## II.     THE PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF

In addition, and as an alternative to the relief requested above, Plaintiff asks for a temporary restraining order and temporary injunction to prevent King from interfering with evaluation of the merits of the Plaintiff's transfer applications by an academic program of the Plaintiff's choice. It should be emphasized that the court implicitly upheld Plaintiff's defamation claims against King on January 14, 2005 when the court ordered King to publish a retraction to the University of Minnesota Law School. As noted, King did so on January 18, 2005 in collaboration with his attorney, Matthew Conway. By the determination of the University of Minnesota, the resultant "remedial" communication ordered by the court was substantially inaccurate and incomplete and further damaged Plaintiff in the eyes of the University of Minnesota community.

**The Dahlberg Factors**. The purpose of a temporary restraining order or temporary injunction is "to preserve the status quo until adjudication of the case on the merits." *Miller v. Foley*, 317 N.W. 2d 710 712 (Minn. 1982), citing *Pickering v. Pasco Marketing, Inc.* 228 N.W. 2d 562, 564 (Minn. 1975).

In order to grant a temporary restraining order or injunction, a court must apply the *Dahlberg* factors identified by the Minnesota Supreme Court. *Dahlberg Bros, Inc. v. Ford Motor Co.* 137 N.W. 2d 314, 321-22 (Minn. 1965). *Edin v. Josten's, Inc.*, 343 N.W. 2d 691, 693 (Minn. App. 1984); *Eakman v. Brutger*, 285 N.W. 2d 95 (Minn. 1970).

The *Dahlberg* factors are:

1. The nature of the relationship between the parties before the dispute giving rise to the request for relief.

2. The harm to be suffered by the moving party if the injunctive relief is denied as opposed to that inflicted on the non-moving party if the injunction is granted.

3. The likelihood of success on the merits.

4. The public interest.

5. The administrative burden involved in enforcing the relief requested.

Applying the *Dahlberg* factors to the facts of this case, we find the following.

1. **The nature of the relationship between the parties.** In marked contrast to the harmonious and constructive relationships other Quinnipiac faculty described as having with the Plaintiff, the nature of the relationship between the Plaintiff and David King before the dispute giving rise to the request for relief was that of longtime bitter adversaries. Dating to unauthorized determinations and certifications by King in 1999 and 2000, all of which were overruled by King's superior, the Quinnipiac Dean, King has evidenced a malicious intent to deprive Plaintiff of her entitlements under the law and the Quinnipiac educational contract for which Plaintiff duly gave consideration in the amount of $6,000 in cash and $6,700 in assigned Title IV financial aid. In 2002, following unlawful attempts by King to withhold educational records that King had deliberately misrepresented, Plaintiff engaged an attorney, Earle Giovaniello, who determined that Quinnipiac University, at the direction of King, the records custodian, had violated and obstructed the federal Family Educational Rights

31

and Privacy Act (FERPA), a federal statute enacted to make academic records accessible to students and families. Between the dates of 2000 and 2005, King wrote two letters to the University of Minnesota regarding Plaintiff's tenure at Quinnipiac University, which the University of Minnesota formally found to be false and damaging, necessitating removal from Plaintiff's student record. Virtually every action taken by King *vis a vis* Burns has been disputed as to its validity and effect and, in all cases where the finder of fact reached the merits, resolved in Burns' favor. There is unquestionably personal animosity between the parties.

2. **The relative harm to be suffered**. The harm to be suffered by Burns if King is permitted to go forward and to continue to misrepresent Burns' Quinnipiac status will be great compared to the harm to be suffered by King. The September 29, 2004 order of this court and the June 10, 2005 Opinion of Susan G. McKinney outlines the harm Burns has suffered. Conversely, King, an associate dean who is not the University Registrar, will suffer no harm if the court requires all certifications to be made by the University Registrar and no one else, which is the standard University policy and practice involving certification requests by all other Quinnipiac students. Any balance-of-harm analysis therefore clearly favors Burns.

3. **Plaintiff is likely to prevail on the merits**. The merits of this litigation are fairly straightforward. As set forth in Plaintiff's unmodified Complaint, Plaintiff claims entitlement to money damages and equitable relief as a consequence of the acts of the Defendant constituting breach of contract, defamation, statutory

32

and common-law fraud, and tortuous interference with prospective economic advantage. The Plaintiff is likely to prevail on at least some of the Plaintiff's claims. Indeed, the Plaintiff has already obtained a certification by the recipient University of Minnesota that King's statements regarding Plaintiff were false and damaging, in addition to the remedy of specific performance from this court, which ordered King to publish a retraction.

4. **The public interest**. The underlying issues in this case relate to fair play, substantial justice, and fair competition. More specifically, the University of Minnesota and Quinnipiac University are competitors in a free market for potential law students. Plaintiff is potential buyer of academic services who, by the determination of qualified Quinnipiac personnel, including, but not limited to the Quinnipiac Dean, Neil Cogan, is eligible for transfer status to an ABA-approved law school that is higher rated than Quinnipiac University. Clearly, it is in the public interest that market participants "play honestly" and for Plaintiff's transfer applications to be accepted or rejected on the merits of a true and accurate certification of Plaintiff's law school performance and standing. These market interests are of significant importance to other law students, similarly situated, as well as to the public and to the just administration of the law. Moreover, the public has a compelling interest in the orderly determination of contract and other legal disputes and the maintenance of the status quo while such disputes are adjudicated on the merits.

5. **The burdens of administration**. There will be virtually no administrative burdens in enforcing the relief requested.

## **CONCLUSION**

In consideration of the foregoing facts, the court should vacate the January 14, 2005 judgment and grant the injunctive relief requested.

DATED: 1/14/2006                    BY: *[signature]*
                                         Barbara R. Burns

### CERTIFICATION OF MAILING

I hereby certify that on January 16, 2006, I mailed the foregoing Plaintiff's Motion for Rule 60 and Other Relief to Kevin Rowe, Clerk, U.S. District Court, 450 Main Street, Hartford, CT 06103; and Conway and Stoughton, 201 Ann Street, Hartford, CT 06103.

BY: *[signature]*

34